**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHAOLEI QIU, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CREDIT SUISSE GROUP AG and JANUS INDEX & CALCULATION SERVICES LLC,<br><br>Defendants. | Case No. 18-cv- 4045 (AT) (SN) |

**MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR CONSOLIDATION AND APPOINTMENT OF**
**LEAD PLAINTIFF AND LEAD COUNSEL**

LAW OFFICE OF
CHRISTOPHER J. GRAY, P.C.
360 Lexington Avenue, 14th Floor
New York, New York 10017
(212) 838-3221
(212) 937-3139 (fax)

ECCLESTON LAW, LLC
55 W. Monroe, Suite 610
Chicago, IL 60603
(312) 332-0000
(312) 332-0003 (fax)

*Counsel for Plaintiff*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT AND STATEMENT OF FACTS ................................................ 4

ARGUMENT ................................................................................................................................ 4

I.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED ............................................ 4

II.  THE QIU GROUP SHOULD BE APPOINTED LEAD PLAINTIFF .................................... 5

  A. The Procedure Required by the PSLRA ............................................................................ ....5

  B. The Qiu Group Satisifes All Lead Plaintiff Requirements of the PSLRA ............................. 6

  1. The Qiu Group Has Complied With the PSLRA .................................................................... 6

  2. The Qiu Group Has a Substantial Financial Interest in the Relief Sought by the Class ......... 7

  3. The Qiu Group Otherwise Satisfies Fed. R. Civ. P. 23(a)(3) and (4) .................................... 8

III.  LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL, LAW OFFICE OF
CHRISTOPHER J. GRAY, P.C. AND ECCLESTON LAW, LLC SHOULD BE
APPROVED……………………………………………………………………………………9

## **TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188 (S.D.N.Y. 2008) ............... 4

*Gluck v. Cellstar Corp.*, 976 F.Supp. 542 (N.D. Tex. 1997) ..................................................... 8, 9

*Greebel v. FTP Software*, 939 F. Supp. 57 (D. Mass. 1996) ......................................................... 6

*In re Baan Co. Securities Litigation*, 186 F.R.D. 214 (D. D.C. 1999) ......................................... 9

*In re Donnkenny, Inc. Securities Litigation*, 171 F.R.D. 156 (S.D.N.Y. 1997) ............................. 6

*In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29,

2009) .......................................................................................................................................... 4

*In re Milestone Scientific Securities Litigation*, 183 F.R.D. 404, 413 (D. N.J. 1998) ............... 7, 8

*In re Olsten Corp. Sec. Litig.*, 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998) ..................................... 7, 8

*In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) ............................................ 4

*Johnson v. Celotex Corp.*, 899 F.2d 1281 (2d Cir. 1990) .............................................................. 4

*Kaplan v. Gelfond*, 240 F.R.D. 88 (S.D.N.Y. 2007) ...................................................................... 8

*Lax v. First Merch. Acceptance Corp.* 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) .... 8

*Primavera Familienstiftung v. Askin*, 173 F.R.D. 115 (S.D.N.Y. 1997) ....................................... 5

*Zicklin v. Breuer*, 534 F. Supp. 745 (S.D.N.Y. 1982) ................................................................... 4

<u>**Statutes**</u>

Private Securities Litigation Reform Act ("PSLRA") § 21D(a)(3)(B) ................................. *passim*

## PRELIMINARY STATEMENT AND STATEMENT OF FACTS

Class members Ekhlas Ahmed and Shaolei Qiu (hereinafter "Movants") respectfully submit this Memorandum of Law in support of their motion for an Order consolidating the above-captioned action and related actions pursuant to Fed. R. Civ. P. 42(a), appointing Movants as Lead Plaintiff, and approving Lead Plaintiff's selection of Lead Counsel, pursuant to Private Securities Litigation Reform Act ("PSLRA") § 21D(a)(3)(B).

The above-captioned matter is one of three related securities class action lawsuits presently pending before this Court ("the Actions")[1].   Movants and members of the putative class in the Actions are persons who purchased or otherwise acquired Credit Suisse Group AG's ("Credit Suisse") VelocityShares Daily Inverse VIX Short Term Exchange Traded Notes ("XIV Notes") from January 29, 2018 through February 5, 2018 (the "Class Period"). *See* Qiu Complaint ("C") at ¶¶ 1,

The Actions assert claims under Sections 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated by the SEC thereunder and seek to recover damages[2].   The Actions allege in substance that the XIV Notes' pricing was heavily influenced by a certain formula or pricing mechanism, referred to as the "Intraday Indicative Value," derived from the values of the then-current 1-month and 2-month VIX futures contracts. (C ¶ 25)   VIX is a proprietary index that attempts to measure the near-term expected volatility in the broad equity markets, as

---

[1] The other two actions are *Chahal v. Credit Suisse Group, AG,* Case No. 18-cv-02268 (AT)(SN) and *Eisenberg v. Credit Suisse, AG*, Case No. 1:18-cv-02319 (AT)(SN).

