USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/21/2018

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

RAJAN CHAHAL, Individually and on Behalf of
All Others Similarly Situated,

      Plaintiff,      18-CV-02268 (AT)(SN)

  -against-      **OPINION AND ORDER**

CREDIT SUISSE GROUP AG, DAVID R.
MATHERS and TIDJANE THIAM,

      Defendants.

-----------------------------------------------------------------X
-----------------------------------------------------------------X

GLEN EISENBERG, On Behalf of Himself and
All Others Similarly Situated,

      Plaintiff,      18-CV-02319 (AT)(SN)

  -against-

CREDIT SUISSE AG and JANUS INDEX &
CALCULATION SERVICES LLC,

      Defendants.

-----------------------------------------------------------------X
-----------------------------------------------------------------X

SHAOLEI QUI, On Behalf of Himself and All
Others Similarly Situated,

      Plaintiff,      18-CV-04045 (AT)(SN)

  -against-

CREDIT SUISSE GROUP AG and JANUS
INDEX & CALCULATION SERVICES LLC,

      Defendants.

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge**:

This litigation arises out of three securities class actions pending before the Court against Credit Suisse Group AG ("Credit Suisse") on behalf of all investors who purchased or otherwise acquired Credit Suisse VelocityShares Daily Inverse VIX Short Term Exchange Traded Notes ("Inverse VIX Short ETNs") between January 29, 2018, and February 5, 2018 (the "Class Period"), and were damaged thereby. The actions allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a). The Eisenberg Action additionally alleges claims under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k.

Before the litigation can proceed, the Private Securities Litigation Reform Act of 1995 (the "PSLRA") requires the Court to appoint the lead plaintiff and counsel for the putative class. 15 U.S.C. §§ 77z-1(a)(3)(B), 78u-4(a)(3)(B). On May 14, 2018, seven parties filed motions to be appointed class representative: Ekhlas Ahmed and Shaolei Qui; a group called the XIV Investor Group (referred to herein as the "Cannon Group"); Y-GAR Capital; the Kershner Trading Group; a second group called the XIV Investor Group (referred to herein as the "ACM Group"); Andrew MacEntee; and the Princeton Opportunistic Credit Fund. After reviewing the competing motions, Ahmed and Qui and the Kershner Trading Group withdrew their motions for appointment as lead plaintiff, conceding that they did not have the largest financial interest in the relief sought by the class. The Princeton Opportunistic Credit Fund filed a Notice of Non-Opposition. On May 29, 2018, the remaining movants opposed the others' motions for appointment of Lead Plaintiff.

**LEGAL STANDARD**

The PSLRA establishes a "two-step competitive process" to determine which plaintiff is most adequate. In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95, 97 (S.D.N.Y. 2005). First, the PSLRA sets forth a rebuttable presumption that the most adequate plaintiff is "the person or group of persons" who or that (a) has either filed the complaint or made a motion for appointment as lead plaintiff, (b) has the largest financial interest in the relief sought by the class, and (c) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I), 77u-4(a)(3)(B)(iii)(I). Once the Court has identified the presumptive "most adequate plaintiff," other members of the purported class may try to rebut the statutory presumption by showing that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is incapable of adequately representing the class because of "unique defenses." 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II), 78u-4(a)(3)(B)(iii)(II).

**I.      Presumptive "Most Adequate Plaintiff"**

In deciding which proposed lead plaintiff has "the largest financial interest in the relief sought by the class," courts in this district tend to consider four criteria, known as the Lax factors: (i) the gross number of shares purchased; (ii) the net number of shares purchased; (iii) the net funds spent; and (iv) the net loss suffered. Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc., 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004) (quoting Lax v. First Merch. Acceptance Corp., 97-CIV-2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)). Courts generally find the fourth factor to be the most compelling. Khunt v. Alibaba Grp. Holding Ltd., 102 F. Supp. 3d 523, 530 (S.D.N.Y. 2015).

