UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAJAN CHAHAL, Individually and on Behalf of All Others Similarly Situated,

            Plaintiff,

-against-

CREDIT SUISEE GROUP AG, CREDIT SUISSE AG, CREDIT SUISSE INTERNATIONAL, TIDJANE THIAM, DAVID R. MATHERS, JANUS HENDERSON GROUP PLC, JANUS INDEX & CALCULATION SERVICES LLC, and JANUS DISTRIBUTORS LLC d/b/a JANUS HENDERSON DISTRIBUTORS,

            Defendants.

GLENN EISENBERG, on Behalf of Himself and All Others Similarly Situated,

            Plaintiff,

-against-

CREDIT SUISSE AG and JANUS INDEX & CALCULATION SERVICES LLC,

            Defendants.

SHAOLEI QIU, on behalf of himself and all others similarly situated,

            Plaintiff,

-against-

CREDIT SUISSE GROUP AG and JANUS INDEX & CALCULATION SERVICES LLC,

            Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/27/2018

18 Civ. 2268 (AT) (SN)
18 Civ. 2319 (AT) (SN)
18 Civ. 4045 (AT) (SN)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiffs bring these consolidated securities class actions under the Securities Exchange Act of 1934 against Defendants, Credit Suisse Group AG, Credit Suisse AG, and Credit Suisse International (collectively, "Credit Suisse"), two of Credit Suisse's officers, Janus Henderson Group PLC, Janus Index & Calculation Services LLC, and Janus Distributors LLC d/b/a Janus Henderson Distributors, on behalf of all investors who purchased or otherwise acquired Credit

Suisse VelocityShares Daily Inverse VIX Short Term Exchange traded notes between January 29, 2018 and February 5, 2018.

In a June 21, 2018 Opinion and Order (the "Opinion and Order"), the Honorable Sarah Netburn consolidated these actions and appointed the "ACM Group," a group of three individual investors and two institutional investors, including ACM Ltd. ("ACM"), as Lead Plaintiff. Opinion and Order at 6–7, 15, ECF No. 74, 18 Civ. 2268. In appointing the ACM Group, Judge Netburn denied the motions of Y-GAR Capital LLC ("Y-GAR Capital") and other members of the class to be appointed as Lead Plaintiff. *Id.* at 15. On July 5, 2018, Y-GAR Capital filed a timely objection to the Opinion and Order, challenging Judge Netburn's appointment of the ACM Group as Lead Plaintiff. Y-GAR Capital Obj., ECF No. 75, 18 Civ. 2268. For the reasons stated below, the objection is overruled.

## DISCUSSION

I. Legal Standards

A. Objections to a Magistrate Judge's Non-Dispositive Orders

Federal Rule of Civil Procedure 72(a) governs a district judge's review of a magistrate judge's non-dispositive pretrial rulings. Rule 72(a) provides that "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). A court, therefore, "may adopt the magistrate judge's findings and conclusions as long as the factual and legal bases supporting the ruling are not clearly erroneous or contrary to law." *Pegoraro v. Marrero*, 281 F.R.D. 122, 125 (S.D.N.Y. 2012).

B. Appointment of Lead Plaintiff in Securities Class Actions

Under the Private Securities Litigation Reform Act, courts engage in a competitive two-step process to determine who should serve as the lead plaintiff in a securities class action. *See Sgalambo v. McKenzie*, 268 F.R.D. 170, 173 (S.D.N.Y. 2010). At the first step, the Court must determine the "presumptive most adequate plaintiff" by examining three criteria:

> (1) the candidate must have filed the complaint or made a motion in response to a notice; (2) the candidate must have the largest financial interest in the relief sought by the class; and (3) the candidate must otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* (internal quotation marks, footnotes, citations, and alteration omitted); *see* 15 U.S.C. §§ 77z–1(a)(3)(B)(iii)(I), 78u–4(a)(3)(B)(iii)(I). Once a court chooses the presumptive most adequate plaintiff, the Court proceeds to the second step, where other members of the class "have the opportunity to rebut that plaintiff's presumptive status." *Sgalambo*, 268 F.R.D. at 174; *see* 15 U.S.C. §§ 77z–1(a)(3)(B)(iii)(II), 78u–4(a)(3)(B)(iii)(II).

II.     Analysis

Y-GAR Capital objects to the Opinion and Order on two grounds. First, it argues that Judge Netburn improperly aggregated the losses of the ACM Group's members in determining that it "had the largest financial interest" of all of the parties moving for appointment as Lead Plaintiff because the ACM Group did not include the individual investor with the greatest individual financial loss. *See* Y-GAR Capital Obj. at 3–6. Second, it argues that Judge Netburn erred in rejecting Y-GAR Capital's argument that the ACM Group is "lawyer driven." *See id.* at 6–8. The Court rejects both objections.

