**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAJAN CHAHAL, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>    PLAINTIFF,<br><br>    v.<br><br>CREDIT SUISSE GROUP AG, CREDIT SUISSE AG, CREDIT SUISSE INTERNATIONAL, TIDJANE THIAM, DAVID R. MATHERS, JANUS HENDERSON GROUP PLC, JANUS INDEX & CALCULATION SERVICES LLC, AND JANUS DISTRIBUTORS LLC D/B/A JANUS HENDERSON DISTRIBUTORS,<br><br>    DEFENDANTS. | 1:18-cv-02268 (AT) (SN)<br>1:18-cv-02319 (AT) (SN)<br>1:18-cv-04045 (AT) (SN) |
| GLENN EISENBERG, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>    PLAINTIFF,<br><br>    v.<br><br>CREDIT SUISSE AG AND JANUS INDEX & CALCULATION SERVICES LLC,<br><br>    DEFENDANTS. | |
| SHAOLEI QIU, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>    PLAINTIFF,<br><br>    v.<br><br>CREDIT SUISSE GROUP AG AND JANUS INDEX & CALCULATION SERVICES LLC,<br><br>    DEFENDANTS. | |

**CREDIT SUISSE DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION TO DISMISS THE CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT......................................................................................................................................2

I.      PLAINTIFFS CANNOT IDENTIFY ANY ACTIONABLE
MISSTATEMENT .................................................................................................................2

II.     PLAINTIFFS' MANIPULATION THEORY CANNOT SAVE THEIR
CLAIMS.................................................................................................................................4

III.    PLAINTIFFS DO NOT ALLEGE SCIENTER...................................................................6

IV.    PLAINTIFFS DO NOT ALLEGE LOSS CAUSATION...................................................10

V.     PLAINTIFFS VIRTUALLY ABANDON THEIR SECTION 11 CLAIM.......................12

VI.    THE CONTROL PERSON CLAIMS ARE INADEQUATE ...........................................13

VII.   THE COURT SHOULD DENY PLAINTIFFS LEAVE TO AMEND ............................15

CONCLUSION.................................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co. Inc.*,
  651 F. Supp. 2d 155 (S.D.N.Y. 2009)...................................................................................7n

*In re American Realty Capital Props., Inc. Litig.*,
  2016 WL 11110435 (S.D.N.Y. Aug. 5, 2016)...........................................................................14

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  381 F. Supp. 2d 192 (S.D.N.Y. 2004).......................................................................................13

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009).......................................................................................................................12

*ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007).......................................................................................................5, 10

*In re Banco Bradesco S.A. Sec. Litig.*,
  277 F. Supp. 3d 600 (S.D.N.Y. 2017).........................................................................................3

*Bankruptcy Trust of Gerard Sillam* v. *Refco Grp., LLC*,
  2006 WL 2129786 (S.D.N.Y. July 28, 2006)...........................................................................15

*Bell Atlantic Corp.* v. *Twombly*,
  550 U.S. 544 (2007).......................................................................................................................12

*Boguslavsky* v. *Kaplan*,
  159 F.3d 715 (2d Cir. 1998).........................................................................................................14

*Dandong* v. *Pinnacle Performance Ltd.*,
  2011 WL 5170293 (S.D.N.Y. Oct. 31, 2011)........................................................................ 7-8

*Dodona I, LLC* v. *Goldman, Sachs & Co.*,
  847 F. Supp. 2d 624 (S.D.N.Y. 2012)..................................................................................... 7-8

*ECD Inv'r Grp.* v. *Credit Suisse Int'l*,
  2017 WL 3841872 (S.D.N.Y. Sept. 1, 2017).............................................................................6

*Elbit Sys.* v. *Credit Suisse Grp.*,
  917 F. Supp. 2d 217 (S.D.N.Y. 2013)......................................................................................15n

*Emergent Cap. Inv. Mgmt., LLC* v. *Stonepath Grp., Inc.*,
  343 F.3d 189 (2d Cir. 2003)........................................................................................................11

*F5 Capital, a Cayman Islands Corp.* v. *Pappas*,
    2016 WL 900389 (S.D.N.Y. Feb. 17, 2016)................................................................15

*Feasby* v. *Industri-Matematik Int'l Corp.*,
    2000 WL 977673 (S.D.N.Y. July 17, 2000) ..............................................................9

*In re Francesca's Holding Corp. Sec. Litig.*,
    2015 WL 1600464 (S.D.N.Y. Mar. 31, 2015) ....................................................10

*Goplen* v. *51 job, Inc.*,
    453 F. Supp. 2d 759 (S.D.N.Y. 2006).........................................................................8

*Hudson Bay Master Fund Ltd.* v. *Patriot Nat'l, Inc.*,
    309 F. Supp. 3d 100 (S.D.N.Y. 2018).........................................................................6

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
    251 F. Supp. 3d 596 (S.D.N.Y. 2017).........................................................................9

