UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAJAN CHAHAL, *individually and on behalf of all others similarly situated*,<br><br>                              Plaintiff,<br><br>v.<br><br>CREDIT SUISSE GROUP AG; CREDIT SUISSE AG; CREDIT SUISSE INTERNATIONAL; TIDJANE THIAM; DAVID R. MATHERS; JANUS HENDERSON GROUP PLC; JANUS HENDERSON INDICES LLC f/k/a JANUS INDEX & CALCULATION SERVICES LLC; and JANUS DISTRIBUTORS LLC d/b/a JANUS HENDERSON DISTRIBUTORS,<br><br>                              Defendants. | Case No. 1:18-cv-02268-AT-SN<br><br>**Oral Argument Requested** |
| GLENN EISENBERG, *on behalf of himself and all others similarly situated*,<br><br>                              Plaintiff,<br><br>v.<br><br>CREDIT SUISSE AG and JANUS HENDERSON INDICES LLC f/k/a JANUS INDEX & CALCULATION SERVICES LLC,<br><br>                              Defendants. | Case No. 1:18-cv-02319-AT-SN |
| SHAOLEI QUI, *on behalf of himself and all others similarly situated*,<br><br>                              Plaintiff,<br><br>v.<br><br>CREDIT SUISSE GROUP AG and JANUS HENDERSON INDICES LLC f/k/a JANUS INDEX & CALCULATION SERVICES LLC,<br><br>                              Defendants. | Case No. 1:18-cv-04045-AT-SN |

**DEFENDANTS JANUS HENDERSON GROUP PLC, JANUS HENDERSON INDICES LLC F/K/A JANUS INDEX & CALCULATION SERVICES LLC, AND JANUS DISTRIBUTORS LLC D/B/A JANUS HENDERSON DISTRIBUTORS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

Dated:     January 17, 2019

CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY  10281
(212) 504-6000

*Attorneys for Janus Henderson Group plc, Janus Henderson Indices LLC f/k/a Janus Index & Calculation Services LLC, and Janus Distributors LLC d/b/a Janus Henderson Distributors*

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................... ii

Preliminary Statement.............................................................................................................1

ARGUMENT ..........................................................................................................................4

POINT I

    PLAINTIFFS FAIL TO REBUT THE JANUS DEFENDANTS DEMONSTRATION THAT THE COMPLAINT FAILS TO STATE A CLAIM AGAINST JIC OR JANUS HENDERSON FOR SECURITIES FRAUD ..................................................................................................................4

    A.    The Opposition Does Not Cure Plaintiffs' Failure To Adequately Allege Scienter......................................................................................................4

        1.    Plaintiffs Do Not Adequately Allege That Janus Henderson or JIC Acted With Fraudulent Intent .................................................4

        2.    Plaintiffs Fail To Identify That Janus Henderson Or JIC Had Motive Or Opportunity To Commit the Alleged Fraud ...........7

        3.    Plaintiffs Fail To Allege Corporate Scienter ..................................8

    B.    Neither Janus Henderson Nor JIC Made A Material Misstatement ............9

        1.    The Intraday Indicative Values Calculated By JIC During The Hour-Long Period Were Not Misstatements ...........................9

    C.    The Opposition Does Not Overcome the Failure to Allege Loss Causation..................................................................................................11

POINT II

    PLAINTIFFS FAIL TO ALLEGE A VIOLATION OF SECTION 15 OF THE SECURITIES EXCHANGE ACT ............................................................13

POINT III

    PLAINTIFFS FAIL TO ALLEGE A VIOLATION OF SECTION 9 OF THE SECURITIES EXCHANGE ACT ............................................................14

    A.    Plaintiffs' Section 9(a)(4) Claim Fails.......................................................14

    B.    Plaintiffs' Section 9(f) Claim Should Be Dismissed .................................14

CONCLUSION......................................................................................................................15

## **TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES:**

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC,*
 750 F.3d 227 (2d Cir. 2014)............................................................................................ 11-12

*Chemetron Corp. v. Bus. Funds, Inc.,*
 682 F.2d 1149 (5th Cir. 1982), *vacated on other grounds*,
 460 U.S. 1007 (1983)...........................................................................................................15

*Cole v. Blackwell Fuller Music Publ'g, LLC,*
 2018 WL 4680989 (S.D.N.Y. Sept. 28, 2018).................................................................7, 8

*Denny v. Barber,*
 576 F.2d 465 (2d Cir. 1978).................................................................................................15

*ECA, Local 134 IBEW Jt. Pension Tr. of Chi. v. JP Morgan Chase Co.,*
 553 F.3d 187 (2d Cir. 2009)...............................................................................................4, 7

*Fort Worth Emps' Ret. Fund v. Biovail Corp.,*
 615 F. Supp. 2d 218 (S.D.N.Y. 2009).................................................................................15

*In re Alstom SA Sec. Litig.,*
 406 F. Supp. 2d 433 (S.D.N.Y. 2005).............................................................................. 8-9

*In re Loral Space & Commc'ns Ltd. Sec. Litig.,*
 2004 WL 376442 (S.D.N.Y. Feb. 27, 2004).........................................................................5

