**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAJAN CHAHAL, *individually and on behalf of all others similarly situated*,<br><br>          Plaintiff,<br><br>                    v.<br><br>CREDIT SUISSE GROUP AG; CREDIT SUISSE AG; CREDIT SUISSE INTERNATIONAL; TIDJANE THIAM; DAVID R. MATHERS; JANUS HENDERSON GROUP PLC; JANUS HENDERSON INDICES LLC f/k/a JANUS INDEX & CALCULATION SERVICES LLC; and JANUS DISTRIBUTORS LLC d/b/a JANUS HENDERSON DISTRIBUTORS,<br><br>          Defendants. | Case No. 1:18-cv-02268-AT-SN |
| GLENN EISENBERG, *on behalf of himself and all others similarly situated*,<br><br>          Plaintiff,<br><br>                    v.<br><br>CREDIT SUISSE AG and JANUS HENDERSON INDICES LLC f/k/a JANUS INDEX & CALCULATION SERVICES LLC,<br><br>          Defendants. | Case No. 1:18-cv-02319-AT-SN |
| SHAOLEI QUI, *on behalf of himself and all others similarly situated*,<br><br>          Plaintiff,<br><br>                    v.<br><br>CREDIT SUISSE GROUP AG and JANUS HENDERSON INDICES LLC f/k/a JANUS INDEX & CALCULATION SERVICES LLC,<br><br>          Defendants. | Case No. 1:18-cv-04045-AT-SN |

**DEFENDANTS JANUS HENDERSON GROUP PLC, JANUS HENDERSON INDICES LLC F/K/A JANUS INDEX & CALCULATION SERVICES LLC, AND JANUS DISTRIBUTORS LLC D/B/A JANUS HENDERSON DISTRIBUTORS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT & RECOMMENDATION**

CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY  10281
(212) 504-6000

*Attorneys for Janus Henderson Group plc, Janus Henderson Indices LLC f/k/a Janus Index & Calculation Services LLC, and Janus Distributors LLC d/b/a Janus Henderson Distributors*

Dated:     September 13, 2019

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

STANDARD OF REVIEW .................................................................................................. 3

ARGUMENT ....................................................................................................................... 4

      A.     The R&R Correctly Determined That The Janus Defendants Did Not Act
             With The Requisite Scienter .................................................................................. 4

            1.     Conscious Misbehavior or Recklessness .................................................... 5

            2.     Motive and Opportunity ............................................................................. 9

      B.     Plaintiffs' Claims Should Be Dismissed With Prejudice ...................................... 10

CONCLUSION .................................................................................................................... 11

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES:**

*Alki Partners L.P. v. Windhorst*,
  472 F. App'x 7 (2d Cir. 2012) ...............................................................10

*Brown v. City of N.Y.*,
  No. 13-cv-6912 (TPG), 2015 WL 7253874 (S.D.N.Y. Nov. 13, 2015) .................................11

*ECA, Local 134 IBEW Jt. Pension Tr. of Chi. v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009)...................................................................5

*Elleby v. City of N.Y.*,
  No. 18 Civ. 1577 (AT) (SDA), 2019 WL 2590674
  (S.D.N.Y. June 25, 2019) (Torres, J.) .......................................................3

*F5 Cap., a Cayman Islands Corp. v. Pappas*,
  No. 14 CIV. 9356 (AT), 2016 WL 900389 (S.D.N.Y. Feb. 17, 2016),
  *aff'd sub nom. F5 Cap. v. Pappas*, 856 F.3d 61 (2d Cir. 2017) ................................11

*Foman v. Davis*,
  371 U.S. 178 (1962)..........................................................................11

*Halbert v. Credit Suisse AG*,
  No. 2:18-cv-00615-AKK, 2019 WL 3975362 (N.D. Ala. Aug. 22, 2019)..............................1

*Health-Chem Corp. v. Baker*,
  915 F.2d 805 (2d Cir. 1990)..................................................................11

*Laster v. Mancini*,
  No. 07 Civ. 8265 (DAB), 2013 WL 5405468 (S.D.N.Y. Sept. 25, 2013)................................4

*Mulosmanaj v. Colvin*,
  No. 14 Civ. 6122 (WHP), 2016 WL 4775613 (S.D.N.Y. Sept. 14, 2016) ..............................3

*Oscar Gruss & Son, Inc. v. Hollander*,
  337 F.3d 1863 (2d Cir. 2003).................................................................4

