**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAJAN CHAHAL, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>PLAINTIFF,<br><br>v.<br><br>CREDIT SUISSE GROUP AG, CREDIT SUISSE AG, CREDIT SUISSE INTERNATIONAL, TIDJANE THIAM, DAVID R. MATHERS, JANUS HENDERSON GROUP PLC, JANUS INDEX & CALCULATION SERVICES LLC, AND JANUS DISTRIBUTORS LLC D/B/A JANUS HENDERSON DISTRIBUTORS,<br><br>DEFENDANTS. | 1:18-cv-02268 (AT) (SN)<br>1:18-cv-02319 (AT) (SN)<br>1:18-cv-04045 (AT) (SN) |
| GLENN EISENBERG, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>PLAINTIFF,<br><br>v.<br><br>CREDIT SUISSE AG AND JANUS INDEX & CALCULATION SERVICES LLC,<br><br>DEFENDANTS. | |
| SHAOLEI QIU, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>PLAINTIFF,<br><br>v.<br><br>CREDIT SUISSE GROUP AG AND JANUS INDEX & CALCULATION SERVICES LLC,<br><br>DEFENDANTS. | |

**CREDIT SUISSE DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION REGARDING CREDIT SUISSE DEFENDANTS' MOTION TO DISMISS THE CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

STANDARD OF REVIEW ......................................................................................................2

ARGUMENT ...........................................................................................................................3

I.      JUDGE NETBURN CORRECTLY DETERMINED THE OFFERING
        DOCUMENTS WERE DEVOID OF MISSTATEMENTS OR
        OMISSIONS ...................................................................................................................3

II.     JUDGE NETBURN CORRECTLY FOUND THAT PLAINTIFFS
        FAILED TO PLEAD SCIENTER ..................................................................................7

        A.      Plaintiffs' Market Manipulation Claims Should Be Dismissed ............................7

                1.      All of Plaintiffs' Allegations Were Considered and
                        Rejected by the R&R .................................................................................8

                2.      The R&R Correctly Concluded that Inferences of Nonculpable Conduct
                        Are More Cogent than the Scienter Allegations in the Complaint ............11

        B.      Judge Netburn Correctly Determined that Plaintiffs Failed to
                Allege Scienter with Respect to Their Flatline Value Claim ............................13

III.    PLAINTIFFS EFFECTIVELY ABANDON THEIR CONTROL PERSON
        AND SECTION 9 CLAIMS ...........................................................................................15

IV.     PLAINTIFFS FAIL TO PLEAD STANDING OR LOSS CAUSATION
        WITH REGARD TO THEIR SECTION 10 CLAIMS ...................................................16

V.      THE COURT SHOULD DISMISS THE COMPLAINT WITH
        PREJUDICE ...................................................................................................................18

CONCLUSION ........................................................................................................................19

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                          **Page(s)**

*Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*,
    671 F.3d 140 (2d Cir. 2011)............................................................................................5

*Ashmore* v. *CGI Grp. Inc.*,
    138 F. Supp. 3d 329 (S.D.N.Y. 2015)..................................................................15, 16

*ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007).........................................................................................9

*Bankr. Tr. of Gerard Sillam* v. *Refco Grp., LLC*,
    2006 WL 2129786 (S.D.N.Y. July 28, 2006) ..........................................................18

*In re Barclays Bank PLC Sec. Litig.*,
    756 F. App'x 41 (2d Cir. 2018) ...............................................................................4

*Campo* v. *Sears Holdings Corp.*,
    371 F. App'x 212 (2d Cir. 2010) ...............................................................7, 12-13

*Chill* v. *G.E.*,
    101 F.3d 263 (2d Cir. 1996).................................................................................7, 8

*City of Birmingham Ret. & Relief Sys.* v. *Credit Suisse Grp. AG*,
    2019 WL 719751 (S.D.N.Y. Feb. 19, 2019)..........................................................10n

*Connolly* v. *Wood-Smith*,
    2013 WL 1285168 (S.D.N.Y. Mar. 28, 2013) ..........................................................2

*Dandong* v. *Pinnacle Performance Ltd.*,
    2011 WL 5170293 (S.D.N.Y. Oct. 31, 2011) ..........................................................8

*Dekalb Cty. Pension Fund* v. *Transocean Ltd.*,
    817 F.3d 393 (2d Cir. 2016)...................................................................................16n

*Dodona I LLC* v. *Goldman, Sachs & Co.*,
    847 F. Supp. 2d 624 (S.D.N.Y. 2012)..................................................................8-9

*ECA & Local 134 IBEW Joint Pension Tr. of Chicago* v. *JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)....................................................................................13

*Employees' Ret. Sys. of Gov't of the Virgin Islands* v. *Blanford*,
    794 F.3d 297 (2d Cir. 2015)...................................................................................10n

*F5 Capital, a Cayman Islands Corp.* v. *Pappas*,
    2016 WL 900389 (S.D.N.Y. Feb. 17, 2016)..........................................................18

*In re Gentiva Sec. Litig.*,
    932 F. Supp. 2d 352 (E.D.N.Y. 2013) ...............................................................11n

*Go* v. *Rockefeller Univ.*,
    2008 WL 619039 (S.D.N.Y. Mar. 6, 2008) ...........................................................19

*Goplen* v. *51job, Inc.*,
    453 F. Supp. 2d 759 (S.D.N.Y. 2006) ...................................................................13

*Halbert* v. *Credit Suisse AG*,
    2019 WL 3975362 (N.D. Ala. Aug. 22, 2019) .........................................................1

*Katz* v. *Image Innovations Holdings, Inc.*,
    542 F. Supp. 2d 269 (S.D.N.Y. 2008) ...................................................................11

*In re Morgan Stanley Info. Fund Sec. Litig.*,
    592 F.3d 347 (2d Cir. 2010) ..................................................................................6

*Novak* v. *Kasaks*,
    216 F.3d 300 (2d Cir. 2000) ................................................................................10

