## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SET CAPITAL LLC, et al., individually and on behalf of all others similarly situated,<br><br>                   Plaintiffs,<br>vs.<br><br>CREDIT SUISSE GROUP AG, et al.,<br><br>                  Defendants. | Case No. 1:18-cv-02268 (AT) (SN) |

## LEAD PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 3

I.   All Three Classes Meet The Rule 23 Requirements and Should be Certified ......................... 3

   A.  The Securities Act Class Meets The Rule 23 Requirements ................................................. 3

   B.  The Misrepresentation Class Meets The Rule 23 Requirements ....................................... 6

   C.  The Manipulation Class Meets The Rule 23 Requirements ............................................. 12

   D.  The Class Representatives Are Typical and Adequate ..................................................... 14

   E.  There are No Individual Issues with Respect to Mr. Jager or Mr. Gamburg ................... 14

CONCLUSION ................................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Allergan PLC Sec. Litig.*,
  No. 18-cv-089, 2021 WL 4077942 (S.D.N.Y. Sept. 8, 2021) ................................................................8

*In re Aphria, Inc. Sec. Litig.*,
  No. 18-cv-11376, 2022 WL 3903373 (S.D.N.Y. Aug. 30, 2022) ........................................................7

*Arduini/Messina P'ship v. Nat. Med. Fin. Servs. Corp.*,
  74 F.Supp.2d 352 (S.D.N.Y. 1999) ..................................................................................................13

*ATSI Comc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ................................................................................................................6

*In re Barclays Liquidity Cross and High Frequency Trading Litig.*,
  390 F. Supp. 3d 432 (S.D.N.Y. 2019).............................................................................................12

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) .........................................................................................................1, 2, 10, 11

*Brecher v. Republic of Argentina*,
  806 F.3d 22 (2d Cir. 2015) ................................................................................................................5

*Brown* v. *Kaye*,
  889 F.Supp.2d 468 (S.D.N.Y 2012), *aff'd*, 514 F. App'x 58 (2d Cir. 2013) .................................13

*Choi v. Tower Research Capital LLC*,
  No. 14-cv-9912, 2022 WL 4484485 (S.D.N.Y. Sept. 27, 2022).......................................................8

*Colangelo v. Champion Petfoods USA, Inc.*,
  No. 618-cv-1228, 2022 WL 991518 (N.D.N.Y. Mar. 31, 2022).......................................................9

*Ellenburg v. JA Solar Holdings Co. Ltd.*,
  262 F.R.D. 262 (S.D.N.Y. 2009) .....................................................................................................14

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804, 131 S. Ct. 2179, 180 L. Ed. 2d 24 (2011) .............................................................2, 9

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009) ................................................................................................................9

*Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*,
  301 F.R.D. 116 (S.D.N.Y. 2014) ......................................................................................................4

*Freeland v. AT & T Corp.*,
    238 F.R.D. 130 (S.D.N.Y. 2006) ........................................................................................11

*In re Gaming Lottery Sec. Litig.*,
    58 F. Supp. 2d 62 (S.D.N.Y.1999) .....................................................................................6

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
    579 F. Supp. 3d 520 (S.D.N.Y. 2021) .................................................................1, 2, 7, 11

*Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*,
    338 F.R.D. 205 (S.D.N.Y. 2021) ...............................................................................3, 4, 5, 9

*In re Initial Pub. Offering Sec. Litig.*,
    227 F.R.D. 65 (S.D.N.Y. 2004) ..........................................................................................4

*In re Initial Pub. Offering Sec. Litig.*,
    483 F.3d 70 (2d Cir. 2007) ..................................................................................................4

*In re Initial Pub. Offering Sec. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009) ...............................................................................12

*In re Initial Pub. Offerings Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006) ..................................................................................................4

*Martinek v. AmTrust Fin. Servs., Inc.*,
    No. 19-cv-8030, 2022 WL 326320 (S.D.N.Y. Feb. 3, 2022) .............................................7

*In re Morgan Stanley Info. Fund Sec. Litig.*,
    592 F.3d 347 (2d Cir. 2010) ...............................................................................................3

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012) .............................................................................................13

*New Jersey Carpenters Health Fund v. Residential Capital, LLC*,
    272 F.R.D. 160 (S.D.N.Y 2011) .........................................................................................4

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ..........................................................................................................13

*In re Oxford Health Plans, Inc.*,
    191 F.R.D. 369 (S.D.N.Y. 2000) ........................................................................................6

*In re Petrobras Sec.*,
    862 F.3d 250 (2d Cir. 2017) ...............................................................................................5

*Price v. L'Oreal USA, Inc.*,
    No. 12-cv-614, 2021 WL 4459115 (S.D.N.Y. Sept. 29, 2021) ..........................................8

*In re Pub. Offering Antitrust Litig.*,
    No. 98-cv-7890, 2004 WL 350696 (S.D.N.Y. Feb. 25, 2004).....................................8, 11

*In re Schering- Plough Corp./ENHANCE Sec. Litig.*,
    No. 8-cv-397, 2012 WL 4482032 (D.N.J. Sept 25, 2012) ...................................................3

*Schwartz v. Celestial Seasonings, Inc.*,
    178 F.R.D. 545 (D. Colo. 1998)..........................................................................................3

