UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SET CAPITAL LLC, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CREDIT SUISSE GROUP AG, et al.,<br><br>Defendants. | Case No. 1:18-cv-02268 (AT) (SN) |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT TO CONFORM TO THE EVIDENCE**

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | FACTUAL BACKGROUND | | 2 |
| III. | ARGUMENT | | 3 |
| | A. | Under the Rules of Civil Procedure, Motions to Amend the Pleading to Conform to the Evidence Should Be "Freely Granted" | 3 |
| | B. | There is No Substantial Reason to Deny Leave to Amend | 4 |
| | | 1. Plaintiffs Did Not Delay Filing this Motion | 4 |
| | | 2. There is No Prejudice to Defendants | 5 |
| | | 3. The Proposed Amendments are Not Futile | 13 |
| IV. | CONCLUSION | | 14 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Block v. First Blood Assocs.*,
   988 F.2d 344 (2d Cir. 1993).........................................................................................................3, 7

*Doe v. Cnty. of Rockland*,
   No. 21-CV-6751 (KMK), 2022 WL 2533151 (S.D.N.Y. July 7, 2022)..............................5, 13

*Foster v. UPS Freight, Inc.*,
   No. 18-CV-10294, 2020 WL 5350446 (S.D.N.Y. Sept. 4, 2020).............................................3

*Friedl v. City of N.Y.*,
   210 F.3d 79 (2d Cir. 2000)..................................................................................................3, 5, 12

*Hill v. Griffin*,
   No. 6:10-CV-06419, 2018 WL 5078255 (W.D.N.Y. October 18, 2018) ...............................12

*Ho Myung Moolsan, Co. v. Manitou Mineral Water, Inc.*,
   No. 07-CV-07483 (RJH), 2010 WL 4892646 (S.D.N.Y. Dec. 2, 2010....................................6

*Kiarie v. Dumbstruck, Inc.*,
   473 F. Supp. 3d 350 (S.D.N.Y. 2020)......................................................................................13

*Livingston v. Trustco Bank*,
   No. 120-CV-1030, 2021 WL 6199655 (N.D.N.Y. Apr. 23, 2021).........................................12

*Loc. 3621, EMS Offs. Union, DC-37, AFSCME, AFL-CIO v. City of N.Y.*,
   No. 18-CV-4476, 2021 WL 1750847 (S.D.N.Y. Feb. 3, 2021)..............................................13

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015).........................................................................................................3

*McCormick v. Spano*,
   No. 19-CV-2916 (KMK), 2021 WL 6052161 (S.D.N.Y. Dec. 20, 2021) ...............................4

*Metcalf v. TransPerfect Translations Int'l, Inc.*,
   No. 19-CV-10104, 2023 WL 2674743 (S.D.N.Y. Mar. 29, 2023).........................................13

*Pangburn v. Culberston*,
   200 F.3d 65 (2d Cir. 1999).........................................................................................................13

*Set Cap. LLC v. Credit Suisse Grp. AG*,
   996 F.3d 64 (2d Cir. 2021).........................................................................................................14

*Silverstein v. Penguin Putnam, Inc.*,
  522 F.Supp.2d 579 (S.D.N.Y. 2007)......................................................................................5, 6

I.      INTRODUCTION

The allegations in this case have already been sustained by the Second Circuit. *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 77–78 (2d Cir. 2021). Plaintiffs now move to amend—not to add any new defendants, claims or SEC filings alleged to be false and misleading—but simply to elaborate on and substantiate with evidence Plaintiffs' sustained claims, as well as to provide evidence supporting reinstatement of the one claim against Credit Suisse the Second Circuit previously dismissed (the "Flatline" claim) based on then-insufficient allegations of Defendants' scienter.

