# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SET CAPITAL LLC, et al., Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiffs, | Case No.: 1:18-cv-02268-AT-SN |
| v. | |
| CREDIT SUISSE GROUP AG, CREDIT SUISSE AG, CREDIT SUISSE INTERNATIONAL, TIDJANE THIAM, DAVID R. MATHERS, JANUS HENDERSON GROUP PLC, JANUS INDEX & CALCULATION SERVICES LLC, and JANUS DISTRIBUTORS LLC d/b/a JANUS HENDERSON DISTRIBUTORS, | **LEAD PLAINTIFFS' AND SUDHEERA TRIPURANENI TRUST U/A DTD 11/16/2015'S MEMORANDUM OF LAW IN SUPPORT OF THEIR JOINT MOTION FOR CLASS CERTIFICATION OF THE MISREPRESENTATION AND MANIPULATION CLASSES** |
| Defendants. | |

## DEFINITION OF TERMS

**ETN** – Exchange Traded Note, an unsecured debt instrument traded on a major exchange that functions similarly to a promissory note. ETNs are one type of Exchange Traded Product ("ETP").

**ETP** – exchange traded product, of which ETNs are one type.

**Futures contract** – a contract representing a promise to buy or sell a particular commodity or financial instrument at a predetermined price at some future date.

**Offering Documents -** the Offering Documents are Credit Suisse's (i) January 29, 2018 pricing supplement (No. VLS ETN-1/A48) (the "January Supplement") filed with the SEC pursuant to Rule 424(b)(2) and in conjunction with (ii) Registration Statement No. 333-218604-02, (iii) prospectus supplement dated June 30, 2017, and (iv) prospectus dated June 30, 2017.

**VIX or VIX Index** – referred to as Wall Street's "fear index" or "fear gauge," the VIX or VIX Index measures market volatility by providing a value intended to reflect how much the market thinks the S&P 500 Index will fluctuate in the 30 days from the time of each tick of the VIX Index.

**VIX futures** – futures contracts that allow investors to trade and/or hedge an investment position based on their assessment of future market volatility.

**XIV** – The common name and trading ticker for VelocityShares Inverse VIX Short Term ETNs, issued by Credit Suisse, sold by Janus, and traded on the NASDAQ.

**XIVIV** – the ticker by which XIV's Intraday Indicative Value was transmitted.

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................................... 1

II.     THE COURT'S MARCH 16, 2023 CLASS CERTIFICATION ORDER........................ 4

III.    LEGAL ARGUMENT..................................................................................................... 8

      A.    A Separate Class Representative and Class Counsel for the Manipulation
          Class Eliminates the Court's Concerns Regarding a Potential Conflict................ 8

      B.    The Misrepresentation Class Should be Certified and the Lead Plaintiffs
          Appointed as its Class Representatives and their Counsel as its Class
          Counsel .............................................................................................................. 10

      C.    The Manipulation Class Should be Certified and the Trust Appointed as its
          Class Representative and its Counsel as its Class Counsel.................................. 13

IV.     THE COURT SHOULD APPOINT LEAD PLAINTIFFS' AND THE TRUST'S
      CHOICES OF COUNSEL TO REPRESENT THE RESPECTIVE CLASSES AS
      CLASS COUNSEL........................................................................................................ 16

V.      CONCLUSION............................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Buttar v. Elite Limousine Plus, Inc.*,
  Index No. 651088/2019, 2022 WL 912142 (Sup. Ct. N.Y. Mar. 29, 2022) ............................18

*Re Coll. Bound Consol. Litig.*,
  No. 93-cv-2348 (MBM), 1994 WL 236163 (S.D.N.Y. May 31, 1994)....................................13

*In re Deutsche Bank AG Sec. Litig.*,
  328 F.R.D. 71 (S.D.N.Y. 2018) ...............................................................................14, 15, 16

*In re Deutsche Telekom Ag Sec. Litig.*,
  229 F. Supp. 2d 277 (S.D.N.Y. 2002).......................................................................................13

*Dial Corp. v. News Corp.*,
  314 F.R.D. 108 (S.D.N.Y. 2015) .............................................................................................14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009).................................................................................................12, 13

*Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings,
  Inc.*,
  338 F.R.D. 205 (S.D.N.Y. 2021) .............................................................................................13

*Kaplan v. S.A.C. Cap. Advisors, L.P*,
  311 F.R.D. 373 (S.D.N.Y. 2015)...............................................................................................9

*Kleiner v. Cengage Learning Holdings II, Inc.*,
  66 F.4th 28 (1st Cir. 2023)........................................................................................................18

*Levie v. Sears, Roebuck & Co.*,
  496 F. Supp. 2d 944 (N.D. Ill. 2007) ........................................................................................9

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  299 F. Supp. 3d 430 (S.D.N.Y. 2018)......................................................................................10

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
  310 F.R.D. 230 (S.D.N.Y. 2015) .......................................................................................13, 15

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999)..................................................................................................................10

*In re Patriot Nat'l, Inc. Sec. Litig.*,
  828 F. App'x 760 (2d Cir. 2020) .............................................................................................12

*Set Capital LLC v. Credit Suisse Grp. AG*,
    996 F.3d 64 (2d Cir. 2021)....................................................................................................8

*Teachers Ret. Sys. of La. v. ACLN Ltd.*,
    No. 01-cv-11814-LAP, 2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) ...................................14

*In re Teva Sec. Litig.*,
    No. 3:17-cv-558 (SRU), 2021 WL 872156 (D. Conn. March 9, 2021)...................................13

