**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SET CAPITAL LLC, et al., Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiffs, | Case No.: 1:18-cv-02268-AT-SN |
| v. | |
| CREDIT SUISSE GROUP AG, CREDIT SUISSE AG, CREDIT SUISSE INTERNATIONAL, TIDJANE THIAM, DAVID R. MATHERS, JANUS HENDERSON GROUP PLC, JANUS INDEX & CALCULATION SERVICES LLC, and JANUS DISTRIBUTORS LLC d/b/a JANUS HENDERSON DISTRIBUTORS, | **LEAD PLAINTIFFS' AND SUDHEERA TRIPURANENI TRUST U/A DTD 11/16/2015'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR JOINT MOTION FOR CLASS CERTIFICATION OF THE MISREPRESENTATION AND MANIPULATION CLASSES** |
| Defendants. | |

## DEFINITION OF TERMS

**ETN** – Exchange Traded Note, an unsecured debt instrument traded on a major exchange that functions similarly to a promissory note. ETNs are one type of Exchange Traded Product ("ETP").

**ETP** – exchange traded product, of which ETNs are one type.

**Futures contract** – a contract representing a promise to buy or sell a particular commodity or financial instrument at a predetermined price at some future date.

**Offering Documents -** the Offering Documents are Credit Suisse's (i) January 29, 2018 pricing supplement (No. VLS ETN-1/A48) (the "January Supplement") filed with the SEC pursuant to Rule 424(b)(2) and in conjunction with (ii) Registration Statement No. 333-218604-02, (iii) prospectus supplement dated June 30, 2017, and (iv) prospectus dated June 30, 2017.

**VIX or VIX Index** – referred to as Wall Street's "fear index" or "fear gauge," the VIX or VIX Index measures market volatility by providing a value intended to reflect how much the market thinks the S&P 500 Index will fluctuate in the 30 days from the time of each tick of the VIX Index.

**VIX futures** – futures contracts that allow investors to trade and/or hedge an investment position based on their assessment of future market volatility.

**XIV** – The common name and trading ticker for VelocityShares Inverse VIX Short Term ETNs, issued by Credit Suisse, sold by Janus, and traded on the NASDAQ.

**XIVIV** – the ticker by which XIV's Intraday Indicative Value was transmitted.

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ............................................................................................ 1

II.  LEGAL ARGUMENT ................................................................................... 2

    A.   The Substitution of the Trust as Class Representative and Slarskey as
    Class Counsel for the Manipulation Class Fully Addresses the Court's
    Conflict Concerns ................................................................................... 2

    B.   The Trust Is an Adequate Class Representative, and Slarskey Is Adequate
    Class Counsel for the Manipulation Class .............................................. 6

        1.   The Trust and Slarskey Are Independent ................................... 6

        2.   The Trust Understands the Manipulation Class's Claims and its
        Obligations to Manipulation Class Members ............................ 9

        3.   The Trust and Slarskey's Relationship with Lead Plaintiffs and
        Lead Counsel Is Consistent with Their Representation of the
        Manipulation Class ................................................................... 11

    C.   Common Issues Predominate ................................................................. 13

III. CONCLUSION ............................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*,
    568 U.S. 455 (2013)................................................................................................................15, 16

*In re Avon Sec. Litig.*,
    1998 WL 834366 (S.D.N.Y. Nov. 30, 1998).................................................................11, 12

*Baffa v. Donaldson*,
    222 F.3d 52 (2d Cir. 2000)...................................................................................................6, 9, 11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009)..........................................................................................................6

*GAMCO Invs., Inc. v. Vivendi, S.A.*,
    927 F. Supp. 2d 88 (S.D.N.Y. 2013)........................................................................................15

*Garcia De León v. NY. Univ.*,
    2022 WL 2237452 (S.D.N.Y. June 22, 2022) ...........................................................................3

*Gordon v. Sonar Capital Management LLC*,
    92 F. Supp. 3d 193 (S.D.N.Y. 2015)........................................................................................13

*Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Entm't Holdings, Inc.*,
    338 F.R.D. 205 (S.D.N.Y. 2021) .....................................................................................6, 9, 10

*In re IMAX Securities Litigation*,
    272 F.R.D. 138 (S.D.N.Y. 2010) ..............................................................................................13

*In re Initial Public Offerings Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006)........................................................................................................16

*In re Ins. Brokerage Antitrust Litig.*,
    579 F.3d 241 (3d Cir. 2009).......................................................................................................8

*In re Ivan F. Boesky Sec. Litig.*,
    120 F.R.D. 626 (S.D.N.Y. 1988) ...............................................................................................4

*Lapin v. Goldman Sachs & Co.*,
    254 F.R.D. 168 (S.D.N.Y. Sept. 15, 2008) ...............................................................................9

*In re Livent, Inc. Noteholders Sec. Litig.*,
    211 F.R.D. 219 (S.D.N.Y. 2002) ..............................................................................................16

