UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SET CAPITAL LLC, et al., Individually and on
Behalf of All Others Similarly Situated,

        **Plaintiffs,**      18-CV-02268 (AT)(SN)

    -against-          <u>OPINION & ORDER</u>

CREDIT SUISSE GROUP AG, CREDIT
SUISSE AG, CREDIT SUISSE INTERNATIONAL,
TIDJANE THIAM, DAVID R. MATHERS,
JANUS HENDERSON GROUP PLC, JANUS
INDEX & CALCULATION SERVICES LLC,
and JANUS DISTRIBUTORS LLC d/b/a/
JANUS HENDERSON DISTRIBUTORS,

        **Defendants.**
-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

   This securities fraud class action has a long history. The Court assumes the reader's familiarity with the underlying facts and claims. The complaint was filed in March 2018, and the district court dismissed the action 18 months later. Plaintiffs appealed that decision, and the Court of Appeals vacated the district court's decision in part and remanded the action in August 2021. See <u>Set Cap. LLC v. Credit Suisse Grp. AG</u>, 996 F.3d 64, 87 (2d Cir. 2021). As relevant here, the Court of Appeals held that Plaintiffs sufficiently pleaded a claim, under Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), that Credit Suisse and the Individual Defendants manipulated the market by issuing millions of XIV Notes "for the very purpose of enhancing the impact of its hedging trades and collapsing the market for the notes." The Court of Appeals also found that Plaintiffs sufficiently pleaded material misstatements in the Offering Documents, which stated that Credit Suisse and the Individual Defendants "have no reason to believe that [their] . . . hedging activities will have a

material impact on the level of the [VIX Futures] Index." The Court affirmed the district court's dismissal of Plaintiffs' claims related to the failure to correct the Flatline Value.

Upon return to the district court, the Court set an initial Case Management Plan, which was amended numerous times. Fact discovery is now closed. Plaintiffs have filed a motion to amend their pleadings to, in their words, "conform the evidence to the pleadings." Plaintiffs emphasize that they are not adding claims or defendants. Instead, they seek to add a new theory of liability regarding the manner in which Defendants engaged in manipulative conduct. Plaintiffs seek to add allegations that: "(1) Defendants knew from prior market volatility spikes that just a 7.5% drop in the S&P would drive XIV Notes to zero (PTAC ¶ 140); (2) Defendants plotted internally to shift all XIV risks from Credit Suisse to unsuspecting investors (id. ¶¶ 141-145); (3) Credit Suisse bought back and then lent out XIV notes, which Defendants knew would pump the market full of short sellers who would financially benefit from XIV crashing (id. ¶¶ 146-149, 158-160); (4) Defendants incentivized such lending with direct insight into who the borrowers were and the hedges they would purchase in the market (id. ¶¶ 150-154); (5) Defendants flooded the already-saturated XIV market with millions more XIV Notes in the lead up to the February 5, 2018 crash, knowing that hedging would further strain VIX futures' liquidity and drive XIV's price down far more than market fundamentals and volatility dictated (id. ¶¶ 63-66, 140-159); (6) when the VIX spiked on February 5, 2018, and XIV began losing value at an unprecedent rate, Credit Suisse traded VIX futures to hedge its own position, exacerbating the liquidity crisis; and (7) as they planned, once the VIX spiked and XIV crashed, Credit Suisse announced an acceleration event and forced out XIV investors for pennies on the dollar (id. ¶¶ 160, 199-214)." Plaintiffs' Reply Memorandum ("Plfs. Reply"), at 3–4. Similarly, Plaintiffs seek to add allegations related to Defendants' failure to disclose that they were: "(1)

2

lending of XIV Notes on a massive scale – up to 90% of its inventory; (2) actively encouraging third parties to short XIV by encouraging them to borrow rather than buy XIV; and (3) aware that these secret actions would create market conditions that would destroy XIV at the next volatility spike." Plfs. Reply, at 7 (citing PTAC ¶¶ 146, 281). In sum, Plaintiffs now allege that Defendants partook in an undisclosed *lending* scheme to intentionally plummet the XIV Note value.