[2] The *Eisenberg* action (Case No. 1:18-cv-02319) also asserts claims under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k.

demonstrated by SPX$_3$ option prices. (C ¶ 12) This measure of expected volatility -- known as the VIX Index or simply the VIX -- is sometimes referred to as a "fear index" or "fear gauge." *Id.* The VIX tracks higher when the market is anticipating increased volatility, and conversely tracks lower when the market anticipates less volatility in the coming 30-day time frame. (C ¶ 13) VIX pricing is directly tied to the prices of SPX options, because the prevailing SPX options pricing serves as an indicator of the market's expectations in the future concerning volatility in equity pricing. (C ¶ 14)

Plaintiff alleges that in various Securities and Exchange Commission ("SEC") filings including prospectuses and pricing supplements for the XIV Notes, Defendants represented to XIV investors that they would calculate the Intraday Indicative Value every 15 seconds, that an Intraday Indicative Value would be published and disseminated throughout the trading day, and that once daily, Defendants would issue a Closing Indicative Value. (C ¶¶ 27-28)

In an after-hours trading session on February 5th, 2018- the final day of the Class Period- Defendants failed to follow their stated mechanism for calculating and disseminating the Intraday Indicative Value of XIV Notes. (C ¶ 36) From 4:10 p.m. - 5:09 p.m. EST on February 5, Defendants materially misrepresented the value of the XIV Notes. (C ¶ 37) During this time frame, investors were purchasing XIV Notes at prices as high as the $80's, while Defendants were representing to the public that XIV's Intraday Indicative Value was $24.6961. *Id.*

By 4:15p.m. EST on February 5, 2018, Defendants knew or recklessly disregarded that XIV was in severe distress and thus facing an impending liquidation, based upon extreme

---

3"SPX" refers to the well-known Standard & Poor's 500 Index, a stock index based on the 500 largest companies whose stock is listed for trading on the NYSE or NASDAQ.

volatility in VIX futures pricing. (C ¶ 38)    On February 5, 2018, by 4:15 p.m. EST the last

trade in the February futures contract was at $33.20, and the last trade in the March contract was

$27.95. *Id.*    The pricing on these contracts was 112.5% and 86.8% higher, respectively, than the

prior close for the corresponding February and March futures contracts. *Id.*    The February 5th

futures pricing supported an Intraday Indicative Value on XIV of $4.40 per Note and a Closing

Indicative Value of $4.22. (C ¶ 42)

Nevertheless, Defendants incorrectly reported XIV's Indicative Value as $24.6961 until

5:08 p.m. in after-hours trading. *Id.*    As a direct result of Defendants' material

misrepresentations as to the true Indicative Value of XIV and failure to publish an accurate

Intraday Indicative Value, the XIV Notes traded at artificially inflated prices. (C ¶ 43) Plaintiff

further alleges that Defendants' actions and inactions with respect to disseminating inaccurate

Intraday Indicative Values, failure to provide accurate and updated Intraday Indicative Values,

and otherwise, constitute an act, practice, or course of business which operates or would operate

as a fraud or deceit upon any person, in connection with the purchase or sale of any security, in

violated of Rule 10b-5 (c). (C ¶ 66)

Movants purchased XIV notes on February 5, 2018 for prices as high as $102.32, and

sold them for prices as low as $5.71 on February 6, 2018. Movants have a substantial financial

interest (an out-of-pocket loss of approximately $1,078,338.80)[4] in this litigation.   Furthermore,

a substantial portion of their losses results from trading on February 5, 2018, when the price

inflation caused by Defendants' unlawful course of business appears to have been at it maximum

_____

[4]See certifications, annexed to the accompanying Declaration of Christopher J. Gray ("Gray Decl.") dated May 14, 2018 as Exh. 1.

3

level.   Under the PSLRA, Movants should be appointed Lead Plaintiff herein, and its choice of Law Office of Christopher J. Gray, P.C. and Eccleston Law, LLC as Lead Counsel in the consolidated action should be approved.