"The prevailing view in this District is that unrelated investors may join together to aggregate their financial losses only if such a grouping would best serve the class." Int'l Union

of Operating Engineers Local No. 478 Pension Fund v. FXCM Inc., No. 15-CIV-3599 (KMW), 2015 WL 7018024, at *2 (S.D.N.Y. Nov. 12, 2015) (internal quotations omitted). "The issue is not whether losses or holdings may be aggregated by members of a group seeking to become the lead plaintiff; indisputably, they may. But to enjoy the rebuttable presumption that the statute confers, there must be some evidence that the members of the group will act collectively and separately from their lawyers." In re Tarragon Corp. Sec. Litig., No. 07-CIV-7972 (PKC), 2007 WL 4302732, at *2 (S.D.N.Y. Dec. 6, 2007). "Determination of whether the grouping would best serve the class is made on a case-by-case basis, and hinges on whether the members of the group can function cohesively and effectively manage the litigation apart from their lawyers." Fries v. N. Oil & Gas, Inc., No. 16-CIV-6543 (ER), 2017 WL 1880819, at *2 (S.D.N.Y. May 8, 2017) (internal quotations omitted). "A group consisting of persons that have no pre-litigation relationship may be acceptable as a lead plaintiff candidate so long as the group is relatively small and therefore presumptively cohesive." Janbay v. Canadian Solar, Inc., 272 F.R.D. 112, 119 (S.D.N.Y. 2010).

As for the requirements of Rule 23, at this stage a proposed lead plaintiff need only make a "preliminary showing" that it will satisfy the typicality and adequacy requirements of Rule 23. Kaplan v. Gelfond, 240 F.R.D. 88, 94 (S.D.N.Y. 2007); In re Pub. Offering Sec. Litig., 214 F.R.D. 117, 121 (S.D.N.Y. 2002). "Typicality is established where each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" Janbay, 272 F.R.D. at 120 (quoting In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992)). At this early stage, "[t]he adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the

members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." Foley v. Transocean Ltd., 272 F.R.D. 126, 131 (S.D.N.Y. 2011).

## II. Rebuttal of the Presumption

The Court then proceeds to the second step of the two-step appointment process. Once the Court has identified the presumptive "most adequate plaintiff," other members of the purported class may try to rebut the statutory presumption by showing that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is incapable of adequately representing the class because of "unique defenses." 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II), 78u-4(a)(3)(B)(iii)(II). "If the presumptive lead plaintiff is disqualified [], the candidate's position is forfeited and the court returns to the first phase to determine a new presumptive lead plaintiff. The process repeats itself until a candidate succeeds in both the first and second phases of inquiry." eSpeed, 232 F.R.D. at 98. But the Court does not need to determine whether other plaintiffs may be more typical or adequate than the presumptively adequate plaintiff. "So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." Khunt, 102 F. Supp. 3d at 536 (quoting In re Cavanaugh, 306 F.3d 726, 732 (9th Cir. 2002)).

## III. Selection of Counsel

The PSLRA further requires the Court to approve the lead plaintiff's selection of counsel. 15 U.S.C. §§ 77z-1(a)(3)(B)(v), 78u-4(a)(3)(B)(v). "The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." Kaplan v. S.A.C. Capital Advisors, L.P., 311 F.R.D. 373, 383 (S.D.N.Y.

2015) (quoting Varghese, 589 F. Supp. 2d at 398). Courts often rely on counsel's past experience when determining whether the lead plaintiff's selection is appropriate. See, e.g., In re Petrobras Sec. Litig., 104 F. Supp. 3d 618, 625 (S.D.N.Y. 2015) (relying on a declaration detailing counsel's extensive experience with complex class action litigations).

## DISCUSSION

**I.     Consolidation**

There are three securities class actions pending before this Court against combinations of Credit Suisse, its Chief Executive Officer, its Chief Financial Officer, and Janus Index & Calculation Services LLC: Chahal v. Credit Suisse Group AG, et al., No. 18-CIV-02268 (AT)(SN), filed March 14, 2018; Eisenberg v. Credit Suisse AG, et al., No. 18-CIV-02319 (AT)(SN), filed March 15, 2018; and Qiu v. Credit Suisse Group AG, et al., No. 18-CIV-04045 (AT)(SN), filed May 4, 2018 (collectively, the "Related Actions"). Where there is more than one action on behalf of a class asserting substantially the same claim or claims, and "any party has sought to consolidate those actions," a court shall not appoint a lead plaintiff until after the court decides the motion to consolidate. 15 U.S.C. §§ 77z-1(a)(3)(B)(ii), 78u-4(a)(3)(B)(ii).