"[T]he prevailing view in this District is that unrelated investors can aggregate their financial losses only 'if such a grouping would best serve the class.'" *Fries v. N. Oil & Gas, Inc.*, No. 16 Civ. 6543, 2017 WL 1880819, at *2 (S.D.N.Y. May 8, 2017) (quoting *Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc.*, No. 15 Civ. 3599, 2015 WL 7018024, at *2 (S.D.N.Y. Nov. 12, 2015)). Courts in this district determine whether a group of unrelated investors would best serve the class "on a case-by-case basis," considering whether the "unrelated members . . . will be able to function cohesively and to effectively manage the litigation apart from their lawyers." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008). Y-GAR Capital's two objections are, therefore, related. The question of whether Judge Netburn erred by aggregating the financial losses of the ACM Group's members depends, in part, on whether the group is "lawyer driven."

In *Varghese*, another court in this district explained that courts have considered five factors in deciding whether a group of investors will function cohesively and separately from their lawyers: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." *Id.* Numerous courts in this district have since applied the *Varghese* factors in deciding whether to appoint an investor group with the largest combined financial loss as the lead plaintiff in a securities class action. *See, e.g.*, *Nakamura v. BRF S.A.*, No. 18 Civ. 2213, 2018 WL 3217412, at *2 (S.D.N.Y. July 2, 2018).

Y-GAR Capital argues that appointment of the ACM Group as Lead Plaintiff was improper because, in all of the cases cited in the Opinion and Order, "none of [the investor groups] were appointed over an individual movant with by far the largest financial interest." Y-GAR Capital Obj. at 4. As an initial matter, Y-GAR Capital claims $10.2 million in losses, whereas ACM, the member of the ACM Group with the greatest individual financial loss, claims $7.7 million in losses. *See* Y-GAR Capital Obj. at 6; ACM Loss Chart, ECF No. 38-11. Given the relatively large size of both losses, the Court disagrees that Y-GAR Capital has "by far" the largest individual financial interest. Even if it did, whether an individual member of an investor group has the largest individual financial interest of all class members is not part of the five-factor analysis set forth in *Varghese*, and none of the cases cited by Y-GAR Capital stand for the proposition that an investor group *must* include the individual investor with the greatest financial interest. In short, that other cases are not factually identical to this one does not establish clear error under Rule 72(a).

Turning to Y-GAR Capital's contention that Judge Netburn erred in concluding that the ACM Group is not "lawyer driven," the Court's review of the Opinion and Order reveals that Judge Netburn carefully considered each of the five *Varghese* factors. She acknowledged that the first factor weighed against appointment of the ACM Group as Lead Plaintiff because its members had no pre-existing relationship. Opinion and Order at 11. She concluded that the remaining factors, however, weighed in favor of appointing the ACM Group because its members had submitted a joint declaration stating that they had held multiple conference calls about the progress of the litigation; that they had established a mechanism to resolve disputes among them, should they arise; that they each had financial trading backgrounds; and that they selected their counsel, not vice versa, "[a]fter careful consideration." *Id.* at 11–12 (alteration in original) (citation omitted); *cf. In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (relying on "declarations demonstrating cooperative efforts" among members of investor group). Judge Netburn, therefore, concluded that, "[t]aken together, the ACM Group has satisfied the Court that the group is sufficiently involved to allay any concerns that it will not exercise control over its counsel." Opinion and Order at 12.

The Court finds no clear factual or legal error in these findings. Y-GAR Capital argues that Judge Netburn's appointment of the ACM Group is inconsistent with her statement in the Opinion and Order that "it seems likely that counsel introduced [the ACM Group's] members" because they did not explain how they met. *Id.* at 11. This fact does not, however, mandate the conclusion that the group lacks the capacity to act separately from its lawyers. *See Hansen v. Ferrellgas Partners, L.P.*, Nos. 16 Civ. 7840 et al., 2017 WL 281742, at *4, *6 (S.D.N.Y. Jan. 19, 2017) (appointing investor group as lead plaintiff even though the group "has not responded to . . . assertions that the members were introduced through common counsel"). Accordingly, Y-GAR Capital has not established that the factual findings and legal conclusions in the Opinion and Order are clearly erroneous or contrary to law.

## CONCLUSION

For the reasons stated above, Y-GAR Capital's objection to the Opinion and Order, ECF No. 75, is overruled.

SO ORDERED.

Dated: August 27, 2018
New York, New York

_____
ANALISA TORRES
United States District Judge

4