*Katz* v. *Image Innovations Holdings, Inc.*,
    542 F. Supp. 2d 269 (S.D.N.Y. 2008)......................................................................9n

*Krasner* v. *Rahfco Funds LP*,
    2012 WL 4069362 (S.D.N.Y. Aug. 9, 2012)......................................................3, 13

*Ladmen Partners, Inc.* v. *Globalstar, Inc.*,
    2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008)..........................................................13

*Lentell* v. *Merrill Lynch & Co., Inc.*,
    396 F. 3d 161 (2d Cir. 2005)..............................................................................10-11

*Loreley Fin. (Jersey) No. 3 Ltd.* v. *Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015)...................................................................................11

*Novak* v. *Kasaks*,
    216 F.3d 300 (2d Cir. 2000)......................................................................................9

*In re Parmalat*,
    375 F. Supp. 2d 278 (S.D.N.Y. 2005).....................................................................14

*In re ProShares Trust Sec. Litig.*,
    889 F. Supp. 2d 644 (S.D.N.Y. 2012).........................................................................1

*Rombach* v. *Chang*,
    355 F.3d 164 (2d Cir. 2004)...................................................................................13

*In re Salix Pharm., Ltd.*,
    2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016)..........................................................9n

*Sharette* v. *Credit Suisse Int'l*,
    127 F. Supp. 3d 60 (S.D.N.Y. 2015).................................................................... 6-7

*Teamsters Local 445 Freight Div. Pension Fund* v. *Dynex Capital Inc.*,
    531 F.3d 190 (2d Cir. 2008)...............................................................................7n, 8

*In re TVIX Sec. Litig.*,
    25 F. Supp. 3d 444 (S.D.N.Y. 2014)....................................................................1, 4

*In re Ultrafem Inc. Secs. Litig.*,
    91 F. Supp. 2d 678 (S.D.N.Y. 2000)............................................................... 12-13

*Wilson* v. *Merrill Lynch & Co., Inc.*,
    671 F.3d 120 (2d Cir. 2011)................................................................................. 5-6

*In re WorldCom, Inc. Sec. Litig.*,
    2004 WL 1097786 (S.D.N.Y. May 18, 2004) .......................................................15

The Credit Suisse Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss the Complaint for failure to state a claim.[1]

## PRELIMINARY STATEMENT

Plaintiffs purport to assert claims under the Securities Act of 1933 and the Securities Exchange Act of 1934, seeking to blame Credit Suisse and the Janus defendants for losses that investors incurred when, amid extreme market volatility, risks that were fully disclosed by the relevant offering documents materialized.  Similar complaints, including one based on an analogous financial product and substantially similar disclosures, have already been dismissed by Courts in this District for the same pleading deficiencies that doom the Complaint here.  *See, e.g.*, *In re TVIX Sec. Litig.*, 25 F. Supp. 3d 444 (S.D.N.Y. 2014)*, aff'd sub nom. Elite Aviation LLC* v. *Credit Suisse AG*, 588 F. App'x 37 (2d Cir. 2014); *In re ProShares Trust Sec. Litig.*, 889 F. Supp. 2d 644, 656 (S.D.N.Y. 2012).[2]

Plaintiffs breeze by this precedent, and instead devote the bulk of their opposition to distorting and cherry-picking language from the offering materials in a futile attempt to cobble together a viable securities claim.  Their scattershot theories of wrongdoing include the farfetched propositions that Credit Suisse's fully disclosed hedging activity was somehow part of a grand scheme to manipulate the market and defraud investors, and that Credit Suisse disseminated false or misleading Intraday Indicative Values for the XIV Notes, despite its having no role at all in distributing or calculating the data of which Plaintiffs now complain.  Plaintiffs notably do not, and cannot, contest the weight of authority cited in Credit Suisse's moving brief, which demonstrates the several ways in which Plaintiffs' conclusory allegations, impermissible

---

[1] Capitalized terms used and not defined here have the meaning ascribed in the Credit Suisse Defendants' Moving Brief (the "Moving Brief" or "CS Br.") [ECF No. 102].

[2] Unless otherwise indicated internal citations and quotation marks are omitted.

group pleading, and generalized allegations of scienter are wholly insufficient to sustain their

pleading burden.  The Complaint should be dismissed with prejudice in its entirety.