*In re Lululemon Sec. Litig.,*
 14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd,*
 604 F. App'x 62 (2d Cir. 2015) (summary order) ..................................................................8

*In re MBIA, Inc., Sec. Litig.,*
 700 F. Supp. 2d 566 (S.D.N.Y. 2010)...................................................................................9

*In re Merrill Lynch & Co. Res. Rep.. Sec. Litig.,*
 289 F. Supp. 2d 416 (S.D.N.Y. 2003).................................................................................12

*In re OSG Sec. Litig.*
 12 F. Supp. 3d 622 (S.D.N.Y. 2014)...................................................................................14

*In re PetroChina Co. Sec. Litig.,*
 120 F. Supp. 3d 340 (S.D.N.Y. 2015)*, aff'd sub nom.*
 *Klein v. PetroChina Co.,* 644 F. App'x 13 (2d Cir. 2016) (summary order)............................8

**PAGE(S)**

*In re Ultrafem Inc. Sec. Litig.*,
    91 F. Supp. 2d 678 (S.D.N.Y. 2000)......................................................................................13

*In re Wachovia Equity Sec. Litig.*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011)......................................................................................8

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec. LLC*,
    797 F.3d 160 (2d Cir. 2015)...................................................................................................12

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000).....................................................................................................6

*Olkey v. Hyperion 1999 Term Tr., Inc.*,
    98 F.3d 2 (2d Cir. 1996)........................................................................................................10

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Com.*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010)..................................................................................5, 6

*Russo v. Bruce*,
    777 F. Supp. 2d 505 (S.D.N.Y. 2011)......................................................................................4

*San Leandro Emer. Med. Grp. Profit Sharing Plan v. Phillip Morris Cos.*,
    75 F.3d 801 (2d Cir. 1996).......................................................................................................5

*SEC v. One or More Unknown Traders in Sec. of Onyx Pharm., Inc.*,
    296 F.R.D. 241 (S.D.N.Y. 2013) .............................................................................................5

*Sharette v. Credit Suisse Int'l*,
    127 F. Supp. 3d 60 (S.D.N.Y. 2015)......................................................................................14

*Telectronics Proprietary, Ltd. v. Medtronic, Inc.*,
    687 F. Supp. 832 (S.D.N.Y. 1988)...........................................................................................5

*Wilson v. Merrill Lynch & Co.*,
    671 F.3d 120 (2d Cir. 2011)...................................................................................................10

**STATUTES & OTHER AUTHORITIES:**

15 U.S.C. § 78i(a)(4)....................................................................................................................14

## PRELIMINARY STATEMENT[1]

The Opposition confirms that this is an action by disgruntled investors who, ignoring or misconstruing extensive disclosures in the Offering Documents detailing each of the risks involved in purchasing and holding a complex financial product, seek to shift losses incurred amidst extreme market volatility to Defendants. The thrust of the Opposition is to portray an alleged scheme by Credit Suisse to use hedging transactions to drive down the value of the XIV ETNs for its own profit. Like the Complaint, the Opposition rarely mentions the Janus Defendants, which are not alleged to have had a role in this supposed scheme. Thus, the Janus Defendants are not alleged to: have issued the XIV ETNs; be responsible for statements in the Offering Documents; have hedged positions in the XIV ETNs; have called the Acceleration Event redeeming the XIV ETNs; or have traded in these securities or underlying VIX Futures Contracts.

The Janus Defendants are named only because JIC acted as a service provider that published the Intraday Indicative Value of the XIV ETNs, a formula-driven calculation based on an underlying Index that was not intended to, as the Offering Documents disclosed, represent the market value of the Notes.[2] The Opposition does not and cannot rebut the Janus Defendants' demonstration in the Moving Brief that the few allegations asserted against the Janus Defendants are insufficiently particularized to meet the rigorous standards imposed by Rule 9(b) and the PSLRA. Accordingly, Plaintiffs' claims under Section 10(b), 9(a) and 9(f) of the Exchange Act and Section 15 of the Securities Act should be dismissed.

---

[1] The Janus Defendants' Memorandum of Law in Support of their Motion to Dismiss the Consolidated Class Action Complaint (ECF No. 106) is referred to herein as "Moving Brief" or "Mov. Br." Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motion to Dismiss (ECF No. 114) is referred to herein as "Opposition" or Opp. Br." Capitalized terms not defined herein have the meaning ascribed to them in the Moving Brief.

[2] While the Opposition misleadingly refers to Defendants collectively in numerous instances, a review of the corresponding Complaint allegations makes clear the Janus Defendants are not alleged to be implicated in these activities. *Compare* Opp. Br. at 12 *with* Compl. ¶¶ 216-29; Opp. Br. at 18 *with* Compl. ¶¶ 15, 109, 162, 166, 210, 251; Opp. Br. at 21-23 *with* Compl. ¶¶ 134, 136, 141, 152, 221; Opp. Br. at 37 *with* Compl. ¶¶ 63-77, 93-98.