*Packard v. City of N.Y.*,
  15 Civ. 7130 (AT) (SDA), 2019 WL 1714669 (S.D.N.Y. Apr. 16, 2019) (Torres, J.) .....1, 3, 4

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Com.*,
  694 F. Supp. 2d 287 (S.D.N.Y. 2010).........................................................8

*Rigano v. Astrue*,
  No. 07 Civ. 10282 (WHP), 2011 WL 1406185 (S.D.N.Y. Mar. 30, 2011)..............................3

**PAGE(S)**

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*,
    531 F.3d 190 (2d Cir. 2008)........................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)............................................................................4, 8

*United States v. Svoboda*,
    347 F.3d 471 (2d Cir. 2003)....................................................................10

*White v. City of N.Y.*,
    No. 85 Civ. 8127 (CBM), 1986 WL 6164 (S.D.N.Y. May 27, 1986) ...................10

**STATUTES & OTHER AUTHORITIES:**

28 U.S.C. § 616(b)(1) ...........................................................................3

28 U.S.C. § 636(b)(1)(C) .......................................................................3

The Janus Defendants[1] submit this Response to Plaintiffs' Rule 72 Objections to Magistrate Judge Netburn's Report & Recommendation (ECF No. 124) (the "Report and Recommendation") (cited as "R&R") on Defendants' Motions to Dismiss, pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure.  For the reasons set forth herein, as well as in the Credit Suisse Defendants' Response to Plaintiffs' Objections, the Court should adopt the Report and Recommendation in its entirety.

## **INTRODUCTION**

In the Report and Recommendation, Magistrate Judge Netburn correctly recommended dismissal of the Section 10(b) claim asserted against the Janus Defendants in the consolidated amended complaint (the "Complaint").  Magistrate Judge Netburn concluded that Plaintiffs failed to plead an actionable misstatement or omission because "the Offering Documents accurately disclosed every risk that allegedly caused Plaintiffs' investment losses."[2]  R&R at 23, 26. Magistrate Judge Netburn further recommended dismissal of the Section 10(b) claim against the Janus Defendants (and by association, the claims asserted pursuant to Sections 9(a), 9(f) and 20(a) of the Exchange Act) due to Plaintiffs' failure to plead scienter.[3]  She reached this conclusion after

---

[1]    Capitalized terms not defined herein have the meaning ascribed to them in the Janus Defendants' Moving and Reply Brief.

[2]    The Report and Recommendation correctly found that Plaintiffs failed to allege any actionable, material misstatement or omission in the Offering Documents.  R&R at 23, 26.  Plaintiffs purport to object to this finding but only with regard to the Credit Suisse Defendants, not the Janus Defendants. R&R at 19-20. Accordingly, if the Court reviews any aspect of the Report and Recommendation's conclusion that there were no material misstatements or omissions in the Offering Documents with respect to the Janus Defendants, it should be reviewed under the clear error standard.  *See Packard v. City of N.Y.*, 15 Civ. 7130 (AT) (SDA), 2019 WL 1714669, at *2 (S.D.N.Y. Apr. 16, 2019) (Torres, J.) ("[O]bjections that are not clearly aimed at particular findings in the [report and recommendation] do not trigger *de novo* review" and are instead reviewed for clear error.) (citation omitted).  In any event, the Janus Defendants adopt Section A.1 of the Credit Suisse Defendants' Response to Plaintiffs' Objections.

[3]    The Report and Recommendation recommended dismissal of Plaintiffs' Section 20(a) claims against Defendants on the grounds that Plaintiffs have failed to sustain a claim against the Defendants for primary liability.  Similarly, Magistrate Judge Netburn recommended dismissal of Plaintiffs' Section 9(a)(4) and 9(f) claims because Section 9(a)(4) "closely parallels Section 10(b) and rule 10b-5" and is predicated on

determining that the Complaint lacked particularized allegations such that "the inference of scienter is not as plausible as the competing inferences." R&R at 37. Separately, in a similar action concerning the exact same XIV notes and offering documents, where different plaintiffs attempted to incorporate by reference the entirety of the allegations contained in the Complaint, *Halbert v. Credit Suisse AG*, No. 2:18-cv-00615-AKK, 2019 WL 3975362, at *9, *16 (N.D. Ala. Aug. 22, 2019), Judge Abdul Kallon of the United States District Court for the Northern District of Alabama, dismissed all of plaintiffs' federal securities claims based on conclusions substantially similar to those reached by Magistrate Judge Netburn, including that (1) disclosures in the Offering Documents "rendered the statements at issue not misleading as a matter of law" and (2) the scienter allegations against Janus give rise to more compelling, non-culpable inferences "that Janus employees were not aware the VIX Futures Index was not accurately incorporating the prices of VIX futures contracts for the one-hour period on February 5, 2018[.]"[4]