*O & G Carriers, Inc.* v. *Smith*,
    799 F. Supp. 1528 (S.D.N.Y. 1992) ......................................................................17

*In re Parmalat Sec. Litig.*,
    493 F. Supp. 2d 723 (S.D.N.Y. 2007) ...................................................................17

*Polk* v. *Annucci*,
    2018 WL 5999606 (S.D.N.Y. Nov. 15, 2018) .........................................................3

*In re ProShares Tr. Sec. Litig.*,
    728 F.3d 96 (2d Cir. 2013) ....................................................................................5

*In re ProShares Tr. Sec. Litig.*,
    889 F. Supp. 2d 644 (S.D.N.Y. 2012) .......................................................... 4n-5n, 10

*Rombach* v. *Chang*,
    355 F.3d 164 (2d Cir. 2004) ..........................................................................4, 15

*Royal Park Invs. SA/NV* v. *Deutsche Bank Nat'l Tr. Co.*,
    2017 WL 1331288 (S.D.N.Y. Apr. 4, 2017) ..........................................................17

*In re Salix Pharm., Ltd.*,
    2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016) ........................................................11

*SRM Glob. Fund L.P.* v. *Countrywide Fin. Corp.*,
    2010 WL 2473595 (S.D.N.Y. June 17, 2010) ...................................................7, 12

*Stanley* v. *Smith*,
    2014 WL 5039444 (S.D.N.Y. Sept. 26, 2014)..................................................2, 3, 7

*Teamsters Local 445 Freight Div. Pension Fund* v. *Dynex Capital Inc.*,
    531 F.3d 190 (2d Cir. 2008)............................................................................7, 13

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)................................................................................................9

*In re TVIX Sec. Litig.*,
    25 F. Supp. 3d 444 (S.D.N.Y. 2014).................................................................1, 4n

*United States* v. *Restrepo*,
    986 F.2d 1462 (2d Cir. 1993)..........................................................................15, 16

*United States* v. *Svoboda*,
    347 F.3d 471 (2d Cir. 2003)............................................................................15, 16

*Uppal* v. *Western Express Inc.*,
    2019 WL 1434234 (S.D.N.Y. Apr. 1, 2019).................................................2-3, 17

*White* v. *City of New York*,
    1986 WL 6164 (S.D.N.Y. May 27, 1986) ............................................................19

*Zirogiannis* v. *Seterus Inc.*,
    707 F. App'x 724 (2d Cir. 2017) ..........................................................................6

**Rules**

Fed. R. Civ. P. 9(b) ..........................................................................................................4

U.S. Dist. Ct. Rules S.D.N.Y., Torres, J. Civ. Prac. Rule III.B.iv,
    Revised June 20, 2019 .......................................................................................18n

**Statutes**

28 U.S.C. § 636(b)(1)(C) ................................................................................................2

The Credit Suisse Defendants[1] respectfully submit this response to Plaintiffs' Objections to Magistrate Judge's Report & Recommendation on Defendants' Motions to Dismiss (the "Objection" or "Obj.") [ECF No. 128].

## PRELIMINARY STATEMENT

In a 41-page Report and Recommendation (the "R&R") [ECF No. 124] issued on August 16, 2019, Magistrate Judge Netburn recommended that this Court grant Defendants' motions to dismiss in their entirety and dismiss all of Plaintiffs' claims.  Judge Netburn correctly concluded, based on a thorough and reasoned analysis, that the XIV Offering Documents at issue were devoid of actionable misstatements or omissions (R&R at 26), the Defendants "accurately disclosed every risk that allegedly caused Plaintiffs' investment losses" (*id.*), and that Plaintiffs' Section 10 claims failed for want of plausible allegations of scienter (*id.* at 31-32).  Plaintiffs now cast aspersions upon Judge Netburn's analysis and urge this Court to reject her R&R. Plaintiffs' arguments are without merit, however, as evidenced by two separate United States District Court Judges having reached similar conclusions and dismissing nearly identical claims concerning essentially the same securities and Offering Documents.

In 2014, for example, Judge Swain dismissed claims against Credit Suisse based on allegations that *some of the very same* Offering Documents did not adequately warn investors of the risks from holding similar VIX-related ETNs.  *See In re TVIX Sec. Litig.*, 25 F. Supp. 3d 444 (S.D.N.Y. 2014), *aff'd sub nom. Elite Aviation LLC* v. *Credit Suisse AG*, 588 F. App'x 37 (2d Cir. 2014).  More recently, Judge Kallon dismissed Sections 10 and 11 claims identical to Plaintiffs' claims here, which concern the *very same XIV notes and the very same Offering Documents*.  *See Halbert* v. *Credit Suisse AG*, 2019 WL 3975362 (N.D. Ala. Aug. 22, 2019).

---

[1]      Capitalized terms used and not defined herein have the meaning ascribed in the R&R.

There is no credible reason to reject Judge Netburn's robust analysis, which is supported by apposite district court and Second Circuit precedent.

Faced with these insurmountable hurdles, Plaintiffs rehash the same arguments made to Judge Netburn in their Opposition Brief.  Repetition of arguments previously considered and rejected by a magistrate judge is not a sufficient basis upon which to object to a report and recommendation.  Plaintiffs also repeatedly mischaracterize the findings in the R&R— evidencing the frivolity of their arguments—and fail to contest the overwhelming weight of authority cited by Defendants in their motions to dismiss and by Judge Netburn in the R&R. More fundamentally, however, Plaintiffs do not identify any specific and valid objections to Judge Netburn's conclusions or cite to controlling precedent that would warrant rejection of the R&R.  The Court should adopt the R&R in its entirety.