*Set Cap. LLC v. Credit Suisse Grp. AG*,
    996 F.3d 64 (2d Cir. 2021) .................................................................................................12

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
    341 F.R.D. 542 (S.D.N.Y. 2022)..........................................................................................7

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
    No. 17-cv-8457, 2022 WL 1078460 (S.D.N.Y. Apr. 11, 2022) .........................................6

*In re Smart Techs., Inc. S'holder Litig.*,
    295 F.R.D. 50 (S.D.N.Y. 2013) .......................................................................................3, 4

*Strougo v. Barclays PLC*,
    312 F.R.D. 307 (S.D.N.Y. 2016), *aff'd sub nom. Waggoner v. Barclays PLC*, 875 F.3d
    79 (2d Cir. 2017)................................................................................................................10

*Talley v. ARINC, Inc.*,
    222 F.R.D. 260 (D. Md. 2004) ...........................................................................................6

*Tolbert v. RBC Capital Markets Corporation*,
    No. 11-cv-0107-H, 2016 WL 3034497 (S.D. Tex. May 26, 2016) .....................................6

*United Food & Com. Workers Union v. Chesapeake Energy Corp.*,
    281 F.R.D. 641 (W.D. Okla. 2012) .....................................................................................3

*In re Vale S.A. Sec. Litig.*,
    No. 19-cv-526-RJD-SJB, 2022 WL 122593 (E.D.N.Y. Jan. 11, 2022)............................7, 9

*In re Vale S.A. Securities Litig.*,
    No. 19-cv-526, 2022 WL 969724 (E.D.N.Y. Mar. 31, 2022)....................................... 7, 8, 9

*In re Vivendi Universal, S.A.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) ..........................................................................................6

*Wallace v. IntraLinks*,
    302 F.R.D. 310 (S.D.N.Y. 2014).....................................................................................3, 12

*Yi Xiang v. Inovalon Holdings, Inc.*,
    327 F.R.D. 510 (S.D.N.Y. 2018) ........................................................................................4

# INTRODUCTION

Securities class actions are particularly well suited for class certification.  Defendants do not challenge that this case satisfies the majority of Rule 23's requirements, including numerosity, commonality, superiority, the availability of the fraud-on-the-market presumption of reliance, the efficiency of the market for XIV throughout the Class Period, or the adequacy of Class Counsel.

For the Securities Act Class, Defendants claim that traceability, ascertainability and public information create individualized issues that interfere with certification.  But their traceability argument rests on an old District Court case vacated by the Second Circuit, while recent cases from the Southern District hold that tracing is a merits issue that should not be considered at the class certification stage and, even if it is considered, does not interfere with predominance.  For ascertainability, Defendants rely on an old case effectively overturned by a later Second Circuit opinion that lays out the current standard for ascertainability which Plaintiffs indisputably meet.  Finally, with respect to the impact of public information on class certification – *all* recent decisions in the Southern District agree it is a *common*, not individualized issue, that weighs in *favor* of class certification.

For the Misrepresentation Class, Defendants claim the class should not be certified because:  (1) a fundamental conflict exists between the Misrepresentation and Manipulation classes; (2) Plaintiffs failed to complete a damages and loss causation analysis at the class certification stage; (3) there is a danger of double counting of damages; (4) loss causation was not adequately plead; and (5) the *Basic* presumption does not apply.[1]  Defendants' Opposition to Class Certification, ECF No. 199 ("Defs. Br.") at 14-23.

These arguments all fail.  The "conflict" issue purportedly identified by Defendants is the "seller-purchaser conflict" argument that courts in this District describe as "widely discredited."  Defendants'

---

[1] They also repeat the bogus arguments they made for the Securities Act Class that public information creates individualized issues.

argument that the Supreme Court's recent decision in *Goldman* meant that Plaintiffs in securities cases now need to implement damages models at the class certification stage instead of describing them has been refuted by every single securities class action certification decision in the Southern District of New York post-*Goldman* – including *Goldman* itself on remand.  There is no danger of double counting because the inflation and deflation occur at different times.  With respect to loss causation, it was adequately pled in the Complaint and, regardless, the Supreme Court ruled in *Halliburton* that loss causation is not required to be demonstrated at class certification.  Finally, with respect to the *Basic* presumption, Defendants do not challenge Professor Mitts' conclusion that the market was efficient and have no case-law to support their false claim that *Basic* does not apply when Plaintiffs do not identify the exact minute the truth is revealed.

Defendants' arguments with respect to the Manipulation Class are similarly specious.  In addition to recycling the same, defective arguments about conflicts between classes and publicly available information creating individualized issues, Defendants claim that damages cannot be measured and that the *Affiliated Ute* and *Basic* presumptions do not apply.  The damages argument fails as Professor Mitts adequately explained how he could measure damages and separating manipulative hedging activity from other forces is a classic loss causation analysis which takes place after class certification. Defendants claim that *Affiliated Ute*'s presumption of reliance does not apply to manipulation claims, but *Affiliated Ute* itself was a manipulation case.  Their *Basic* argument is the same, baseless one they advanced for the Misrepresentation Class.