In the Second Circuit, such motions to amend are to be "freely granted", particularly when—as here—the amendment is proposed "after discovery [of] additional relevant facts[.]" *Friedl v. City of N.Y.*, 210 F.3d 79, 88 (2d Cir. 2000). Plaintiffs' motion is timely—filed consistent with the schedule set forth in the operative case management order and shortly after the evidence was uncovered. And, Defendants—as even they have represented to the Court on multiple occasions, have long been on notice of both Plaintiffs' intent to amend the complaint to conform to the evidence and the amended allegations included therein. Indeed, as they themselves concede, they have produced thousands of documents and their witnesses have been deposed on the very topics that are included in the proposed Third Amended Complaint. As such, Defendants are not prejudiced in any way by the amendment. Finally, Plaintiffs' motion is not futile. The newly added allegations only do two things: first, expand the basis upon which Plaintiffs allege Defendants' January Prospectus was false and misleading and elaborate on the manner in which Defendants engaged in their manipulative conduct, claims the Second Circuit has already ruled are sufficient; and, second, provide exactly the evidence to support the Flatline claim the Second Circuit held was lacking in the Second Amended complaint.

Accordingly, Plaintiffs' Motion for Leave to Amend the Complaint to Conform to the Evidence should be granted.

## II. FACTUAL BACKGROUND

Pursuant to the Private Litigation Reform Act of 1995, discovery was stayed in this case until the Second Circuit issued its opinion on Defendants' motions to dismiss. *Id.* Shortly thereafter, Plaintiffs served their First Requests for Production. Defendants claimed to have completed their document production in late October 2022, producing a total 1,234,856 pages of documents. Plaintiffs also subpoenaed a number of third parties, who produced an additional 16,296 pages of documents and a number of spreadsheets, with some of those documents coming in as late as April 26, 2023. Even before Defendants completed their document production, Plaintiffs began to notice depositions. In total, Plaintiffs took fourteen fact depositions, starting on November 29, 2022, with the last deposition taking place less than two weeks ago, on April 19, 2023.

Together with Plaintiffs, Defendants negotiated and submitted the Fourth Amended Case Management Order on March 10, 2023 (ECF No. 258), which expressly made clear that Plaintiff intended to move to amend the current complaint to conform to the evidence following the conclusion of fact discovery and set a schedule for that motion. The Court entered the Fourth Amended Case Management Order on March 14, 2023 (ECF No. 259) and then on April 5, 2023 extended the deadline for Plaintiffs to file their motion by a week (the "CMO"). ECF No. 269. In accordance with the CMO, Plaintiffs submit the attached Third Amended Complaint, which—based on evidence obtained during discovery—expands the basis upon which Plaintiffs allege Defendants' filings to have been false and misleading, the manner in which Defendants engaged in their manipulative conduct, and adds evidence sufficient to revive a previously dismissed claim.

2

The Third Amended Complaint does not add any claims, defendants or false and misleading documents.[1]

**III.   ARGUMENT**

    A.    <u>Under the Rules of Civil Procedure, Motions to Amend the Pleading to Conform to the Evidence Should Be "Freely Granted"</u>

A party may move at any time—even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. FED. R. CIV. P. 15(b)(2).  Such motions to amend should be "freely granted", particularly when the amendment is proposed "after discovery [of] additional relevant facts[.]" *Friedl v. City of N.Y.*, 210 F.3d 79, 88 (2d Cir. 2000).  In general, "district courts should not deny leave unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility." *Id*. (citing *Jones v. N.Y. Div. of Mil. Naval Aff.*, 166 F.3d 45, 50 (2d Cir. 1999) (futility); *MacDraw, Inc. v. CIT Grp Equip. Fin., Inc.*, 157 F.3d 956, 962 (2d Cir. 1998) (delay or prejudice)).