*Wallace v. IntraLinks*,
    302 F.R.D. 310 (S.D.N.Y. 2014) ....................................................................................12, 13

iii

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiffs Set Capital LLC, Stefan Jager, Aleksandr Gamburg, and Apollo Asset Limited ("Lead Plaintiffs") and the Sudheera Tripuraneni Trust U/A DTD 11/16/2015 (the "Trust") (collectively, the "Proposed Class Representatives"), respectfully submit this Memorandum of Law in support of their joint motion to: (i) certify a class of all persons and entities that purchased or acquired the VelocityShares Inverse VIX Short Term Exchange Traded Notes ("XIV Notes," "Notes," or "XIV") between January 29, 2018, and February 5, 2018, inclusive (the "Misrepresentation Class Period"), and who were damaged thereby (the "Misrepresentation Class"); (ii) certify a class of all persons and entities that sold or redeemed XIV Notes on or after February 5, 2018, (the "Manipulation Class Period") and who were damaged thereby (the "Manipulation Class"); (iii) certify Lead Plaintiffs as representatives of the Misrepresentation Class; (iv) certify the Trust as the representative of the Manipulation Class; (v) appoint Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") and Levi & Korsinsky, LLP ("Levi Korsinsky" and, with Cohen Milstein, "Co-Lead Counsel") as Class Counsel for the Misrepresentation Class; and (vi) appoint the Trust's choice of counsel, Slarskey, LLC ("Slarskey"), as Class Counsel for the Manipulation Class.

In submitting this Memorandum in support of their motion, the Proposed Class Representatives incorporate by reference Lead Plaintiffs' initial Motion for Class Certification, filed on July 1, 2022, in its entirety, including the motion and Memorandum of Law in Support ("Memorandum") (Dkt. Nos. 178-79), the Declaration of Michael Eisenkraft dated July 1, 2022, and exhibits attached thereto (Dkt. No. 180), the Reply Memorandum of Law in Support of Motion for Class Certification (Dkt. No. 220), and the Declaration of Michael Eisenkraft dated December 16, 2022, and exhibits attached thereto (Dkt. No. 222) (collectively, the "Initial Motion").

## I.     INTRODUCTION

In the Initial Motion, Lead Plaintiffs moved to certify three classes: first, Lead Plaintiffs

moved to certify the Misrepresentation Class, defined as:

> all persons and entities that purchased or acquired VelocityShares Inverse VIX Short Term Exchange Traded Notes between January 29, 2018, and February 5, 2018, inclusive (the "Misrepresentation Class Period"), and who were damaged thereby).

Second, Lead Plaintiffs moved to certify the Manipulation Class defined as:

> all persons and entities that sold or redeemed the VelocityShares Inverse VIX Short Term Exchange Traded Notes on or after February 5, 2018 (the "Manipulation Class Period") and who were damaged thereby (the "10b-5(a) and (c) Class" and, together with the 10b-5(b) Class, the "Exchange Act Classes").

Third, Lead Plaintiffs moved to certify the "Securities Act Class" defined as:

> all persons and entities that purchased or acquired VelocityShares Inverse VIX Short Term Exchange Traded Notes pursuant to or traceable to Credit Suisse's Offering Documents, and were damaged thereby (the "Securities Act Class"). The Offering Documents are Credit Suisse's (i) January 29, 2018 pricing supplement (No. VLS ETN-1/A48) filed with the Securities and Exchange Commission ("SEC") pursuant to Rule 424(b)(2) and in conjunction with (ii) Registration Statement No. 333-218604-02, (iii) prospectus supplement dated June 30, 2017, and (iv) prospectus dated June 30, 2017.

Dkt. No. 179 at 4-5.

The Initial Motion explained in detail why each of the Classes fulfill, by a preponderance of the evidence, the Rule 23(b)(3) requirements of numerosity, commonality, typicality, adequacy, superiority and predominance. *See, e.g., id.* at 14-28; Dkt. No. 220 at 1. The Court, in its March 16 Order granting and denying in part the Initial Motion and denying Defendants' Motion to Exclude (Dkt. No. 260, the "Order"), largely agreed.  Specifically, among other things, the Court held that Lead Plaintiffs sufficiently demonstrated: (1) that the Securities Act Class met all of the requirements for certification (*id.* at 26); (2) that the numerosity and commonality requirements for both the Manipulation and Misrepresentation Classes were satisfied (*id.* at 18-19); (3) that Lead Plaintiffs and their counsel have adequately overseen this litigation (*id.* at 19-20, 22); (4) that the market for XIV

was efficient during the Class Period (*id.* at 9)[1]; and (4) that there was a common methodology for determining damages for both the Manipulation and Misrepresentation Classes (*id.* at 12-13). However, the Court held that Lead Plaintiffs had "not met the typicality and adequacy requirements by a preponderance of evidence for the Exchange Act Classes" due to a potential conflict from Lead Plaintiffs seeking to represent both the Manipulation and Misrepresentation Classes. *Id.* at 26.[2] As a result, the Court denied Lead Plaintiffs' Initial Motion seeking the certification of the Exchange Act Classes and the appointment of the Lead Plaintiffs as Class Representatives and of Co-Lead Counsel as Class Counsel for the proposed classes. *Id.* at 26-27. The Court, however, recognized that the conflict it identified was rectifiable and denied the motion without prejudice, expressly permitting motions to be refiled seeking the certification of the Misrepresentation Class and the Manipulation Class with one of the two Exchange Act Classes being represented by a new proposed class representative and a new proposed class counsel. *Id.* Lead Plaintiffs and the Trust now jointly bring this motion.