*Mevorah v. Wells Fargo Home Mortg., Inc.*,
   2005 WL 4813532 (N.D. Cal. Nov. 17, 2005) .......................................................................12

*Nabi v. Hudson Grp. (HG) Retail, LLC*,
   310 F.R.D. 119 (S.D.N.Y. 2015) ..........................................................................................3

*In re Petrobras Sec. Litig.*,
   317 F. Supp. 3d 858 (S.D.N.Y. 2018)................................................................................2, 7

*Sanchez v. N.Y. Kimchi Catering Corp.*,
   320 F.R.D. 366 (S.D.N.Y. 2017) ..........................................................................................3

*Surowitz v. Hilton Hotels Corp.*,
   383 U.S. 363 (1966).............................................................................................................11

*Vadai v. Dun & Bradstreet Credibility Corp.*,
   302 F.R.D. 308 (S.D.N.Y. 2014) ..........................................................................................3

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
   2017 WL 2062985 (S.D.N.Y. May 15, 2017) .......................................................................15

*Wilson v. LSB Indus., Inc.*,
   2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018)......................................................................13

*Yi Xiang v. Inovalon Holdings, Inc.*,
   327 F.R.D. 510 (S.D.N.Y. 2018) ........................................................................................15

*Zimmerman v. Bell*,
   800 F.2d 386 (4th Cir. 1986) ...............................................................................................16

## I.    INTRODUCTION

Because Plaintiffs satisfy Rule 23's requirements—including through the addition of the Trust and its counsel—the Exchange Act Classes should be certified, so that this case may proceed apace.  In its earlier Order, ECF No. 260 (the "Order"), the Court held that due to conflicting damages theories of the Manipulation and Misrepresentation Classes, Lead Plaintiffs and their counsel could not adequately represent both classes.  To resolve that conflict, the Court allowed Lead Plaintiffs to refile the present Motion "by alternative class representatives and counsel," which they did.  *See* ECF No. 300 ("Motion" or "Mot.").  The addition of the Trust (a member of only the Manipulation Class) and its independent counsel directly addresses the Court's concerns, as they have and will continue to independently and zealously represent the Manipulation Class's interests.    Lead Plaintiffs and Lead Counsel, now tasked only with representing the Misrepresentation and Securities Act claims—classes which are routinely certified while represented by the same plaintiff and counsel—have and will do the same for the members of those classes.

Defendants attack the Trust's adequacy, and baselessly contend that it is not independent merely because the Trust previously contacted Lead Counsel for updates and to ensure it would participate in any recovery.  *See* ECF 317 ("Opp.").  But that fact demonstrates the Trust's interest in the litigation and intent to maximize the Manipulation Class's recovery, as do the Trust's sworn statements.  Contrary to Defendants' assertion, the Trust understands the Manipulation Class's claims and underlying facts, and its reliance on its chosen counsel is wholly appropriate.

Defendants' remaining arguments likewise fail.  The Misrepresentation Class's interests are entirely aligned with the Securities Act Class, and neither applicable law nor the Court's Order requires independent representation for those classes.  Moreover, because XIV Notes traded in an efficient market that was presumed to be free of manipulation, and because the public information

1

that Defendants wrongly contend informed investors they were being defrauded raises common

rather than individualized questions, Plaintiffs satisfy Rule 23(b)'s predominance requirement.

Defendants' arguments should be rejected, and the class certification Motion granted.

## II.   LEGAL ARGUMENT

### A.   The Substitution of the Trust as Class Representative and Slarskey as Class Counsel for the Manipulation Class Fully Addresses the Court's Conflict Concerns

The substitution of the Trust as the independent class representative and Slarskey as the

independent class counsel for the Manipulation Class resolves the conflict concerns identified in

the Court's Order and follows the Court's direction to "refil[e] [the Motion] by alternative class

representatives and counsel."   Order at 26.   The Trust and Slarskey provide the necessary

"structural assurance of fair and adequate representation" that governing law requires.   *In re

Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 867 (S.D.N.Y. 2018); *see also id.* at 869-70 (certifying

settlement class where three named plaintiffs were represented by separate counsel, and plaintiffs

with different claims had "no plausible reason to agree to disadvantageous settlement terms").

Defendants' bogus arguments otherwise lack merit.   First, Defendants argue that "at least

one proposed class representative for the Misrepresentation Class must . . . be a member of ***only***

the Misrepresentation Class, and at least one proposed class representative for the Manipulation

Class must . . . be a member of ***only*** the Manipulation Class"—in other words, that Lead Plaintiffs

can represent ***neither*** Exchange Act Class, despite being members of both.   Opp. at 2 & 11.