Plaintiffs also seek to add additional allegations relating to the dismissed Flatline Value claim to address the deficiencies identified by the Court of Appeals.

Defendants oppose the motion to amend on the grounds that Plaintiffs have not demonstrated good cause for the late motion, that the undue delay in filing any amended pleading would be unfairly prejudicial to the Defendants and that, in any event, the claims are futile.

## DISCUSSION

**I.       Rule 15(a)(2) Applies**

The parties dispute which Rule of the Federal Rules of Civil Procedure applies to Plaintiffs' motion to amend. Defendants urge the Court to analyze Plaintiffs' motion under the more demanding standard found in Rule 16(b)(4), which would require a showing of "good cause" to modify a scheduling order. Plaintiffs adopt the much more lenient standard found in Rule 15(b)(2), which allows a party to "move – at any time, even after judgment – to amend the pleadings to conform them to the evidence . . . ." I reject both arguments and apply Rule 15(a)(2).

Rule 16 provides that a schedule may be modified only for good cause and with the judge's consent. Fed. R. Civ. P. 16(b)(4). The first Civil Case Management Plan & Scheduling

Order ("Scheduling Order") set the deadline to file a motion to amend "after the deadline for the substantial completion of document discovery." ECF No. 166. The deadline for the substantial completion of document discovery was April 21, 2022, and later amended to June 21, 2022. ECF No. 175. The Third Amended Scheduling Order was entered on December 13, 2022. ECF No. 219. It still identified the deadline to move to amend as 30 days after the substantial completion of document discovery, though it no longer included a deadline for that completion. (It amended the deadline for all fact discovery to February 28, 2023, from December 16, 2022.) Then, on March 14, 2023, the Court entered the parties' proposed Fourth Amended Scheduling Order. ECF No. 259. That order set a date for Plaintiffs to file a motion to amend. Defendants "expressly preserve[d]" their rights and defenses to the anticipated motion, including that it was untimely under the Court's prior Scheduling Orders.

    Defendants argue that Plaintiffs were required to file their motion within 30 days of the substantial completion of document discovery, which the parties agree was approximately October 2022. They contend that the Fourth Amended Scheduling Order did not modify or supersede that deadline because Defendants expressly reserved their timeliness objection. Plaintiffs do not really grapple with this procedural history, other than to state that "as is typical in securities fraud class actions, the Case Management Plan ("CMP") set the deadline for the amendment of the pleadings *after* the conclusion of fact discovery." Plfs. Reply at 1 & 14. That response does not gel with the three prior scheduling orders, which all set the date to file a motion to amend at 30 days after the substantial completion of document discovery. And the Fourth Amended Scheduling Order plainly reserved Defendants' timeliness objection.

    Instead, Plaintiffs argue that their motion could have been filed "at any time" under Rule 15(b)(2). Subsection (b) of Rule 15 is entitled "Amendments During and After Trial." Part (b)(2)

4

discusses that when an issue "not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." Under this provision, an amendment to "conform [the pleadings] to the evidence" may be made "at any time, even after judgment." Fed. R. Civ. P. 15(b)(2). Plaintiffs offer no cogent argument or caselaw that a rule entitled "Amendments During and After Trial," that concerns issues "tried" on the parties' consent, is actually a catch-all to allow for amendment whenever the evidence suggests.[1] See also E. Bay Recycling, Inc. v. Cahill, No. 00-cv-6147 (RWS), 2007 WL 2728421, at *4 (S.D.N.Y. Sept. 14, 2007) (Rule 15(b) motions "can only be made 'at any time' during or subsequent to a trial, but not before."). Plaintiffs' primary argument is that, because Rule 15(b)(2) would allow for amendment *after* trial, the desire to avoid unfair surprise at trial would justify amendment *before* trial. But that, of course, assumes that the facts Plaintiffs seek to allege now will necessarily be evidence at a trial absent pre-trial amendment.