## ARGUMENT

### I.

### THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, "it is within the Court's power to consolidate actions which share 'common questions of law or fact.'"   *Zicklin v. Breuer*, 534 F. Supp. 745, 748 (S.D.N.Y. 1982), quoting Fed. R. Civ. P. 42(a).   Trial courts retain "broad discretion to determine whether consolidation is appropriate." *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284-85 (2d Cir. 1990).   Consolidation may be particularly appropriate in circumstances where multiple putative securities class actions arise from the same underlying facts.   *See In re Tronox, Inc. Sec. Litig., 262 F.R.D. 338*, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc*., 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See In re GE Sec. Litig.,* No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *4–8 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Actions at issue here clearly involve common questions of law and fact. Accordingly, consolidation of these actions will avoid confusion, delay and unnecessary

4

duplication and ensure the efficient and coordinated prosecution of these actions.   In such circumstances, consolidation is generally ordered so long as confusion or prejudice do not outweigh efficiency concerns. *See Primavera Familienstiftung v. Askin,* 173 F.R.D. 115, 129 (S.D.N.Y. 1997). Here, there can be no prejudice because all the actions have the same factual bases and there are no considerations which render consolidation impractical.

In these circumstances, this Court should consolidate the Actions, and pursuant to PSLRA § 21D(a)(3)(B)(ii),[5] proceed to appoint a Lead Plaintiff "[a]s soon as practicable."

## II.

## MOVANTS SHOULD
## BE APPOINTED LEAD PLAINTIFF

### A.        The Procedure Required by the PSLRA

The PSLRA establishes the procedure for appointment of the Lead Plaintiff.   The process begins when the first plaintiff, within 20 days after filing the initial action, publishes a notice of pendency which informs class members, inter alia, of their right to seek appointment as lead plaintiff. PSLRA § 21D(a)(3)(A)(i). Within 60 days of such publication, any person or group of persons may apply to the Court for appointment as Lead Plaintiff. PSLRA § 21D(a)(3)(A)(i).

The PSLRA further provides that, within 90 days of such publication, the court shall consider any motion made by a class member or members and shall appoint as Lead Plaintiff the

---

[5]   The PSLRA amended both the Securities Act and the Securities and Exchange Act by adding new sections 27 (15 U.S.C. § 77z-1) and 21D (15 U.S.C. § 78u-4) respectively.   Because the texts of the new sections are identical, this memorandum will cite only to the Securities and Exchange Act amendment, PSLRA § 21D.

member or members determined to be most capable of adequately representing the interests of class members.   Pursuant to Section 21D(a)(3)(B) of the PSLRA, the Court "shall adopt a presumption that the most adequate plaintiff in any private action arising under [the Securities Act and the Exchange Act, respectively] is the person or persons that

> (aa)   either has filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb)   in the determination of the Court has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."

The presumption that the person or group of persons with the largest financial interest is the most adequate class representative will be rebutted only upon proof by a member of the class that the person or group will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such putative Lead Plaintiff incapable of adequately representing the class.   *In re Donnkenny, Inc. Securities Litigation*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997).

**B.      Movants Satisfy All Lead Plaintiff Requirements of the PSLRA**

1.      <u>Movants Have Complied With the PSLRA</u>

 The plaintiff in the *Chahal* case filed the first-filed action alleging violations of the federal securities laws by Defendants concerning XIV Notes on or about March 14, 2018 and publicized the filing by distributing a press release, also on March 14, 2018. *See* Gray Decl. at Exh. 2; *see also Greebel v. FTP Software*, 939 F. Supp. 57, 64 (D. Mass. 1996). Pursuant to Section 21D(a)(3)(A)(i)(II), the time period for seeking appointment as Lead Counsel expires on

May 14, 2018.   Movants thus have timely moved this Court to be appointed Lead Plaintiff on behalf of all members of the Class.

Movants have submitted certifications in compliance with the requirements of Section 21D(a)(2).   *See* Gray Decl. Exh. 1.   In addition, Movants have selected and retained experienced and competent counsel to represent them.   *See* Gray Decl. Exhs. 3 and 4.

Having satisfied the requirements of Section 21D(a)(3)(B), the Movants are entitled to have their application for appointment as Lead Plaintiff considered by this Court.

    2.    Movants Have a Substantial Financial
          Interest in the Relief Sought By the Class

Pursuant to PSLRA § 21D(a)(3)(B)(iii), the Court presumptively shall appoint as Lead Plaintiff the class member or members who represent the largest financial interest in the relief sought by the action.   *In re Olsten Corp. Securities Litigation,* 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998).

As their certifications indicate, Movants sustained losses of approximately $1,078,338.80 in connection with their trades in the XIV Notes.   Movants purchased a total of 40,000 XIV Notes during the Class Period. Gray Decl. Exh. 1. While the determination of which movant has the "largest financial interest" must await a review of all competing motions, Movants' losses are significant enough to ensure that Movants have a sufficient financial stake to remain an active participant in the litigation and oversee its vigorous prosecution by counsel.   *See In re Milestone Scientific Securities Litigation*, 183 F.R.D. 404, 413 (D. N.J. 1998).