The Court understands there is a motion pending before the Joint Panel on Multidistrict Litigation (the "JPML") to centralize the Related Actions and another action pending in the Northern District of Alabama (the "Halbert Action") in this Court. See ECF No. 63. No party has requested a stay pending the decision of the JPML, and the motions for appointment of lead plaintiff and lead counsel for the three actions pending in this District are fully briefed. By contrast, in the Halbert action, the case is stayed and no lead plaintiff briefing has taken place. ECF No. 15, 18-CIV-00615. Because Rule 2.1 of the Rules of Procedure of the JPML specifically notes that "the pendency of a motion" before the panel "does not suspend orders and

6

pretrial proceedings in the district court," and because any stay would be inefficient given the advanced stage of motions practice here, the Court declines to order a stay *sua sponte*. Multidistrict Lit. R. 2.1(d); see also In re Duke Energy Corp. Sec. Litig., No. 02-CIV-3960 (JSR), 2002 WL 1933798, at *1 (S.D.N.Y. Aug. 20, 2002) (concluding the filing of a motion before the JPML does not require the court to defer its consideration of the motions for appointment of lead plaintiff); Albert Fadem Trust v. Worldcom, Inc., No. 02-CIV-3288 (DLC), 2002 WL 1485257, at *2 (S.D.N.Y. July 12, 2002) (same). Cf. Sevel v. AOL Time Warner, Inc., 232 F. Supp. 2d 615, 616 (E.D. Va. 2002) (staying the decision to appoint lead plaintiff pending the JPML decision before any briefing had taken place).

Indeed, all four prospective Lead Plaintiffs have requested that the Related Actions be consolidated. Consolidation is appropriate when the actions before the Court involve common questions of law or fact. See Fed. R. Civ. P. 42(a); In re Tronox, Inc. Sec. Litig., 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc., 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). "Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation." Kaplan v. Gelfond, 240 F.R.D. 88, 91 (S.D.N.Y. 2007).

The Related Actions involve common questions of law and fact. They are based on the same alleged misconduct during the same Class Period, assert claims against at least Credit Suisse, and allege many of the same claims. Thus, discovery obtained in one of the Related Actions will be relevant to the others. Consolidation is appropriate under Rule 42(a) of the Federal Rules of Civil Procedure.

## II. The ACM Group is the Presumptive Lead Plaintiff

The Court finds that the ACM Group is the presumptive lead plaintiff based on the factors described in the PSLRA. First, the ACM Group timely filed a motion to be appointed lead plaintiff, satisfying the requirement that it make "a motion in response to a notice" of the putative class action. 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I)(aa), 78u-4(a)(3)(B)(iii)(I)(aa). Notice of the class action was published on March 14, 2018, and the ACM Group filed its motion on May 14, 2018.

Second, out of all the movants, the ACM Group has the largest financial interest in the relief sought by the class. The Court has reviewed the figures provided by each movant to calculate each movant's financial interest under the Lax factors. The Cannon Group collectively purchased 347,508 shares (88,500 net shares), expended $13,044,120.15 in net funds, and suffered approximately $12,514,005.15 in losses. Y-GAR purchased 175,650 shares (0 net shares), expended $10,250,986.79 in net funds, and suffered approximately $10,250,986.79 in losses. MacEntee purchased 84,000 shares (80,000 net shares), spent $4,293,730.70 in net funds, and suffered approximately $3,828,330.70 in losses. The ACM Group collectively purchased 643,262 shares (633,262 net shares), expended $18,425,998.55 in net funds, and suffered approximately $14,383,668.05 in losses. Under all four Lax factors, the ACM Group has the largest financial interest.