## ARGUMENT

## I.   PLAINTIFFS CANNOT IDENTIFY ANY ACTIONABLE MISSTATEMENT

Plaintiffs' failure to adequately allege that any Credit Suisse Defendant made a material

misstatement is fatal to the Complaint's misrepresentation or omission claims.  As set forth in

Credit Suisse's Moving Brief (CS Br. at 15-17), Credit Suisse was not responsible for the

calculation or dissemination of the XIV Notes' Intraday Indicative Value.[3]  In light of this,

Plaintiffs' opposition shifts gears to theorize that both Janus and Credit Suisse *might* have had

ultimate authority over the Intraday Indicative Value, merely because CSI acted as a co-

calculation agent with respect to certain narrowly defined matters.  *See* Opp. Br. at 19 ("It is

entirely consistent with 'joint' responsibility for Janus to *also* be 'responsible for computing and

disseminating the' Intraday Indicative Value.").  This theory rests on a tortured reading of the

Pricing Supplement, which explicitly defined CSI's limited role as Calculation Agent to exclude

calculation of the XIVIV.  CS Br. at 15-16; *see also* PS-57 ("*JIC or its affiliates* are responsible

for computing and disseminating the Closing Indicative Value *and the Intraday Indicative

Value*.") (emphasis added).[4]

Continuing their effort to muddle the distinction between Janus and the Credit Suisse

---

[3] In any event, Plaintiffs do not, and cannot, identify what input (if any) CSI provided with
regard to the Intraday Indicative Value.

[4] Regardless, Plaintiffs nowhere allege that the Intraday Indicative Value was improperly
calculated.  While Paragraphs 171-72 of the Complaint purport to detail why the Intraday
Indicative Value was incorrect, the graph reproduced at Paragraph 172 shows a strikingly similar
migration of the Intraday Indicative Value and the XIV Notes' market prices throughout the day.
Moreover, the data excerpted at pages 19-20 of Janus's opening brief show that the XIVIV
accurately tracked the performance of the existing data for the underlying indexes.  Thus, there
was no material misrepresentation of the value.

Defendants, Plaintiffs bizarrely suggest that the group pleading doctrine does not apply here, because it is concerned only with "claims against corporate insiders." Opp. Br. at 20. On the contrary, it is well-settled that "a securities fraud plaintiff must allege facts showing . . . that the individual defendants named in the complaint possessed ultimate authority over the statements at issue." *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 641 (S.D.N.Y. 2017). This is especially true where, as here, numerous defendants are named across distinct corporate entities. *See Krasner* v. *Rahfco Funds LP*, 2012 WL 4069362, at *1, *4 (S.D.N.Y. Aug. 9, 2012) (dismissing "group allegations" where "many of the defendants [were] separate, unrelated individuals and corporate entities and lumping them together confuse[d] any role they may have had"). Plaintiffs do not address the other group pleading cases on which Credit Suisse relies, choosing instead to argue that their group pleading is permissible because Credit Suisse and Janus were both "makers" of the XIVIV. As discussed above, that is demonstrably false.

Plaintiffs' alternative theory—that the Offering Documents' disclosures were insufficient because Credit Suisse knew that the disclosed risks would materialize—is precluded by the detailed disclosures at issue. A review of the Offering Documents confirms that Plaintiffs repeatedly cherry pick language from the Pricing Supplement, while ignoring the specific risk disclosures relevant to the events of February 5, 2018, upon which they base their claims. For example, the Pricing Supplement stated unequivocally that "[w]e expect to hedge our obligations under the ETNs through one or more of our affiliates . . . . The costs of maintaining or adjusting this hedging activity could affect the value of the Index, and accordingly the value of the ETNs. Moreover, this hedging activity may result in our or our affiliates' receipt of a profit, even if the market value of the ETNs declines." CS Br. at 6-7 (quoting PS-13); *see also* CS Br. at 13-14. Against the backdrop of these fulsome disclosures, no reasonable investor could fail to

- 3 -

appreciate the risk that Credit Suisse might hedge its exposure to the ETNs, and that such hedging activity might affect the value of the notes. Plaintiffs excerpt limited, select words from the disclosures while also strategically omitting key words that change the clear meanings of the disclosures. *Compare* Opp. Br. at 2, 12, 17 n.7, 26, 29, 37 ("To the contrary, the Credit Suisse Defendants affirmatively, and falsely, represented they 'have no reason to believe that [their] … hedging activities will have a material impact on the level of the [VIX Futures] Index[.]'"), *with* PS-50 ("Although we and our affiliates have no reason to believe that our or their hedging activities will have a material impact on the level of the applicable underlying Index, there can be no assurance that the level of the applicable underlying Index will not be affected."). Plaintiffs' overt manipulation of the Pricing Supplement's language reveals the futility of their position.

With no substantive basis for distinguishing it, Plaintiffs resort to arguing that Judge Swain's decision *In re TVIX*, affirmed by the Second Circuit, does not apply here because the challenged disclosures in that case were not identical to the disclosures at issue here. In so doing, they draw a distinction without meaning. The instruments in *TVIX* were nearly identical to those at issue here, the robustness of the disclosures was the same (they involved the same Offering Documents), and Judge Swain's analysis, as affirmed by the Second Circuit, finding that the disclosures warned of risks that materialized, applies with equal force. As detailed in Credit Suisse's Moving Brief, the disclosures warned investors of the risks inherent in hedging and the potential for a rapid drop in the Intraday Indicative Value that could wipe out whole investments. *In re TVIX* is directly on point.