First, the Janus Defendants demonstrated that the Complaint fails to allege facts establishing scienter. Plaintiffs' broad assertion that JIC and Janus Henderson supposedly had access to information underlying the inputs for the Intraday Indicative Value, and shirked its duty to monitor the accuracy of this information, does not raise a strong inference of scienter because there are no allegations that JIC or Janus Henderson possessed specific contradictory information. Moreover, Plaintiffs' Opposition does not meaningfully dispute that scienter may not be imputed to the corporate entity Janus Defendants because, to do so, the Complaint would have had to (but does not) allege that the purported misstatement – the Intraday Indicative Value, a numerical calculation published every 15 seconds – is so important and dramatic that it would have been approved by a corporate official. Equally misplaced is Plaintiffs' argument for inferring scienter based on JIC and Janus Henderson's decision not to call a Market Disruption Event because, under the plain language of the Pricing Supplement, none of the conditions precedent to doing so occurred. Finally, Plaintiffs' Opposition does not rebut the Janus Defendants' argument that the Complaint fails to plead motive and opportunity sufficient to establish scienter.

Second, the Janus Defendants established that the Complaint failed to allege any actionable misstatements or omissions. The only misrepresentations alleged to have been made by JIC or Janus Henderson involve the Intraday Indicative Value during the Hour-Long Period[3] on February 5, 2018. However, as the Janus Defendants explained in the Moving Brief and Plaintiffs do not refute, the Offering Documents contained substantial disclosures of the very risks that materialized, fatally undermining any attempt to establish a material misstatement with respect to the Intraday Indicative Value. Nor do they explain why the published Intraday Indicative Value was supposedly false. Plaintiffs' use of selective quotes to obscure the disclosures obviously does

---

[3] "Hour-Long Period" refers to the one hour period from 4:09 – 5:09 p.m. on February 5, 2018. Compl. ¶ 175.

not change the content of the Offering Documents, including the Pricing Supplement, and the actual disclosures therein.

Third, Plaintiffs fail to rebut the Janus Defendants' demonstration that the Complaint does not plead loss causation.  Plaintiffs have not alleged any facts showing that their purported losses resulted from anything other than the general market downturn.  Plaintiffs ignore that the value of the XIV ETNs was in steady decline during the entire Hour-Long Period, and their own market data confirms that the trend continued after the Hour-Long Period, despite the supposed corrective disclosure.

Fourth, Plaintiffs cannot assert a control person claim against Janus Henderson, the ultimate parent of JIC, for allegedly controlling the Credit Suisse Defendants because there is no underlying violation of Section 11. *See* Credit Suisse Defendants' Reply Memorandum of Law in Further Support of the Credit Suisse Defendants' Motion to Dismiss the Class Action Complaint for Failure to State a Claim (the "Credit Suisse Reply"), Section V.  Nor are there any allegations in the Complaint establishing that Janus Henderson in fact controlled the Credit Suisse Defendants, which are not alleged to have any relationship with the Janus Defendants other than pursuant to ordinary-course arm's length contracts that are not alleged to provide for any control rights.  In the Opposition, Plaintiffs also concede that Janus Henderson did not have actual control over the alleged violators, a prerequisite for a Section 15 claim.

Fifth, Plaintiffs' claim for violations of Section 9(a)(4) and 9(f) suffer from pleading deficiencies that have not been cured by the Opposition.  Plaintiffs do not name a broker-dealer in their Section 9(a)(4) claim, as required by the securities laws, but instead try to extend liability to non broker-dealers JIC and Janus Henderson.  The Opposition cites no authority, nor could it, for ignoring the plain language of the statute limiting application of these provisions to broker-dealers.  Separately, these claims also fail because Plaintiffs have not adequately pled "willful participation"

by any of the Janus Defendants in the alleged fraud.

## ARGUMENT

### POINT I
### PLAINTIFFS FAIL TO REBUT THE JANUS DEFENDANTS DEMONSTRATION THAT THE COMPLAINT FAILS TO STATE A CLAIM AGAINST JIC OR JANUS HENDERSON FOR SECURITIES FRAUD[4]

**A.     The Opposition Does Not Cure Plaintiffs' Failure To Adequately Allege Scienter**

Janus Henderson and JIC established in the Moving Brief that the Section 10(b) claim should be dismissed for failure to plead, with particularity, "'strong circumstantial evidence of conscious misbehavior or recklessness'" or that "'defendants had the motive and opportunity to commit fraud.'" *ECA, Local 134 IBEW Jt. Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (citation omitted). Consistent with their overall brief, Plaintiffs' scienter arguments center on the knowledge of Credit Suisse. Opp. Br. at 33-41. The sparse allegations and arguments pertaining to Janus Henderson and JIC do not meet the high standard required to plead scienter.

**1.     Plaintiffs Do Not Adequately Allege That Janus Henderson or JIC Acted With Fraudulent Intent**

The Opposition contends that Janus Henderson and JIC acted with fraudulent intent in publishing the Intraday Indicative Value because a separate affiliated entity, JHD, allegedly had access to information demonstrating that the Intraday Indicative Value or its underlying inputs were false during the Hour-Long Period. Opp. Br. at 38.[5] Plaintiffs further argue, for the first

---

[4]  As a threshold matter, Plaintiffs' Section 10(b) claim should be dismissed as to the Named Plaintiffs Set Capital LLC, Stefan Jager, Nikolay Drozhzhinov, and Aleksandr Gamburg because the Complaint does not allege that they made a purchase during the Hour-Long Period. As a result, they have no standing to sue. Mov. Br. at 10-11; Opp. Br. at 45; Decl. of Laura H. Posner in Opposition to Motion to Dismiss. ECF No. 115.