In the objections (the "Objections"), Plaintiffs all but concede that Magistrate Judge Netburn reached the correct conclusion by dismissing the claims asserted against the Janus Defendants. Indeed, Plaintiffs put forth only a single objection to the Report and Recommendation as it pertains to the Janus Defendants—that they adequately alleged the Janus Defendants' scienter supposedly based on a failure to monitor theory. Pls' Objs. 4-5. However, as explained below,

---

the same allegedly misleading statements underlying the Section 10(b) claims. Not only are Plaintiffs' Objections to Magistrate Judge Netburn's findings on these claims in a footnote, Pls.' Obj. 20 n.19, but they fail to address the Janus Defendants' arguments that (1) Section 9(a)(4) applies *only* to broker dealers or entities that offer or sell securities, neither of which Janus Henderson or JIC is, and (2) Section 20(a) requires particularized allegations that Janus Henderson was a "culpable participant" in JIC's alleged fraud, which Plaintiffs' allegations don't even attempt to do. Janus Mov. Br. 25, 28. Accordingly, the Report & Recommendation should be adopted in full regarding these claims.

[4] Magistrate Judge Netburn, like Judge Kallon, also recommended dismissal of Plaintiffs' Section 11 and 15 claims against Defendants. As an initial matter, the Janus Defendants were not named in Plaintiffs' Section 11 claim. Additionally, Plaintiffs do not specifically object to Magistrate Judge Netburn's conclusion regarding the Section 15 claim as against the Janus Defendants. Accordingly, the Report and Recommendation should be adopted in full regarding these claims.

there are no factual allegations in the Complaint supporting Plaintiffs' newly unearthed theory, much less raising an inference that is as compelling as other competing inferences.  Instead, the centerpiece of the Complaint, and Plaintiffs' Objections, is an elaborate scheme that the Credit Suisse Defendants allegedly perpetrated by manipulating the value of the XIV Notes through impermissible hedging activity that, in turn, caused Plaintiffs' losses.  But there are no allegations in the Complaint, nor any specific objections to the Report and Recommendation, suggesting that the Janus Defendants played any role in that purported scheme.[5]  Accordingly, as set forth in more detail below as well as in Credit Suisse's Response to Plaintiffs' Objections, this Court should adopt Magistrate Judge Netburn's recommendation to dismiss all claims against the Janus Defendants with prejudice.

## STANDARD OF REVIEW

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  "Courts review *de novo* those parts of a report and recommendation to which objections are made," *Mulosmanaj v. Colvin*, No. 14 Civ. 6122 (WHP), 2016 WL 4775613, at *2 (S.D.N.Y. Sept. 14, 2016) (citing 28 U.S.C. § 616(b)(1)), "and the remainder for clear error on the face of the record," *id.* (citing *Rigano v. Astrue*, No. 07 Civ. 10282 (WHP), 2011 WL 1406185, at *4 (S.D.N.Y. Mar. 30, 2011)).  However, "'when a party makes only conclusory or general objections, or simply reiterates his original arguments,' the court reviews the report and recommendations strictly for clear error." *Elleby v. City of N.Y.*, No. 18 Civ. 1577 (AT) (SDA), 2019 WL 2590674, at *2 (S.D.N.Y. June 25,

---

[5]   The Janus Defendants are not alleged to have issued the XIV ETNs or had any responsibility for the statements in the Offering Documents, or to have hedged positions in the XIV ETNs, called the Acceleration Event that resulted in redemption of the XIV ETNs, or otherwise traded in these securities or any VIX Futures contracts. Compl. ¶¶ 63-86, 93-110, 111-125, 162-170, 199-214, ECF No. 82.  Janus Henderson is not alleged to have had any role whatsoever in connection with the statements or events at issue.  *Id.*; Compl. ¶¶ 57-58, 216, 296.