## <u>STANDARD OF REVIEW</u>

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  "When a party makes specific objections, the court reviews *de novo* those portions of the R & R to which objection is made."  *Stanley* v. *Smith*, 2014 WL 5039444, at *1 (S.D.N.Y. Sept. 26, 2014) (Torres, J.).[2]  Where, as here, "a party makes only conclusory or general objections, or simply reiterates his original arguments, the court reviews the R & R strictly for clear error."  *Id.*; *see also Connolly* v. *Wood-Smith*, 2013 WL 1285168, at *1 (S.D.N.Y. Mar. 28, 2013) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition."); *Uppal* v. *Western Express Inc.*, 2019 WL

---

[2]        Unless otherwise indicated, internal citations and quotation marks are omitted.

1434234, at *2 (S.D.N.Y. Apr. 1, 2019) (Torres, J.) ("The court may adopt those portions of the report and recommendation to which no objection is made 'as long as no clear error is apparent from the face of the record.'").

To warrant *de novo* review, an "objection must be specific and clearly aimed at particular findings in the R&R."  *Polk* v. *Annucci*, 2018 WL 5999606, at *1 (S.D.N.Y. Nov. 15, 2018), *appeal filed*, No. 18-3640 (2d Cir. Dec. 6, 2018); *see also Stanley*, 2014 WL 5039444, at *1 (objections must identify "particular errors in the reasoning of the Magistrate Judge" and "explain to the reviewing Court, citing proper authority, why the magistrate judge's application of law to facts is legally unsound").  When conducting a *de novo* review, the court should consider "the pleadings, prior proceedings, and the parties' respective papers submitted in connection with the underlying motions."  *Uppal*, 2019 WL 1434234, at *2.

As set forth herein and in the Credit Suisse Defendants' prior briefing, Plaintiffs' claims should be dismissed with prejudice, regardless of which standard this Court applies.

## **ARGUMENT**

### I.    **JUDGE NETBURN CORRECTLY DETERMINED THE OFFERING DOCUMENTS WERE DEVOID OF MISSTATEMENTS OR OMISSIONS**

Plaintiffs challenge the conclusion that the Offering Documents were devoid of misstatements or omissions by arguing that Judge Netburn: (1) improperly adopted Defendants' characterizations of the alleged misstatements and omissions; (2) employed an internally inconsistent analysis; (3) failed to consider the Credit Suisse Defendants' alleged assurances that they "ha[d] no reason to believe" their hedging would affect the underlying index; and (4) improperly drew inferences in Defendants' favor.  Because these arguments ignore Judge Netburn's robust analysis and correct application of law to the alleged facts, the Court should overrule Plaintiffs' Objections and adopt the R&R in its entirety.

"[T]o be actionable under [S]ection 11, any misrepresentation or omission must be material. . . . [Materiality] is established when a plaintiff demonstrates that there is a 'substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.'" *In re Barclays Bank PLC Sec. Litig.*, 756 F. App'x 41, 44-45 (2d Cir. 2018).  As Plaintiffs' Section 11 claim is "premised on allegations of fraud," "the heightened pleading standard of Rule 9(b) applies" (*Rombach* v. *Chang*, 355 F.3d 164, 171 (2d Cir. 2004)), and Plaintiffs are required to plead "with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).

Judge Netburn painstakingly detailed each of the challenged disclosures in the January Supplement and determined that "the Offering Documents warned investors about" every relevant risk that was alleged to have been misstated or omitted.  R&R at 23.  First, with respect to Plaintiffs' allegation that the XIV notes were not appropriate for long-term investors (CAC ¶¶ 85-92),[3] Judge Netburn correctly found that the January Supplement "could not have warned against this more explicitly."  R&R at 24.[4]  Second, the January Supplement "specifically warned that hedging necessary for rebalancing at the end of each trading day *would* 'contribute to the trading volume of the underlying futures contracts and may adversely affect the market price of such underlying futures contracts and in turn the level of the applicable underlying Index.'" R&R at 25 (emphasis added).[5]  Third, the Offering Documents "warned specifically that the

---

[3]      Plaintiffs argue "the Report erroneously stated that Plaintiffs allege the Offering Documents misstated or omitted that 'the XIV notes were not appropriate for long term investors,' (R&R at 23), despite Plaintiffs never alleging this."  Obj. at 17.  Plaintiffs' Complaint devotes an entire section to Credit Suisse's alleged knowledge that "XIV Investors Held Their Notes for Long Periods, Enabling Credit Suisse to Profit."  CAC ¶ 27; *accord id.* at ¶¶ 85-92.

[4]      *See also TVIX*, 25 F. Supp. 3d at 450-51, which dismissed similar allegations regarding disclosures in some of the very same Offering Documents.

[5]      "[T]he fact that Credit Suisse did not project that its hedging was certain to adversely affect the XIV notes' value in the future is not actionable."  R&R at 25 (citing *In re ProShares*

published price of 'the underlying index levels from the Index Sponsor may occasionally be subject to delay or postponement' and that any 'such delays or postponements will affect . . . the Intraday Indicative Value.'"  *Id.* at 25-26.  Finally, "the Offering Documents made it clear that an Acceleration Event could, in Credit Suisse's discretion, impose significant losses" and disclosed that "Credit Suisse's interests could be adverse to those of investors."  *Id.* at 26.  The R&R determined that "[t]hose warnings were accurate descriptions of the exact risks that materialized in February 2018" and "are, therefore, not actionable.  *Id.*; *see also In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 102 (2d Cir. 2013) (when "a registration statement warns of the exact risk that later materialized, a [S]ection 11 claim will not lie as a matter of law").