Defendants conclude by attacking the Lead Plaintiffs – all highly motivated and capable investors who lost large sums of money from Defendants' actions and have supervised this case closely.  None of these attacks have merit.  Finally, Plaintiffs will rebut each of Defendants' self-serving and misleading factual assertions about the merits of the case at summary judgment.  For purposes of class certification, however, it is worth noting that every single factual dispute identified by Defendants –

the import of the risk disclosures in the Offering Documents, what Credit Suisse did to hedge the impact of XIV and the effect of Credit Suisse's hedging, investor knowledge resulting from public documents, and the loss causation and damages models for the class – are *common* issues for the entire class that *support* certification.

## ARGUMENT

### I. All Three Classes Meet The Rule 23 Requirements and Should be Certified

#### A. The Securities Act Class Meets The Rule 23 Requirements

##### 1. Common Issues Predominate for the Securities Act Class

Securities Act claims are routinely certified because plaintiffs "need not allege scienter, reliance, or loss causation." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010). Instead, "the two major issues regarding Defendants' liability will be whether there were any misrepresentations or omissions in [the Registration Statement] and whether any such misrepresentations or omissions were material" – two issues "that require only generalized proof." *Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*, 338 F.R.D. 205, 214–15 (S.D.N.Y. 2021).

###### a. "Tracing" Does Not Interfere with Predominance

Defendants claim the need for secondary market purchasers of XIV to "trace" their purchases to the Offering Documents "would necessitate individualized proof that would predominate over class-wide issues…" Defs. Br. at 12. This argument has been repeatedly rejected by courts in this District and around the country for two independent reasons.

First, tracing is a "merits issue that the court need not consider at the class certification stage." *Wallace v. IntraLinks*, 302 F.R.D. 310, 319 (S.D.N.Y. 2014). *See In re Smart Techs., Inc. S'holder Litig.*, 295 F.R.D. 50, 60–62 (S.D.N.Y. 2013) (recognizing tracing is a merits issue "unrelated to a Rule 23

requirement").[2]    Second, even if the Court were to consider the issue of tracing at the class certification stage, courts in this District have repeatedly and recently held that common issues predominate even where tracing is an individualized issue for Securities Act classes.  *See, e.g.*, *Hawaii Structural Ironworkers Pension Tr. Fund, Inc.*, 338 F.R.D. at 214–15 (S.D.N.Y. 2021) (noting, in Section 11 cases, "the 'liability issue clearly predominates over individualized tracing inquiries'"); *In re Smart Techs., Inc. S'holder Litig.*, 295 F.R.D. at 60–62 (S.D.N.Y. 2013) (same).  Defendants do not cite a ***single*** recent case that is still good law that calls these holdings into question.[3]

### b.  Public Information Creates Common, Not Individualized Issues

Defendants next assert that information in the offering documents and publicly available articles could have created awareness of the alleged misconduct, creating a potentially individualized issue of knowledge.  Defs. Br. at 13-14.  Even if true – which it is not – this argument has been repeatedly rejected by courts in this District.  *See, e.g., Yi Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510, 529 (S.D.N.Y. 2018) (holding that news stories and other publicly available information raise issues subject to "generalized proof"); *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 133–34 (S.D.N.Y. 2014) (same); *In re IndyMac Mortgage-Backed Sec. Litig.*, 286 F.R.D. 226, 239 (S.D.N.Y. 2012) (same); *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*, 277 F.R.D 97, 119 (S.D.N.Y.

---

[2] *See also In re Schering-Plough Corp./ENHANCE Sec. Litig.*, 2012 WL 4482032, at *11 (D.N.J. Sept 25, 2012) ("[Traceability] is a fact issue more appropriately addressed a later stage in the litigation."); *United Food & Com. Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, 656 (W.D. Okla. 2012) (courts addressing this issue have held that "[t]he issue of tracing is a merits issue, not appropriate for consideration" at the class certification stage); *Schwartz v. Celestial Seasonings, Inc.*, 178 F.R.D. 545, 557 (D. Colo. 1998) ("The issue of tracing is a merits issue, not appropriate for consideration here").

[3] The only case Defendants cite, *In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 71 (S.D.N.Y. 2004), is approximately eighteen years old, predates the current case-law cited above, and has been ***vacated*** by the Second Circuit.  *See In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006), decision clarified on denial of reh'g sub nom. *In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70 (2d Cir. 2007) – a fact omitted by Defendants.  *See* Defs. Br. at 18.

2011) (same); *New Jersey Carpenters Health Fund v. Residential Cap., LLC*, 2013 WL 6839093, at *4 (S.D.N.Y. 2013) (same).[4]

### 2. The Securities Act Class Fulfills the Ascertainability Requirement

Defendants again rely on obsolete case-law when they assert that, because "Plaintiffs offer no mechanism to establish the traceability of XIV Notes on a class-wide basis, they also cannot demonstrate, as they must, that the members of the Securities Class can be easily ascertained or determined." Defs. Br. at 12 (citing *Brecher v. Republic of Argentina*, 806 F.3d 22, 24–25 (2d Cir. 2015)). Problematically for Defense Counsel, the Second Circuit has since "clarified" *Brecher* and held "a freestanding administrative feasibility requirement is neither compelled by precedent nor consistent with Rule 23" and that the "ascertainability doctrine that governs in this Circuit requires ***only*** that a class be defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017). *See also id.* at 266 ("[W]e reached our decision in *Brecher* by asking whether the class was defined by objective criteria that made the class's membership sufficiently definite, ***not*** whether the class was administratively feasible[.]").[5]