"The Supreme Court has expounded upon Rule 15(a)'s liberality by suggesting that it is preferential for a plaintiff to be 'afforded an opportunity to test his [or her] claims on the merits.'" *Foster v. UPS Freight, Inc.*, No. 18-CV-10294, 2020 WL 5350446, at *5 (S.D.N.Y. Sept. 4, 2020) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)). Indeed, "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the non-movant of prejudice or bad faith." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (noting that "the 'permissive standard' of Rule 15 'is consistent with our strong preference for resolving disputes on the merits.'") (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (per

---

[1] The class definitions are similarly consistent with those in Plaintiffs' Motion to Certify the Classes.

3

curiam))." *McCormick v. Spano,* No. 19-CV-2916 (KMK), 2021 WL 6052161, at *1 (S.D.N.Y. Dec. 20, 2021).

      B.      <u>There is No Substantial Reason to Deny Leave to Amend</u>

            1.      <u>Plaintiffs Did Not Delay Filing this Motion</u>

FED. R. CIV. P. 15(b)(2) permits amendment even post-trial. ("A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue."). Here, Plaintiffs are moving to amend far in advance of trial and even months before summary judgment motions are scheduled to be filed, consistent with the operative CMO and only shortly after their discovery of the evidence necessitating amendment.

As is typical in securities fraud class actions, the CMO in this action contemplates—by consent—amendment of the pleadings at the conclusion of fact discovery. ECF No. 259 at 2 ("Plaintiffs shall file any motion to amend the Amended Consolidated Class Action Complaint no later than April 21, 2023").[2] This is because, under the Private Litigation Reform Act of 1995, discovery is stayed prior to a decision on a motion to dismiss 15 U.S.C. §§ 77z-1(b)(1), 78u-4(b)(3)(B) (2000) ("in any private action . . . all discovery and other proceedings shall be stayed during the pendency of the motion to dismiss"). Accordingly, securities class action complaints are filed without the benefit of any discovery and the information relevant to the claims is uniquely in the possession of the defendant. So true here.

Defendants claimed to have completed their document production in late October 2022. They produced a total of 1,234,856 pages of documents. Plaintiffs also subpoenaed a number of third parties, who produced an additional 16,296 pages of documents and a number of

---

[2] This deadline was modified by the Court's Order dated April 5, 2023 to April 28, 2023. ECF No. 269.

spreadsheets, some of which were produced as late as April 26, 2023. Even before Defendants completed their document production, Plaintiffs began to notice depositions. In total, Plaintiffs took fourteen fact depositions, starting on November 29, 2022, with the last deposition taking place less than two weeks ago, on April 19, 2023.

It was this discovery, and in particular the depositions taken, which revealed the additional relevant facts necessitating amendment. The discovery largely substantiated Plaintiffs' original allegations, but also made clear that Defendants had manipulated the market for the XIV Notes in other ways not previously known and that their statements in the Offering Prospectus were false and misleading in additional, related ways to those previously pled. *See generally* Proposed Third Amended Complaint ("Am. Cmpl."), ECF No. 285. Discovery also uncovered evidence that substantiated Plaintiffs' original claim regarding the Flatline Value. Accordingly, consistent with the CMO and immediately following the conclusion of fact discovery, Plaintiffs filed the instant motion to amend. As such, there can be no claim of "undue delay, given that the amendment was proposed only after discovery revealed additional relevant facts[.]" *Friedl*, 210 F.3d at 88.

### 2. There is No Prejudice to Defendants

The opposing party bears the burden "of demonstrating that substantial prejudice would result were the proposed amendment to be granted." *Doe v. Cnty. of Rockland*, No. 21-CV-6751 (KMK), 2022 WL 2533151, at *3 (S.D.N.Y. July 7, 2022). In deciding whether to allow amendment under Rule 15(b), the Court looks to whether "the [ ] issues were [litigated] by the parties' express or implied consent and whether the defendant would be prejudiced by the implied amendment, i.e., whether [the defendant] had a fair opportunity to defend. . . ." *Silverstein v. Penguin Putnam, Inc.*, 522 F.Supp.2d 579, 604 (S.D.N.Y. 2007) (internal quotation marks and citations omitted).