With the Trust and its independent counsel seeking to represent the Manipulation Class, the conflict issue identified by the Court in its Order is cured and the Exchange Act Classes meet all of the requirements for certification. As detailed herein, if this Motion is granted, the Manipulation Class will now have an entirely separate Class Representative and Class Counsel – the Trust and Slarskey, respectively – than the Misrepresentation and Securities Act Classes. With the Trust having purchased XIV Notes ***only*** prior to the Misrepresentation Class Period and holding the overwhelming majority of its XIV Notes throughout the entire Manipulation Class Period, until it was forced to sell at redemption, it is not a member of the Misrepresentation Class and has no interest even remotely

---

[1] Defendants did not challenge that the market for XIV Notes was efficient throughout the Class Period.  *Id.* at 9.

[2] Internal quotation marks and citations thereto omitted herein unless otherwise noted.

antagonistic to or at odds with the claims of the Misrepresentation Class. *See* Declaration of Michael Eisenkraft dated May 15, 2023 ("Eisenkraft Decl."), Ex. A (certification of the Trust listing applicable trades in XIV Notes). The Trust, therefore, is not subject to the same potential conflict discussed by the Court in the Order, as the Trust has an interest in ***only*** "arguing that . . . the losses experienced on February 5, 2018, were entirely the consequence of Defendants' allegedly manipulative conduct." *See* Order at 26. Moreover, as discussed below, the Trust is both adequate to represent the Manipulation Class and typical of its other Manipulation Class members. And its chosen counsel, Slarskey, is a firm experienced in litigating securities class actions that will adequately represent the interests of the Manipulation Class. Therefore, the Court should certify the Manipulation Class, appoint the Trust as the Class Representative of the Manipulation Class, and the Trust's counsel, Slarskey, as its Class Counsel.

With the elimination of the potential conflict that led the Court to deny without prejudice Lead Plaintiffs' Initial Motion, Lead Plaintiffs also seek certification of the Misrepresentation Class, their appointment as its Class Representatives, and the appointment of their counsel, Cohen Milstein and Levi Korsinsky, as the Misrepresentation Class's counsel. As courts in both the Second Circuit and throughout the country routinely hold, there is no conflict with the same lead plaintiff and class counsel representing both a Securities Act class and an Exchange Act misrepresentation class, particularly where, as here, the same alleged false statements and omissions form the basis for both claims. As such, the Misrepresentation Class too meets all of the requirements for certification.

Accordingly, the Motion should be granted in its entirety.

## II.   THE COURT'S MARCH 16, 2023 CLASS CERTIFICATION ORDER

On March 16, 2023, the Court entered an Order granting in part and denying in part Lead Plaintiffs' motion for class certification and appointment of class counsel. *Id.* at 26-27. In the Order, the Court analyzed whether Lead Plaintiffs had satisfied the necessary elements of Rule 23 to grant

4

the Initial Motion. *Id.* at 14-27.

Beginning its analysis with the Securities Act Class, the Court noted that "Defendants [did] not challenge that the proposed … Class satisfie[d] many of Rule 23's requirements, including numerosity, commonality, and superiority" but rather chose to focus on (1) whether individualized questions predominated over class-wide issues; (2) the ascertainability of the Class's members; and (3) whether "several of the class representatives suffer from various infirmities that preclude them from serving as class representatives." *Id.* at 18. The Court rejected each of Defendants' arguments. The Court found that "the proposed Securities Act Class satisfies the requirements of Rule 23(a)" – *i.e.*, numerosity, commonality, typicality, and adequacy – based on, among other things, the millions of XIV Notes outstanding and traded during the Class Period, the numerous questions common to all class members, including: "whether there were any misrepresentations or omissions in [the Offering Documents] and whether any such misrepresentations or omissions were material"; the fact that Lead Plaintiffs' claims "arise from the same series of events … as the claims of all of the remaining class members" because "Plaintiffs and the remaining class members all allege that Defendants misstated and omitted material facts in the Offering Documents", and the fact that "Plaintiffs' interests align with those of the proposed Securities Act Class," and "will fairly and adequately protect the interests of the proposed class." *Id.* at 18–19.

As to the requirements of Rule 23(b)(3), the Court concluded that "a class action is superior to other methods of adjudicating this controversy" because "the alternatives are either no recourse or thousands of stockholders or a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake," and found that Defendants' contentions regarding individualized questions were overstated. *Id.* at 20-22. First, as to the question of tracing, the Court held that "tracing is a merits issue that [it] need not consider at the class certification stage," and

5

furthermore that, while "traceability may require individualized inquiries, the potential for such inquiries alone does not defeat predominance[.]" *Id.* at 20-21. Second, the Court dismissed Defendants' argument that "'individualized inquiries into each investor's individual knowledge of the alleged misconduct' predominate over class-wide questions" because "news stories and other publicly available information raise issues of knowledge, actual or constructive, subject to generalized proof, and apply to the whole class." *Id.* at 21. As to ascertainability, the Court found that Defendants had conflated the operative legal standard – whether a class can be "defined using objective criteria that establish a membership with definite boundaries" – with a requirement that the court prematurely determine whether a proposed class is "administratively feasible." *See id.* at 18, 21-22. Finally, the Court found, without objection, that Lead Plaintiffs' chosen counsel were "able to fairly and adequately represent the interests of the proposed Securities Act Class." *Id.* at 22. Therefore, the Court certified the Securities Act Class, appointed Lead Plaintiffs as the Class Representatives for the Securities Act Class, and appointed the Co-Lead Counsel as the Class Counsel for the Securities Act Class. *Id.* at 22, 26.