Defendants do not quote the Order for this position, because the Order does not say it.   Instead,

the Court held that Lead Plaintiffs could not represent "***both*** the Misrepresentation and

Manipulation Classes because conflict between the classes is fundamental."   Order at 26 (emphasis

2

added).[1]  Plaintiffs addressed this issue by substituting alternative class representatives and counsel

for the Manipulation Class.  Nothing in either this Court's Order or governing law disqualifies

class members like Lead Plaintiffs from leading the Misrepresentation Class merely because they

have Manipulation Claims as well—especially where, as here, ***almost all*** of the classes' members

likely have ***both*** manipulation and misrepresentation claims.[2]

     <u>Second</u>, Defendants argue that "Lead Plaintiffs are still members of both classes and so

have interests that are antagonistic to other class members, *i.e.*, to those plaintiffs who are ***only*** in

the Misrepresentation Class."  Opp. at 12.  This is also wrong.[3]  The incentives of the Manipulation

---

[1] If Defendants' interpretation of the Order is correct, Plaintiffs request that the Motion be denied without prejudice, such that they may refile in accordance with the Court's wishes.  When courts in this District reject motions for class certification, they regularly do so without prejudice to renewal.  *See, e.g.*, *Sanchez v. N.Y. Kimchi Catering, Corp.*, 320 F.R.D. 366, 375 (S.D.N.Y. 2017); *Nabi v. Hudson Grp. (HG) Retail, LLC*, 310 F.R.D. 119, 125 (S.D.N.Y. 2015); *Vadai v. Dun & Bradstreet Credibility Corp.*, 302 F.R.D. 308, 309 (S.D.N.Y. 2014).  Defendants provide no argument otherwise, and indeed their authorities also feature class certification denial without prejudice. *See, e.g.*, *Garcia De León v. N.Y. Univ.*, No. 21 Civ 05005 (CM), 2022 WL 2237452, at *14 (S.D.N.Y. June 22, 2022).

[2] A plaintiff who is a member of ***only*** the Misrepresentation Class would be one who bought XIV on or after January 29, 2018, but sold before Credit Suisse's manipulation began deflating the price of XIV on February 5, 2018, and ***was damaged thereby***.  But, as Plaintiffs allege in the Proposed Third Amended Complaint, many XIV investors held their Notes for long periods of time.  *See* ECF No. 305-001 ("PTAC") ¶¶ 91-99.  Thus, the likelihood that any one investor would have bought and sold XIV in just a week's time (before the price cratered on February 5) is small. That said plaintiff must have sold XIV at a loss, despite the price of XIV largely increasing prior to February 5, renders the pool of such individuals *de minimis*, if they exist at all.

[3] Defendants' cited authorities are easily distinguishable.  *Garcia De León*, a breach of contract suit that did not include buyer or seller classes, featured many reasons not present here for why the plaintiff was inadequate to represent the class, including failure to disclose all of the firms engaged to represent her and failure to comply with the court's class-related discovery schedule.  2022 WL 2237452, at *6-9.  In *Tolbert v. RBC Cap. Mkts. Corp.*, a Southern District of Texas case, the court found other Rule 23 deficiencies such as numerosity, commonality, and typicality and, with respect to adequacy, the court's primary concern was that some members of the class had suffered no injury in fact.  No. Civ. A. H-11-0107, 2016 WL 3034497, at *7 (S.D. Tex. May 26, 2016).  In *Talley v. ARINC, Inc.*, an employment discrimination suit, the court found commonality and typicality were lacking, and found "multiple conflicts," including that lead plaintiffs were responsible for investigating discrimination at the company. 222 F.R.D. 260, 269 (D. Md. 2004).

and Misrepresentation Classes are generally aligned.  Both classes intend to establish that Credit Suisse knew that XIV was a ticking time bomb, that Defendants engaged in a scheme to mislead the public regarding XIV's risk, and then run XIV's value into the ground on February 5, and that Credit Suisse saved itself many millions of dollars by carrying out this scheme.

If the interests of the Manipulation and Misrepresentation Classes do diverge at any point, the fiduciary duties of the respective class representatives and their counsel are pellucid and understood by all.  Lead Counsel and Lead Plaintiffs have a fiduciary duty to advocate for the interests of the Misrepresentation Class, and the Trust and Slarskey have a fiduciary duty to advocate for the interests of the Manipulation Class.  Defendants cite no record facts supporting their assertion that the Lead Plaintiffs would be unable to fulfill their fiduciary duties as Class Representatives of the Misrepresentation Class in that scenario, and courts regularly certify classes where class representatives possess both manipulation and misrepresentation claims.  *See, e.g.*, *In re Ivan F. Boesky Sec. Litig.*, 120 F.R.D. 626, 628 (S.D.N.Y. 1988) (certifying class alleging manipulation and misrepresentations, without finding conflict between the two); *Dietrich v. Bauer*, 192 F.R.D. 119, 124 (S.D.N.Y. 2000) (certifying class and noting that "the overlapping and interlacing nature of the schemes alleged means that many of the victims of one will also be victims of the other").  Moreover, it is routinely the case that courts certify classes where the same plaintiff and counsel represent both Section 10(b) and Section 11 classes – like proposed here – despite the fact that the theories of damages of those claims could potentially be in conflict or overlapping.  *See, e.g.*, *Re Coll. Bound Consol. Litig.*, No. 93-CIV-2348 (MBM), 1994 WL 236163, at *1 (S.D.N.Y. May 31, 1994) (certifying class with Section 10b and Section 11 claims represented by same class representative); *In re Deutsche Telekom Ag Sec. Litig.*, 229 F. Supp. 2d 277, 284 (S.D.N.Y. 2002) (same); *In re Teva Sec. Litig.*, No. 3:17-CV-558 (SRU), 2021 WL 872156, at *1

4

(D. Conn. Mar. 9, 2021) (same); *Haw. Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*, 338 F.R.D. 205, 219 (S.D.N.Y. 2021) (same).