There is no legitimate basis to apply Rule 15(b)(2) when considering Plaintiffs' motion to amend at the pre-trial stage. Doing so would render the rules and jurisprudence governing Rule 15(a) amendments meaningless, leave parties with extreme uncertainty, and undermine the Court's ability to manage its docket. The Court would be within its discretion to apply the "good cause" standard of Rule 16(b)(4) because the Fourth Amended Scheduling Order did not vanquish Plaintiffs' obligation to move to amend within 30 days of the substantial completion of discovery. But determining whether Plaintiffs had good cause to move in April 2023 would

---

[1] As an aside, it is not obvious that the "allegations" Plaintiffs seek to add constitute "evidence" at this stage. The Federal Rules of Civil Procedure generally speak about "discovery" and "disclosure" in the pre-trial context. References to "evidence" are limited to discussion about trials. See, e.g., Fed. R. Civ. P. 16(c)(2) (pretrial conference topics to include the "presentation of evidence early in the trial" or limits on the trial time allowed to present "evidence"); Fed. R. Civ. P. 26(a)(2) (expert witnesses may "present evidence" at trial); Fed. R. Civ. P. 26(b)(1) (the scope of discovery "need not be admissible in evidence to be discoverable"). Fed. R. Civ. P. 32(a)(6) (a party may offer "in evidence only part of a deposition").

require a burdensome inquiry into the phases of discovery as they developed from November 2022 until April 2023. In any event, because I find that Plaintiffs' motion should be denied because of undue prejudice and futility under the more lenient standard of Rule 15(a), Plaintiffs necessarily do not meet the heightened good cause standard or Rule 16.

**II.     New Lending Theory Will Cause Defendants Undue Prejudice**

Rule 15(a)(2) directs a court to "freely" grant leave to amend "when justice so requires." Courts may "deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009) (quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007)); see also Foman v. Davis, 371 U.S. 178, 182 (1962) (discussing the circumstances in which leave may be denied).

Under Rule 15(a), the nonmovant has the burden to establish that it will be substantially prejudiced if the proposed amendments were to be granted. Agerbrink v. Model Serv. LLC, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016) (citation omitted). When determining prejudice, courts balance whether the amendments would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; [or] (ii) significantly delay the resolution of the dispute . . . ." Monahan v. New York City Dept. of Corrections, 214 F.3d 275, 284 (2d Cir. 2000) (quoting Block v. First Blood Associates, 988 F.2d 344, 350 (2d Cir. 1993)).

First, Defendants meet their burden of establishing that amending the pleading will necessitate reopening discovery and extensive third-party discovery. Plaintiffs' operative complaint alleges that Credit Suisse's manipulated the market by issuing millions of XIV Notes on June 30, 2017, and January 29, 2018, knowing that its own hedging activity would cause a liquidity squeeze. And that on February 5, 2018, when a volatility spike occurred, it purchased more than 105,000 VIX futures contracts, that caused the price of XIV Notes to plummet. In

6

vacating the district court's prior dismissal order, the Court of Appeals made plain that the allegations focused on Credit Suisse's own hedging: "the complaint alleges more than routine hedging activity: It alleges that Credit Suisse flooded the market with millions of additional XIV Notes for the very purpose of enhancing the impact of its hedging trades and collapsing the market for the notes." Set Cap. LLC, 996 F.3d at 77.

Plaintiffs seek to amend the pleadings to redirect the focus of the manipulation to the acts of third parties. They seek to plead that Credit Suisse engaged in *lending* practices to third-party borrowers, knowing that *those third parties* would need to hedge their investments at such great volume and would do so at the next volatility spike to the detriment of the value of the XIV Note. Plaintiffs seek to allege that this plan was intentionally implemented by Credit Suisse, knowing to a certainty how the third-party borrowers would act. These third parties include short-sellers who borrowed XIV Notes from Credit Suisse, Credit Suisse swap-parties, investors of volatility securities generally, and other VIX-related issuers.