The final determination of which person or group or persons has the largest financial interest in this litigation must await a review of the four factors articulated in the *Lax v. First Merch. Acceptance Corp.*[6]

> 3.  Movants Otherwise Satisfy Fed. R. Civ. P.
>     23(a)(3) and (4)

Movants otherwise satisfy Rule 23(a)(3) and (4) because, like other Class members, they acquired XIV Notes during the Class Period at prices artificially inflated by Defendants' violations of law and were damaged thereby.[7]   Thus, their claims are typical of those of the other members of the Class because they "suffered losses similar to those of other class members" and their "losses allegedly result from the [defendants'] common course of conduct." *In re Milestone Scientific,* 183 F.R.D. at 415. Furthermore, Movants purchased XIV Notes at inflated prices in after-hours trading on February 5, 2018, the time when price artificiality appears to have been at its greatest.

---

[6] 1997 U.S. Dist. LEXIS 11866, at *7-*8 (N.D. Ill. Aug. 6, 1997) (financial interest may be determined by (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered).   The *Lax* factors have frequently been applied by court assessing competing applications for Lead Plaintiff under the PSLRA in this District and elsewhere in the Second Circuit. *See, e.g., Kaplan v. Gelfond,* 240 F.R.D. 88, 93 (S.D.N.Y. 2007); *In re Olsten Corp. Sec. Litig.,* 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998).

[7] The Court's inquiry into Rule 23(a) factors at this juncture is somewhat limited and subject to further review at the class certification stage.   As noted in *Gluck v. Cellstar Corp.,* 976 F. Supp. 542 (N.D. Tex. 1997):

> Congress clearly did not intend to burden prospective Lead Plaintiffs by requiring extensive evidentiary proof of typicality or adequacy in a "Reform Act" designed to reduce the costs of securities class actions and to induce institutional investors to become Lead Plaintiffs.   Evidence regarding the requirements of Rule 23 will, of course, be heard in full at the class certification hearing.   There is no need to require anything more than a preliminary showing at this stage.

Movants are also an adequate representative of the Class because its interests are aligned with those of other members of the Class.   As the court in *Milestone Scientific* held:

> [a]dequacy, for purposes of the Lead Plaintiff determination, is contingent upon both the existence of common interests between the proposed Lead Plaintiffs and the class, and a willingness on the part of the proposed Lead Plaintiff to vigorously prosecute the action.

183 F.R.D. at 416.

In summary, Movants are typical of other putative class members, and have already taken significant steps that demonstrate that they will protect and advance the interests of the Class by filing the Complaint (in the case of Mr. Qiu), completing certifications evidencing their willingness to be appointed as lead plaintiff under the terms imposed by the PSLRA (Gray Decl. Exh. 1), by hiring competent counsel, and by moving this Court to be appointed Lead Plaintiff herein.

### III.

### LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL, LAW OFFICE OF CHRISTOPHER J. GRAY, P.C. AND ECCLESTON LAW, LLC SHOULD BE APPROVED

Pursuant to Section 27(a)(3)(B)(v) of the Securities Act and Section 21D(a)(3)(B)(v) of the Exchange Act of the PSLRA, the Lead Plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class."   One court has stated that this provision "[g]iv[es] the Lead Plaintiff primary control for the selection of counsel" and "was a critical part of Congress' effort to transfer control of securities class actions from lawyers to investors." *Gluck v. Cellstar Corp.,* 976 F. Supp. 542, 550 (N.D. Tex. 1997). While the PSLRA does not eliminate the Court's discretion in appointing Lead Counsel for the Class, it "contemplates that a court would impose additional or different counsel on the Lead Plaintiff only in very unusual

circumstances". Brief *amicus curiae* of the SEC, appended to decision in *In re Baan Co.*

*Securities Litigation*, 186 F.R.D. 214, 229 (D. D.C. 1999).

No such "unusual circumstances" exist here. Movants have retained firms with

substantial securities and other complex litigation experience that will vigorously prosecute this

case. *See* Gray Decl. Exhs. 3 and 4. The Law Office of Christopher J. Gray, P.C. and

Eccleston Law, LLC should be appointed Lead Counsel.

Dated: New York, New York
     May 14, 2018

          Respectfully submitted,

          LAW OFFICE OF
          CHRISTOPHER J. GRAY, P.C.

          By:  Christopher J. Gray
               Michael J. Giarrusso
          360 Lexington Avenue, 14th Floor
          New York, New York 10017
          (212) 838-3221
          (212) 937-3139 (fax)

          ECCLESTON LAW, LLC
          James J. Eccleston
          Stephany D. McLaughlin
          55 W. Monroe, Suite 610
          Chicago, IL 60603
          (312) 332-0000
          (312) 332-0003 (fax)

          *Counsel for Plaintiff*