Despite these findings, one movant, MacEntee, asserts that the financial interests in this litigation "should be determined by reference to losses suffered from the purchase of Inverse VIX Short ETNs during the after-market session on February 5, 2018, between 4:10 PM and 5:09 PM, as this is the only relevant period for the misrepresentation theory underlying all three filed complaints." MacEntee Reply Memo., ECF No. 69. But adopting this proposal would

8

require the Court effectively to narrow the class to those who purchased the securities during that period. The complaints are the controlling documents, and all seek relief for a class of investors harmed from the date of the issue of the pricing supplement, January 29, 2018, through the date of the after-market session, February 5, 2018. None of the complaints limits their allegations to the after-market session MacEntee proposes. Second, even if a complaint had alleged this after-market session, courts typically calculate losses based on the longer, most inclusive class period. See e.g., In re Doral Fin. Corp. Sec. Litig., 414 F. Supp. 2d 398, 402-403 (S.D.N.Y. 2006) ("the use of the longer, most inclusive class period . . . is proper, as it encompasses more potential class members, and, according to . . . the complaint, is the beginning and end date of the period in which Doral allegedly had been improperly reporting its results"); In re CMED Sec. Litig., No. 11-CIV-9297 (KBF), 2012 WL 1118302, at *2 (S.D.N.Y. Apr. 2, 2012) (same). Calculated during the class period, the ACM Group has the largest financial losses.

Third, the ACM Group meets the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure. Like all other class members, the ACM Group purchased the Notes during the Class Period on the open market, allegedly relied upon the same misrepresentations, and was injured by the collapse of the value of the Notes on February 5, 2018. The ACM Group's co-counsel, Cohen Milstein Sellers & Toll LLP and Levi Korinsky, LLP, both have extensive experience representing classes in securities actions. See ECF No. 38 Exs. 13-14. Finally, there is no evidence of conflict between ACM Group and other class members, and their large financial stake in the action ensures that they will advocate vigorously on behalf of the class.

**III.     Competing Movants Have Not Rebutted the Statutory Presumption**

To rebut the statutory presumption in favor of ACM Group, another movant must prove that the ACM Group is not adequate or typical because it would not be able to protect the interests of the class or because it is subject to "unique defenses." 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II), 78u-4(a)(3)(B)(iii)(II). The competing movants assert that the ACM Group is inadequate because (1) it is a lawyer-manufactured agglomeration of plaintiffs who will be unable to direct the action, (2) its counsel is conflicted, and (3) it is subject to unique defenses.[1] The Court rejects each of these arguments.

**A.     Adequacy of Plaintiff Group**

First, both MacEntee and Y-GAR assert that the ACM Group is merely a lawyer-driven collection of unrelated plaintiffs manufactured to award their attorneys the plum role of lead counsel. They contend that, as a result, these plaintiffs will be unable to represent the class adequately, and the impetus behind the PSLRA—ensuring that the clients direct the lawyers, not vice versa—will be thwarted. In support of their application, the members of the ACM Group have submitted two declarations describing their relationship and intent to manage the litigation. ECF Nos. 60 & 68.

"[A]s the statute makes clear, groups of plaintiffs are specifically permitted by the PLSRA to be appointed lead plaintiff." Hansen v. Ferrellgas Partners, L.P., No. 16-CIV-7840 (RJS), 2017 WL 281742, at *3 (S.D.N.Y. Jan. 19, 2017) (internal quotations omitted). But "[c]ourts have expressed particular concern when potential lead plaintiff groups appear to have been 'cobbled together' for the sake of the litigation," leading them to forbid groups without a

---

[1] MacEntee speculates that the ACM Group may be inadequate because one of its members, ACM Ltd., shares a name with Credit Suisse's codefendant in a pending securities fraud class action in the United States District Court for the Southern District of Texas. See ECF No. 69. The ACM Group submitted an affidavit confirming they are two separate entities. See ECF No. 73 at 1.

prelitigation relationship altogether. Peters v. Jinkosolar Holding Co., No. 11-CIV-7133 (JPO), 2012 WL 946875, at *6 (S.D.N.Y. Mar. 19, 2012). That said, "the majority of courts 'have adopted an intermediate position, permitting unrelated investors to join together as a group seeking lead-plaintiff status on a case-by-case basis.'" Goldstein v. Puda Coal, Inc., 827 F. Supp. 2d 348, 356 (S.D.N.Y. 2011) (quoting Varghese v. China Shenghuo Pharm. Holdings, Inc., 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008)). "Factors that courts have considered when evaluating whether a group's members will function cohesively and separately from their lawyers include evidence of: (1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." Varghese, 589 F. Supp. 2d at 392.