## II.   PLAINTIFFS' MANIPULATION THEORY CANNOT SAVE THEIR CLAIMS

Recognizing the futility of their misrepresentation claims in the face of the disclosures, Plaintiffs pivot instead to focus on fanciful claims that Credit Suisse schemed to manipulate the

market for the ETNs by hedging its own exposure to the ETNs. Plaintiffs' allegations of this plot are manufactured out of whole cloth, without any cited factual support. Inexplicably, Plaintiffs assert, without citation to anything, that the Credit Suisse Defendants have somehow conceded that they engaged in manipulative acts. Opp. Br. at 15. That is nonsense. In the context of this Rule 12(b)(6) motion, Defendants accept, as they must, Plaintiff's well-pleaded allegations of fact for purposes of the motion. Even in that context, however, Plaintiffs fail to allege any factual basis for their manipulation claim.[5]

Putting aside the lack of any factual basis, Plaintiff's manipulation theory breaks down in the face of the Offering Documents' robust disclosures. A market manipulation claim under Section 10 requires a plaintiff to allege, *inter alia*, that a defendant engaged in manipulative acts. "[F]or market activity to be manipulative, that conduct must involve misrepresentations or nondisclosure." *Wilson* v. *Merrill Lynch & Co., Inc.*, 671 F.3d 120, 130 (2d Cir. 2011) ("The gravamen of manipulation is deception of investors into believing that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators."); *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 100 (2d Cir. 2007) ("In identifying activity that is outside the 'natural interplay of supply and demand,' courts generally ask whether a transaction sends a false pricing signal to the market."). But, as Plaintiffs concede, Credit Suisse did not conceal that it intended to hedge its XIV exposure, or that this hedging might affect the underlying indices. Opp. Br. at 2. To the contrary, the voluminous disclosures go much further, providing detailed warnings of the risks associated with investing in XIV Notes. CS Br. at 4-6. There can be no manipulation where, as here, there has

---

[5] In addition, Plaintiffs' Section 9 claim fails because Plaintiffs fail to plead a Section 10(b) claim. *See* CS Br. at 27. Despite Plaintiffs' claims to the contrary, the Credit Suisse Defendants explicitly explained that because there is no Section 9(a)(4) violation, there is no Section 9(f) violation (let alone a willful violation). *See id.*

been full disclosure of the behavior alleged. *See Wilson*, 617 F.3d at 130 ("[T]he market is not misled when a transaction's terms are fully disclosed.").

Nor do Plaintiffs allege, as they must, that Credit Suisse's fully-disclosed hedging activity was "willfully combined with something more to create a false impression of how market participants value[d] [XIV Notes]." *Sharette* v. *Credit Suisse Int'l*, 127 F. Supp. 3d 60, 82 (S.D.N.Y. 2015). For this reason, Plaintiffs' heavy reliance on *Sharette* is misplaced. Opp. Br. at 15-17. *Sharette* concerned high volume short selling—permissible behavior—that was coupled with "something more" to make the otherwise permissible activity manipulative. 127 F. Supp. 3d at 82; s*ee also Hudson Bay Master Fund Ltd.* v. *Patriot Nat'l, Inc.*, 309 F. Supp. 3d 100, 120 (S.D.N.Y. 2018) (finding that legitimate hedging activity was a "plausible nonculpable explanation" and explaining that "[a] strong inference of scienter is not raised by alleging that a legitimate investment vehicle . . . creates an opportunity for profit through manipulation"). In *Sharette*, the Court found that Plaintiffs had adequately pleaded "something more." As this Court later summarized, the *Sharette* Court found "something more" where defendant: "[1] orchestrated the tandem offerings for the purposes of allowing their clients to make huge profits by tanking the price of ECD stock, [2] withheld this purpose from ECD and investors, and [3] intentionally lent out far more shares for short sales than necessary for legitimate hedging." *ECD Inv'r Grp.* v. *Credit Suisse Int'l*, 2017 WL 3841872, at *25 (S.D.N.Y. Sept. 1, 2017) (Netburn, J). No similar allegations exist here.

## III. PLAINTIFFS DO NOT ALLEGE SCIENTER

Plaintiffs' opposition brief ignores the well-settled rule that scienter must be analyzed on a statement-by-statement and defendant-by-defendant basis (CS Br. at 17) and continues to refer

collectively to "Defendants" or the "Credit Suisse Defendants." Opp. Br. at 34.[6] This alone is

enough to doom Plaintiffs' Section 10 and 11 claims. *See* CS Br. at 17-18. Credit Suisse's

Moving Brief articulates an additional and independent basis for dismissing Plaintiffs' Section

10 and 11 claims: the Complaint's failure to allege individualized motive as to any Defendant.