[5]  None of the scienter allegations implicates JHD and the Section 10(b) claim does not even name JHD. Therefore, arguments pertaining to JHD's alleged actions are irrelevant to this claim. *See Russo v. Bruce*, 777 F. Supp. 2d 505, 518 (S.D.N.Y. 2011) (actions of officers not named as defendants were irrelevant when analyzing the scienter of the

time, that these defendants must have known the Intraday Indicative Value was false because they had a duty to monitor the "information that yields the Intraday Indicative Value to ensure that accurate values were timely published."[6]  Opp. Br. at 38-39.  Neither of these contentions successfully pleads that JIC or Janus Henderson acted with fraudulent intent.

To adequately allege that Janus Henderson and JIC had access to information suggesting their public statements were inaccurate or failed to check information they had a duty to monitor, (Mov. Br. at 13-15), Plaintiffs must identify "with sufficient particularity the nature, the content, the reliability, or the availability of the allegedly contradictory internal reports" regarding the Intraday Indicative Value or its underlying inputs. *In re Loral Space & Commc'ns Ltd. Sec. Litig.*, 2004 WL 376442, at *11 (S.D.N.Y. Feb. 27, 2004) (dismissing Section 10(b) claim); *see Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Com.*, 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010) (a "broad reference to raw data" the defendant could have accessed that would have contradicted the defendant's public statements will not establish scienter); *see also San Leandro Emer. Med. Grp. Profit Sharing Plan v. Phillip Morris Cos.*, 75 F.3d 801, 812 (2d Cir. 1996) (unsupported allegation of a contrary sales report "insufficient to survive a motion to dismiss").  Neither the Opposition nor the Complaint identifies a single specific report or piece of contradictory information possessed by JIC or Janus Henderson, much less the nature, content, reliability or availability of such information.  Instead, Plaintiffs vaguely refer to "pricing information that revealed the Flatline Value was inaccurate." *Compare* Mov. Br. at 14 *with* Opp.

---

named individual defendant.). *See* Compl. ¶¶ 229-36.  Pointing to JHD's role as a marketing and placement agent for the XIV Notes, with no attempt to connect it to Janus Henderson or JIC, is too attenuated a basis on which to infer those defendants' scienter.  *See SEC v. One or More Unknown Traders in Sec. of Onyx Pharm., Inc.*, 296 F.R.D. 241, 253 (S.D.N.Y. 2013) ("[p]iling inference upon inference in this way does not provide the requisite strong support for the inference that the Defendants acted with scienter.").

[6]  The Complaint does not contain any allegations that Janus Henderson or JIC had a duty to monitor the underlying inputs necessary to compute the Intraday Indicative Value.  Plaintiffs are not permitted to amend their Complaint in their Opposition. *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 687 F. Supp. 832, 836 (S.D.N.Y. 1988) ("[a] claim for relief 'may not be amended by the briefs in opposition to a motion to dismiss'") (citation omitted).

Br. at 38-39. Plaintiffs' assertion also fails because they do not contest that JIC followed the procedure disclosed in the Pricing Supplement to calculate the Intraday Indicative Value by inputting the "values of . . . the underlying [S&P VIX Futures] index" into a "pre-defined formula." Mov. Br. at 18. Further, the Complaint offers no reason for JIC to have suspected any inaccuracy because the Intraday Indicative Value moved exactly how it was supposed to move – with the VIX Futures Index.[7] Mov. Br. at 19-20; *see infra* Point I.B.1.[8] Accordingly, Plaintiffs have not come close to demonstrating that JIC and Janus Henderson, by following the pre-defined, disclosed procedure for calculating the Intraday Indicative Value and, without possession of contradictory information, displayed "'highly unreasonable'" conduct that constituted an extreme departure from standards of ordinary care. *Plumbers*, 694 F. Supp. 2d at 297 (citation omitted). Instead, it is far more plausible that S&P did not timely receive the data it needed to calculate the VIX Futures Index, which in turn would explain why JIC's calculation of the Intraday Indicative Value remained static during portions of the Hour-Long Period. Mov. Br. at 19-20.[9]

The Opposition also crafts a new argument, unsuccessfully focusing on Defendants' supposed failure to announce a Market Disruption Event. Opp. Br. at 36, 38. According to the Pricing Supplement, a Market Disruption Event occurs when the Calculation Agents (JIC and CSI) determine an event that materially interferes with Credit Suisse's ability to hedge with respect to the XIV ETNs. PS-47. As Plaintiffs concede, the only relevant event that could prompt a Market Disruption Event is when "the Index Sponsor [S&P] or the CBOE fails to publish or compute the

---

[7] The Complaint contains a graph showing a similar movement of the Intraday Indicative Value and the XIV Notes' market prices throughout the day. Compl. ¶ 172.

[8] For the same reason, there is also no basis for Plaintiffs' argument that "Credit Suisse and Janus egregiously overstated the Intraday Indicative Value of XIV." Opp. Br. at 36.