2019) (Torres, J.) (citation omitted); *see also Packard*, 2019 WL 1714669, at *2  ("[O]bjections that are not clearly aimed at particular findings in the [report and recommendation] do not trigger *de novo* review.") (citation omitted).  "In addition, 'new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all.'"  *Id.*  at *1 (citation omitted).  Clear error is found only when, "'upon review of the entire record,' the Court is left with 'the definite and firm conviction that a mistake has been committed.'"  *Laster v. Mancini*, No. 07 Civ. 8265 (DAB), 2013 WL 5405468, at *2 (S.D.N.Y. Sept. 25, 2013) (citation omitted); *see also Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193 (2d Cir. 2003).

## ARGUMENT

### A.    The R&R Correctly Determined That The Janus Defendants Did Not Act With The Requisite Scienter

To prevail on their claim that the Janus Defendants disseminated supposedly misleading Intraday Indicative Values ("IIV") in violation of Section 10(b), the PSLRA required Plaintiffs to allege, "with particularity," facts giving rise to a "strong inference" of scienter—that is, a strong inference that the Janus Defendants acted with the "intent to deceive, manipulate or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314, 319 (2007).  That pleading burden is a key part of the PSLRA's effort to "curb . . . nuisance filings" and the "targeting of deep-pocketed defendants," and it "unequivocally raise[d] the bar for pleading scienter." *Id.* at 320–21. To satisfy that standard, the inference that the Janus Defendants acted with scienter must be "more than merely 'reasonable' or 'permissible'—it must be cogent and compelling" and "at least as compelling as any opposing inference one could draw." *Id.* at 324.

In this Circuit, there are two approaches a plaintiff can take to make the required showing: demonstrate, through particularized facts, that the "defendants had the motive and opportunity to

commit fraud," or that there is "strong circumstantial evidence of conscious misbehavior or recklessness." *ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). Magistrate Judge Netburn correctly concluded that Plaintiffs failed at both.

### 1.    Conscious Misbehavior or Recklessness

Plaintiffs object to the Report and Recommendation's finding with respect to scienter, arguing that they established this element by setting forth strong circumstantial evidence that the Janus Defendants engaged in conscious misbehavior or recklessness. *See* Pls.' Objs. 3–6. In particular, Plaintiffs contend that they have alleged sufficient facts to show that JIC "knew facts or had access to information suggesting that their public statements were not accurate." *Id.* at 4–5. When, as here, a plaintiff cannot establish motive and opportunity and must instead resort to the "'strong circumstantial evidence' prong" to establish scienter, a "correspondingly greater" showing is required to overcome the fact that the plaintiff has identified no motive for the defendant to engage in fraud. *ECA*, 553 F.3d at 198–99. As Magistrate Judge Netburn correctly held, Plaintiffs failed to meet that standard.

As a threshold matter, Magistrate Judge Netburn accepted Plaintiffs' argument that the alleged "mismatch" between the IIV and the "fundamentals" of the futures markets made for a plausible claim that the IIV was misleading. R&R at 29.[6] While the Janus Defendants disagree

---

[6]    Quoting a portion of the Report and Recommendation, Plaintiffs suggest that Magistrate Judge Netburn went further and "correctly found" that Defendants "fail[ed] to correct the Flatline Value . . . by announcing an Acceleration Event or a Market Disruption Event, or by halting trading" in violation of Rule 10b-5(b), Pls.' Objs. 4 (quoting R&R at 29), but Magistrate Judge Netburn made no such finding. In that quoted passage, Magistrate Judge Netburn was summarizing Plaintiffs' theory of the case, not adopting it as her own. As the passage reads in full: "*According to Plaintiffs*, Defendants caused those investment losses by failing to correct the Flatline Value, which Plaintiffs allege they could have done by announcing an Acceleration Event or a Market Disruption Event, or by halting trading." R&R at 29 (emphasis added).

with that holding,[7] Magistrate Judge Netburn correctly concluded that even if the IIV were misleading, Plaintiffs failed to allege strong circumstantial evidence that JIC (or any other Janus Defendant) acted with scienter.