Plaintiffs suggest that in lieu of analyzing the actual misstatements and omissions alleged in the Complaint, the R&R "adopt[ed] Defendants' characterizations of what the misstatements and omissions are alleged to be."  Obj. at 17.  But each of the alleged misstatements or omissions analyzed in the R&R was taken directly from the Complaint.  *See* R&R at 23 (listing each alleged misstatement or omission with citations to the relevant paragraphs in the Complaint). Additionally, Plaintiffs' copious citations to the Offering Documents make them integral to their Complaint.  *See id.* at 4 n.1 (citing *Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated by reference, and documents that, although not incorporated in it by reference, are integral to the complaint.")).  Judge Netburn correctly considered all of the disclosures contained in the Offering Documents (not just Plaintiffs' misleading and inaccurate excerpts) when analyzing the alleged material misstatements and omissions.  This is manifestly

*Tr. Sec. Litig.*, 889 F. Supp. 2d 644, 656 (S.D.N.Y. 2012) ("It is not a material omission to fail to predict future market performance."), *aff'd*, 728 F.3d 96 (2d Cir. 2013)).

proper.  *See, e.g.*, *Zirogiannis* v. *Seterus, Inc.*, 707 F. App'x 724, 727-28 (2d Cir. 2017)

(affirming grant of defendants' motion to dismiss because plaintiff's allegations of non-

disclosure were "flatly contradicted" by a complaint exhibit); *In re Morgan Stanley Info. Fund*

*Sec. Litig.*, 592 F.3d 347, 360 (2d Cir. 2010) (materiality asks "[w]hether the defendants'

representations, taken together and in context, would have misled a reasonable investor").

Plaintiffs also argue that the R&R is internally inconsistent by finding Credit Suisse did

not disclose an intention to "trigger a liquidity crunch and an Acceleration Event" (Obj. at 18)

while simultaneously concluding that the alleged conflicts of interest or the effect of hedging

activities on the VIX Futures Index were fully disclosed.  *See id.*  Far from being inconsistent,

Judge Netburn explained how the Complaint alleged "[i]t was public knowledge that the price of

VIX futures rose disproportionately during three earlier volatility spikes" and that "the cause was

likely the fact that the VIX-related ETN market had grown so large that it was impacting the

value of the underlying futures."  R&R at 25 (citing CAC ¶¶ 63, 69-74, 80).  Omitting this

publicly known history from the Offering Documents was not material.

Finally, there is no merit to Plaintiffs' argument that the R&R "erred by drawing

inferences in Defendants' favor" to find that the public already knew the three prior VIX futures

spikes were likely caused by the growth of the VIX-related ETN market.  *See* Obj. at 19.

Plaintiffs' own Complaint alleges that "as far back as 2012 at least one analyst noted that"

volatility-based ETNs may be "starting to outgrow the size of the VIX futures market."  CAC ¶

80; *see also* R&R at 25 (quoting CAC ¶ 80).  To argue that this information was *not* public

knowledge is inconsistent with Plaintiffs' own allegations.  Plaintiffs fail to identify any clear

errors with Judge Netburn's analysis, and the Court should adopt her conclusion that the

Offering Documents were devoid of misstatements or omissions.

## II.   JUDGE NETBURN CORRECTLY FOUND THAT PLAINTIFFS FAILED TO PLEAD SCIENTER

Judge Netburn correctly recommended dismissal of Plaintiffs' Section 10(b) claims—one for market manipulation and one for alleged falsity of the Intraday Indicative Value—because "it is impossible to conclude that the inferences of scienter [are] 'at least as compelling as the competing nonculpable inferences.'"  R&R at 31-32 (citing *Teamsters Local 445 Freight Div. Pension Fund* v. *Dynex Capital Inc.*, 531 F.3d 190, 197 (2d Cir. 2008)).  Rather than present specific challenges to Judge Netburn's analysis and conclusions, Plaintiffs merely repackage failed arguments from their Opposition Brief that were considered and rejected.  *Compare* R&R at 31-40, *with* Obj. 6-16; *see also Stanley*, 2014 WL 5039444, at *1 (finding where "a party … simply reiterates the original arguments, the court reviews the R & R strictly for clear error").  Plaintiffs acknowledge their "primary allegation of motive" is that the Credit Suisse Defendants "sought to profit from" the alleged fraud.  Obj. at 7.  Second Circuit precedent makes clear such routine allegations of profit motive are insufficient to support a claim for securities fraud.  *See* R&R at 34 (citing *Chill* v. *G.E.*, 101 F.3d 263, 268 (2d Cir. 1996)).

### A.   Plaintiffs' Market Manipulation Claims Should Be Dismissed

Plaintiffs' market manipulation scienter allegations are "undermined . . . by the theory upon which [they are] based" and are "exceptionally vulnerable to plausible, non-culpable explanations."  R&R at 32 (citing *SRM Glob. Fund L.P.* v. *Countrywide Fin. Corp.*, 2010 WL 2473595, at *10 (S.D.N.Y. June 17, 2010)); R&R at 33 (citing *Campo* v. *Sears Holdings Corp.*, 371 F. App'x 212, 216 (2d Cir. 2010) ("Where plaintiff's view of the facts defies economic reason . . . [it] does not yield a reasonable inference of fraudulent intent.")).  Plaintiffs cannot seriously dispute that conclusion—premised explicitly upon the allegations in the Complaint— and their arguments in favor of rejecting the R&R are contrary to well-settled precedent.

- 7 -

1.   **All of Plaintiffs' Allegations Were Considered and Rejected by the R&R**

Plaintiffs point to five allegations of scienter that purportedly were ignored by the R&R, each of which was in fact considered and rejected by Judge Netburn.  First, Plaintiffs argue that the R&R failed to consider their allegation of motive, namely, that "the Credit Suisse Defendants intentionally engineered XIV to fail and sought to profit from that failure."  Obj. at 7.  However, this failed line of argument remains unavailing.  *See* CS Br. at 18 [ECF No. 102] ("Plaintiffs' theory of scienter focuses almost exclusively on allegations that the prospect of profits incentivized the Credit Suisse Defendants to capitalize on volatility spikes at the expense of investors.").  Well-established Second Circuit precedent makes plain that allegations of scienter premised on profit motive are insufficient to support a claim.  *See* R&R at 34 (citing *Chill*, 101 F.3d at 268) (finding motivation to earn profit is so mundane that it can "be imputed to any publicly-owned, for profit endeavor" and therefore is insufficient to plead scienter).