Of course, the definition of the Securities Act Class here – "all persons and entities that purchased or acquired VelocityShares Inverse VIX Short Term Exchange Traded Notes pursuant to or traceable to Credit Suisse's Offering Documents, and were damaged thereby" – fulfills the requirement of *Petrobras* and classes using this definition are routinely certified in this District. *See, e.g.*, *Hawaii Structural*

---

[4] The two cases cited by Defendants, *New Jersey Carpenters Health Fund v. Residential Cap., LLC*, 272 F.R.D. 160 (S.D.N.Y 2011) and *In re Initial Public Offerings Sec. Litig.*, 471 F.3d at 42, are both older cases where certain specific members of the putative classes had access to non-public information about the securities at issue or actually participated in the allegedly fraudulent scheme. This is not the case here.

[5] Once again, Defendants fail to notify the Court that the precedent they were relying on has been called into question or superseded. *See* Defs. Br. at 12.

*Ironworkers Pension Tr. Fund, Inc.*, 338 F.R.D. at 210-11 (S.D.N.Y. 2021) (certifying class with nearly identical definition).

### B. The Misrepresentation Class Meets The Rule 23 Requirements

#### 1. There is No Conflict Between the Misrepresentation and Manipulation Classes

Defendants claim that, because they first artificially inflated the price of XIV through their false statements and then, after that artificial inflation dissipated, manipulated it downwards past its natural price to an artificially low price, that this creates a fundamental intra-class conflict that prevents certification because members of one class will want to demonstrate inflation while another will want to demonstrate deflation for the same point in time. Defs. Br. at 14-16, 23.[6] This argument – sometimes referred to as the "seller-purchaser conflict" has been repeatedly rejected by courts, including those in this District. Specifically, the notion that there is "an inherent conflict … [that] arises out of sellers' presumed desire to minimize price inflation at the time of the sale, as opposed to the presumed purchaser's desire to maximize price inflation on the date of purchase"—is a ***"widely discredited" theory*** that does not interfere with certification. *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 377-78 (S.D.N.Y. 2000) (emphasis added).[7] *See also Sjunde AP-Fonden v. Gen. Elec. Co.*, 341 F.R.D. 542, 548-49 (S.D.N.Y. Apr. 11, 2022) (noting that "putative intra-class conflicts" arising from different

---

[6] In a footnote with no case citations, *see* Defs. Br. at 15 n.4, Defendants claim that a "market that is the subject of trade-based manipulation … cannot be efficient." This argument flies in the face of binding Second Circuit precedent. *See ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007) ("In an ***efficient market***, trading engineered to stimulate demand can mislead investors into believing that the market has discovered some positive news and seeks to exploit it… the duped investors then transact accordingly.") (emphasis added). Moreover, their citation to Professor Mitts's deposition was highly misleading as he actually testified that "it is possible to manipulate an efficient market." Eisenkraft Decl. Exhibit C, Deposition Transcript of Professor Joshua Mitts, at 99:5-10.

[7] *See also In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 86 n.5 (S.D.N.Y. 2007) ("[C]ourts have consistently found that [the" seller-purchaser conflict"] this does not render a representative's claims atypical[.]"); *In re Gaming Lottery Sec. Litig.*, 58 F. Supp. 2d 62, 69-71 (S.D.N.Y.1999) (same); Newberg on Class Actions § 3:62 (5th ed. 2021) (collecting cases finding "class representatives adequate despite the existence of the seller-purchaser conflict").

transaction dates that "could potentially motivate different class members to argue that the securities were relatively more or less inflated at different time periods, relate to damages and do not warrant denial of class certification").

Notably, Defendants do not cite a single securities case where this purported "conflict" has resulted in a denial of certification. *See* Defs. Br. at 14-16, 23.[8]   And, regardless, Defendants' own expert conceded that, if the inflation and deflation occurred at different times, as they did here, there would be no conflict. *See* Eisenkraft Decl. Exhibit D, Deposition Transcript of Professor Terrence Hendershott ("Hendershott Tr.") at 147:10-13 ("[I]f there's no inflation and deflation simultaneously, well, then, I mean, presumably there – the two classes don't care about each other."). *See also* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Exclude Joshua Mitts, Ph.D., ECF No. 221 ("*Daubert* Opp.") at 13.

### 2. Plaintiffs Can Calculate Damages Using a Common Methodology

Defendants claim Plaintiffs "cannot seriously dispute" that "in the post-*Goldman* world… courts in this Circuit not only require that Plaintiffs put forward a damages model, but also insist that the model be statistically robust and capable of isolating and quantifying the impact of the alleged wrongdoing on a class-wide basis." Defs. Br. at 17.[9]   Not only do Plaintiffs dispute this argument,

---

[8] The only two cases Defendants cite where conflicts prevented certification were not even securities cases, and the conflicts identified had no relationship to those Defendants claim exist here. *See Tolbert v. RBC Cap. Mkts. Corp.*, No. 11-cv-0107-H, 2016 WL 3034497, at *7 (S.D. Tex. May 26, 2016) (ERISA case where there was a conflict between current employees and former employees); *Talley v. ARINC, Inc.*, 222 F.R.D. 260, 269-70 (D. Md. 2004) (Title VII suit where interests of African American and female class members may conflict).