"[C]onsent [ ] may be implied from the opposing party's failure to object," *Silverstein*, 522 F.Supp.2d at 604 (citing *Luria Bros. & Co., Inc. v. Alliance Assur. Co., Ltd.*, 780 F.2d 1082, 1089 (2d Cir. 1986)), "'effective engagement,'" or "'silent acquiescence.'" *Id.* (quoting *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1172 (1st Cir. 1995). *See also Hill v. Martin (same); Myers v. Moore*, 326 F.R.D. 50, 62 (S.D.N.Y. 2018) (same)). Implied consent does not require "an alleged understanding between the parties or through, for example, statements in responsive Local Rule 56.1 Statements." *Ho Myung Moolsan, Co. v. Manitou Mineral Water, Inc.*, No. 07-CV-07483 (RJH), 2010 WL 4892646, at *14 (S.D.N.Y. Dec. 2, 2010), *aff'd*, 501 F. App'x 85 (2d Cir. 2012).

Here, as described more fully below, Defendants had a fair opportunity to defend against the expanded allegations ***and*** implicitly consented to the amendment. Defendants have been well aware for months that Plaintiffs intended to amend their complaint to include expanded claims based on Defendants' misstatements and omissions in the January Prospectus regarding the impact of their lending of XIV Notes on the XIV market and their knowledge regarding █████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████ The same goes for Plaintiffs' substantiation of the "Flatline Value" claim allegations, which were based on documents produced by Defendants many months ago and deposition testimony elucidated by Plaintiffs' Counsel more recently based on those documents, largely without objection by Defendants. At no time did Defendants' object to discovery regarding these subjects on relevancy grounds or even the merits, and Defendants had ample opportunity to cross or re-direct witnesses who testified about these issues and to serve their own third-party discovery requests.

*First*, Plaintiffs sought and obtained document discovery directly from Defendants, as well as from various third parties, regarding Defendants' lending and third parties' borrowing of XIV Notes **more than a year ago**. *See* Requests for Production Nos. 13; 14 (October 15, 2021); Subpoenas to Eagle Seven, LLC; J.P. Morgan Securities LLC; Marquette Partners LLC; Marquette Partners, LP; ProShare Capital Management LLC; Proshares Trust II; TJM Investments, LLC; UBS; Instinet; Jane Street; Citadel; Virtu Americas; Bank of America Securities; Citibank N.A.; Deutsche Bank Securities Inc.; Goldman Sachs & Co LLC; Societe Generale Americas Securities, LLC. Those documents are cited throughout the Third Amended Complaint. Am. Cmpl. ¶¶ 64; 69; 82-85; 93. Indeed, Defendants concede this fact, noting in their opposition to Plaintiffs' Motion to Compel the Rule 30(b)(6) deposition that, "in response to Plaintiffs' broad document requests and search terms, Credit Suisse produced thousands of documents relating to lending, most if not all of which were produced in the **first half of 2022**," (emphasis added) and then proceeded to discuss in depth a few of those documents and even attached certain of them—each of which is referenced in the Third Amended Complaint—to their filing. ECF No. 241 at 2-3. *See also* ECF No. 250 at 2 (Defendants noting that "documents relating to lending have long been a part of the discovery record in this case").

*Second*, Plaintiffs asked numerous questions during the depositions of Defendants' employees and former employees pertaining ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *See e.g.*, Am. Cmpl. ¶¶ 69; 82-85; 93; 100; 101. These depositions took place beginning on November 29, 2022. Defendants too concede this fact. *See* ECF No. 250 at 2 (Defendants noting that witnesses competent to testify on issues pertaining to Credit Suisse's

7

lending of XIV Notes have been deposed). At all of these depositions, Defendants had the opportunity to redirect their witnesses regarding those topics but elected not to do so.