The Court then conducted a similar analysis for Lead Plaintiffs' proposed Exchange Act Classes. The Court found "for substantially the same reasons [as] for the Securities Act Class," the numerosity and commonality requirements were satisfied for both Exchange Act Classes. *Id.* at 23. The Court also found that Lead Plaintiffs proposed a common methodology to be applied for determining damages for both Exchange Act Classes (*id.* at 10-13), and that the market for XIV was efficient throughout the Class Period – an element that Defendants conceded. *Id.* at 9.[3] In evaluating

---

[3] The Court's findings regarding commonality (that "numerous common questions to all class members, including "whether there were any misrepresentations or omissions in [the Offering Documents] and whether any such misrepresentations or omissions were material" (*id.* at 18) and rejecting Defendants' argument that "individualized inquiries into each investor's individual

the Lead Plaintiffs' typicality and adequacy, however, while the Court noted that "any potential seller-purchaser conflict is not grounds for denying class certification," as it is "a question for the damages stage of litigation, not class certification," the Court "agree[d] with Defendants that … the Misrepresentation and Manipulation Classes … are in direct conflict with each other." *Id.* at 24.[4]

Specifically, the Court held that "the total sum of out-of-pocket damages will be attributable either to the alleged artificial inflation from Defendants' misrepresentations or the alleged deflation from Defendants' manipulative conduct" and, as such, "damages calculated for … [the] Misrepresentation Class are higher if the price decline … is attributed to … the materialization of the risk … whereas damages calculated for the … Manipulation Class are higher if the price decline … is attributed to Defendants' manipulative conduct." *Id.* at 24-25. In other words, the Court reasoned that the recovery between the Misrepresentations and Manipulation Classes is a zero-sum game, and where in time the line is drawn between Defendants' misrepresentations (which had an inflationary impact on the price) and Defendants' manipulation (which had a deflationary impact on the price) puts the Classes in conflict. *See id.* at 24-26. Despite this finding, the Court made clear that this issue

---

knowledge of the alleged misconduct" do not predominate over class wide questions (*id.* at 21) and superiority ("a class action is superior to other methods of adjudicating this controversy" because "the alternatives are either no recourse or thousands of stockholders or a multiplicity and scattering of suits with the efficient administration of litigation which follows in its wake" (*id.* at 20), for the Securities Act Class are equally applicable to the Exchange Act Classes.

[4] Notably, however, the Court's findings regarding the typicality and adequacy of the Lead Plaintiffs as it pertains to the Securities Act Class (that Lead Plaintiffs' claims "arise from the same series of events … as the claims of all of the remaining class members" because "Plaintiffs and the remaining class members all allege that Defendants misstated and omitted material facts in the Offering Documents", (*id.* at 19) and that "Plaintiffs' interests align with those of the proposed Securities Act Class," and "will fairly and adequately protect the interests of the proposed class" (*id.*) are equally applicable to the Misrepresentation Class, as is the Court's finding that Cohen Milstein and Levi Korsinsky "are able to fairly and adequately represent the interests of the Securities Act Class." *Id.* at 22.

was not a fatal one. Rather, the Court noted that the motions to certify both Exchange Act Classes were denied "without prejudice to refiling by alternative class representatives and counsel[.]" *Id.* at 27.

## III.   LEGAL ARGUMENT

### A.   A Separate Class Representative and Class Counsel for the Manipulation Class Eliminates the Court's Concerns Regarding a Potential Conflict

In response to the Court's Order, the Trust now seeks appointment as Class Representative on behalf of the Manipulation Class and the appointment of the counsel it retained, Slarskey, as Class Counsel for the Manipulation Class. The addition of the Trust and Slarskey as separate and independent representatives and counsel for the Manipulation Class squarely addresses the Court's stated concern in the Order. As set forth herein, there is now ample basis for the Court to certify the Manipulation Class and appoint the Trust as its Class Representative and Slarskey as its Class Counsel.

As detailed in the proposed Consolidated Third Amended Class Action Complaint, Defendants' manipulative plan was "to rid itself of XIV while making hundreds of millions of dollars at investors' expense," having effectively "soaked the XIV market in gasoline throughout the fall of 2017 and early 2018," and needing only "a volatility spike to provide a spark." Dkt. No. 286-1 at ¶¶ 206-07; *see also id.* at ¶¶ 199-214. Defendants' machinations enabled Credit Suisse "to profit at its investors' expense and dramatically reduce the redemption costs it would have had to pay to investors as Credit Suisse continued driving a liquidity squeeze in the VIX futures market." *Id.* at ¶ 212; *see also Set Capital LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 79 (2d Cir. 2021) ("the complaint invites a reasonable inference that Credit Suisse increased the volume of XIV Notes for a manipulative purpose—specifically, to ensure that Credit Suisse's hedging trades would destroy the value of XIV Notes during the next volatility spike so that Credit Suisse could profit by declaring an

8

Acceleration Event").