Third, Defendants suggest that the two Exchange Act Classes must each attempt to draw the line of where Credit Suisse's misconduct turned from having an inflationary price impact to a deflationary one as far in their favor as possible—even if not supported by relevant facts and expert opinion. *See* Opp. at 14 (arguing that a Misrepresentation Class representative should argue, regardless of the facts, that "the ***entire decline*** in value of the XIV Notes was attributed to" misrepresentations). Defendants' argument is speculative, premature, and specious.

As the Court credited when it denied Defendants' *Daubert* motion, Order at 10-11, Professor Joshua Mitts of Columbia University credibly explained in his reports and at his deposition that the calculation of damages due to Defendants' manipulation is distinct from damages due to their misrepresentations, because "there is only one unmanipulated, uninflated price of XIV Notes. It is mathematically impossible for a price to be inflated and deflated simultaneously. If the price of XIV Notes is above the unmanipulated, uninflated price of XIV Notes, it is inflated, and if the price of XIV Notes is below the unmanipulated, uninflated price of XIV Notes, it is deflated." Mitts Rebuttal at ¶ 42. Further, the impact on the XIV Notes price from misrepresentations (resulting in inflation) and manipulation (resulting in deflation) will be directly measured from market data and using widely accepted economic tools such as event studies (*see* Mitts Dep. 138:6-22), which, again, the Court credited. Order at 11-13.[4] In other words, any purported conflict about the measure of damages would not be resolved via argument

---

[4] "[T]he price impact of the alleged manipulation is directly measurable . . . That price impact would have occurred even if Credit Suisse had not made a misstatement. . . . [A]s far as quantifying the effect of the misstatement apart from that deflationary effect of the hedging activity, . . . it simply comes down to making sure that one adjusts for the latter when calculating the former."

between Class Representatives, but by the facts and data—an approach that serves all members of all Classes well. Yet Defendants contend that the class representatives must ignore those opinions, based on facts and economics, and blindly adopt antagonistic absolutist positions. The only party that would serve is Defendants.

**B.     The Trust Is an Adequate Class Representative, and Slarskey Is Adequate Class Counsel, for the Manipulation Class**

The Trust and Slarskey are more than adequate to represent the Manipulation Class. "Denial of class certification on the grounds of inadequacy should only occur in the most extreme instances." *AMC Ent. Holdings, Inc.*, 338 F.R.D. at 212.  The adequacy inquiry under Rule 23(a)(4) concerns "whether: 1) [the class representative's] interests are antagonistic to the interest of other members of the class and 2) [the class representative's] attorneys are qualified, experienced and able to conduct the litigation." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (*citing Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).  The Trust and Slarskey satisfy both conditions.  Defendants do not challenge Slarskey's qualifications or experience, or the Trust's interest in the case's outcome.  Rather, Defendants offer only specious arguments concerning each's independence, based on conclusory assertions unsupported by the facts or law.  But the discovery record is replete with evidence of the Trust's and Slarskey's independence and commitment to maximizing the recovery for members of the Manipulation Class.  Accordingly, the Trust and Slarskey are adequate, and the Manipulation Class should be certified.

    1.  <u>The Trust and Slarskey Are Independent</u>

The Court should certify the Manipulation Class and appoint the Trust and Slarskey, respectively, as class representative and class counsel.  The Trust is a member of only the Manipulation Class and intends to maximize recovery for that class.  Defendants' argument that

the Trust and Slarskey are not independent from Lead Plaintiffs misrepresents the record evidence and relies on inapposite case law.  The record demonstrates that the Trust will meet its obligations to absent members of the Manipulation Class to advocate to maximize recovery to itself and the members of that class, as has always been its goal—bound of course by what the facts, law, and expert analysis reasonably support.  Hollander Decl., Ex F (Tripuraneni Tr.) at 87:10-17; 113:16-114:1.  Defendants offer no contrary evidence, and their claim otherwise should be rejected.  *See, e.g.*, *Petrobras*, 317 F. Supp. 3d at 870 (rejecting adequacy challenge given class counsel's "fiduciary duty to their individual clients to ensure that [litigation outcomes] advance their clients' interests").