Undertaking a defense in this new case would be substantial. Defendants would want to identify approximately 100 market players and obtain third-party document and deposition discovery relating to their market positions, incentives, trading and hedging strategies, knowledge about a potential liquidity crunch, and trading and hedging activities on February 5, 2018. While Plaintiffs suggest that this would be unnecessary – because all that matters is what Credit Suisse intended and planned for – Defendants would surely be entitled to mount a defense beyond proving the absence of facts. Such discovery would unquestionably consume months of additional discovery and cost hundreds of thousands of dollars (or more).

Plaintiffs do not object to reopening discovery, which brings me to the second point: it is unduly prejudicial to Defendants to face a significantly new theory of liability after it has argued

7

for years – to Plaintiffs and the Court of Appeals – that the original theory was built on a house of cards.[2]

After the case was remanded, in June 2021, Defendants re-produced trading documents and other material previously provided to the SEC (which, by then, had closed its investigation without action). In July 2021, Defendants made a presentation to Plaintiffs' counsel, supported with documentary evidence, explaining why Plaintiffs' theory was incorrect. There, Defendants sought to establish that (1) Credit Suisse was fully hedged by the close of business on February 4, 2018, such that it needed only to rebalance that hedge to account for the day's market movements on February 5; (2) Credits Suisse traded only 6,919 VIX futures contracts (not 105,000) between 4:00 p.m. and 4:15 p.m. on February 5; and (3) Credit Suisse recognized only $11.2 million in profits (not between $475 million and $542 million previously alleged).

Plaintiffs pressed forward, and document production was substantially completed by October 2022. Sometime around November 2022, Plaintiffs started to explore Defendants' lending practices. Although the parties dispute whether Credit Suisse could have predicted the direction Plaintiffs were now heading, it is unreasonable to place the burden on a defendant in a securities fraud case to guess at the theory of liability.

Plaintiffs' desire to recast their case five years after it was filed, two years after it was remanded from the Court of Appeals, and (at least) many months (if not years) after Defendants' document production suggested the operative theory may be weak, is unduly prejudicial. It is not fair to require a defendant to spend years of time and millions of dollars defending against one claim, only to face an entirely new one. Plaintiffs' proposed Third Amended Complaint does not merely "expand the basis" upon which Plaintiffs allege the Offering Documents were false and

---

[2] For the avoidance of doubt, the Court expresses no opinion on the strength of Plaintiffs' operative claims.

misleading or "elaborate on the manner" of Defendants' manipulative conduct. Plfs. Br. at 1. It is a new case focused on Defendants' lending practices and not their hedging. It is unfair to change course at this late stage.

### III.     The Proposed Amended Flatline Value Claim is Futile

The Court of Appeals affirmed the district court's dismissal of Plaintiffs' claims related to the failure to correct the Flatline Value during after-hours trading on February 5, 2018. Set Cap. LLC, 996 F.3d at 83. The Court of Appeals assumed that the Flatline Value materially misled investors, but concluded that the complaint failed to allege a strong inference of scienter. Plaintiffs' new allegations do not remedy this deficiency.

The Court of Appeals concluded that Plaintiffs failed to (1) allege facts showing that Credit Suisse had motive or opportunity to falsify the Flatline Value or (2) demonstrate circumstantial evidence indicating conscious misbehavior or recklessness by the Defendants. Id. With respect to the latter, the Court concluded that the complaint did not set forth facts demonstrating that: (i) Credit Suisse was under any obligation to calculate or monitor the intraday indicative value ("IIV"), (ii) Defendants knew that the IIV had flatlined, or (iii) the Offering Documents misled investors regarding the real-time accuracy of the published IIV.[3]

Plaintiffs assert that they have added "exactly" the "missing information" by alleging that Credit Suisse maintained an internal IIV calculation and that traders were comparing the published IIV with their own internal calculation. This allegation does not fill the void. Plaintiffs still do not allege that Defendants monitored the *VIX Futures Index* for accuracy or that Defendants created a redundant internal *VIX Futures Index*. Because the IIV uses the VIX

---

[3] Plaintiffs do not address the Court of Appeals' ruling with respect to the Offering Documents' disclosures of published prices on the VIX Futures Index, and so the Court deems any such argument waived. Similarly, Plaintiffs do not address the Court of Appeals' ruling on motive and opportunity in their briefing.