Under the five-pronged test outlined in Varghese, the Court finds that the other movants have not rebutted the presumption that the ACM Group is the most adequate. As for the first factor, the ACM Group effectively concedes that there was no pre-existing relationship. The declaration does not note how the group came to be and it seems likely that counsel introduced its members. This factor cuts against adequacy.

As for the second factor, the ACM Group's declaration shows that its members have been active in the litigation thus far. They plan to "supervise the prosecution of the case to guarantee that the action is prosecuted efficiently." Joint Decl. ¶ 13. Before seeking appointment as lead plaintiff, they convened a conference call to discuss the responsibilities of the role and the benefits they would provide as a group. Joint Decl. ¶ 12. Their supplemental declaration indicated that they subsequently held a second conference to discuss the progress of the

11

litigation. Suppl. Joint Decl. ¶ 5 (ECF No. 68). This factor weighs in favor of their adequacy as lead plaintiff.

These declarations also show that the members of the ACM Group plan to cooperate. They have "decide[d] upon a dispute resolution mechanism in the unlikely event [they] are not able to reach consensus on any issue as this litigation progresses." Suppl. Joint Decl. ¶ 3. They have "exchanged ideas and information regarding this litigation" and one member provided notes of his meeting with counsel to the entire group. Suppl. Joint Decl. ¶ 5. Further, the group members have exchanged contact information, allowing them to work together, in the absence of counsel if necessary, and on an emergency basis. Joint Decl. ¶ 13.

The members of the ACM Group also appear sophisticated. They all have financial trading backgrounds, and one declarant is a general counsel for a financial firm. Joint Decl. ¶¶ 3-7. This indicates that they will adequately represent the interests of the class.

Finally, the declaration states that the "[a]fter careful consideration, [the ACM Group] selected Cohen Milstein and Levi Korsinsky to serve as Co-Lead Counsel." ¶ 14. This shows that the Group chose its counsel, not vice versa. This factor also demonstrates that the ACM Group is an adequate representative.

Taken together, the ACM Group has satisfied the Court that the group is sufficiently involved to allay any concerns that it will not exercise control over its counsel. Indeed, courts have appointed similar groups as lead plaintiffs upon submission of sworn declarations. See In re Bank of Am. Corp. Sec., Derivative & ERISA Litig., 258 F.R.D. 260, 270 (S.D.N.Y. 2009) ("Although the members of the Public Pension Funds may not have functioned as a group in the past, for purposes of this litigation, it is clear they have functioned as a group and intend to continue to do so."); Janbay, 272 F.R.D. at 119 (selecting a group with sophisticated members

that had been introduced by counsel); Simmons v. Spencer, No. 13-CIV-8216 (RWS), 2014 WL 1678987, at *5 (S.D.N.Y. Apr. 25, 2014) ("A group consisting of persons that have no pre-litigation relationship may be acceptable as a lead plaintiff candidate so long as the group is relatively small, such as here with only five members, and therefore presumptively cohesive."). Notably, none of the other prospective lead plaintiffs is an institutional investor, which some courts in this district have ruled should be favored over groups whose members were introduced by counsel. See, e.g., In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95, 100 (S.D.N.Y. 2005); Int'l Union of Operating Engineers Local No. 478 Pension Fund v. FXCM Inc., No. 15-CIV-3599 (KMW), 2015 WL 7018024, at *3 (S.D.N.Y. Nov. 12, 2015). But see Ferrellgas Partners, 2017 WL 281742, at *5 & n.4 ("[T]he statute does not appear to support the rule articulated in some cases that an institutional investor, regardless of the size of its financial interest, should be favored over a group of individuals with the largest financial interest that otherwise satisfies Rule 23.").