Indeed, the only allegation that could plausibly be read as individualized is the deficient claim

that Defendant Tidjane Thiam had an incentive to increase Credit Suisse's profits. *See* CS Br. at

18-19. Plaintiffs' opposition doubles down on this flawed theory by suggesting that Thiam

"realized concrete benefits," which Plaintiffs admit consisted entirely of "increasing Credit

Suisse's profitability." Opp. Br. at 35. Such a theory cannot be reconciled with controlling

Second Circuit precedent, which requires allegations of a "concrete and personal benefit." *See*

CS Br. at 18-19 (summarizing cases).[7] For the same reason, Plaintiffs' reliance on *Sharette* is,

again, misplaced. *See* 127 F. Supp. 3d at 94-96 (plaintiffs alleged concrete benefits beyond

generic corporate profits where the purported scheme promoted new business opportunities and

partnerships).

Plaintiffs' reliance upon *Dandong* v. *Pinnacle Performance Ltd.*, 2011 WL 5170293

(S.D.N.Y. Oct. 31, 2011), and *Dodona I, LLC* v. *Goldman, Sachs & Co.*, 847 F. Supp. 2d 624

(S.D.N.Y. 2012), is similarly misplaced. In *Dandong*, Judge Sand found that investors were told

---

[6] Plaintiffs once again misrepresent that Credit Suisse concedes a point in dispute—this time corporate scienter. *See* Opp. Br. at 40 n.20; *but see* CS Br. at 18 (citing *Teamsters Local 445 Freight Div. Pension Fund* v. *Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir. 2008)).

[7] Plaintiffs rely on *Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 180 (S.D.N.Y. 2009), to support their claim that Thiam's compensation is "tied directly to the fraud alleged." Opp. Br. at 35 n.19. *Abu Dhabi* stands for no such proposition. There, the defendant was alleged to have earned a fee attributable to the particular security at issue, which would not have been earned but for the alleged fraud. Here, Plaintiffs acknowledge that Thiam's compensation was tied to the performance of Credit Suisse as a whole, not the XIV Notes' performance. Moreover, Plaintiffs ignore Credit Suisse's argument that there was no need to engage in fraud to achieve these performance metrics since other similar investments were closed in the normal course. *See* CS Br. at 19 n.8.

that their capital would be invested in low risk collateral. 2011 WL 5170293 at *1.

Unbeknownst to investors, however, Morgan Stanley invested their capital in high-risk synthetic

securities backed by risky subprime mortgages that Morgan Stanley's own chief economist had

publicly stated were risky even before the investment was made. *Id.* at *2, *11. Similarly, in

*Dodona I, LLC*, plaintiffs presented evidence that defendant knew the securities in question

"were unlikely to be profitable and failed to disclose this to investors, [and] also that they sought

to profit from that insight." 847 F. Supp. 2d at 640, 645. Here, in contrast, Plaintiffs make no

comparable claims of knowing misrepresentations.

Plaintiffs' allegations of conscious misbehavior or recklessness fare no better, since

Plaintiffs cannot "specifically identify the reports or statements containing" the information that

they contend contradicted the Credit Suisse Defendants' public statements. *See Dynex*, 531 F.3d

at 196; *see also* CS Br. at 20-21. The best Plaintiffs can muster is a recitation of generic

committees and reports concerning XIV. *See* Opp. Br. at 35-36. But these allegations do not, as

they must, identify particular reports, on particular dates, concerning particular information about

how the XIV Notes might or might not perform during the Class Period. *See Goplen* v. *51job,*

*Inc.*, 453 F. Supp. 2d 759, 773 (S.D.N.Y. 2006) ("[B]are assertions" that defendants "had access

to adverse undisclosed financial information through internal corporate documents, meetings,

and reports . . . without any further facts or details, do not adequately demonstrate defendants'

knowledge of facts or access to information contradicting their public statements."). The

insufficiency of these allegations is best summed up by Plaintiffs' statement: "Because Mathers'

VARMC forecasted the effects of severe market movements on XIV, *it must have* forecasted the

liquidity issues and XIV's $1.8 billion loss." Opp. Br. at 36 (emphasis added). These

speculative, conclusory allegations cannot establish conscious misbehavior or recklessness,

which require that "the strength of the circumstantial allegations . . . be correspondingly greater." CS Br. at 20.[8]

Plaintiffs' invocation of *In re Inv. Tech. Grp., Inc. Sec. Litig.*, 251 F. Supp. 3d 596 (S.D.N.Y. 2017), and *Novak* v. *Kasaks*, 216 F.3d 300 (2d Cir. 2000), also misses the mark. In *In re Inv. Tech. Grp.*, Judge Keenan found scienter as to one defendant where the plaintiff alleged in detail that the defendant learned that a project improperly used confidential customer information but did nothing to stop its access to that information. 251 F. Supp. 3d at 621-22. This finding has no bearing on Plaintiffs' allegations here. More relevant here is Judge Keenan's refusal to find adequate allegations of scienter as to other defendants who (as here) were only alleged to have access to contradictory knowledge "by virtue of their positions." *Id.* at 623. Similarly, *Novak* involved specific allegations that the defendants engaged in particularized discussions regarding the alleged fraud, which contradicted their public statements. 216 F.3d at 311-12. Here, "unlike in Novak, there are no specific facts alleged nor are any documentary sources identified" that satisfy the stringent requirements for pleading scienter based on circumstantial allegations. *Feasby* v. *Industri-Matematik Int'l Corp.*, 2000 WL 977673, at *6 (S.D.N.Y. July 17, 2000).