[9] *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000), cited by Plaintiffs is inapposite. That decision simply recognizes the possibility of inferring scienter based on a failure to monitor, but the court did not actually find scienter on that basis.

Indices or VIX Index." Compl. ¶ 152, PS-47. But, notably Plaintiffs never allege, nor could they, that S&P or the CBOE failed to publish or compute the Indices or the VIX Index. Mov. Br. at 19-20. Consequently, JIC's duty to declare a Market Disruption Event was never triggered, and the alleged failure cannot raise an inference of scienter.[10]

Finally, as established in the Moving Brief, Plaintiffs have not pleaded knowledge of an alleged fraud through their allegation that Defendants supposedly told investors to rely on the Intraday Indicative Value as an approximation of the real time economic value of XIV. Mov. Br. at 18-19. This is because the Offering Documents expressly disclosed that the Intraday Indicative Value was never intended to equate to the true economic value of the XIV ETNs. *Id*. Although the Opposition regurgitates this allegation as additional evidence of scienter (Opp. Br. at 36), it ignores, and thus concedes, the arguments made by Janus Henderson and JIC. *Cole v. Blackwell Fuller Music Publ'g, LLC*, 2018 WL 4680989, at *7 (S.D.N.Y. Sept. 28, 2018) (failure to address an issue in opposition raised by an adversary is a "concession or waiver of the argument").

### 2. Plaintiffs Fail To Identify That Janus Henderson Or JIC Had Motive Or Opportunity To Commit the Alleged Fraud

In the absence of circumstantial evidence, scienter can be inferred where a defendant had "'motive and opportunity to commit fraud.'" *ECA*, 553 F.3d at 198 (citation omitted). Even with a generous reading of the Complaint, the only possible allegation of motive by Janus Henderson or JIC to defraud investors was so JHD could earn a "daily investor fee" for marketing and placement of XIV ETNs. Compl. ¶¶ 58-59; Mov. Br. at 15. The Opposition mentions that a

---

[10] The Opposition briefly mentions additional allegations as evidence of scienter, namely that "Credit Suisse and Janus did not announce [an] . . . Acceleration Event, halt trading in XIV, or take other action to alert investors to the gross inaccuracy of the Intraday Indicative Value." Opp. Br. at 8, 36. First, this argument just restates that, according to Plaintiffs, there was a misstatement, but Plaintiffs cannot establish evidence of intent to mislead based on Defendants' failure to "alert investors" to that very same misstatement. Moreover, the Pricing Supplement explains that "CSI will have the sole ability to make determinations with respect to . . . certain Acceleration Events." PS-49. Credit Suisse's decision to announce the Acceleration Event that halted trading of the XIV ETNs has nothing to do with and therefore is not a basis to infer scienter on the part of the Janus Defendants. Compl. ¶ 199.

separate entity, JIC, earned fees for its role as a Calculation Agent (Opp. Br. at 39), but it does not contest the arguments and authority cited in the Moving Brief that ordinary profit motives possessed by all companies do not establish scienter. *See*, *e.g.*, *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 573 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015) (summary order). Plaintiffs have therefore conceded the absence of any motive. *Cole,* 2018 WL 4680989, at *7.

### 3. Plaintiffs Fail To Allege Corporate Scienter

Plaintiffs do not meaningfully rebut Janus Henderson's and JIC's demonstration that, without specific facts detailing the alleged actions of unnamed employees, there is no basis on which to impute scienter to a corporate entity. Mov. Br. at 17; Opp. Br. at 39-41. In fact, Plaintiffs acknowledge that an inference of corporate scienter is only appropriate where "[the] corporate statement is so important and dramatic that it would have been approved by corporate officials sufficiently knowledgeable about the company." Opp. Br. at 39. Here, the Intraday Indicative Value, the result of a numerical formula, is calculated and published by JIC *every 15 seconds*. Compl. ¶¶ 10, 144-45. During the Hour-Long Period, the only time period in question, the Intraday Indicative Value would have been calculated approximately 240 times (just a small fraction of the number of times it was calculated each day). It makes no sense and defies logic that each numerical calculation of the Intraday Indicative Value is somehow so dramatic that it required approval by corporate officials. *See In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 326 (S.D.N.Y. 2011).[11]

The decisions Plaintiffs rely on that find sufficient allegations of corporate scienter demonstrate that no such finding is appropriate here. Opp. Br. at 40. In *In re Alstom SA Securities*

---

[11] Nor is there any basis for Plaintiffs' assertion that JIC, a limited liability corporation, can be equated with individual, named employees, for purposes of raising an inference of corporate scienter. Opp. Br. at 40 n.20. The case cited by Plaintiffs, *In re PetroChina Co. Sec. Litig.*, 120 F. Supp. 3d 340, 361 (S.D.N.Y. 2015), *aff'd sub nom. Klein v. PetroChina Co.*, 644 F. App'x 13 (2d Cir. 2016) (summary order), certainly does not stand for this proposition as plaintiffs there alleged scienter on the part of specific, named employees of the defendant corporation.