As Magistrate Judge Netburn correctly observed, to create a strong inference that JIC engaged in conscious misbehavior or recklessness, Plaintiffs needed to "allege with specificity what facts JIC had access to" that would have allowed someone at JIC to know—in real time, during a one-hour window of after-hours trading when they were calculating and publishing a new value every fifteen seconds—that S&P's calculation of the VIX Futures Index was no longer accurately tracking the underlying futures market. R&R at 36. And as Magistrate Judge Netburn observed, the only specific information that Plaintiffs alleged JIC had available to it was the price of the VIX Futures Index itself that it used to calculate the IIV. R&R at 37; Compl. ¶ 233 (alleging only that Janus and JIC were "in possession of real-time information concerning the information

---

[7]    The Complaint alleges that JIC disseminated misleading IIVs during an approximately one-hour period of after-hours trading on February 5, 2018. Compl. ¶ 184. As the Offering Documents explained, the IIV was calculated "based on a formula that used the reported value of the S&P VIX Futures Index." R&R at 29. The S&P VIX Futures Index used to calculate the IIV is determined by S&P based on the value of certain futures contracts tied to the CBOE's VIX Index. R&R at 4. Plaintiffs allege that during that hour-long period on February 5, the IIV was misleading not because it failed to properly follow the value of the S&P VIX Futures Index in accordance with the formula set forth in the Offering Documents, but because it allegedly diverged from the value of the futures contracts S&P's Index was supposed to track and the price at which the notes were trading in the secondary market. Compl. ¶¶ 171–90.

   Plaintiffs believe those deviations rendered the IIV misleading because the Offering Documents state that the IIV was "designed to approximate the economic value" of the notes. Linken Decl. Ex. A, ECF No. 103-1, at 8. The Janus Defendants explained that while the IIV was *designed* to *approximate* the Notes' economic value, the Offering Documents cautioned investors that, in light of the way the IIV was calculated, it was "not the same as the . . . trading price of the [notes] in the secondary market," R&R at 11, that the "actual trading price of the [notes] . . . may be different from their [IIV]," *id.*, and that S&P's publication of the VIX Futures Index used to calculate the IIV "may occasionally be subject to delay or postponement," which were that to happen, "will affect the current underlying Index level and therefore the [IIV]," *id.* Those disclosures accurately conveyed the limits of the IIV calculation and warned Plaintiffs of precisely the risks they claim manifested here: a short period of trading where an apparent delay in S&P's calculation of the VIX Futures Index affected the calculation of the IIV. Given these disclosures, the Janus Defendants respectfully submit that the Report and Recommendation incorrectly found that Plaintiffs had alleged that the IIVs in the one-hour period were misleading.

necessary to compute the Intraday Indicative Value"). Thus, "the Complaint offers nothing more than a general allegation that JIC should have known the inputs were incorrect." R&R at 37.

In their Objections, Plaintiffs claim Magistrate Judge Netburn overlooked an allegation in their Complaint: a quote from the Offering Documents stating that the Calculation Agents (JIC and CSI) could, in their discretion, declare a "Market Disruption Event" if S&P "fails to publish or compute the [VIX Futures Index]." Pls.' Objs. 4 (quoting Compl. ¶ 152). Plaintiffs contend that if JIC and CSI had the ability to declare a Market Disruption Event were S&P to cease publishing or computing the VIX Futures Index, that "[n]ecessarily" means that JIC and CSI must have had the ability to "monitor the VIX Futures Index and compare it with its underlying inputs." *Id.* In other words, Plaintiffs urge the Court to infer—solely based on the allegation that JIC and CSI reserved the right to take action in the event that they were to learn that S&P had stopped publishing or computing the VIX Futures Index—that JIC and CSI "were in fact required" to generate, in real time, their own in-house calculation of S&P's Index, compare that to S&P's calculation, and identify potential discrepancies.

For two independent reasons, this argument fails as a matter of law. First, it is based solely on conjecture in Plaintiffs' Objections—not, as the PSLRA requires, particularized factual allegations in the Complaint. *See* Pls.' Objs. 4–5. Nowhere does the Complaint plead that JIC or CSI had real-time access to the underlying market data S&P uses to publish the VIX Futures Index.[8] And even if they did, Plaintiffs do not allege that JIC and CSI had the ability to then use that raw data to (i) generate, in real-time every fifteen seconds (or even over the hour-long window at issue), their own calculation of S&P's Index; (ii) compare, also in real-time every fifteen seconds

---

[8]   Plaintiffs claim in their Objections that JIC and CSI made "statements admitting that they were responsible for monitoring the underlying inputs of the VIX Futures Index," Pls.' Objs. 5, but they did not, and Plaintiffs point to nothing to support that assertion.