Plaintiffs' reliance upon *Dandong* v. *Pinnacle Performance Ltd.,* 2011 WL 5170293 (S.D.N.Y. Oct. 31, 2011), and *Dodona I LLC* v. *Goldman, Sachs & Co.,* 847 F. Supp. 2d 624 (S.D.N.Y. 2012), is misplaced for the reasons explained in Credit Suisse's moving papers.  CS Reply at 7-8 [ECF No. 116].  The central allegation in *Dandong* was that investors were told specifically that their capital would be invested in low-risk collateral.  *See* 2011 WL 5170293, at *2 (S.D.N.Y. Oct. 31, 2011).  According to the *Dandong* plaintiffs, Morgan Stanley instead invested their capital in high-risk synthetic securities backed by subprime mortgages that were publicly deemed risky by Morgan Stanley's own chief economist.  *Id.* at *2, *11.  Here, in contrast, there are no allegations that the XIV ETNs were described by Credit Suisse in one way (or as possessing one set of characteristics) but operated differently than as set forth in the voluminous and detailed Offering Documents.  Similarly, in *Dodona*, the plaintiffs presented

evidence that the defendant knew the securities in question "were unlikely to be profitable and failed to disclose this to investors, [and] also that they sought to profit from that insight." 847 F. Supp. 2d at 640, 645. Here, in contrast, Plaintiffs make no comparable claims of knowing misrepresentations.

Second, Plaintiffs complain that the R&R did not consider their "circumstantial evidence of conscious misbehavior or recklessness," including that Credit Suisse "issued millions more XIV notes" despite "three prior VIX spikes." Obj. at 8. Plaintiffs surmise—in an entirely conclusory fashion—that Credit Suisse knew it "would profit by growing XIV to ensure its destruction upon the next VIX spike." *Id.* at 9. The R&R acknowledges that the Complaint "alleges—with great specificity—that earlier volatility spikes had alerted Credit Suisse's risk management committee to the fact that the VIX-related ETN market had grown too large, thereby threatening Credit Suisse's ability to hedge its exposure to the XIV notes." R&R at 33. But the R&R determined that it would have been "counterproductive for Credit Suisse to exacerbate this risk" when it was allegedly under pressure to reduce exposure. *Id.* Instead, the R&R found that the "more plausible and non-culpable explanation" is that:

> Credit Suisse chose to sell additional XIV notes when they were selling at exceptionally high prices. When volatility returned soon thereafter and the value of the XIV notes plummeted, Credit Suisse, without any prior fraudulent intent, decided to exercise its right—which was well disclosed—to secure its serendipitous profits and declare an Acceleration Event. This inference of an ordinary profit motive is both non-culpable and quite plausible.

*Id.* at 34 (citing *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd*., 493 F.3d 87, 104 (2d Cir. 2007)). The R&R's finding is consistent with United States Supreme Court and Second Circuit precedent requiring courts to "consider plausible nonculpable explanations for defendant's conduct." *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007).

Third, Plaintiffs continue to rely on the alleged falsity of the disclosure that Credit Suisse had "no reason to believe that their . . . hedging activities will have a material impact on the level of the VIX Futures Index" because Credit Suisse purportedly knew its hedging was certain to affect the VIX Futures Index.  Obj. at 9; Opp. at 26; CS Reply at 4.  But Plaintiffs continue to omit the key words from that disclosure—Defendants actually stated:

> Although we and our affiliates have no reason to believe that our or their hedging activities will have a material impact on the level of the underlying Index, *there can be no assurance that the level of the applicable underlying Index will not be affected*."

CS Reply at 4 (citing ECF No. 103-1 at 60) (emphasis added).  The R&R addressed this argument and was clear as to why this argument fails: "the fact that Credit Suisse did not project that its hedging was certain to adversely affect the XIV notes' value in the future is not actionable."  R&R at 25 (citing *In re ProShares Tr. Sec. Litig.*, 889 F. Supp. 2d at 656).[6]

Fourth, Plaintiffs argue that the R&R "failed to consider Plaintiffs' detailed allegations that Defendant Thiam attempted to conceal the foregoing fraud."  Obj. at 9.  Again, this argument was previously made and rejected.  *See* Opp. at 11, 37-38 (citing *Novak* v. *Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000)); CS Reply at 9 (explaining that unlike in *Novak*, there are no "specific allegations that the defendants engaged in particularized discussions regarding the

---

[6]    Plaintiffs' reliance on *City of Birmingham Ret. & Relief Sys.* v. *Credit Suisse Grp. AG*, 2019 WL 719751 (S.D.N.Y. Feb. 19, 2019), is unavailing.  In *Birmingham*, the court held that allegations concerning individual defendants' participation in the Capital Allocation and Risk Management Committee were sufficient to plead scienter with respect to statements concerning Credit Suisse's *risk management structure*.  *Id.* at *8.  Plaintiffs in *Birmingham* premised their claim on the theory that adjustments to the bank's risk limits contradicted public statements concerning *those limits*.  *Id.* at *5.  Plaintiffs' reliance on *Blanford* is also misplaced.  The holding in *Blanford* did not turn on whether defendants had "access to information suggesting that their public statements were not accurate" (Obj. at 9)—instead, the court found scienter where the complaint pleaded strong circumstantial evidence of an intent to deceive where defendants egregiously hid excess inventory to deceive auditors.  *See Employees' Ret. Sys. of Gov't of the Virgin Islands* v. *Blanford*, 794 F.3d 297, 308 (2d Cir. 2015).

alleged fraud, which contradicted their public statements").  In fact, Judge Netburn found that "[n]owhere in the Complaint do Plaintiffs claim that either [Individual] Defendant ever played any role in disseminating the Flatline Value or in failing to correct the misleading price information." R&R at 40.  That conclusion is unchallenged by Plaintiffs in their objection.  Nor can Plaintiffs salvage their claim by arguing falsely that Thiam received $10.2 million in compensation allegedly linked to the failure of XIV.  *See* Obj. at 7 n.8.  As the Credit Suisse Defendants previously explained, "Plaintiffs acknowledge that Thiam's compensation was tied to the performance of Credit Suisse as a whole, not the XIV Notes' performance," and the case relied upon by Plaintiffs does not support their argument.  *See* CS Reply at 7 n.7.