[9] In *Goldman*, a case addressing the concept of "price impact," the Supreme Court noted that a "mismatch" between the alleged misstatements and corrective disclosures could lead to an inability to show "price impact." *Goldman Sachs Grp, Inc. v. Ark. Teacher Ret. Sys.*, 141 S. Ct. 1951, 1961 (2021).  As a threshold matter, Defendants are **not challenging** price impact – and thus *Goldman* has no application.  Instead, Defendants stretch *Goldman* beyond recognition to argue that the Exchange Act Classes cannot be certified because Plaintiffs' expert has not yet demonstrated how confounding information will be disaggregated – that is not at all required.

but they are joined in doing so by Judges Failla, Daniels, Furman, McMahon, Crotty, and Bulsara of this District – all of whom certified securities class actions since *Goldman* where plaintiffs, like Plaintiffs here, identified and described damages models that ***could*** be used to calculate damages using a common methodology, but did not actually conduct a damages and loss causation analysis. *See, e.g., Martinek v. AmTrust Fin. Servs., Inc.*, No. 19-cv-8030 2022 WL 326320, at *19 (S.D.N.Y. Feb. 3, 2022) (Failla, J.) (certifying class and holding that plaintiffs' expert "adequately described his proposed model for measuring class damages" because "although [plaintiffs' expert] has not yet computed damages or conducted a loss causation analysis, the model he outlines is similar in operation and detail to ones that have regularly been approved by other courts in this circuit."); *In re Aphria, Inc. Sec. Litig.*, 342 F.R.D. 199, *4 (S.D.N.Y. Aug. 30, 2022) (certifying class where expert stated it is "my expert opinion that, while I have not been asked to quantify damages, the damages incurred by Aphria class members can be calculated on a class-wide basis through the widely accepted out-of-pocket method", Dkt 174 at *2).[10] *See also Daubert* Opp. at 19-20 n.12.

In fact, ***all*** of the securities class certification decisions in this District post-*Goldman*, including ***Goldman itself*** (on remand from the Supreme Court), certified classes where plaintiffs – like Plaintiffs here – ***described*** the approach that could be taken, without actually doing the loss causation and damages analysis, as that occurs later. *See id. See also In re Vale S.A. Sec. Litig.*, No. 19-cv-526, 2022 WL 969724, at *6 (E.D.N.Y. Mar. 31, 2022) (certifying class and rejecting argument that *Comcast* requires

---

[10] *See also Sjunde AP-Fonden v. Gen. Elec. Co.*, No. 17-cv-8457, 341 F.R.D. at 546–47 (S.D.N.Y. 2022) (certifying class where plaintiffs' expert opined that, while he had not done so, an "out of pocket method" would suffice to calculate damages on class-wide basis at later point along with a loss causation analysis) (Dkt. 220-21 at 24-26); *In re Vale S.A. Sec. Litig.*, No. 19-cv-526, 2022 WL 122593, at *18–19 (E.D.N.Y. Jan. 11, 2022), report and recommendation adopted, No. 17-cv-8457, 2022 WL 969724 (E.D.N.Y. Mar. 31, 2022) (same, *see* Dkt. 97-2 at 84-88); *In re Goldman Sachs Grp., Inc. Sec. Litig.*, No. 10-cv-3461, 579 F. Supp. 3d 520, 531–32 (S.D.N.Y. 2021) (same, *see* Dkt. 137 at 44-46); *In re Allergan PLC Sec. Litig.*, No. 18-cv-089, 2021 WL 4077942, at *14 (S.D.N.Y. Sept. 8, 2021) (same, *see* Dkt. at 94-1 at 34-38).

plaintiffs "to provide a damages model that is sufficiently specific for the court to 'understand, concretely, how plaintiffs propose to reliably establish damages."). Thus, there is no basis to support Defendants' assertion that, post-*Goldman*, the analysis that Plaintiffs' expert provided here – which is similar to the ones cited in all of the certified securities cases cited above – is anything but adequate.[11]

### 3.  There is No Danger of Double Counting

Defendants' assertion that the existence of both manipulation and misrepresentation causes of action in the same case creates a "serious risk of double counting," *see* Defs. Br. at 18, ignores the fact that damages for the two claims take place at **different times**.  Credit Suisse **first** artificially inflated the price of XIV through their false statements and **then**, **after** that artificial inflation had **dissipated**, manipulated it downwards **past** its natural price to an artificially low price.  The artificial inflation from the misrepresentations fully dissipates **before** the artificial deflation caused by Credit Suisse's manipulative hedging artificially deflates the price of XIV.  As Professor Mitts explained, there is **no danger** of a double recovery because a security cannot be artificially inflated and deflated simultaneously.  *See* Mitts Rep. at 77-78; Eisenkraft Decl. Exhibit A, Rebuttal Report of Professor Joshua Mitts, Ph.D., in Support of Plaintiffs' Motion for Class Certification at 42.[12]

---

[11] Neither of the two cases cited by Defendants are even securities cases.  *Choi v. Tower Research Capital LLC*, No. 14-CV-9912, 2022 WL 4484485, at *11 (S.D.N.Y. Sept. 27, 2022), is a state unjust enrichment claim and *Price v. L'Oreal USA, Inc.*, No. 12-cv-614, 2021 WL 4459115, at *6 (S.D.N.Y. Sept. 29, 2021), is a consumer class action.