***Third***, Plaintiffs' Rule 30(b)(6) notice and the briefing around it specifically informed Defendants about the subjects of the amendment. The Rule 30(b)(6) notice itself, served on Defendants on February 23, 2023, asked for deposition testimony concerning:

> (1) the trading and hedging activity of Credit Suisse's Prime Brokerage desk relating to XIV Notes including, but not limited to, borrowing, lending/loaning, delivery and short sales transactions; (2) the risk profiles, economic incentives, and potential payouts(s) for: (i) Credit Suisse with respect to XIV Note swap agreements; (ii) XIV Note swap agreement counterparties; and (iii) XIV Note borrowers; (3) Credit Suisse's knowledge and/or expectations regarding divergence between the value and price of XIV Notes from XIVIV from October 2017 to February 2018; and (4) Credit Suisse's knowledge, expectations and/or modeling of the likelihood that holders of XIV Notes would hedge their exposure during a volatility event, and any information regarding the potential or actual price impact of that hedging activity on XIV Notes.

ECF No. 249 (citing Plaintiffs' Rule 30(b)(6) Notice).

In addition, Plaintiffs' Motion to Compel the Rule 30(b)(6) deposition explicitly informed both the Court and Defendants that they were seeking the Rule 30(b)(6) deposition to cover issues "relating to Credit Suisse's undisclosed lending of XIV." *See* Motion to Compel Rule 30(b)(6) (ECF No. 236) at 1; *id*. at 2 (moving to compel a Rule 30(b)(6) deposition on four topics "relating to Credit Suisse's undisclosed lending of XIV" and noting that "even Counsel for Defendants concedes that the topics noticed by Lead Plaintiffs are relevant, as they were discussed in documents produced by Defendants and at a number of depositions"). And Plaintiffs also described why such testimony is relevant to the newly pled claims, explaining how "[l]oans of XIV shares by Credit Suisse gives the borrowers of those shares an incentive to push down the value of XIV in order to profit from their short-selling." *Id*. at 2.

The parties' submissions in response to the Court's February 22, 2023 Order (ECF No. 243) regarding the Rule 30(b)(6) deposition also make clear that Defendants were well aware of Plaintiffs' intent to amend the complaint to include such claims. For example, in Plaintiffs' letter, Plaintiffs specifically discussed their intent to amend the complaint to conform to the evidence:

> Legally, Credit Suisse provides no basis for its position that Lead Plaintiffs cannot conform their pleadings to the evidence. While Defendants' prospectus stated that they "may issue [XIV Notes] into inventory of our affiliates to make them available for lending," the prospectus failed to disclose that Defendants knew or recklessly disregarded that their lending would force market participants to hedge their positions when a volatility spike inevitably occurred, causing a feedback loop that would crash XIV, and thereby making their prospectus statements materially misleading. There can be no question that Plaintiffs' claims include that Defendants' prospectus was false and misleading and omitted to disclose specific facts. That the prospectus was misleading in additional ways than those alleged in the Complaint is of no moment, as plaintiffs are permitted to conform their pleadings to the evidence.

ECF No. 249 at 2. Defendants' letter in response to the Court's February 22, 2023 Order acknowledges that Plaintiffs' "new theory of liability [] will apparently focus on the alleged hedging activity of other unidentified market participants." ECF No. 250 at 2.[3]

***Fourth***, the briefing over Plaintiffs' Motion to Compel CBOE to unmask also made clear that Plaintiffs intended to amend the complaint to include allegations pertaining to Credit Suisse's lending of XIV Notes. For example, as Plaintiffs explained:

> A core element of Defendants' misguided defense in this matter is that they personally traded only a small volume of VIX futures contracts, and thus could not have manipulated the XIV market. . . . As Lead Plaintiffs have alleged, Defendants effectuated a manipulative scheme to rid itself of the XIV notes, based in relevant part on their knowledge of the previous liquidity issues and that other participants in the VIX-related ETP market needed to hedge their positions by buying VIX futures. . . . Moreover, Lead Plaintiffs allege that Defendants made misstatements and omitted material information in the January 29, 2018, Pricing Prospectus's risk

---

[3] Notably, the Court ultimately agreed with Plaintiffs, granting their Motion to Compel the Rule 30(b)(6) deposition and noting that the topics sought in the Rule 30(b)(6) notice were within the relevance standard in Fed. R. Civ. P. 26(b)(1). ECF No. 252.