The Manipulation Class is, therefore, a "seller class," meaning that Defendants' improper, manipulative misconduct caused the price of XIV Notes to decline and, as a result, Manipulation Class members "sold [or redeemed] at a price that was artificially lower than the investor should have received." *Levie v. Sears, Roebuck & Co.*, 496 F. Supp. 2d 944, 948 (N.D. Ill. 2007). Seller classes are routinely certified. *See, e.g., id.*; *see also Kaplan v. S.A.C. Cap. Advisors*, *L.P,* 311 F.R.D. 373, 376 (S.D.N.Y. 2015) (certifying "seller class" under the securities laws). In discussing its reasoning for not certifying the Manipulation and the Misrepresentation Classes due to typicality and adequacy concerns, the Court determined that the Manipulation Class—with class members' damages attributable to deflationary price movements caused by Defendants' manipulative conduct—is in tension with the Misrepresentation Class, wherein damages are attributable to artificial inflation caused by alleged misrepresentations. Order at 24-26. As evidenced by the Trust's certification, the Trust purchased its Notes on November 13, 2017—well ***before*** the artificial inflation was introduced into the market as a result of the alleged misrepresentations at issue in the Misrepresentation Class—and (aside from a sale of a portion of its holdings later in November 2017) sold its entire position in the XIV Notes on February 6, 2018, after the February 5 events for which the Manipulation Class seeks damages for the deflation of the XIV Notes, caused by Defendants' manipulative misconduct. *See* Eisenkraft Decl., Ex. A (Trust's certification attaching its trades in XIV Notes).[5]

Thus, as the Trust did not purchase XIV Notes during the Misrepresentation Class Period, it

---

[5] As the Court held regarding Lead Plaintiff Gamburg as it pertained to the Securities Act Class, the fact that a class representative may have sold some XIV Notes and even profited from those purchases prior to the end of the Class Period does not mean that the class representative is inadequate or atypical, particularly where, as here, the Trust held the majority of its XIV Notes through the end of the Class Period and suffered losses on those purchases. *See* Order at 19.

is not a member of the proposed Misrepresentation Class (and therefore did not purchase XIV Notes at the alleged artificially inflated prices as a result of the alleged misrepresentations in the Misrepresentation Class).[6]  Rather, the Trust is a member of ***only*** the proposed Manipulation Class by virtue of its sale of XIV Notes on February 6, 2018. Thus, the Trust has no interests in any class other than the Manipulation Class. Likewise, Slarskey, as the Trust's counsel, represents only the Trust and seeks to represent only the Manipulation Class.

In sum, the addition of the Trust and Slarskey as separate and independent representatives and counsel of the Manipulation Class obviates the Court's stated concerns regarding adequacy and typicality and provides ample basis for the Court to grant the present Motion and certify the Manipulation Class alongside the other Classes. In situations such as this, federal courts, including in this District, have readily recognized that any perceived conflict of interest may be addressed by the appointment of separate representatives or separate counsel. *See, e.g.*, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999) (subclass with separate class representatives and counsel eliminates any conflict of interest); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 464 (S.D.N.Y. 2018) ("[W]hen conflicts exist between class members, they can be cured by dividing the class into separate homogeneous subclasses ... with separate representation to eliminate conflicting interests.").

**B.    The Misrepresentation Class Should be Certified and the Lead Plaintiffs Appointed as its Class Representatives and their Counsel as its Class Counsel**

With the Court's concerns over a potential conflict between the Manipulation and Misrepresentation Class eliminated, no issues remain that would prevent the Court from certifying the Misrepresentation Class, appointing the Lead Plaintiffs as its Class Representatives, and Co-Lead

---

[6] The Trust is also not a member of the Securities Act Class as its purchases pre-date the January Offering.

10

Counsel as Class Counsel. Given the Court's findings in its Order, the only outstanding question is whether Lead Plaintiffs are typical and adequate to represent the Misrepresentation Class. The Court should find that these elements have been met for the reasons herein and for the reasons set forth in Lead Plaintiffs' Initial Motion.  *See* Dkt. No. 179 at 14-28; Dkt. No. 220 at 13.

First, in its Order, the Court found that the numerosity, commonality and superiority requirements were satisfied (Order at 22), that the market for XIV was efficient (*id.* at 9 ("Defendants [do not] challenge Mitts' opinion that the market for XIV was efficient[.]")) that the Misrepresentation Class's damages were subject to a common methodology (*id.* at 12-13, 18-20), and that Lead Plaintiffs had adequately overseen this litigation and had selected adequate counsel. *Id*. at 19-20.  In addition, its findings that Lead Plaintiffs' claims "arise from the same series of events … as the claims of all of the remaining class members" because "Plaintiffs and the remaining class members all allege that Defendants misstated and omitted material facts in the Offering Documents", and that "Plaintiffs' interests align with those of the proposed Securities Act Class," and "will fairly and adequately protect the interests of the proposed class" with regard to the Securities Act Class are equally applicable to the Misrepresentation Class. *Id*. at 19.

Second, as the Court recognized implicitly in its Order, no conflict exists between the Securities Act Class and the Misrepresentation Class. This is because where, as here, the two classes allege misconduct based on the same misstatements, with the addition of the "flatline" claim misstatements for the Misrepresentation Class (*see* Dkt. No. 286-1 at ¶¶ 266-82 (alleging misstatements in the Offering Documents as basis for Misrepresentation Class claims); *id.* at ¶¶ 332-51 (alleging misstatements in the Offering Documents as basis for Securities Act claims)), the interests of the two classes pull entirely in the same direction and the Court's concerns in its Order about diametrically opposed interests regarding the Manipulation Class and Misrepresentation Class

11

do not exist.