Defendants mischaracterize Ms. Tripuraneni's testimony and the case record, and baselessly contend that the Trust and its counsel lack independence because they have purportedly "already adopted a theory of liability and calculation of damages that would not maximize the recovery for the Manipulation Class" and "fully signed on to Lead Plaintiffs' . . . approach to apportioning damages."  Opp. at 2-3, *see also id.* at 8-9, 16.  Both claims are demonstrably false.

Defendants' claim that the Trust has already adopted a damages calculation, Opp. at 3 n.2, cites only to: (1) Plaintiffs' opening brief in support of this Motion, which incorporated by reference Plaintiffs' initial class-certification briefing and detailed the Manipulation Class's damages theory as a "seller class" ***distinct from*** the other classes; and (2) the Trust's deposition testimony that it believes it can resolve any disputes with representatives of the other classes by reaching consensus.  Neither substantiates Defendants' assertion.  Plaintiffs' damages analysis—***which has not yet been performed***—will be the product of expert analysis based on governing legal and economic principles, as informed by the factual record. There is no reason to assume some intractable dispute will arise, let alone that the Trust will not fulfill its duties to the

7

Manipulation Class when resolving any such disagreement.   Moreover, the Court already concluded that damages for the Manipulation Class may be determined using a common methodology.  Order at 12-13.

The Trust's intention to resolve by consensus any hypothetical, future disputes is entirely consistent with its obligations to adequately represent the Manipulation Class.  Ms. Tripuraneni never indicated any willingness, intention, or reason for the Trust to put the interests of the other classes before the Manipulation Class.  Rather, as Ms. Tripuraneni testified (and stated in her sworn declaration submitted in support of this Motion), she is "confident in [her] and the Trust's ability to reach consensus with the Class Representatives of the other Classes . . . ***to maximize the recovery for the Manipulation Class***."  Tripuraneni Tr. at 113:5-15 (emphasis added).

The Trust and Lead Plaintiffs share common interests, including an interest in proving Defendants' wrongdoing and liability.   Neither these common interests, nor any points of departure, undermine the Trust's adequacy to represent the Manipulation Class.  Tripuraneni Tr. at 301:20-302:4; 113:16-114:18.  Potential disagreement among the different classes here does not require, as Defendants suggest, a complete separation between Slarskey and the Trust on one hand, and the representatives and counsel of the other classes on the other.  On the contrary, courts recognize in a similar context of "subclasses divergent in interest" that complete separation threatens a "'Balkanization' of the class action" that may ultimately "present a huge obstacle to settlement." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 271 (3d Cir. 2009) (cleaned up).

Defendants also mischaracterize Ms. Tripuraneni's testimony concerning the Trust's earlier involvement in this litigation.  Defendants claim that the Trust "wanted to be a class representative" at the outset of the case, "but Lead Plaintiffs' counsel would not put them forward." Opp. at 9.  Were that so, it would be irrelevant.  But Ms. Tripuraneni never testified that Lead

8

Counsel refused to "put them forward"; the excerpt states merely that if the Trust "were given a chance" at the outset, it "would have become a class representative." Tripuraneni Tr. at 85:11-25.

Defendants ignore extensive testimony that the Trust was at all points singularly focused on maximizing its recovery, whether as a class representative or (non-representative) class member. *See* Tripuraneni Tr. at 85:6 ("We wanted to be part of the class"), 86:18-19, 87:15-17 ("[W]e wanted to take part in any recovery, whatever we could, maximize our recovery in the case"), 108:16-25 ("We thought we were part of the class action lawsuit that was filed, and we thought we are taking part in the recovery . . . . But once the judge identified . . . that there is a conflict within manipulation and misrepresentation [] classes, we came forward to certify as the class representative."), 283:13-284:6.   Rather than "regularly s[eeking] and receiv[ing] legal advice from Cohen Milstein" for "five years," Opp. at 9, Ms. Tripuraneni testified that she and her husband were "periodically" "in touch" with Cohen Milstein—like many other class members— to ensure that they were "included as . . . part of the class in getting any recovery from Credit Suisse," Tripuraneni Tr. at 72:25-73:3; 73:20-25, 103:1-4, and "getting information [about] how the case is progressing," *id*. at 86:7-11, 103:3-4, which included "a few" communications between April 2018 and March of 2023, and approximately "less than five emails," *id*. at 106:9-107:21. The testimony Defendants cite indicates a persistent willingness to act to ensure maximum recovery. This supports, not undermines, the Trust's adequacy. *AMC Ent.*, 338 F.R.D. at 213.

2.      The Trust Understands the Manipulation Class's Claims and its
        Obligations to Manipulation Class Members

To establish adequacy, a proposed class representative need only be knowledgeable, at a high level, about the harms and basis for relief alleged. *Baffa*, 222 F.3d at 62 (adequacy where class representative "understood that the [particular] investments were the subject of this litigation," "that he and others had sustained a loss due to the alleged fraud," and "that he could

9

continue to rely on the expert for advice"); *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 177 (S.D.N.Y. Sept. 15, 2008) (adequacy where class representative was familiar with the facts and legal theories of the case, in regular contact with counsel, had reviewed complaint and other documents, and understood need to represent the class's best interests). This is not the type of "extreme instance" or "flagrant case" where class certification might be denied on adequacy grounds. *AMC Ent.*, 338 F.R.D. at 212 (cleaned up). The Trust demonstrated that it understands the Manipulation Class's claims and will meet its obligations to Manipulation Class members.