Futures Index as an input, any monitoring of the IIV or an internal IIV calculation is not evidence that Defendants knowingly or recklessly failed to correct the Flatline Value. See Set Cap. LLC, 996 F.3d at 83 (emphasis added) (noting that, in order to identify computing errors, Defendants "would have been required to monitor the VIX Futures Index and compare it to the values of its underlying inputs – i.e., the real-time prices for **VIX futures contracts**.")

Thus, Plaintiffs' proposed amendments to the Second Amended Complaint do not remedy the fundamental defect in their Flatline Value claim and therefore it remains futile.

**IV.   Opportunity for Review**

"[T]he weight of authority within this Circuit classifies a motion to amend a pleading as non-dispositive." Trombetta v. Novocin, No. 18-cv-993 (RA), 2021 WL 6052198, at *6 (S.D.N.Y. Dec. 21, 2021), reconsideration denied, 2022 WL 280986 (Jan. 31, 2022) (internal quotations and citations omitted). Although the Court of Appeals for the Second Circuit has not squarely addressed this question, its cases suggest that decisions to grant or deny a motion to amend are non-dispositive. See Fielding v. Tollaksen, 510 F.3d 175, 178 (2d Cir. 2007) (identifying "a motion to amend the complaint" as an example of a "nondispositive motion[ ]"); Kilcullen v. New York State Dept. of Transp., 55 F. App'x 583, 584 (2d Cir. 2003) (referring to the denial of motion to amend based on futility as a non-dispositive matter that may be referred to a magistrate judge for decision pursuant to 28 U.S.C. § 636[b][1][A]); Johnson v. Dep't of Homeless Serv., No. 00-cv-3920, 2001 WL 246370 (S.D.N.Y. March 12, 2001) (Fox, M.J.) (denying motion to amend on futility grounds without issuing report & recommendation), aff'd sub nom. Johnson v. Doe, No. 01-7522, 2002 WL 730849 (2d Cir. Apr. 25, 2002).

This question matters only for the standard of review, should the Plaintiffs file objections to the District Judge. Because this Court is resolving Plaintiffs' motion by Opinion & Order,

10

Plaintiffs may file any objections under Rule 72(a) within 14 days after being served with a copy of this decision. Under Rule 72(a), the District Judge will consider any timely objections and modify or set aside this decision if it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Plaintiffs may, however, argue that the denial of their motion to amend is dispositive, and that their objections should be considered under Rule 72(b). Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(B). If the District Court agrees that the motion should be considered dispositive, she can consider any objections and determine *de novo* any part of this decision that is properly objected to.

Should the District Court determine that the objections be reviewed under 28 U.S.C. § 636(b)(1) and Rule 72(b), the parties shall have 14 days from the date of service to file written objections. See Fed. R. Civ. P. 6(a), 6(d). A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2); see Fed. R. Civ. P. 6(a), 6(d). These objections shall be filed with the Court and served on any opposing parties. See Fed. R. Civ. P. 72(b)(2). Courtesy copies shall be delivered to the Honorable Analisa Torres if required by that Judge's Individual Rules and Practices. Any requests for an extension of time for filing objections must be addressed to the Honorable Analisa Torres. See Fed. R. Civ. P. 6(b). The failure to file timely objections will waive those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. James, 712 F.3d 79, 105 (2d Cir. 2013).

## CONCLUSION

Plaintiffs' motion to amend their Second Amended Complaint is DENIED. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 284, 285, and 304.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   January 2, 2024
         New York, New York