### B. Attorney Conflicts

The Cannon Group contends that the ACM Group is inadequate because Cohen Milstein, one of the ACM Group's counsel, cannot vigorously prosecute this action due to its involvement in an antitrust class action alleging price manipulation of the same or similar securities, Atl. Trading USA v. Chi. Bd. Options Exch. Global Markets, Inc., No. 18-CIV-1754 (N.D. Ill. Mar. 9, 2018) ("Atlantic Trading"). Specifically, the Cannon Group asserts that the defendants will "no doubt" point to the allegations made and evidence presented in Atlantic Trading against the class in this action. See ECF No. 53. The Cannon Group concludes this is an "impermissible conflict of interest prohibited by the rules of professional conduct." Id.

13

But any conflict of interest must be grounded in fact to rebut the presumption of the most adequate lead plaintiff. Foley v. Transocean Ltd., 272 F.R.D. 126, 133 (S.D.N.Y. 2011). For there to be any basis to the Cannon Group's argument, Cohen Milstein would have to be appointed lead counsel in the Atlantic Trading action, then present evidence or make arguments in that action that conflict with the claims in this action, and then Credit Suisse, who is not a defendant in the antitrust actions, would somehow have to capitalize on these potential inconsistencies. This improbable if-you-give-a-mouse-a-cookie hypothetical about a future series of events is far too attenuated to rebut the statutory presumption. Atlantic Trading involves a separate class, different financial instruments, and different defendants. Indeed, when the case law mentions conflicts of interest, they typically refer to defenses unique to or collusion with the presumptive plaintiff, not potential ethical conflicts of interest. See, e.g., Vladimir v. Bioenvision, Inc., No. 07-CIV-6416 (SHS)(AJP), 2007 WL 4526532, at *10 (S.D.N.Y. Dec. 21, 2007); Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., 229 F.R.D. 395, 414 (S.D.N.Y. 2004). Accordingly, speculation about whether Cohen Milstein *may* represent a lead plaintiff who *may* have adverse interests is insufficient to rebut the presumption that the ACM Group is lead plaintiff.

### C. Unique Defenses

Third, the Y-GAR group contends that because two of the members of the ACM Group purchased their securities during the aftermarket trading that they are inadequate. But the complaint alleges that purchasers who obtained securities during this time were those principally affected: "Those aftermarket purchases at inflated prices transferred $700 million from unsophisticated, poorly-informed buyers to sophisticated, well-informed sellers." Compl. ¶ 13.

Without determining the merits of the case, it appears that the two group members here were among those allegedly harmed and are therefore presumptively adequate.

IV. **Appointment of Lead Counsel**

The ACM Group retained Cohen Milstein Sellers & Toll PLLC and Levi Korinsky, LLP as counsel. "There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel." Topping v. Deloitte Touche Tohmatsu CPA, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015). Both firms are highly experienced in prosecuting securities class actions. See ECF No. 38 at 13-14; In re Braskem S.A. Sec. Litig., 2015 WL 5244735, at *6 (S.D.N.Y. Sept. 8, 2015) (appointing Cohen Milstein as lead counsel because its "experience litigating securities class actions [makes it] . . . qualified to serve as lead counsel"). Nothing in the Act prevents plaintiffs from selecting multiple lawyers as counsel. See, e.g., In re Bank of Am. Corp. Sec., Derivative & ERISA Litig., 258 F.R.D. at 271. The Court concludes that Cohen Milstein and Levi Korinsky are qualified to serve as lead co-counsel and approves the ACM Group's selection.

## CONCLUSION

The ACM Group's motion for appointment as lead plaintiff and to approve its selection of Cohen Milstein Sellers & Toll PLLC and Levi Korinsky as co-lead counsel is GRANTED. The correlating motions filed by the Cannon Group, Y-GAR Capital and Andrew MacEntee are DENIED. The Clerk of Court is directed to terminate the motions at ECF Nos. 24, 27, 29, 33, 36, 39, 42, 43, and 44 in 18-CIV-2268, ECF Nos. 32 and 35 in 18-CIV-2319, and ECF Nos. 6, 9, and 12 in 18-CIV-4045.

Unless otherwise ordered by the Court, the ACM Group shall file an amended consolidated class action complaint 60 days from the date of this Order & Opinion. Defendants shall answer or otherwise move against the amended consolidated class action complaint 60 days

15

from its filing. In the event of a motion to dismiss, the ACM Group shall oppose within 60 days and the Defendants may reply 30 days after any opposition.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED: June 21, 2018
New York, New York