---

[8] Plaintiffs' claim that the "magnitude of the frauds alleged" demonstrates that Credit Suisse must have been aware of them, misconstrues the applicable law and distorts the holdings of the cases on which Plaintiffs rely. While Plaintiffs claim that Credit Suisse reaped substantial profits, the alleged fraud concerned only one financial product in one department at Credit Suisse. The cases Plaintiffs cite, however, concerned alleged frauds that pervaded the defendants' business operations such that it was implausible that they could have gone unnoticed. *See In re Salix Pharm., Ltd.*, 2016 WL 1629341, at *16 (S.D.N.Y. Apr. 22, 2016) ("[I]nventory levels were three times what Defendants had previously stated . . . . The magnitude of the alleged fraud, and the fact that it involved Salix's key drugs and 'critical' wholesale inventory metric, all provide additional support for [scienter]."); *Katz* v. *Image Innovations Holdings, Inc.*, 542 F. Supp. 2d 269, 273 (S.D.N.Y. 2008) ("[O]nly a small fraction of the purported 2004 sales could be verified."). These situations are wholly unlike the comparatively narrow matter at issue here.

Inferences of non-fraudulent intent are far more cogent and compelling than those urged by Plaintiffs. As discussed in Credit Suisse's Moving Brief, Plaintiffs plead that "[i]n July 2018, Credit Suisse made good on Thiam's promise to continue cuts when it announced the closing of two other VIX-related ETNs" without any alleged fraud. CS Br. at 19 n.8. Plaintiffs did not respond to this argument, nor could they, as it demonstrates that Credit Suisse could achieve its goal of migrating away from VIX-related products (the purported motive for the alleged fraud) without engaging in fraudulent conduct. Instead, Plaintiffs argue that Credit Suisse knew from three prior volatility spikes that "their hedging activities . . . caused significant liquidity issues in VIX futures." Opp. Br. at 37. A far more cogent and compelling inference is that Credit Suisse engaged in hedging activity in accordance with the Pricing Supplement and the disclosures set forth therein with the expectation—based upon past performance during the three prior volatility spikes—that the XIV Notes would weather the market disruption and return to a viable price once the volatility subsided. This is exactly what happened in each of the three prior volatility spikes identified by Plaintiffs. *See* Opp. Br. at 4-5; *see also* CS Br. at 22-23.

## IV.    PLAINTIFFS DO NOT ALLEGE LOSS CAUSATION

To adequately plead loss causation, Plaintiffs must allege "either that (i) a corrective disclosure informed the market of the fraud, and the market reacted negatively; or (ii) the risk concealed from investors materialized and caused a foreseeable loss." *In re Francesca's Holding Corp. Sec. Litig.*, 2015 WL 1600464, at *18 (S.D.N.Y. Mar. 31, 2015); *see ATSI*, 493 F.3d at 107. "[W]hen the plaintiff's loss coincides with a market[-]wide phenomenon causing comparable losses to other investors," the plaintiff must plead "facts which, if proven, would show that its loss was caused by the alleged misstatements as opposed to intervening events." *Lentell* v. *Merrill Lynch & Co., Inc.*, 396 F. 3d 161, 174-75 (2d Cir. 2005). Although Plaintiffs do not dispute the occurrence of a market-wide phenomenon on February 5, 2018, they cite cases

involving state law claims of fraud for the proposition that plaintiffs need not "rule out other contributing factors or alternative causal explanations." Opp. Br. at 43 (citing *Loreley Fin. (Jersey) No. 3 Ltd.* v. *Wells Fargo Sec., LLC*, 797 F.3d 160, 189 (2d Cir. 2015)). But in *Loreley*, the Second Circuit specifically explained that "[i]n the federal securities fraud context, we have held that 'when the plaintiff's loss coincides with a market[-]wide phenomenon causing comparable losses to other investors,' the plaintiff may be required to plead facts from which it would be reasonable to infer that the risks which materialized in her loss were risks concealed by the fraud rather than risks evident on the face of the investment disclosures." *Loreley*, 797 F.3d at 187.