*Litigation*, the court observed that the defendant's CEO and CFO could not contend they were unaware of statements their company had disclosed to the investing public through public SEC filings, which the CEO and CFO signed. 406 F. Supp. 2d 433, 460 (S.D.N.Y. 2005). Additionally, the court found corporate scienter in *In re MBIA, Inc., Securities Litigation* because Plaintiffs had alleged that specific officers reviewed the collateral underlying the CDOs at issue and the corporation admitted that its officers had knowledge of the underlying collateral. 700 F. Supp. 2d 566, 590-91 (S.D.N.Y. 2010). Here, Plaintiffs have not mentioned a single employee of Janus Henderson or JIC by name, much less one whose actions can be attributed to either corporation, nor is there an implication that Janus Henderson or JIC employees somehow knew the inputs used to calculate the Intraday Indicative Value during the Hour-Long Period were allegedly incorrect.

### B. Neither Janus Henderson Nor JIC Made A Material Misstatement

#### 1. The Intraday Indicative Values Calculated By JIC During The Hour-Long Period Were Not Misstatements

As established in the Moving Brief, neither Janus Henderson nor JIC made a material misstatement during the Hour-Long Period because JIC consistently calculated the Intraday Indicative Value based on the underlying VIX Futures Index as reported by S&P. Mov. Br. at 18-19. The Pricing Supplement disclosed that the Intraday Indicative Value was, by definition, not representative of the actual economic value of the Notes but rather derived from a formula dependent on the S&P VIX Futures Index, with an ever present risk of delay or inaccurate values. Mov. Br. at 18-19. Faced with the clear language in the Pricing Supplement, Plaintiffs cherry-pick language to cobble together "support" for their contention that the Intraday Indicative Values were false and misleading. Opp. Br. at 20-22.

Specifically, Plaintiffs contend that the Janus Defendants promised investors that the Intraday Indicative Value was calculated "in real time" based on "real time prices of the relevant

VIX Futures Contracts," rendering the Intraday Indicative Values published during the Hour-Long Period false and misleading. Opp. Br. at 12, 21; *see also id.* at 7-8. Plaintiffs' selective quoting aside, when the Pricing Supplement is read in full, as it must be, it guts Plaintiffs' arguments. *Olkey v. Hyperion 1999 Term Tr., Inc.*, 98 F.3d 2, 5 (2d Cir. 1996) (prospectuses must be read "as a whole" and the issue "'is not whether the particular statements, taken separately, were literally true, but whether defendants' representations, taken together and in context, would have misl[ed] a reasonable investor'") (citation omitted). The Pricing Supplement states that: (1) "any . . . delays or postponements [of the S&P VIX Futures index] will affect the . . . Intraday Indicative Value"; (2) the Intraday Indicative Value calculation is not intended as a price or quotation . . . of . . . ETNs"; and (3) "the actual trading price of the ETNs of any series may be different from their Intraday Indicative Value." PS-7, 39; Mov. Br. at 18-20.

If anything, it is Plaintiffs that are guilty of misrepresenting the facts: the language they quote about "real time prices of the relevant VIX futures contracts" (Opp. Br. at 12) describes *S&P's* calculation of the VIX Futures Index, *not* JIC's calculation of the Intraday Indicative Value. PS-30 (stating that "[t]he intraday level of each of the Indices is calculated in real time by S&P on each S&P 500 VIX Futures Business Day"). Moreover, the Pricing Supplement expressly warned "the Intraday Indicative Value is a calculated value" that does not take into account "factors that influence the trading price of the ETNs, such as imbalances of supply and demand, lack of liquidity and credit considerations." PS Cover at 8. Thus, there is no misstatement because Plaintiffs have not alleged that the Intraday Indicative Value deviated from the underlying S&P VIX Futures Index, that the S&P VIX Futures Index was incorrect, or that the Janus Defendants made any error in the calculation that all investors were informed they would make. *Wilson* v. *Merrill Lynch & Co.*, 671 F.3d 120, 130 (2d Cir. 2011) ("'[T]he market is not misled when a transaction's terms are fully disclosed.'") (citation omitted).

Facing this weakness, Plaintiffs pivot and pursue a new theory, contending that the misstatement was JIC's failure to declare a Market Disruption Event following S&P's so-called delays in updating the FIX Futures Index. Opp. Br. at 22-23. Plaintiffs further contend that absent a Market Disruption Event, investors continued to believe that the Intraday Indicative Value was "being updated . . . based on the *real-time* prices of the VIX futures contracts underlying the value of the XIV notes." *Id*. at 23. This argument is belied by the Pricing Supplement and actual events.