or over an hour, their in-house calculation with the value published by S&P; and (iii) detect, again in real-time, a potential error in S&P's calculation.  *See Plumbers & Steamfitters Local 773 Pension Fund v. Can. Imperial Bank of Com.*, 694 F. Supp. 2d 287, 299 (S.D.N.Y. 2010) (recognizing that it is not enough to make a "broad reference to raw data" the defendant could access without identifying specific "reports or statements" that would have made the misstatement apparent).[9]

Having failed to plead any such facts, Plaintiffs simply resort to suggesting that scienter can be inferred from the lone allegation that JIC and CSI had the ability to declare a Market Disruption Event if they were to determine that S&P had ceased publishing or computing the VIX Futures Index.  Pls.' Objs. 4.  But the PSLRA requires pleading with particularity, and as Magistrate Judge Netburn explained, merely contending that JIC "ought to have known" there was a problem with S&P's calculation of the Index—without "alleg[ing] with specificity what facts JIC had access to" that enabled JIC to uncover that problem—does not amount to strong circumstantial evidence of conscious misbehavior or recklessness.  R&R at 37.

That pleading deficiency aside, Plaintiffs' theory of scienter fails for a second reason: it is not as plausible as other competing inferences.  The PSLRA requires Plaintiffs' inference of culpability to be "cogent and at least as compelling as any opposing inference one could draw." *Tellabs*, 551 U.S. at 324.  Here, Plaintiffs' implausible chain of inferences does not hold up against the more plausible inference that JIC (and the other Janus Defendants) did not act with fraudulent intent.  Plaintiffs' theory of scienter rests entirely on the leap of logic that because JIC and CSI

---

[9]   Nor could Plaintiffs have made those allegations. The reason the Offering Documents warn investors that a "postponement or delay" in S&P's calculation of the VIX Futures Index "will affect the  . . . [IIV]" is because JIC and CSI were dependent upon S&P's publication of the VIX Futures Index to derive the IIV. These entities are not alleged to have had the capability to calculate, in real-time every fifteen seconds, another index provider's index, compare it against the value published by the index provider, and detect whether the index provider may have erred.

had the authority to declare a Market Disruption Event in the event they were to determine that S&P had stopped publishing or computing the VIX Futures Index, JIC and CSI "necessarily" must have had the capacity to calculate the value of the Index themselves in real-time, check that against S&P's calculation, and detect a potential error.  That, Plaintiffs say, is "the only way for JIC and CSI to determine whether S&P was failing to 'publish or compute' the VIX Futures Index."  Pls.' Objs. 4.  But, it is far more plausible that JIC and CSI would look for other indications to alert them to a Market Disruption Event, such as the Index no longer being "published by Bloomberg in real time," Linken Decl. Ex. A, at PS-30, or S&P publicly announcing that it intended to cease publishing the Index.  Thus, compared to Plaintiffs' convoluted theory that JIC and CSI had the capability to engage in real-time error checking of S&P's Index calculations every fifteen seconds, and alert a human to the problem[10] and that person either knowingly or recklessly disregarded that S&P's calculations were inaccurate (all without any plausible motive), it is plainly more plausible, as Magistrate Judge Netburn found, that JIC and CSI simply "did not notice the odd behavior in the underlying price Index" during the hour that Plaintiffs claim the IIV was inaccurate.  R&R at 37.

### 2.     Motive and Opportunity

Plaintiffs assert that the Janus Defendants had both motive and opportunity to disseminate misleading IIVs because one Janus Defendant, JHD, "earned a daily investor fee from every XIV note sold."  Compl. ¶¶ 58-59; R&R at 35.  From that one allegation, Plaintiffs theorized that the Janus Defendants had both motive and opportunity to cause a separate Janus entity, JIC, to disseminate misleading IIVs in order to enable JHD to sell more notes and collect more daily

---

[10]   "When the defendant is a corporate entity . . .  the pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter."  *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 195 (2d Cir. 2008).

investor fees.  *Id*. Compl. ¶¶ 90-91.  Plaintiffs do not challenge the portion of the Report and Recommendation finding that such a "motive" is insufficient, so it is reviewed for clear error, and Magistrate Judge Netburn did not err.  As Magistrate Judge Netburn correctly found, Plaintiffs' allegations fall "woefully short of pleading a strong inference of scienter" because it is well established in this Circuit that a mere "desire to earn transactional fees" is not enough to create a strong inference of fraudulent intent.  R&R at 35-36 (quoting *Alki Partners L.P. v. Windhorst*, 472 F. App'x 7, 10 (2d Cir. 2012)).[11]

**B.    Plaintiffs' Claims Should Be Dismissed With Prejudice**

As Plaintiffs themselves concede, if a Magistrate Judge's Report and Recommendation does not specify whether it is recommending dismissal with or without prejudice, it is treated as a recommendation for dismissal with prejudice, which is the case here.  *See White v. City of N.Y.*, No. 85 Civ. 8127 (CBM), 1986 WL 6164, at *1 (S.D.N.Y. May 27, 1986); R&R at 20. Additionally, the Court should deny Plaintiffs' request for leave to amend because amendment would be futile and Plaintiffs would undoubtedly replead facts that could and should have been pled earlier.