Finally, Plaintiffs argue that "the magnitude of the fraud alleged, particularly in light of Credit Suisse's rigorous risk protocols . . . provid[es] additional evidence of scienter."  Obj. at 10.  Yet again, Plaintiffs raise an argument that was fully briefed and fails upon an examination of the case law cited by Plaintiffs.  *See* CS Reply at 9 n.8 (distinguishing *In re Salix Pharm., Ltd.*, 2016 WL 1629341, at *16 (S.D.N.Y. Apr. 22, 2016) and *Katz* v. *Image Innovations Holdings, Inc.*, 542 F. Supp. 2d 269, 273 (S.D.N.Y. 2008)).[7]

### 2.  The R&R Correctly Concluded that Inferences of Nonculpable Conduct Are More Cogent than the Scienter Allegations in the Complaint

Plaintiffs claim that Judge Netburn must have "erred in concluding that the Complaint's extensive allegations of scienter 'undermine[]' themselves" and that the R&R failed to view all of the allegations "holistically."  Obj. at 14-15.  Judge Netburn considered all of Plaintiffs'

---

[7]    Plaintiffs cite to *In re Gentiva Securities Litigation* for the unremarkable proposition that "courts have considered a governmental investigation as *one piece of the puzzle* when taking a 'holistic' view of the purported facts as they relate to scienter."  932 F. Supp. 2d 352, 380 (E.D.N.Y. 2013) (emphasis added); *see also* Obj. at 10.  Plaintiffs previously raised this argument (Opp. at 11), and its repetition in the Objections does not warrant *de novo* review.

scienter allegations—devoting ten full pages of analysis to Plaintiffs' scienter arguments—and concluded that those allegations, when taken together, are "undermined also by the theory upon which [they are] based."  R&R at 32 (citing *SRM Glob. Fund L.P.*, 2010 WL 2473595, at *10). The R&R adopted the far "more plausible and non-culpable explanation . . . *apparent on the face of the Complaint* . . . that Credit Suisse chose to sell additional XIV notes when they were selling at exceptionally high prices."  *Id.* at 34 (emphasis added).  "This inference of an ordinary profit motive is both non-culpable and quite plausible."  *Id.*

While Plaintiffs claim that the Credit Suisse Defendants did not advance the nonculpable explanations adopted by the R&R, that suggestion is false.  *See* CS Br. at 19 n.8 (discussing Credit Suisse's closing of two other VIX-related ETNs and arguing that Plaintiffs' view of the facts defies economic reason); *id.* at 22-23 (section titled "Inferences of Non-Fraudulent Intent Are More Cogent and Compelling"); CS Reply at 10 ("A far more cogent and compelling inference is that Credit Suisse engaged in hedging activity in accordance with the Pricing Supplement and the disclosures set forth therein with the expectation—based upon past performance during the three prior volatility spikes—that the XIV Notes would weather the market disruption and return to a viable price once the volatility subsided.").

Plaintiffs also argue that the R&R erred in failing to credit Plaintiffs' argument that there is a "statistical certainty that . . . sharp spikes [in volatility] are expected to occur once every other year to once every year."  Obj. at 11; *see also* Opp. at 8, 26, 28, 35; CS Br. at 21; CS Reply at 10.  Judge Netburn rejected this argument because "for a market as large and liquid as the S&P 500, no market movements are certain."  R&R at 33 (citing CAC ¶ 83).  Plaintiffs take issue with the Second Circuit precedent cited in support of this finding, but they fail to demonstrate why this finding, reviewed under any standard, should be reversed.  *See Campo*, 371

F. App'x at 216 ("Where plaintiff's view of the facts defies economic reason, it does not yield a reasonable inference of fraudulent intent.").  Competing allegations, like those advanced by Plaintiffs here, that a defendant had "both an intent to earn excessive fees for the corporation and also an intent to defraud [p]laintiffs by losing vast sums of money" are implausible and "def[y] economic reason."  *ECA & Local 134 IBEW Joint Pension Tr. of Chicago* v. *JP Morgan Chase Co.*, 553 F.3d 187, 203 (2d Cir. 2009).  Regardless, Plaintiffs' scienter allegations fail to "specifically identify the reports or statements" supporting the claim that anyone at Credit Suisse knew a VIX spike was certain to occur.  *See Dynex*, 531 F.3d at 196; *see also Goplen* v. *51job, Inc.*, 453 F. Supp. 2d 759, 773 (S.D.N.Y. 2006) (finding that "bare assertions" that defendants "had access to adverse undisclosed financial information through internal corporate documents, meetings, and reports . . . without any further facts or details, do not adequately demonstrate defendants' knowledge of facts or access to information contradicting their public statements").  That failing provides an independent reason upon which to reject Plaintiffs' scienter allegations.

> **B.** **Judge Netburn Correctly Determined that Plaintiffs Failed to Allege Scienter with Respect to Their Flatline Value Claim**

Plaintiffs' primary allegations of scienter—that "CSI's affiliate, Credit Suisse AG, continued to profit from the sale of new XIV notes during the Flatline Value period"—amounted "to little more than generalized profit motive" which "cannot give rise to a strong inference of scienter under the PSLRA."  R&R at 38-39.  Judge Netburn also analyzed and rejected Plaintiffs' allegations of "conscious misbehavior or recklessness" as "too vague to withstand comparison with the non-culpable alternatives."  *Id.* at 39.  "[T]he Complaint offers no explanation as to why a person at Credit Suisse AG—or one of its affiliates—responsible for purchasing the VIX futures would also have monitored the intraday indicative value.  Nor does it explain why

someone at CSI would have been familiar with the price of VIX futures in the after-hours market." *Id.*