[12] None of the cases Defendants cite are at all relevant to these allegations.  *In re Pub. Offering Antitrust Litig.*, 2004 WL 350696, at *6 (S.D.N.Y. Feb. 25, 2004), involved two suits – one by purchasers and the other by issuers, for the same conduct and injury by the same defendants.  *Colangelo v. Champion Petfoods USA, Inc.*, 2022 WL 991518, at *10 (N.D.N.Y. Mar. 31, 2022) is a false labeling claim where "Plaintiff seeks to hold Defendants liable both for labeling their products as containing fresh ingredients and for not disclosing specific types of non-fresh ingredients including expired ingredients and regrinds" – and to get damages for both.

### 4. Loss Causation is Adequately Pled and Not Required to Be Proven at Class Certification

Defendants, citing *In re Flag Telecom Holdings, Ltd. Securities Litigation*, 574 F.3d 29, 41 (2d Cir. 2009), claim that the Class cannot be certified because the Complaint does not adequately plead a corrective disclosure for loss causation purposes. *See* Defs. Br. at 19-20. This argument is both legally and factually wrong. Legally, *Flag Telecom* was superseded by *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011), which held the "Court of Appeals erred by requiring [plaintiff] to show loss causation as a condition of obtaining class certification."[13] After *Halliburton*, loss causation need not be demonstrated at class certification and even "loss causation argument[s] in disguise" – like Defendants' here. *See, e.g., In re Vale S.A. Sec. Litig.*, 2022 WL 122593, at *19 (E.D.N.Y. Jan. 11, 2022), report and recommendation adopted, 2022 WL 969724 (E.D.N.Y. Mar. 31, 2022) (rejecting Defendants' argument that distinctions between corrective disclosures and materializations of the risk be made at class certification as this "argument, akin to a 'loss causation argument in disguise', need not be resolved at class certification." *Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*, 338 F.R.D. at 218 (S.D.N.Y. 2021) ("[P]laintiffs are not required to establish loss causation—let alone proffer a damages model—on class certification.") (quoting *In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 105 (S.D.N.Y. 2016)); *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 99–100 (S.D.N.Y. 2015) ("[P]laintiffs are not required to demonstrate either loss causation or damages for purposes of class certification. In other words, whether plaintiffs will be able to prove loss causation or measure price impact ... are questions that go to the merits and not whether common issues predominate."). *See also* Hendershott Tr. at 75:21-24 ("I understand the plaintiffs don't have to do a loss causation analysis at class certification and I believe they have to do it later.").

---

[13] Defendants failed to even mention *Halliburton* and its progeny. *See* Defs. Br. at 20.

Factually, the Complaint adequately pleads the price of XIV fell when the risk concealed by Defendants' misstatements and misrepresentations materialized on February 5 and XIV went into a death spiral caused by Credit Suisse.  *See* Complaint ¶¶ 171- 202, 257-63; *Daubert* Opp. at 29-30. Professor Mitts did not opine on loss causation because it is not necessary for class certification.  *See supra* at 10.

### 5.   The *Basic* Presumption Applies to the Misrepresentation Class

Professor Mitts opined, based on the evidence, that the market for XIV is efficient.  *See* Mitts Rep. 11-31. Defendants do not challenge his conclusion. *See* Defs. Br. at 21.  Purchasers or sellers of securities in an efficient market receive the *Basic* presumption – this is fundamental securities law. *Basic Inc. v. Levinson*, 485 U.S. 224, 229, 247 (1988).  Defendants claim Plaintiffs' alleged failure to define the exact "time at which the 'truth was revealed'" means they cannot demonstrate they traded in the relevant window and that the *Basic* presumption therefore does not apply.  Defs. Br. at 21.  Tellingly, Defendants do not cite a **single** case where a court has held that such an exception to *Basic* exists – because it does not.  Moreover, as discussed above, Plaintiffs **have** identified February 5 as the date where the truth was revealed, *see* Complaint ¶¶ 171-202, 257-63, but the market's absorption of that information at a specific time on February 5 is a question of loss causation not relevant to class certification.  *See supra* at 10.[14]

---

[14] The *Affiliated Ute* presumption also applies to the misrepresentation class because, while Defendants did make misrepresentations, they also made omissions.  Complaint ¶¶ 215-28.  Cases with both omissions and misrepresentations can receive the *Affiliated Ute* presumption when they mainly concern omissions.  *See Strougo v. Barclays PLC*, 312 F.R.D. 307, 319 (S.D.N.Y. 2016), *aff'd sub nom. Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017).

### 6.   Public Information Creates Common, Not Individual, Issues

Public information or news *supports* certification as it creates a common issue, not an individualized one. *See supra* at 10. Defendants' argument to the contrary, *see* Defs. Br. at 22-23, fails for the same reasons discussed above.