> factors as it relates to Credit Suisse, its affiliates, or third parties with whom Credit Suisse transacted.

*See* Motion to Compel CBOE (ECF No. 242) at 3. Further, Plaintiffs explained that "the market participants that engaged in substantial trading of VIX futures during the afternoon of February 5, 2018" were relevant to determining how Defendants' manipulation and misstatements caused the Classes' damages. *Id*. *See also* Reply (ECF No. 256) at 2 (noting that Credit Suisse's lending partners were relevant to determine whether they were unwitting participants in Credit Suisse's effort to collapse the value of XIV and tying it to Lead Plaintiffs' allegations that Defendants made misstatements and omitted material information in the prospectus); *id.* at 3 (explaining that multiple Credit Suisse witnesses had testified that Credit Suisse was engaging in substantial lending of XIV Notes to short-sellers who they expected would purchase VIX futures to offset their exposure, necessarily resulting in the collapse of XIV at the next inevitable volatility spike, and that the testimony and documents produced by Credit Suisse established that it was widely understood among Credit Suisse's employees that the bank was not only issuing loans of XIV to these short-sellers, but actually incentivizing their issuance).[4]

***Fifth***, Defendants themselves deposed Plaintiffs' expert regarding Defendants' and other market participants' hedging their exposure to the XIV market (*see, e.g.*, Eisenkraft Decl. Ex. C (Mitts Dep.), ECF No. 285-3 at 38:11-48:19), the impact of such hedging on the market (*id*. at 52:17-56:3), market information relevant to the "feedback loop" (*see, e.g., id*. at 152:20-155:10) and the potential impact of hedging activity on loss causation and damages methodology (*see, e.g., id*. at 48:21-52:15; 56:5-60:4; 125:13-22; 135:1-11; 138:16-139:17).

---

[4] The Court again granted Plaintiffs' Motion to Compel, finding that the information sought was relevant. ECF No. 257.

***Sixth,*** Defendants' own expert included information on these claims in his report (*see*, *e.g.*, Hendershott Report ("Hendershott Rep."), ECF 240-4 at ¶¶ 24, 28, 32, 39-40, 44, 46, 72, 76) and was asked numerous questions regarding this topic at his deposition. *See, e.g.,* Eisenkraft Decl. Ex. D (Hendershott Dep.), ECF No. 285-4 at 92:10-21; 112:7-20. For example, Dr. Hendershott's report notes:

> Similarly, one of Plaintiffs' claims is that trading associated with hedging activity in the VIX futures markets could impact VIX futures prices. If this is correct, then hedging or trading in the VIX futures markets by other market participants besides Credit Suisse could also have affected the value of the VIX futures, and correspondingly of the XIV Notes, on February 5, 2018.

Hendershott Rep. at ¶ 72. *Compare* Am. Cmpl. ¶¶ 140-154.

***Seventh***, together with Plaintiffs, Defendants negotiated and submitted the operative CMO on March 10, 2023, which expressly stated that Plaintiffs intend to amend the complaint to conform to the evidence and provided a deadline for that amendment. ECF No. 258.