As such, both the Securities Act Class's and Misrepresentation Class's interests are aligned in showing that they purchased a security at a price higher than they should have paid, due to the alleged misstatements and omissions.[7] Here, the members of both the Securities Act and Misrepresentation Classes are also incentivized to show that the decline in the price of the XIV Notes was the result of alleged misstatements and omissions and not some other cause. Thus, no conflict exists between these two Classes that will prevent the appointment of the Lead Plaintiffs as the Class Representatives for both the Securities Act and Misrepresentation Classes and of Co-Lead Counsel as Class Counsel for the Securities Act and Misrepresentation Classes. *See, e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 574 F.3d 29, 36-37 (2d Cir. 2009) (affirming in relevant part the district court's order of typicality, noting that "that any antagonistic interests with respect to causation do not constitute the type of 'fundamental' conflict that renders the class uncertifiable"); *Wallace v. IntraLinks*, 302 F.R.D. 310, 319 (S.D.N.Y. 2014) (appointing one plaintiff as class representative for both Exchange Act class and Securities Act sub-class and its counsel, Cohen Milstein, as Class Counsel).

Therefore, it is not surprising that courts in this and other Districts routinely certify misrepresentation classes arising under Section 10(b) of the Exchange Act and Section 11 of the Securities Act that share the same class representatives and class counsel. *See, e.g.*, *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 764-65 (2d Cir. 2020) (in class action settling Exchange

---

[7] Although loss causation is not an element of a Section 11 claim, Defendants may raise a "negative causation" defense. *See* 15 U.S.C. §77l(b) (providing loss causation defense to reduce damages "if the person who offered or sold such security proves that any portion or all of the amount recoverable . . represents other than the depreciation in value of the subject security resulting from such part of the prospectus or oral communication, with respect to which the liability of that person is asserted, not being true or omitting to state a material fact….").

Act and Securities Act claims by the same class representatives and counsel and affirming district court's finding of adequacy as "no fundamental conflict among the class members such that sub-classing was required" as "all of the lead plaintiffs and every shareholder had an Exchange Act claim"); *In re Flag Telecom Holdings* (affirming district court's holding that no sub-classing was necessary because the Securities Act and Exchange Act claims were not antagonistic to each other); *Re Coll. Bound Consol. Litig.*, No. 93-cv-2348 (MBM), 1994 WL 236163 (S.D.N.Y. May 31, 1994) (declining to require subclasses for the Exchange Act and Securities Act claims and appointing plaintiffs as class representatives for claims under both Acts); *In re Deutsche Telekom Ag Sec. Litig.*, 229 F. Supp. 2d 277, 283 (S.D.N.Y. 2002) (same); *In re Teva Sec. Litig.*, No. 3:17-CV-558 (SRU), 2021 WL 872156, at *42 (D. Conn. Mar. 9, 2021) (certifying class that includes Securities and Exchange Act claims); *Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*, 338 F.R.D. 205, 219 (S.D.N.Y. 2021) (certifying Exchange Act and Securities Act classes and appointing the same plaintiffs and counsel as the class representatives and class counsel for both classes); *Wallace*, 302 F.R.D. at 319 (same).

Therefore, for the reasons detailed by Lead Plaintiffs in the Initial Motion and herein, Lead Plaintiffs have made the requisite showing and meet all of Rule 23's requirements to certify the Misrepresentation Class.

### C.   The Manipulation Class Should be Certified and the Trust Appointed as its Class Representative and its Counsel as its Class Counsel

As previously set forth in the Initial Motion, typicality under Rule 23(a)(3) requires "only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class."  Dkt. No. 179 at 12 (quoting *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 236 (S.D.N.Y. 2015)).  The "claims only need to share the same essential characteristics, and need not be identical[.]" *Dial Corp. v. News*

*Corp.*, 314 F.R.D. 108, 113 (S.D.N.Y. 2015).  When determining whether the claims are typical, "the focus must be on the defendants' behavior and not that of the plaintiffs."  *Teachers Ret. Sys. of La. v. ACLN Ltd.*, No. 01-cv-11814-LAP, 2004 WL 2997957, at *4 (S.D.N.Y. Dec. 27, 2004).  Courts in this district have emphasized that the typicality requirement is "not demanding."  *In re Deutsche Bank AG Sec. Litig.*, 328 F.R.D. 71, 80 (S.D.N.Y. 2018).  Here, this threshold is easily met as the Trust's claims are typical of the claims of all other proposed Class members in the Manipulation Class.

In the Order, the Court already determined that the Manipulation Class, like the Securities Act Class and the Misrepresentation Class, satisfies the numerosity and commonality requirements of Rule 23(a).  Order at 23.  In addition, the Court found that there was a common methodology for determining damages for the Exchange Act Classes.  *Id.* at 12-13, 18-20.  Finally, the Court already determined that the market for XIV was efficient.  *Id.* at 9 ("Defendants [do not] challenge Mitts' opinion that the market for XIV was efficient[.]").

Thus, like for the Misrepresentation Class, the only outstanding issue is whether the proposed Class Representative is typical and adequate to represent the Manipulation Class.  Here, the Trust is both typical and adequate.