Defendants' contention that the Trust knows "little about the basic facts" related to its investments in XIV Notes or the basis of the Manipulation Class's claims, Opp. at 8, 17, is contradicted by the record evidence. The Trust's understanding of the "basic facts" and "nature of the claims," and that it understands its role as class representative and is "willing[] to carry out [its] duties" as class representative—including the Manipulation Class's claims and relevant underlying facts—satisfies the adequacy requirement. *AMC Ent.*, 338 F.R.D. at 213. Ms. Tripuraneni testified about the Trust's accurate understanding of, among other things, the events of February 5, 2018, that give rise to the Manipulation Class's claims, Tripuraneni Tr. at 51:23-54:3; 256:7-258:18; the Trust's XIV Note transactions that it was ultimately forced to redeem at pennies on the dollar following Defendants' alleged improper manipulations, *id.* at 203:18-204:13; the Trust's historical transactions of XIV Notes, including dates, volumes, and profits or losses, *id.* at 211:4-212:6; and the relevant players in this litigation, including Lead Plaintiffs and their counsel, *id.* at 279:7-280:18. Ms. Tripuraneni also accurately described the class definition of the Manipulation Class, as distinct from the other classes in this case. *Id.* at 57:13-59:3.

The Trust also understands, and has unfailingly met, its obligations to the Manipulation Class. The Trust indicated that it would "maximize the recovery for the manipulation class,"

Tripuraneni Tr. at 113:5-15, and has done so and will continue to.  Ms. Tripuraneni testified that she has reviewed case filings and otherwise monitored the litigation. *Id.* at 269:17-270:15; 303:22-304:19; 102:5-12.  She further testified that she interviewed, considered, and decided to retain Slarskey to represent the Manipulation Class, was prepared to give deposition testimony (and did), searched for and provided documents as part of discovery, and communicated regularly with the Trust's counsel, Slarskey.  *Id.* at 141:14-142:5; 77:13-79:5.  No more is required.

Even if Defendants are correct that the Trust lacks certain knowledge about this case (and, as discussed above, it does not), it is well settled that "the plaintiff['s] lack of knowledge concerning the details of the litigation is not a ground to deny class certification; plaintiffs are entitled to rely upon their counsel."  *In re Avon Sec. Litig.*, No. 91 CIV. 2287 (LMM), 1998 WL 834366, at *9 (S.D.N.Y. Nov. 30, 1998).  Accordingly, courts "expressly disapprove[] of attacks on the adequacy of a class representative based on the representative's ignorance."  *Baffa*, 222 F.3d at 61 (citing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370-74 (1966)).

3.    The Trust and Slarskey's Relationship with Lead Plaintiffs and Lead Counsel Is Consistent with Their Representation of the Manipulation Class

Defendants seem to argue that Slarskey and the Trust should have a hostile, antagonistic relationship with Lead Counsel and Lead Plaintiffs.  Only Defendants would benefit from such a bizarre, inefficient, and unproductive role.  Instead, Slarskey and the Trust have a collegial working relationship with Lead Counsel and Lead Plaintiffs, to pursue the common goal of holding Defendants liable for their misconduct that caused the collapse of XIV.  The Trust is not "effectively a Cohen Milstein client" masquerading as an independent class representative.  Opp. at 16.  The Trust's familiarity with Cohen Milstein is limited to this litigation, and the Trust has never previously been a class representative or retained Cohen Milstein.  Tripuraneni Tr. at 293:13-16.  Prior to the Court's Order, the Trust was an absent member of the proposed Manipulation

11

Class, and, as proposed counsel to both Classes prior to the Order, Cohen Milstein provided litigation updates to members of the putative classes that reached out and requested them, including the Trust.  Tripuraneni Tr. at 71:24-72:2; 73:4-8; 73:20-25.  Such communications are normal and far from nefarious.  *See Mevorah v. Wells Fargo Home Mortg., Inc.*, No. C 05-1175 MHP, 2005 WL 4813532, at *3 (N.D. Cal. Nov. 17, 2005) ("Pre-certification communications to potential class members by both parties are generally permitted"); *Avon*, 1998 WL 834366 at 10 n.5 (before certification, "counsel for the putative class owes a fiduciary duty to the class.").

Nor does Slarskey's arm's-length relationship with Cohen Milstein give rise to any doubt that the Trust and Slarskey will continue to act independently on behalf of the Manipulation Class. Following the Court's Order, Cohen Milstein referred the Trust to Slarskey, precisely so that the Trust could consider whether Slarskey would independently and adequately represent the Manipulation Class, as the Court instructed.  Defendants' suggestion that this referral was made so that Lead Plaintiffs could select their own counsel for the Manipulation Class, with the Trust acting as a mere rubber stamp to that selection, lacks any evidentiary foundation.  Notably, Defendants do not challenge Slarskey's ample qualifications or experience.