Rather than pleading facts to disaggregate losses caused by the alleged fraud from losses caused by other events, Plaintiffs acknowledge that market-wide factors, such as the January 2018 U.S. jobs report, the S&P 500 performance, and broader jitters in the stock market, led to an increase in volatility. *See* CS Br. at 24 (citing Compl. ¶¶ 8, 159-161). The Complaint does not identify a single corrective disclosure, and Plaintiffs have failed to satisfy their burden of pleading a plausible theory of loss causation. Plaintiffs' reliance on *Emergent* to argue that they may ignore market forces that actually caused their losses is misplaced. Mere allegations that a defendant's conduct caused the price of a security to be inflated are "nothing more than a paraphrased allegation of transaction causation" (*Emergent Cap. Inv. Mgmt., LLC* v. *Stonepath Grp., Inc.*, 343 F.3d 189, 198 (2d Cir. 2003)) and "do[] not speak to the relationship between the fraud and the loss of the investment." *Lentell*, 396 F.3d at 174.

The incongruity and implausibility of Plaintiffs' loss causation theory becomes even more apparent when one compares Plaintiffs' allegations about the strong historical performance of the XIV Notes (*see* Compl. ¶ 2) and Credit Suisse's alleged scheme to undermine that

- 11 -

performance by "creat[ing] an artificial liquidity squeeze" to "destroy XIV's value" (Opp. Br. at 5), with Plaintiffs' new theory that a "concealed risk materialized on February 5, 2018, causing the removal of the artificial inflation in the values of the XIV notes." Opp. Br. at 42 n. 21. In one breath, Plaintiffs complain that Credit Suisse's alleged scheme was intended to ensure that the price was artificially *depressed* by trading on February 5, 2018, so that Credit Suisse could announce an acceleration event and reap massive profits, while simultaneously claiming that the notes were artificially *inflated* until the alleged price correction on February 5. Plaintiffs cannot have it both ways—either the price was artificially inflated, in which case their theory of fraud makes no sense, or the value of the XIV Notes was accurate, in which case there was no artificial inflation to be removed by a corrective disclosure.

## V.    PLAINTIFFS VIRTUALLY ABANDON THEIR SECTION 11 CLAIM

Plaintiffs devote little more than a single page of their 50-page brief to defending the adequacy of their Section 11 claim. They admit that their boilerplate allegations merely track the language of Section 11 (Opp. Br. at 46), thereby conceding an independent basis for dismissal under Rule 8, *Twombly*, and *Iqbal*. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).

Ignoring the substance of their claim, Plaintiffs spend their page seeking to avoid application of the heightened pleading requirements of Rule 9(b) and the PSLRA. *See* CS Br. at 11. But those requirements do apply where, as here, the allegations of fraudulent and knowing conduct sound in fraud. *See* Compl. ¶ 305 ("XIV was *designed* to fail during the next VIX spike…"; "Credit Suisse *planned* to profit from this hedging activity in VIX futures and other instruments by *creating* a liquidity squeeze.") (emphasis added); *see also In re Ultrafem Inc. Secs. Litig.*, 91 F. Supp. 2d 678, 691 (S.D.N.Y. 2000) (section 11 and 12(a)(2) claims alleging "misrepresentations and omissions made with intent to defraud upon which plaintiffs relied"

sound in fraud). Plaintiffs cannot sidestep this heightened pleading standard by relying on tenuous disclaimers of fraud. *See In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 214 (S.D.N.Y. 2004) (Section 11 claim based in fraud despite disclaimers). "The ultimate question is whether, at its core, the complaint is predicated on allegations of fraudulent conduct." *Ladmen Partners, Inc.* v. *Globalstar, Inc.*, 2008 WL 4449280, at \*11 (S.D.N.Y. Sept. 30, 2008). Here, the "gravamen of the complaint is plainly fraud," and Plaintiffs fail to satisfy the high standard that comes with it. *Rombach* v. *Chang*, 355 F.3d 164, 172 (2d Cir. 2004).

Finally, to the extent that Plaintiffs' claims are based on allegations concerning the February 5, 2018, Intraday Indicative Value, Plaintiffs concede by their silence that Section 11 does not apply at all. CS Br. at 16 n.5.

## VI.   THE CONTROL PERSON CLAIMS ARE INADEQUATE

Simply ignoring the arguments set forth in Credit Suisse's moving brief, Plaintiffs falsely assert that the Credit Suisse and the Individual Defendants have conceded "that they are 'controlling persons'" under Sections 20(a) of the Exchange Act and Section 15 of the Securities Act. Opp. Br. at 48 n.31. On the contrary, Credit Suisse's moving brief details the numerous deficiencies plaguing these claims. *See* CS Br. at 26-27 (explaining that (i) Plaintiffs rely almost exclusively on the Individual Defendants' "'positions as officers of Credit Suisse,' including on risk committees" to allege "the Individual Defendants had influence over the activity of Credit Suisse and CSI"; and (ii) "Plaintiffs offer no allegations to support the idea that Credit Suisse knew or should have known of any allegedly fraudulent misrepresentation by CSI."); *see also Krasner*, 2012 WL 4069362, at \*6 ("[S]tatus as an officer, director, or shareholder, absent more, is not enough to trigger [control person] liability. . . .").