The Pricing Supplement defines a Market Disruption Event as occurring when, *inter alia*, "the Index Sponsor or the CBOE fails to publish or compute the Indices or VIX index." PS-47. Publicly-available information confirms (and Plaintiffs do not argue otherwise) that S&P calculated and published the VIX Futures Index throughout the Hour-Long Period. Mov. Br. at 20. As a result, the fact that JIC did not declare a Market Disruption Event was consistent with the disclosure in the Offering Documents and obviously not a misstatement of any kind. And as discussed above, assuming, *arguendo*, that the VIX Futures Index was incorrect (which Janus does not concede), an inaccurate calculation and publication by S&P is not a failure to "compute" or "publish." Accordingly, neither JIC nor Janus Henderson can be liable for a misstatement.[12]

C. **The Opposition Does Not Overcome the Failure to Allege Loss Causation**

The Janus Defendants established that Plaintiffs have not adequately alleged loss causation. Plaintiffs agree that they were required to "'allege . . . that the subject of the fraudulent statement or omission was the cause of the actual loss suffered,'" that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security. *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 232 (2d Cir. 2014)

---

[12] Plaintiffs additionally argue that Defendants should have declared an Acceleration Event and modified, replaced or adjusted the VIX Futures Index *during* the Hour-Long Period. Opp. Br. at 22-23. Again, this argument conflates the actions of Credit Suisse and Janus, as the Pricing Supplement explains that "CSI will have the sole ability to make determinations with respect to . . . certain Acceleration Events." PS-49.

(citation omitted). The Opposition then identifies three theories of causation, only one of which is relevant to JIC and Janus Henderson – that the Intraday Indicative Values during the Hour-Long Period were inaccurate, causing the XIV Notes to trade at artificial prices. Opp. Br. at 42.

The Moving Brief cites well-settled authority that intervening events (such as a market wide downtown) are sufficient to rebut loss causation at the pleading stage. Mov. Br. at 23. The Opposition focuses on language in a case Defendants themselves identified in the Moving Brief says, in certain instances, proof of a causal chain is reserved for trial. Opp. Br. at 43. Yet, it conveniently ignores a further holding in that same case that loss causation can appropriately serve as a basis to dismiss a claim where there are insufficient allegations that the loss was caused by the alleged misstatements, rather than an intervening event. *Compare* Opp. Br. at 42-43 *with* Mov. Br. at 23 (*see, e.g.*, *In re Merrill Lynch & Co. Res. Rep.. Sec. Litig.*, 289 F. Supp. 2d 416, 422 (S.D.N.Y. 2003)); *see Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec. LLC*, 797 F.3d 160, 187 (2d Cir. 2015) (plaintiff required to plead facts "to infer that the risks which materialized in her loss were risks concealed by the fraud rather than risks evident on the face of the investment disclosures").

Plaintiffs have not offered a plausible alternative that the decline in value was attributable to anything other than market forces. Although the supposed corrective disclosure occurred at the conclusion of the Hour-Long Period, or 5:10 p.m., they rely only on one price quote from 6:28 p.m., almost an hour and a half later, to assess the market impact of the supposedly false Intraday Indicative Values. Opp. Br. at 44. As JIC and Janus Henderson explained in the Moving Brief, it is too far removed to wait that long to assess the price impact of the alleged fraud. Mov. Br. at 23-24. Not surprisingly, Plaintiffs did not respond to this point. Opp. Br. at 43-44.

Finally, Plaintiffs ignore that their own market data demonstrates that the trading price of XIV ETNs was steadily declining during the second half of the Hour-Long Period, and, crucially,

there was no change in that trend following the supposed corrective disclosure at 5:10 p.m.[13]  Mov. Br. at 22 (*citing* Compl. ¶¶ 172, 184).  Consequently, because Plaintiffs' own data fails to show causation linking the alleged fraud with the trading losses, rather than the market downturn, Plaintiffs have not adequately pled loss causation.

## POINT II
## PLAINTIFFS FAIL TO ALLEGE A VIOLATION OF SECTION 15 OF THE SECURITIES EXCHANGE ACT

Plaintiffs do not meaningfully address any of Janus Henderson's arguments with respect to Section 15 of the Securities Act.  As an initial matter, Plaintiffs fail to rebut the Credit Suisse Defendants' demonstration that no defendant committed a primary violation of Section 11.[14]  Credit Suisse Reply, Section V.  Nor have Plaintiffs pled, let alone established, that Janus Henderson had "actual control" – by contract or owning voting securities – over the Credit Suisse Defendants.  Mov. Br. at 27.  Plaintiffs try to circumvent this pleading defect by arguing that JIC and JHD provided "coordination" and certain services to Credit Suisse at the behest of Janus Henderson, Opp. Br. at 50 n.34, and that JIC had authority to act as Janus Henderson's agent.  *Id.*  But JIC's and JHD's activities are irrelevant to whether Janus Henderson controlled the Credit Suisse Defendants, warranting dismissal of this claim.  Mov. Br. at 27.

Plaintiffs and Defendants disagree whether there is a culpable participation element for Section 15 claims, both citing cases supporting their respective positions.  *Compare* Mov. Br.

---

[13]  Plaintiffs argue that disclosures warning investors that the Intraday Indicative Value was not intended as a price or quotation of the ETNs, nor was it the same as the trading price of the XIV ETNS (Mov. Br. at 21-22, quoting PS 22, 39, PS Cover at 8) go to the element of reliance, not loss causation.  However, JIC and Janus Henderson were merely repeating Plaintiffs' allegation (Compl. ¶ 179) and have not argued for dismissal based on reliance.