As explained above, *supra* Section A.1, an amendment would not salvage the claims in the

---

[11]    The remainder of Plaintiffs' Objections in connection with scienter concern their failure to adequately allege that Credit Suisse acted with the requisite scienter in engaging in a manipulative scheme in violation of 10b-5(a) and (c).  R&R at 10-16.  Nonetheless,  Plaintiffs mistakenly refer to Defendants collectively when referencing the alleged scheme.  Pls' Objs. 1.  In any event, there are no allegations in the Complaint that the Janus Defendants played in any alleged scheme, and the Janus Defendants were not named in the 10b-5(a) and (c) claims.

Furthermore, Plaintiffs do not object, and thus have waived any rebuttal to the Janus Defendants' arguments that Plaintiffs' Section 10 claims warrant dismissal for the independent bases that they failed to adequately plead corporate scienter or explain why group-pleading is permissible in this action.  Indeed, Plaintiffs object to Magistrate Judge Netburn's group pleading ruling only with respect to the Credit Suisse Defendants *and* only in a footnote.  *See, e.g.*, *United States v. Svoboda*, 347 F.3d 471, 480 (2d Cir. 2003) ("It is well-established in this Circuit that 'we do not consider an argument mentioned only in a footnote to be adequately [as properly] raised.'") (citation omitted).

Complaint.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial not abuse of discretion where amendment would be futile).  Even more egregious, Plaintiffs have not identified any proposed amendments that would salvage their claims.  *See, e.g., F5 Cap., a Cayman Islands Corp. v. Pappas*, No. 14 Civ. 9356 (AT), 2016 WL 900389, at *11 (S.D.N.Y. Feb. 17, 2016) (Torres, J.) (Leave to amend "is 'not a shield against dismissal to be invoked as . . . a fallback position in response to a dispositive motion' . . . . Absent 'any identification of how a further amendment would improve upon the [c]omplaint, leave to amend must be denied as futile.'"), *aff'd sub nom. F5 Cap. v. Pappas*, 856 F.3d 61 (2d Cir. 2017); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("[W]here . . . there is no merit in the proposed amendment, leave to amend should be denied").

Furthermore, "the court may deny leave where there has been undue delay, bad faith, or dilatory motive on the part of the plaintiff . . . [including] where there has been repeated failure to cure deficiencies by amendments previously allowed."  *Brown v. City of N.Y.*, No. 13-cv-6912 (TPG), 2015 WL 7253874, at *1 (S.D.N.Y. Nov. 13, 2015).  Not only have Plaintiffs already been granted leave to amend the complaint once (ECF No. 74), Plaintiffs were on notice of the deficiencies that plagued their Complaint when Defendants filed their moving briefs almost one year ago.  ECF Nos. 102, 106.  To let them begin all over again a year later—after the parties have completed briefing and after Magistrate Judge Netburn issued her Report and Recommendation—with allegations that could have been asserted in the original or amended complaint would be improper and a waste of the Court's resources.

## CONCLUSION

For the foregoing reasons and the reasons set forth in Credit Suisse's Reply to Plaintiffs' Objections, the Court should adopt the Report and Recommendation that all claims should be dismissed for failure to state a claim as against the Janus Defendants.

Dated:      September 13, 2019

Respectfully submitted,


By: /s/ Jason M. Halper
      Jason M. Halper

Jason M. Halper
Gillian Groarke Burns
Jared Stanisci
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY 10281
212-504-6000
Fax: 212-504-6000
jason.halper@cwt.com
gillian.burns@cwt.com
jared.stanisci@cwt.com

*Attorneys for Defendants Janus Henderson Group
plc, Janus Henderson Indices LLC f/k/a Janus Index
& Calculation Services LLC and Janus Distributors
LLC d/b/a Janus Henderson Distributors*