Nevertheless, Plaintiffs claim that the R&R failed to consider their argument that CSI was "responsible for monitoring the underlying inputs of the VIX Futures Index" because "JIC and CSI were responsible for (1) monitoring the information underlying the Intraday Indicative Value . . . and (2) announcing a Market Disruption Event if S&P 'fails to publish or compute the [VIX Futures Index].'" Obj. at 4-5 (quoting Opp. at 38-39). Judge Netburn did consider these allegations (R&R at 38) and explained that a more cogent, non-fraudulent explanation "is that the traders executing the daily hedge were not concerned with the intraday indicative value, and that personnel at CSI were not monitoring price movements of the VIX futures." *Id.* at 39. The R&R further explained that "the January Supplement supports this inference: JIC, not CSI, was the entity tasked with calculating and disseminating the intraday indicative value." *Id.*

As argued previously in the Credit Suisse Defendants' motion to dismiss briefing, the unprecedented events of February 5, 2018 further support inferences of nonculpable conduct, which Plaintiffs do not dispute. *See* CS Br. at 24; *see also* CS Reply at 10. Specifically, the R&R found that because Credit Suisse executed its hedges between 4:00 p.m. and 4:15 p.m. and the Flatline Value did not begin until 4:13 p.m. (only two minutes before the hedging finished), "it is quite plausible that the Flatline Value would have escaped the notice of those responsible for purchasing the hedging instruments." R&R at 39 n.9.

Judge Netburn also considered and rejected Plaintiffs' theory that the Individual Defendants possessed the requisite scienter—or were involved at all with the alleged fraud— finding that "the Complaint fails to satisfy *any* of the elements of a [misstatement] claim against the Individual Defendants." R&R at 40 (emphasis added). The R&R continued:

> [T]he allegation against the Individual Defendants—Tidjane Thiam and David R. Mathers, the CEO and CFO of Credit Suisse AG, respectively—for the alleged failure to correct the Flatline Value are wholly insufficient. *Nowhere in the Complaint* do Plaintiffs claim that either Defendant ever played any role in disseminating the Flatline Value or in failing to correct the [allegedly] misleading price information.

*Id.* (emphasis added).  Plaintiffs do not object at all to these conclusions.

Finally, Judge Netburn concluded that "[t]he inability to rule out the possibility of an innocent mistake is emblematic of the Complaint's group pleading against the Credit Suisse Defendants, which were in fact three separate corporate entities with different roles and responsibilities with respect to the XIV notes." *Id.* at 40 n.10.  As explained in the Credit Suisse Defendants' moving briefs, Plaintiffs' improper group pleading provides an independent basis upon which to premise dismissal of Plaintiffs' Section 10 claims.  *See* CS Br. at 16-17; CS Reply at 3.  Plaintiffs object to Judge Netburn's group pleading ruling, but do so only in a footnote.  *See* Obj. at 16 n.15.  Accordingly, Plaintiffs have waived their arguments with regard to this finding. *See Ashmore* v. *CGI Grp. Inc.*, 138 F. Supp. 3d 329, 333 n.1 (S.D.N.Y. 2015) (Torres, J.) (citing *United States* v. *Restrepo*, 986 F.2d 1462, 1463 (2d Cir. 1993)) (finding argument raised in a footnote was not properly raised); *cf., e.g.*, *United States* v. *Svoboda*, 347 F.3d 471, 480 (2d Cir. 2003) ("It is well-established in this Circuit that we do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review.").

## III.   PLAINTIFFS EFFECTIVELY ABANDON THEIR CONTROL PERSON AND SECTION 9 CLAIMS

The R&R correctly found that Plaintiffs' failure to state any claim for primary liability means their control person claims pursuant to Sections 15 and 20(a) fail as a matter of law.  R&R at 41; *see also Rombach*, 355 F.3d at 178 ("Because . . . the district court properly dismissed the primary . . . claims against the individual defendants, these secondary claims [under Sections 20(a) and 15] must also be dismissed.").  Similarly, the R&R determined that Plaintiffs' claim

for violations of Section 9(a)(4) of the Exchange Act—"which 'closely parallels' Section 10(b) and Rule 10b-5"—"is predicated on the same allegedly misleading statements" underlying their Section 10(b) claims and should be dismissed.  R&R at 41.[8]

Plaintiffs argue, solely in a footnote, that their control person and Section 9 claims should be sustained.  Obj. at 20 n.19; *see Ashmore*, 138 F. Supp. 3d at 333 n.1 (citing *Restrepo*, 986 F.2d at 1463) ("We do not consider an argument mentioned only in a footnote to be adequately raised . . . ."); *cf. Svoboda*, 347 F.3d at 480 ("It is well-established in this Circuit that we do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review.").  Plaintiffs do not, however, cite to any authority demonstrating why the R&R's finding is clear error or otherwise should be rejected.

Plaintiffs also do not address any of the Credit Suisse Defendants' other arguments concerning the control person claims, each of which provide an independent basis for dismissal. *See* CS Br. at 15 n.4, 23-27; CS Reply at 13-15.  Plaintiffs' control person claims are premised almost entirely on the Individual Defendants' positions as officers of Credit Suisse and are not supported by any factual allegations establishing the requisite "culpable participation."  *See* CS Br. at 26-27; CS Reply at 13-15.