## C.   The Manipulation Class Meets The Rule 23 Requirements

### 1.   There is No Conflict Between the Manipulation and Misrepresentation Class

There is no conflict between the Manipulation and Misrepresentation Classes, *see supra* at 11, and Defendants' argument to the contrary, *see* Defs. Br. at 23, fails for the reasons discussed above. *See supra* at 11.

### 2.   Plaintiffs Can Measure Damages on a Classwide Basis

Defendants claim the Misrepresentation Class should not be certified because "Plaintiffs offer no way to separate the effect of Credit Suisse's allegedly manipulative hedging activity from other trading and market forces…" Defs. Br. at 25.[15]  This is wrong factually and legally.  Factually, to the extent that confounding information exists here, Professor Mitts explained that any such information can be readily addressed in his proposed damages methodology after he conducts a loss causation analysis. *See Daubert* Opp. at 4-6.  Legally, isolating the effect of the manipulation from market forces is a loss causation analysis and, as discussed above, *see supra* at 9-10, such a loss causation analysis is not required at class certification.[16]  *See also Daubert* Opp. at 6-7.

---

[15] Defendants also argue again that *Goldman* requires Plaintiffs provide a damages model at the class certification stage and the damages model described by Professor Mitts does not take into account inter-class conflicts.  Defs. Br. at 24.  These arguments fail for the same reasons here as they did for the Misrepresentation Class.  *See infra* at 6.

[16] The *only* case Defendants cite to support their proposition is not even a securities case, it is an old *antitrust* case where the regression analysis was used in an attempt to demonstrate class-wide injury, which is not an issue in securities cases.  *See Freeland v. AT & T Corp.*, 238 F.R.D. 130, 144 (S.D.N.Y. 2006).

### 3.  The *Basic* and *Affiliated Ute* Presumptions Both Apply

Defendants cursorily assert the *Basic* presumption does not apply "for the same reasons discussed in Section II.C.1" of their brief.  Defs. Br. at 26.  This argument fails for the same reason it fails with regard to the Misrepresentation Class.  *See infra* at 13.

Defendants claim the *Affiliated Ute* presumption of reliance "does not apply to market manipulation claims."  Defs. Br. at 26.[17]  This is false.  *Affiliated Ute* itself, the case where the Supreme Court established the *Affiliated Ute* presumption, was a **market manipulation claim** brought under Rule 10b-5(a) and (c).  *See Affiliated Ute*, 406 U.S. 128, 146.  Courts in this District regularly apply the *Affiliated Ute* presumption to market manipulation claims.  *See, e.g.*, *In re Barclays Liquidity Cross and High Frequency Trading Litig.*, 390 F. Supp. 3d 432, 448 (S.D.N.Y. 2019) (applying *Affiliated Ute* where omissions involved defendants' manipulation); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 496 (S.D.N.Y. 2009) (applying the *Affiliated Ute* presumption in a market manipulation case).[18]

### 4.  Publicly Available Information Creates Common, Not Individual, Issues

Defendants claim, again, that publicly available information creates individualized issues.  *See* Defs. Br. at 13-14. This argument is flatly refuted by the law as public information creates common issues supportive of certification.  *See supra* at 4, 11.

---

[17] Defendants claim the *Basic* presumption does not apply "for the same reasons discussed in Section II.C.1" of their brief.  Defs. Br. at 26.  This argument fails for the same reason as that argument fails.  *See infra* at 13.

[18] None of the cases cited by Defendants contravene this. They stand for the unchallenged position that manipulation cases cannot primarily involve misrepresentations and not omissions if they are to get the *Affiliated Ute* presumption.  Here, "Credit Suisse's transactions were visible to the market and reflected otherwise legal activity," but for the fact that they were accompanied by "manipulative intent."  *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 77 (2d Cir. 2021).  An open-market manipulation case is not one dependent on misrepresentations, so the *Affiliated Ute* presumption applies.  *In re Barclays Liquidity Cross and High Frequency Trading Litig.* 390 F. Supp. 3d at 448.

**D.  The Class Representatives Are Typical and Adequate**

Defendants assert that because Plaintiffs did not offer definitive proof they could trace their shares to the offering, they are inadequate representatives and the Securities Act Class cannot be certified. Defs. Br. at 11-23.  This is false.  Tracing is a "merits issue that the court need not consider at the class certification stage." *Wallace v. IntraLinks*, 302 F.R.D. at 319 (S.D.N.Y. 2014).  *See also infra* at 1-2. Defendants cite no cases where certification of a Section 11 class was denied because lead plaintiffs could not trace their shares.  Defs. Br. at 28-29.

Second, even if Plaintiffs' ability to trace were an issue at class certification (which it is not) and they definitively could not trace their stock to the offering, under Second Circuit precedent they can still serve as representatives for the Section 11 class because they have "class standing" to do so, as every putative Class Representative has:  "(1) personally has suffered some actual ... injury as a result of the putatively illegal conduct of the defendant," and "(2) that such conduct implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants…" *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012).  Specifically, the exact same misrepresentation harmed the Plaintiffs as harmed the Misrepresentation Class, and even Defendants do not contest that all Plaintiffs are members of the Misrepresentation Class.  *See* Complaint ¶¶ 257-93.  Consequently, all of the putative Class Representatives have "class standing" to represent members of the Misrepresentation Class regardless of their own, personal ability to trace.  *See id.* at 163 (holding it would be "patently inappropriate" to deny class standing where a series of offerings contained an identical misrepresentation).