***Eighth***, Defendants themselves admit that they were aware that Plaintiffs intended to pursue the newly pled claims. For example, in Defendants' opposition to Plaintiffs' Motion to Compel the Rule 30(b)(6) deposition, they argued that Credit Suisse's lending of XIV Notes was sufficiently disclosed in the Bank's prospectus, implicitly conceding that they were aware that Plaintiffs intended to newly allege that those statements were false and misleading for the additional reason that they omitted to disclose the risks associated with the lending of XIV. ECF No. 241 at 2. *See* Am. Cmpl. ¶ 147. They also made clear that they were well aware of Plaintiffs' theory that it was "short sellers—not Defendants' hedging activity—that caused the problem." ECF No. 241 at 3. *See* Am. Cmpl. ¶ 146.[5] Similarly, in their opposition to Plaintiffs' Motion to

---

[5] To be clear, Plaintiffs allege that it was *both* Defendants' and these short sellers' activity—which Defendants' orchestrated and planned for—that caused XIV to crash.

11

Compel the unmasking of the CBOE data, Defendants again conveyed their understanding that Plaintiffs intended to pursue the newly amended claims, noting that Plaintiffs:

> now appear to be asserting that *other* market participants purchased VIX futures in amounts that allegedly drove up the price of XIV futures and drove down the value of the XIV notes, and that Credit Suisse allegedly knew (or was reckless in not knowing) that these other market participants were going to make these trades in the amounts, and over the time period, necessary to 'intentionally' collapse the XIV notes. According to Plaintiffs' new theory, these other market participants may have included persons who borrowed XIV notes from Credit Suisse to short XIV.

ECF No. 248 at 3. *See* Am. Cmpl. at ¶¶ 140-154.

Given that Defendants have been alerted to Plaintiffs' amended claims in many different ways for months and had ample opportunity to conduct their own discovery to form a defense[6], Defendants have impliedly consented to the amendment and are not prejudiced in any way. *See Hill v. Griffin*, No. 6:10-CV-06419 EAW, 2018 WL 5078255, at *2 (W.D.N.Y. October 18, 2018) (finding that defendants impliedly consented to the plaintiff's new claims because he "put [d]efendants on notice prior to the trial that he intended to pursue [the claim] in his amended Statement of Claims" and the defendant "raised no objection at that time"). That Defendants have (wrongly) argued that Plaintiffs' newly pled claims have not been established, does not negate that Defendants implicitly consented to their assertion. *Id*. ("Moreover, when discussing Defendants' motion for judgment as a matter of law [], the Court indicated that the due process claim was asserted [], and Defendants' counsel did not disagree with that proposition (though he did argue that no due process claim had been established)").

Finally, while the amended allegations are important, the Amended Complaint does not allege any new causes of action, that any new documents are false and misleading, or add any new

---

[6] Notably, Defendants failed to serve contention interrogatories in this case prior to the deadline.

12

defendants. Instead, the amendment only serves to expand the basis upon which Plaintiffs allege Defendants' filings were false and misleading, the manner in which Defendants engaged in their manipulative conduct, and to add evidence to revive a dismissed claim. As such, there can be "no showing of . . . prejudice to the defendants, given the minimal extent of the proposed changes." *Friedl*, 210 F.3d at 88. *See also Livingston v. Trustco Bank*, No. 120-CV-1030, 2021 WL 6199655, at *3 (N.D.N.Y. Apr. 23, 2021) ("To the extent that plaintiff's proposed amended complaint merely elaborates on its original claims, the Court believes that the interest of justice will be served by granting plaintiff's motion to amend.").