First, the Trust did not purchase XIV Notes artificially inflated by the alleged January 29, 2018 misrepresentations (and could not have, given the timing of its transactions), so the Trust is a member only of the Manipulation Class and not of the Misrepresentation Class. Although there may be members of the Manipulation Class who are also members of the Securities Act Class and/or the Misrepresentation Class, the Trust (as a member of only the Manipulation Class) is interested in maximizing damages attributable to Defendants' manipulative misconduct only. Likewise, Slarskey represents only the Manipulation Class and not the Misrepresentation or Securities Act Classes and is, therefore, likewise motivated. Given that the Trust and the Manipulation Class's claims are

14

based upon the very same facts and legal theories and will be proven by the same evidence, typicality is satisfied, as courts regularly find under similar circumstances.  *See, e.g.*, *In re Deutsche Bank AG Sec. Litig.*, 328 F.R.D. at 81 (finding typicality where the "Court has found that all class members' claims arise from a single common course of conduct committed against all members of the class").  Also, there are no defenses unique to the Trust. *See* Order at 19 (holding that in and out trading does not render a class representative inadequate or atypical).  *See also MF GlobHoldings*, 310 F.R.D. at 236-37 (finding in the absence of sufficient evidence, no unique defense present).

Second, the Trust and Slarskey are more than adequate to represent the interests of the Manipulation Class. The Trust does not have any interests that are antagonistic to the interests of other members of the Manipulation Class, and it has selected qualified and experienced counsel that is able to undertake the litigation.  *See, e.g.*, *In re Deutsche Bank AG Sec. Litig.*, 328 F.R.D. at 81-84. Moreover, the Trust has taken time to inform itself about the nature of the case, is committed to maximizing the recovery on behalf of the Manipulation Class, will closely monitor the litigation, and will oversee Slarskey's prosecution of claims on behalf of the Manipulation Class. *See* Eisenkraft Decl., Ex. B (Declaration by Trustee of the Trust).

Indeed, even before deciding to move for appointment as a class representative, the Trust monitored the litigation and communicated with Lead Counsel regarding the status of the case and the efforts to maximize recoveries to injured investors in the Notes. Furthermore, as detailed in Ms. Tripuraneni's accompanying declaration, she intends to continue to review pleadings and other court filings, participate in litigation decisions, and monitor counsel, all while prosecuting the case in the best interests of the Manipulation Class.  Ms. Tripuraneni has also conferred with the Court-appointed Class Representatives of the Securities Act Class and Manipulation Class, and

15

is prepared to further confer with those Class Representatives as appropriate as the litigation proceeds. *See id.* And there is no conflict between the interests of the Trust, which is focused on maximizing recovery to the Manipulation Class, and other members of the Manipulation Class, each of whom will recover their fair, proportionate share of any recovery. The Trust accordingly has the "same set of concerns" as other members of the Manipulation Class. *Deutsche Bank*, 328 F.R.D. at 82.

Additionally, the Trust has also satisfied the adequacy element by selecting Slarskey as its counsel who will vigorously prosecute this action and has extensive experience in successfully representing investors in securities class actions. *See infra* Section IV. Thus, both elements of Rule 23(a)(4) are met.

## IV.   THE COURT SHOULD APPOINT LEAD PLAINTIFFS' AND THE TRUST'S CHOICES OF COUNSEL TO REPRESENT THE RESPECTIVE CLASSES AS CLASS COUNSEL.

In addition to the Co-Lead Counsel's and Slarskey's satisfaction of Rule 23(a)(4)'s requirement that they will "fairly and adequately represent the interests of the class," the factors enumerated in Rule 23(g) weigh in favor of appointing Cohen Milstein and Levi Korsinsky as Class Counsel for the Misrepresentation Class and Slarskey as Class Counsel for the Manipulation Class.

As the Court has already recognized, Cohen Milstein and Levi Korsinsky satisfy these criteria because, among other reasons, they have "diligently investigated the claims in this case, drafted a detailed complaint, survived a motion to dismiss on appeal, and have further investigated the claims in discovery." Order at 22. Additionally, they have extensive experience in class action litigation. *Id. See also* Eisenkraft Decl., Exs. C and D (Cohen Milstein's and Levi Korsinsky's firm resumes).

Moreover, as evidenced by its firm resume, Slarskey, a New York-based litigation

boutique, is well qualified to represent the Manipulation Class. The firm's attorneys have extensive experience representing investors in securities class actions, as well as representing investors and other clients raising individual and class claims in complex commercial litigation matters.  *See* Eisenkraft Decl., Ex. E (Slarskey firm resume).  Adam Hollander recently joined Slarskey as a partner after a decade at a leading national securities class action firm, where he served as a partner. Prior to entering private practice, Mr. Hollander graduated from Yale Law School and served as a federal judicial law clerk on the U.S. Court of Appeals for the Second Circuit and in the U.S. District Court for the District of Connecticut.  He was a senior member of litigation teams that recovered over $700 million for investors, including multiple settlements of $100 million or greater, in this District and others.  *See, e.g.*, *Woburn Ret. Sys. v. Salix Pharms., Ltd.*, Case No. 1:14-cv-08925-KMW (S.D.N.Y.) ($210 million recovery); *Lehigh Cnty. Emps.' Ret. Sys. v. Novo Nordisk A/S*, Case No. 3:17-cv-00209-ZNQ (D.N.J.) ($100 million recovery after summary judgment fully briefed); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, Case No. 3:15-md-02672-CRB (N.D. Cal.) ($48.5 million recovery); *In re SunEdison, Inc. Sec. Litig.*, Case No. 1:16-md-02742-PKC ($74 million recovery on behalf of investors raising Securities Act and Exchange Act claims concerning bankrupt issuer); *Bach v. Amedisys*, Case No. 3:10-cv-00395-BAJ (M.D. La.) ($43.75 million recovery following successful appeal to Fifth Circuit).