Ms. Tripuraneni's sworn Declaration and testimony evidence the Trust's thorough consideration of Adam Hollander and the Slarskey firm, which led to the Trust's decision to retain Slarskey to represent it and the Manipulation Class's interests.  The Trust researched Slarskey, including by reviewing information adduced through searches on LinkedIn and Google, as well as the Slarskey firm website.  Tripuraneni Tr. at 287:17-290:12; 91:3-95:12.  The Trust specifically examined Mr. Hollander's qualifications, including his extensive experience representing plaintiffs in securities class actions.  *Id.*  The Trust then spoke to Mr. Hollander in a series of phone calls and Zoom meetings prior to retaining him.  *Id.* at 91:3-21.  Since joining this litigation, the

12

Trust and Slarskey have aggressively advocated for the Manipulation Class, as evidenced in the filings that the Trust has submitted to this Court since joining the litigation. *See* ECF No. 301-2 (Eisenkraft Decl. Ex. B); ECF No. 315 (Reply in Support of Mot. to Amend). During Ms. Tripuraneni's deposition, she and Slarskey, on the Trust's behalf, advocated for the Manipulation Class throughout nearly seven hours of questioning. *See generally* Tripuraneni Tr.

In other words, the Trust did not merely "accept[] the recommendation" of Cohen Milstein; it diligently researched the Slarskey firm and chose to retain the firm based on Slarskey's and Mr. Hollander's uncontested qualifications and the Trust's interactions with Mr. Hollander. *See id.* at 70:2-71:1; 91:22-92:4. Nothing more is required—including, as Defendants suggest, interviewing numerous law firms.[5] Here, the Trust has an arm's-length relationship with Slarskey, has not retained nor is being advised by any other counsel, and has no other conflict that threatens to put the interests of the Trust or its counsel before the Manipulation Class's. Tripuraneni Tr. at 125:2-21. *See Wilson v. LSB Indus., Inc.*, No. 15 Civ. 7614 (RA) (GWG), 2018 WL 3913115, at *7 (S.D.N.Y. Aug. 13, 2018*)* (distinguishing *Gordon* and deeming class representative independent).

## C.    Common Issues Predominate

Plaintiffs satisfy Rule 23's predominance requirement. *See, e.g.*, ECF No. 179 at 14-27; ECF No. 220 at 3-5, 7-9, 12-15; Mot. at 2-3. The Court has agreed. Order at 20-21. Despite their

---

[5] Defendants' cited cases are inapposite. In *In re IMAX Sec. Litig.*, 272 F.R.D. 138 (S.D.N.Y. 2010), the Court held that a proposed class representative, Snow Capital ("Snow"), was inadequate where Snow had failed to disclose that in addition to the lead counsel, it had retained another lawyer with whom Snow had a decades-long relationship, including managing "a significant amount" of the lawyer's money in exchange for substantial fees, and accordingly might be motivated to reach a settlement benefitting the lawyer and Snow, to the class's detriment. *Id.* at 155-56. Similarly, in *Gordon v. Sonar Cap. Mgmt. LLC*, proposed class representative had an "intimate relationship with one of the counsel having a financial interest in the outcome"—the representative's cousin, who would receive a percentage of any attorney's fee award, which was not disclosed. 92 F. Supp. 3d 193, 199-201 (S.D.N.Y. 2015).

arguments' having been previously rejected, Defendants insist that that is not so. *See* Opp. at 17-22.

These arguments fail.  Defendants argue that the Motion should be denied because Plaintiffs "cannot demonstrate reliance . . . on a class-wide basis." *Id.* at 17.  Plaintiffs already briefed extensively why the proposed classes are entitled to a presumption of reliance, *see, e.g.*, ECF No. 179 at 16-25, and Defendants **conceded** that the XIV market was efficient during the period in question, ECF No. 220 at 2.  Yet Defendants continue to contend that the presumption of reliance is improper because of the supposed "disclosure of truthful information that contradicts an alleged misrepresentation," which "'severs the link' and rebuts the [reliance] presumption[.]"  Opp. at 18.

They are wrong for several reasons. <u>First</u>, this Court already decided the issue when it noted that it "rejects Defendants' argument that 'individualized inquiries into each investor's individual knowledge of the alleged misconduct' predominate over class-wide questions."  Order at 21.  Implicit in that conclusion is a finding that individualized questions regarding what investors knew when they decided to invest in XIV—*i.e.*, questions of reliance—are not so problematic as to preclude class certification.  On the law of this case alone, Defendants' argument should be rejected.