Regardless, Plaintiffs' failure to adequately plead a primary violation of the securities laws defeats their claims for control person liability. *See* CS Br. at 26. Even if Plaintiffs could

- 13 -

plead a primary violation, their failure to plead "culpable participation" with particularity

provides an additional and independent basis for dismissing their Section 20(a) claim.  Relying

on Judge Kaplan's decision in *In re Parmalat*, 375 F. Supp. 2d 278, 308 (S.D.N.Y. 2005),

Plaintiffs urge this Court to hold that culpable participation is not required to plead a Section

20(a) claim.  Opp. Br. at 48.  But Plaintiffs do not dispute that most courts in this District have

found that culpable participation is required, and that heightened pleading requirements apply.

*See, e.g., In re American Realty Capital Props., Inc. Litig.*, 2016 WL 11110435 (S.D.N.Y. Aug.

5, 2016) ("[M]ost courts have held that the PSLRA's heightened pleading requirements apply to

the culpable participation element, which means . . . that the plaintiff must plead with

particularity facts giving rise to a strong inference of the requisite state of mind."); *see also*

*Boguslavsky* v. *Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) (to establish a Section 20(a) claim, "a

plaintiff must show . . . that the controlling person was in some meaningful sense a culpable

participant.").

    Plaintiffs do not identify a single allegation in support of control person liability against

Thiam or Mathers, choosing instead to argue that they adequately plead scienter and that is

enough.  *See* Opp. Br. at 49.  Setting aside for a moment that Plaintiffs' argument would mean

that a Section 20(a) claim is by default sufficiently pleaded every time there is a primary

violation (which is not the law), Plaintiffs' scienter allegations focus solely on corporate profits

and are woefully deficient, as detailed at Section III, *supra*.  *See also* CS Br. at 18-20.

    Plaintiffs' attempt to plead culpable participation as to Credit Suisse is also fatally

flawed.  As explained in Section I.C. of the Moving Brief, CSI had no role in the calculation or

dissemination of the Intraday Indicative Value.  *See* CS Br. at 15-16; PS-7, PS-57.  Even if it

had, Plaintiffs allege no basis for inferring any other Credit Suisse entity's culpable participation

on the basis of CSI's status as a subsidiary. *In re WorldCom, Inc. Sec. Litig.*, 2004 WL 1097786, at *3 (S.D.N.Y. May 18, 2004) (subsidiary relationship does not demonstrate defendant could "direct or cause the direction of the management or policies of the defendant subsidiaries").[9]

## VII.   THE COURT SHOULD DENY PLAINTIFFS LEAVE TO AMEND

The Court should reject Plaintiffs' bald request for leave to amend, buried in a footnote at the bottom of the last page of their brief.  Opp. Br. at 50 n.35.  Plaintiffs offer no explanation of how an amendment would improve upon their allegations. *See F5 Capital, a Cayman Islands Corp.* v. *Pappas*, 2016 WL 900389, at *11 (S.D.N.Y. Feb. 17, 2016) (Torres, J.) (leave to amend "is not a shield against dismissal to be invoked as . . . a fallback position in response to a dispositive motion. . . . Absent 'any identification of how a further amendment would improve upon the [c]omplaint, leave to amend must be denied as futile."); *Bankruptcy Trust of Gerard Sillam* v. *Refco Grp., LLC*, 2006 WL 2129786, at *4 (S.D.N.Y. July 28, 2006) ("The fact that plaintiffs' request to amend was made informally in response to defendants' motions to dismiss is by itself ground for denying the request.").

### CONCLUSION

The Complaint should be dismissed with prejudice.

---

[9] Plaintiffs' citation to *Elbit Sys.* v. *Credit Suisse Grp.* in support of this theory is inapposite as the *Elbit* plaintiff provided far more details, including allegations of the corporate parent's intervention in the aftermath of alleged misconduct to direct the subsidiary's response, reflecting an agency relationship.  917 F. Supp. 2d 217, 226, 230 (S.D.N.Y. 2013) ("[A] parent-subsidiary relationship does not by itself create a presumption of agency.").

Dated:  January 17, 2019
        New York, New York

CAHILL GORDON & REINDEL LLP

By:

Herbert S. Washer
David G. Januszewski
Sheila C. Ramesh
Peter J. Linken
Sesi V. Garimella
Eighty Pine Street
New York, New York 10005
Telephone: (212) 701-3000
Facsimile: (212) 259-5420
hwasher@cahill.com
djanuszewski@cahill.com
sramesh@cahill.com
plinken@cahill.com
sgarimella@cahill.com

*Attorneys for Defendants Credit Suisse Group
AG, Credit Suisse AG, Credit Suisse
International, Tidjane Thiam and David R.
Mathers*

- 16 -