[14]  Additionally, Plaintiffs' Section 15 claim fails because their allegations do not satisfy Rule 9(b)'s particularity standard.  *In re Ultrafem Inc. Sec. Litig.*, 91 F. Supp. 2d 678, 690 (S.D.N.Y. 2000).  Where the complaint is grounded in fraud – as is the case here – Rule 9(b)'s heightened pleading standard applies to Securities Act claims.  Mov. Br. at 26.  Plaintiffs rely on form over substance in contending that their claims are not grounded in fraud.  Opp. Br. at 47.  But they ignore their own control person allegations that are classically associated with fraud, including that Janus Henderson "as owner and controlling entity of JIC    . . . *knew or recklessly disregarded* the *falsity or misleading* nature of the Flatline Value." Mov. Br. at 26 (citing Compl. ¶ 233).

at 28 n.12 *with* Opp. Br. at 48.  If the Court decides to impose this element, it will be apparent that the Opposition does not even attempt to establish Janus Henderson's culpable participation, instead weakly contending it would be unnecessary in light of their scienter allegations.  Opp. Br. at 49.  *In re OSG Sec. Litig.* 12 F. Supp. 3d 622, 634 (S.D.N.Y. 2014), is inapplicable here because Plaintiffs have not sufficiently pled scienter on behalf of Janus Henderson.  *See supra* Point I.A.

## POINT III
## PLAINTIFFS FAIL TO ALLEGE A VIOLATION OF SECTION 9 OF THE SECURITIES EXCHANGE ACT

A.      **Plaintiffs' Section 9(a)(4) Claim Fails**

Plaintiffs essentially concede that Janus Henderson and JIC cannot be liable for claims under Section 9(a)(4) because neither is a broker, dealer, or "entit[y] that offers or sells securities." Mov. Br. at 28; *see* 15 U.S.C. § 78i(a)(4).[15]  Plaintiffs try to wiggle free from the statutory limitation by arguing that Janus Henderson sold XIV Notes "through its broker subsidiary JHD." Opp. Br. at 30.  But Janus Henderson is the ultimate parent, and named party, and Janus Henderson is not a registered broker-dealer.  Compl. ¶ 36.  Plaintiffs also reference SEC filings aimed to show that "JHD is for all intents and purposes Janus [Henderson]" because Janus Henderson has responsibility for JHD.  Opp. Br. at 30 n.17.  But Plaintiffs cite no authority (nor can they) supporting their argument that a subsidiary's relationship with its parent warrants an exception to the plain language of the statute, nor have Plaintiffs come close to pleading facts suggesting that Janus Henderson and JHD are alter egos.

B.      **Plaintiffs' Section 9(f) Claim Should Be Dismissed**

Plaintiffs' Section 9(f) claim should be dismissed because Section 9(f) is merely a private

---

[15] Plaintiffs misleadingly argue that the violations of Section 9(a)(4) and Rule 10b-5 are coterminous. Opp. Br. at 29-30.  However, the case cited by Plaintiffs explains that "'Section 9(a)(4) creates a higher burden of proof than Section 10(b).'" *Sharette v. Credit Suisse Int'l,* 127 F. Supp. 3d 60, 79 (S.D.N.Y. 2015) (citation omitted). Consequently, for the same reasons Plaintiffs' Section 10(b) claim fails, Plaintiffs' Section 9(a)(4) should also be dismissed.

right of action for violations of Section 9(a)(4) and Plaintiffs have failed to adequately plead a Section 9(a)(4) claim. *See supra* Point III.A. Moreover, a viable Section 9(f) claim requires Plaintiffs to demonstrate that the Janus Defendants "willfully participated" in a violation of Section 9. Mov. Br. at 28-29. While the Opposition characterizes "willfully participate" as a broad standard that "does not rise to the level of scienter," without identifying any legal authority, courts have actually observed that "[S]ection 9's scienter requirement is stricter than Rule 10b-5's." *Compare* Opp. Br. at 31 with *Chemetron Corp. v. Bus. Funds, Inc.*, 682 F.2d 1149, 1162 (5th Cir. 1982), *vacated on other grounds*, 460 U.S. 1007 (1983). Because Plaintiffs have failed to adequately allege scienter with respect to their Section 10(b) claim, they accordingly have failed to allege that the Janus Defendants "willfully participated." *See supra* Point I.A.

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Moving Brief, the Credit Suisse Defendants Moving Brief and Credit Suisse Reply, the Janus Defendants respectfully request that the Complaint be dismissed with prejudice.[16]

Dated:   January 17, 2019

---

[16] The claims against the Janus Defendants should be dismissed with prejudice because Plaintiffs have already been granted leave to amend their complaint once and do not suggest any new facts that they would allege in yet another pleading. *See Fort Worth Emps' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 233 (S.D.N.Y. 2009) ("Because plaintiff has already amended its complaint once . . . dismissal is with prejudice."); *see generally Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that a plaintiff is not entitled to amendments *ad infinitum*).

Respectfully submitted,

By: /s/ Jason M. Halper
Jason M. Halper

Jason M. Halper
Gillian Groarke Burns
Jared Stanisci
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY 10281
212-504-6000
Fax: 212-504-6000
jason.halper@cwt.com
gillian.burns@cwt.com
jared.stanisci@cwt.com

*Attorneys for Defendants Janus Henderson Group plc, Janus Henderson Indices LLC f/k/a Janus Index & Calculation Services LLC and Janus Distributors LLC d/b/a Janus Henderson Distributors*

-16-