## IV.   PLAINTIFFS FAIL TO PLEAD STANDING OR LOSS CAUSATION WITH REGARD TO THEIR SECTION 10 CLAIMS

The Credit Suisse Defendants' arguments regarding Plaintiffs' lack of standing and failure to plead loss causation (CS Br. at 15 n.4, 23-26; CS Reply at 10-12), which were not considered in the R&R, further support dismissal of Plaintiffs' Section 10 claims if the Court

---

[8]      Section 9(f) merely creates a private right of action for violations of Section 9(a).  *See Dekalb Cty. Pension Fund* v. *Transocean Ltd.*, 817 F.3d 393, 397 n.7 (2d Cir. 2016).

undertakes a *de novo* review.  *See Uppal*, 2019 WL 1434234, at *2 (considering on a *de novo* review "the pleadings, prior proceedings, and the parties' respective papers submitted in connection with the underlying motions").  The Credit Suisse Defendants incorporate by reference these prior arguments.  *See Royal Park Invs. SA/NV* v. *Deutsche Bank Nat'l Tr. Co.*, 2017 WL 1331288, at *12 (S.D.N.Y. Apr. 4, 2017) ("To the extent that the parties wish to rely on arguments or evidence already submitted to the Court in connection with the instant motion, they may incorporate such materials by express reference and need not reassert them at length."); *In re Parmalat Sec. Litig.*, 493 F. Supp. 2d 723, 728 n.26 (S.D.N.Y. 2007) ("The parties incorporate by reference many of their earlier arguments into their memoranda concerning the present motions.  To the extent they are relevant, the Court considers those arguments herein."), *aff'd sub nom. Bondi* v. *Capital & Fin. Asset Mgmt. S.A.*, 535 F.3d 87 (2d Cir. 2008).

As argued in the Credit Suisse Defendants' motion to dismiss briefing, Plaintiffs do not allege that any Named Plaintiff purchased XIV notes during the one-hour window when Defendants purportedly misrepresented the value of the XIV notes.  *See* CS Br. at 15 n.4. Accordingly, Plaintiffs lack standing to assert a Section 10 claim based on the alleged falsity of the value during that one-hour window.  *See O & G Carriers, Inc.* v. *Smith*, 799 F. Supp. 1528, 1539 (S.D.N.Y. 1992) (finding that plaintiffs failed to state a claim under Section 10(b) where the transaction occurred prior to the alleged fraud).

With regard to loss causation, "Plaintiffs effectively concede that their losses were caused by a spike in market-wide volatility (which necessarily resulted in a decline in XIV's Intraday Indicative Value), rather than any misstatement by the Credit Suisse Defendants."  CS Br. at 24; *accord* CS Br. at 23-26; CS Reply at 10-12.  For example, Paragraph 159 of the Complaint acknowledges that on February 5, 2018, "the stock market pulled back, with the S&P 500

dropping 4.1% 'amid concerns about rising bond yields and higher inflation,' reinforced by the January 2018 U.S. jobs report 'that prompted worries the Federal Reserve w[ould] raise rates at a faster pace than expected' in 2018."  Paragraphs 160-61 of the Complaint connected this stock market activity to the precipitous drop in the XIV's value: "As the stock market dropped, the VIX Index spiked.  The SPVXSP, which tracked the return on first- and second-month VIX futures contracts, also rose sharply . . . . XIV's Intraday Indicative Value, the XIVIV, which inversely tracked the SPVXSP, dropped precipitously during the day."

Plaintiffs' failure to plead standing or loss causation provides independent reasons to dismiss Plaintiffs' claims.  *See* CS Br. at 15 n.4, 23-26; CS Reply at 10-12.

## V.      THE COURT SHOULD DISMISS THE COMPLAINT WITH PREJUDICE

Plaintiffs' barebones request for leave to amend should be denied as inconsistent with this Court's Individual Practices[9] and for failure to demonstrate how an amended complaint would improve Plaintiffs' allegations.  *See F5 Capital, a Cayman Islands Corp.* v. *Pappas*, 2016 WL 900389, at *11 (S.D.N.Y. Feb. 17, 2016) (Torres, J.) (leave to amend "is 'not a shield against dismissal to be invoked as . . . a fallback position in response to a dispositive motion' . . . . Absent 'any identification of how a further amendment would improve upon the [c]omplaint, leave to amend must be denied as futile.'"); *see also Bankr. Tr. of Gerard Sillam* v. *Refco Grp., LLC*, 2006 WL 2129786, at *4 (S.D.N.Y. July 28, 2006) ("The fact that plaintiffs' request to amend was made informally in response to defendants' motions to dismiss is by itself ground for denying the request.").  Plaintiffs have not provided the Court with a proposed

---

[9]      *See* U.S. Dist. Ct. Rules S.D.N.Y., Torres, J. Civ. Prac. Rule III.B.iv, Rev. June 20, 2019 ("If a motion to dismiss is filed, the plaintiff has a right to amend its pleading within twenty-one days, pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure.  <u>If the plaintiff elects not to amend its pleading, no further opportunities to amend to address the deficiencies identified by the motion to dismiss will ordinarily be granted absent good cause</u> . . . .").

amended complaint despite twice asking for leave to amend and being aware of the general rule in this District that "if a dismissal does not specify that it is without prejudice, it is treated as a dismissal with prejudice." *White* v. *City of New York*, 1986 WL 6164, at *1 (S.D.N.Y. May 27, 1986). That failure deprives the Court of its ability to understand the proposed changes and evaluate whether amendment would be futile, and mandates dismissal of Plaintiffs' claims with prejudice. *See, e.g.*, *Go* v. *Rockefeller Univ.*, 2008 WL 619039, at *4 (S.D.N.Y. Mar. 6, 2008) ("Plaintiff's Motion to Amend can be quickly dispatched because she has failed to attach a copy of the proposed amended complaint to her motion papers. . . . Without knowing what those [amended] claims are, it is impossible to determine whether they are futile.").

## CONCLUSION

Judge Netburn conducted a thorough and well-reasoned analysis of Plaintiffs' allegations and the Parties' respective arguments. The Court should adopt the Report and Recommendation in full and dismiss the Complaint with prejudice.

Dated:  September 13, 2019
         New York, New York

Respectfully submitted,

CAHILL GORDON & REINDEL LLP

By: /s/ David G. Januszewski
    Herbert S. Washer
    David G. Januszewski
    Peter J. Linken
Eighty Pine Street
New York, New York 10005
Telephone: (212) 701-3000
Facsimile: (212) 259-5420
hwasher@cahill.com
djanuszewski@cahill.com
plinken@cahill.com

*Attorneys for Defendants Credit Suisse Group AG, Credit Suisse AG, Credit Suisse International, Tidjane Thiam and David R. Mathers*

- 19 -