**E.  There are No Individual Issues with Respect to Mr. Jager or Mr. Gamburg**

Defendants' argument that Plaintiffs need to join Mr. Jager's ex-wife under Rule 19(c), *see* Defs. Br. at 29-30, is wrong.  Factually, Mr. Jager owns the Fidelity accounts at issue.  *See* Dkt. No. 200-12 at ¶9(b); Eisenkraft Decl. Exhibit E, Deposition Transcript of Stefan Jager, at 284:24-285:11.

14

Mr. Jager's ex-wife's interest in the action is only a financial interest in "any funds received" from the litigation. ECF No. 200-12 at ¶9(c).  Legally, Defendants ignore Rule 19(d) and Rule 23, which create exceptions to the joinder requirement in such circumstances.  *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 832 (1999) ("[C]lass actions …developed as an exception to the formal rigidity of the necessary parties rule in equity[.]").  Defendants identify no case where a class has not been certified because of a failure to join.[19]

Second, Defendants' assertion that Mr. Gamburg should be precluded from serving as a Lead Plaintiff because he is an in-and-out trader, Defs. Br. at 29-30, is meritless.  Mr. Gamburg purchased XIV Notes following the issuance of the Offering Documents and held them as of the corrective disclosure on February 5, 2018.[20]  While Mr. Gamburg sold *some* of his shares on January 30, 2018, he bought 10,008 more shares between January 31 and February 2, 2018, which caused him to suffer at the hands of Defendants' conduct during the class period and makes him adequate as a Class Representative.  *See Ellenburg v. JA Solar Holdings Co. Ltd.*, 262 F.R.D. 262, 268 (S.D.N.Y. 2009) (holding that "selling shares during the class period does not disqualify a class member from being appointed lead plaintiff").[21]

## CONCLUSION

For these reasons, Plaintiffs request that the Court grant their Motion for Class Certification.

---

[19] The one case Defendants cite is not even a class action suit.  *See Brown* v. *Kay*, 889 F.Supp.2d 468, 488-89 (S.D.N.Y 2012), *aff'd*, 514 F. App'x 58 (2d Cir. 2013).

[20] *See Arduini/Messina P'ship v. Nat. Med. Fin. Servs. Corp.*, 74 F.Supp.2d 352, 360–61 (S.D.N.Y. 1999) (finding in-and-out trading when plaintiffs sold *all* of their stock before the fraud was disclosed).

[21] Defendants' sole authority is distinguishable to the facts here.  *See George v. China Auto. Sys., Inc.*, No. 11 CIV 7533 KBF, 2013 WL 3357170, at *3, 6-7 (S.D.N.Y. July 3, 2013) (citing authority that in-and-out traders are those who failed to hold shares over a corrective disclosure, discussing concerns over plaintiffs purchasing shares after the corrective disclosure, and noting that plaintiffs opened and closed positions up to 15 times during the class period).

Dated: December 16, 2022                    Respectfully submitted,


                                           /s/ *Michael B. Eisenkraft*
                                           Michael B. Eisenkraft
                                           Laura H. Posner
                                           **COHEN MILSTEIN SELLERS**
                                           **  & TOLL PLLC**
                                           88 Pine Street
                                           14th Floor
                                           New York, NY 10005
                                           Tel.: (212) 838-7797
                                           Fax: (212) 838-7745
                                           meisenkraft@cohenmilstein.com
                                           lposner@cohenmilstein.com

                                           Steven J. Toll (*pro hac vice*)
                                           Brendan Schneiderman (*pro hac vice*)
                                           1100 New York Ave. N.W., Fifth Floor
                                           Washington, D.C. 20005
                                           Tel.: (202) 408-3640
                                           Fax: (202) 408-4699
                                           stoll@cohenmilstein.com
                                           bschneiderman@cohenmilstein.com

                                           Carol V. Gilden
                                           190 South LaSalle Street, Suite 1705
                                           Chicago, IL 60603
                                           Tel. (312) 357-0370
                                           Fax: (312) 357-0369
                                           cgilden@cohenmilstein.com

                                           **LEVI & KORSINSKY, LLP**
                                           Eduard Korsinsky
                                           Nicholas I. Porritt
                                           Adam M. Apton
                                           55 Broadway, 10th Floor
                                           New York, NY 10006
                                           Tel: (212) 363-7500
                                           Fax: (212) 363-7171
                                           ek@zlk.com
                                           nporritt@zlk.com
                                           aapton@zlk.com

                                           **LEVI & KORSINSKY, LLP**
                                           Alexander A. Krot III (*pro hac vice*)

16

1101 30th Street NW, Suite 115
Washington, D.C. 20007
Tel: (202) 524-4290
Fax: (212) 363-7171
akrot@zlk.com

*Counsel for Lead Plaintiffs and Co-Lead
Counsel for the Classes*

**BRONSTEIN, GEWIRTZ &
GROSSMAN,
LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Tel. (212) 697-6484
peretz@bgandg.com

*Additional Counsel for Apollo Asset Limited*