### 3. The Proposed Amendments are Not Futile

The additional allegations in the Third Amended Complaint are not futile. The burden for establishing futility is on Defendants. *See Doe v. Cnty. of Rockland*, 2022 WL 2533151, at *4 ("The opposing party must establish that granting leave to amend would be futile."). "[I]n making futility determinations, the court must limit itself to the allegations in the complaint, as well as to any documents attached to the complaint as exhibits or incorporated by reference." *Kiarie v. Dumbstruck, Inc.*, 473 F. Supp. 3d 350, 355–56 (S.D.N.Y. 2020). "Where a party opposes leave to amend on 'futility' grounds, the appropriate legal standard is whether the proposed [amendment] fails to state a claim, the traditional Fed. R. Civ. P. 12(b) standard." *Loc. 3621, EMS Offs. Union, DC-37, AFSCME, AFL-CIO v. City of N.Y.*, No. 18-CV-4476, 2021 WL 1750847, at *2 (S.D.N.Y. Feb. 3, 2021). The Second Circuit has held that leave to amend may be denied on the basis of futility only when it is "beyond doubt that the plaintiff can prove no set of facts in support of his amended claims." *Pangburn v. Culberston*, 200 F.3d 65, 71 (2d Cir. 1999) (citation and internal quotation marks omitted). The trial court will generally "not deny leave to amend based on futility unless the proposed amendment is clearly frivolous or legally insufficient." *Metcalf v.*

13

*TransPerfect Translations Int'l, Inc.*, No. 19-CV-10104, 2023 WL 2674743, at *4 (S.D.N.Y. Mar. 29, 2023).

Here, with respect to all of the claims except for the "Flatline Claim," the newly added allegations only expand the basis upon which Plaintiffs' allege Defendants' January Prospectus was false and misleading and elaborate on the manner in which Defendants engaged in their manipulative conduct, claims the Second Circuit has already ruled meets the motion to dismiss standard under the PSLRA. *See Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 77–78 (2d Cir. 2021). Consequently, these additions cannot be futile.

With respect to the Flatline Claim, the Second Circuit affirmed dismissal of that claim on scienter grounds because, at that time, the complaint did "not point to any 'specific reports or statements' showing that [Credit Suisse] could access this data [to calculate NAV]" and that it "would be unreasonable to infer that, despite this plain effort to reduce [Credit Suisse's] administrative burden, [Credit Suisse] nonetheless devoted resources to calculating a redundant pricing index for VIX futures contracts." *Set Cap. LLC*, 996 F.3d at 83–84. The amended allegations in the Third Amended Complaint provide exactly that missing information—documents and sworn testimony proving, among other things, that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Am. Cmpl. ¶¶ 235-242. Consequently, the amendment of the Flatline Claim is also not futile.

## IV.    CONCLUSION

For the above reasons, Plaintiffs' Motion for Leave to Amend the Complaint to Conform to the Evidence should be granted.

14

Dated: April 28, 2023                                                            Respectfully submitted,

/s/ *Michael B. Eisenkraft*
Michael B. Eisenkraft
Laura H. Posner
**COHEN MILSTEIN SELLERS
  & TOLL PLLC**
88 Pine Street
14th Floor
New York, NY 10005
Tel.: (212) 838-7797
Fax: (212) 838-7745
meisenkraft@cohenmilstein.com
lposner@cohenmilstein.com

Steven J. Toll (*pro hac vice*)
Brendan Schneiderman (*pro hac vice*)
1100 New York Ave. N.W., Fifth Floor
Washington, D.C. 20005
Tel.: (202) 408-3640
Fax: (202) 408-4699
stoll@cohenmilstein.com
bschneiderman@cohenmilstein.com

Carol V. Gilden
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Tel. (312) 357-0370
Fax: (312) 357-0369
cgilden@cohenmilstein.com

**LEVI & KORSINSKY, LLP**
Eduard Korsinsky
Nicholas I. Porritt
Adam M. Apton
55 Broadway, 10th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
ek@zlk.com
nporritt@zlk.com
aapton@zlk.com

**LEVI & KORSINSKY, LLP**

15

Alexander A. Krot III (*pro hac vice*)
1101 30th Street NW, Suite 115
Washington, D.C. 20007
Tel: (202) 524-4290
Fax: (212) 363-7171
akrot@zlk.com

*Counsel for Lead Plaintiffs and Co-Lead Counsel for the Classes*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Tel. (212) 697-6484
peretz@bgandg.com

*Additional Counsel for Apollo Asset Limited*