In addition to Mr. Hollander's experience, Slarskey lawyers have successfully represented clients in complex matters, at both trial and appellate levels, in federal and state courts and alternative dispute resolution fora.  *See* Eisenkraft Decl., Ex. E.  Slarskey's recent notable successes include securing a reversal in the U.S. Court of Appeals for the First Circuit of the district court's dismissal of a class action alleging unfair and deceptive business practices and accounting

malfeasance, *Kleiner v. Cengage Learning Holdings II, Inc.*, 66 F.4th 28, (1st Cir. 2023), and securing class certification on behalf of a class of black car drivers seeking to enforce their franchise rights, with Slarskey appointed class counsel, *Buttar v. Elite Limousine Plus, Inc.*, Index No. 651088/2019, 2022 WL 912142, at *16 (Sup. Ct. N.Y. Mar. 29, 2022).  Slarskey also has served as counsel in other class and collective actions, including *Lobbe v. Cablevision Systems*, Case No. 1:16-cv-2207-AKH (S.D.N.Y.); *Knox v. Cengage Learning Holdings II*, Case No. 1:18-cv-4292-GBD (S.D.N.Y.); *Orion Property Group, LLC v. Hjelle*, Case No. 2:19-cv-00044-JS (E.D.N.Y.); and *Hull v. Cengage Learning Holdings II, Inc.*, No. 19-cv-7662 (S.D.N.Y.).

Since becoming involved with this litigation, Slarskey has acted diligently in preparing to represent the interests of the Manipulation Class by reviewing the pleadings and other publicly available information, and having extensive discussions with Lead Counsel concerning the status of the litigation and the need for the Manipulation Class to be adequately represented by experienced, independent counsel. Additionally, Slarskey has the resources to effectively pursue and vigorously prosecute those claims on behalf of the Manipulation Class.

Thus, the requirements of Rule 23(a)(4) and 23(g) are satisfied. Accordingly, the Lead Plaintiffs respectfully submit that their choice of counsel, Cohen Milstein and Levi Korsinsky, be appointed as the Class Counsel for the Misrepresentation Class. Similarly, the Trust respectfully submits that its choice of counsel, Slarskey, be appointed as the Class Counsel for the Manipulation Class.

## V.     CONCLUSION

For the foregoing reasons, Lead Plaintiffs and the Trust respectfully request that the Court: (i) certify the Misrepresentation and Manipulation Classes as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure; (ii) certify Lead Plaintiffs as representatives of the proposed Misrepresentation Class; (iii) certify the Trust as the representative of the proposed

Manipulation Class; (iv) appoint Cohen Milstein and Levi Korsinsky as Class Counsel for the proposed Misrepresentation Class; and (v) appoint Slarskey as Class Counsel for the proposed Misrepresentation Class.

Dated: May 15, 2023                                    Respectfully submitted,

                                                       /s/ *Michael B. Eisenkraft*
                                                       Michael B. Eisenkraft
                                                       Laura H. Posner
                                                       **COHEN MILSTEIN SELLERS**
                                                       **& TOLL PLLC**
                                                       88 Pine Street
                                                       14th Floor
                                                       New York, NY 10005
                                                       Tel.: (212) 838-7797
                                                       Fax: (212) 838-7745
                                                       meisenkraft@cohenmilstein.com
                                                       lposner@cohenmilstein.com

                                                       Steven J. Toll (*pro hac vice*)
                                                       Brendan Schneiderman (*pro hac vice*)
                                                       1100 New York Ave. N.W., Fifth Floor
                                                       Washington, D.C. 20005
                                                       Tel.: (202) 408-3640
                                                       Fax: (202) 408-4699
                                                       stoll@cohenmilstein.com
                                                       bschneiderman@cohenmilstein.com

                                                       Carol V. Gilden
                                                       190 South LaSalle Street, Suite 1705
                                                       Chicago, IL 60603
                                                       Tel. (312) 357-0370
                                                       Fax: (312) 357-0369
                                                       cgilden@cohenmilstein.com

                                                       **LEVI & KORSINSKY, LLP**
                                                       Eduard Korsinsky
                                                       Nicholas I. Porritt
                                                       Adam M. Apton
                                                       55 Broadway, 4th Floor
                                                       Suite #427
                                                       New York, NY 10006
                                                       Tel: (212) 363-7500

Fax: (212) 363-7171
ek@zlk.com
nporritt@zlk.com
aapton@zlk.com

**LEVI & KORSINSKY, LLP**
Alexander A. Krot III (*pro hac vice*)
1101 Vermont Ave, NW
Suite 700
Washington, DC 20005
Tel: (202) 524-4290
Fax: (212) 363-7171
akrot@zlk.com

*Counsel for Lead Plaintiffs, Class Counsel
for the Securities Act Class, and Proposed
Class Counsel for the Misrepresentation
Class*

**BRONSTEIN, GEWIRTZ &
GROSSMAN,
LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Tel. (212) 697-6484
peretz@bgandg.com
*Additional Counsel for Lead Plaintiff Apollo
Asset Limited*

-and-

*/s/ Adam Hollander*
**SLARSKEY LLC**
Adam Hollander
767 Third Avenue, 14th Floor
New York, NY 10017
Tel: (212) 658-0661
ahollander@slarskey.com

*Counsel for the Sudheera Tripuraneni Trust
U/A DTD 11/16/2015 and Proposed Class
Counsel for the Manipulation Class*

20