Second, as Plaintiffs persuasively argued in support of their motion to amend their pleadings, there was no public disclosure of the facts that Credit Suisse was "(1) lending XIV Notes on a massive scale—up to 90% of its inventory; (2) actively encouraging third parties to short XIV by encouraging them to borrow rather than buy XIV; and (3) aware that these secret actions would create market conditions that would destroy XIV at the next volatility spike."  ECF No. 315 at 7; *see also* PTAC ¶¶ 146; 281.  The supposed "truth-on-the-market" articles in Defendants' brief say nothing about the effects of Credit Suisse's short selling causing a catastrophic failure of the XIV Notes. Rather, they rehash the same incomplete disclosures in the January Supplement, provide only generalized statements about what **might** occur in the market in response to certain events, and do not inform

14

the market of the specific misrepresentations, omissions, and manipulation alleged.  *See* ECF. No. 317-1 (Defs.' appendix of articles); *see also, e.g.*, PTAC ¶¶ 4-18, 82-85, 140-152, 266-282, 297-298.  This Court already expressly rejected this argument when it certified the Securities Act Class, holding that "news stories and other publicly available information raise 'issues of knowledge, actual or constructive, subject to generalized proof,' and apply to the whole class."  Order at 21 (quoting *Yi Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510, 529 (S.D.N.Y. 2018)). The same reasoning applies to the Exchange Act Classes.

Third, even if there **were** truth on the market here—and there is not—it would not pose a barrier to class certification. In *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, the Supreme Court held that the district court properly disregarded evidence offered in "an attempt to present a 'truth-on-the-market' defense" at class certification, because that defense concerns "an alleged representation's materiality." 568 U.S. 455, 481 (2013).   As the Court explained, "immateriality . . . is no barrier to finding that common questions predominate." *Id.*  The Southern District of New York has repeatedly followed *Amgen. See, e.g.*, *In re Virtus Inv. Partners, Inc. Sec. Litig.*, No. 15CV1249, 2017 WL 2062985, at *5 (S.D.N.Y. May 15, 2017) ("'truth-on-the-market defense,' . . . is inappropriate on a motion for class certification."); *GAMCO Invs., Inc. v. Vivendi, S.A.*, 927 F. Supp. 2d 88, 99 (S.D.N.Y. 2013) ("Today, the Supreme Court decided *Amgen* . . . , which holds that . . . materiality is not a precondition to class certification.").[6]

## III.    CONCLUSION

Accordingly, the Lead Plaintiffs' and the Trust's Motion should be granted.

Dated: July 17, 2023                                         Respectfully submitted,

---

[6] Defendants cite three outdated authorities from before *Amgen*, including one that predates *Basic* as well.  *See* Opp. at 19 (citing *In re Livent, Inc. Noteholders Sec. Litig.*, 211 F.R.D. 219, 223 (S.D.N.Y. 2002); *In re Initial Public Offerings Sec. Litig.*, 471 F.3d 24, 43-44 (2d Cir. 2006); *Zimmerman v. Bell*, 800 F.2d 386, 390 (4th Cir. 1986)).

/s/ *Michael B. Eisenkraft*

Michael B. Eisenkraft
Laura H. Posner
**COHEN MILSTEIN SELLERS
 & TOLL PLLC**
88 Pine Street
14th Floor
New York, NY 10005
Tel.: (212) 838-7797
Fax: (212) 838-7745
meisenkraft@cohenmilstein.com
lposner@cohenmilstein.com

Steven J. Toll (*pro hac vice*)
Brendan Schneiderman (*pro hac vice*)
1100 New York Ave. N.W., Fifth Floor
Washington, D.C. 20005
Tel.: (202) 408-3640
Fax: (202) 408-4699
stoll@cohenmilstein.com
bschneiderman@cohenmilstein.com

Carol V. Gilden
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Tel. (312) 357-0370
Fax: (312) 357-0369
cgilden@cohenmilstein.com

**LEVI & KORSINSKY, LLP**
Eduard Korsinsky
Nicholas I. Porritt
Adam M. Apton
55 Broadway, 4th Floor
Suite #427
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
ek@zlk.com
nporritt@zlk.com
aapton@zlk.com

**LEVI & KORSINSKY, LLP**
Alexander A. Krot III (*pro hac vice*)

16

1101 Vermont Ave, NW
Suite 700
Washington, DC 20005
Tel: (202) 524-4290
Fax: (212) 363-7171
akrot@zlk.com

*Counsel for Lead Plaintiffs, Class Counsel for the Securities Act Class, and Proposed Class Counsel for the Misrepresentation Class*

**SLARSKEY LLC**
Adam Hollander
767 Third Avenue, 14th Floor
New York, NY 10017
Tel: (212) 658-0661
ahollander@slarskey.com

*Counsel for the Sudheera Tripuraneni Trust U/A DTD 11/16/2015 and Proposed Class Counsel for the Manipulation Class*

-and-

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Tel. (212) 697-6484
peretz@bgandg.com

*Additional Counsel for Lead Plaintiff Apollo Asset Limited*

17