UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SET CAPITAL LLC, et al., individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CREDIT SUISSE GROUP AG, et al., <br><br> Defendants. | Case No.: 1:18-cv-02268 (AT) (SN) |

**PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE NETBURN'S OPINION & ORDER DENYING PLAINTIFFS' MOTION FOR <u>LEAVE TO AMEND THE PLEADINGS</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 3

     A.     The Sustained, Operative Complaint and its Claims ................................ 3

     B.     Plaintiffs Diligently Pursued Discovery Concerning Credit Suisse's
            Hedging *and* Lending Activity ................................................................ 4

     C.     The O&O ................................................................................................ 5

III.    The Court's Denial of Leave to Amend to Add Allegations Concerning Credit
       Suisse's Lending was Clearly Erroneous and Contrary to Law ......................... 6

     A.     Finding that the New Lending-Related Allegations Would Cause Undue
            Prejudice Was Clearly Erroneous and Contrary to Law ........................... 7

          1.     Any Additional Discovery Would Be Modest and Does not
                Constitute Undue Prejudice ........................................................ 7

          2.     The Court's Ruling on the Scope of Additional Discovery is Based
                on an Erroneous Understanding of the Lending-Related
                Allegations and the Governing Legal Standard ....................... 10

          3.     The Court's Conclusion that Plaintiffs Should Have Credited
                Defendants' Assertions Regarding Defendants' Manipulative
                Misconduct was Clearly Erroneous and Contrary to Law ....... 12

          4.     The O&O was Clearly Erroneous and Contrary to Law Because
                Any Gaps in the Discovery Record were of Defendants' Own
                Making .................................................................................... 13

     B.     Magistrate Judge Netburn's Denial of Leave to Add an Alleged
            Misstatement Regarding Lending Was a Dispositive, Erroneous Decision ........ 15

          1.     Exclusion of the Alleged Misstatement is a Dispositive Decision .......... 15

          2.     Magistrate Judge Netburn Erred in Excluding the Alleged
                 Misstatement ............................................................................ 16

IV.    Magistrate Judge Netburn's Denial of Leave to Add The Flatline Claim Should be
       Reversed ........................................................................................................... 17

     A.     Deciding a Motion to Amend on Futility Grounds Invokes the Same
            Standard as a Motion to Dismiss, and Plaintiffs' Allegations Must Be
            Taken as True .......................................................................................... 18

     B.     It Was an Error of Law to Hold that the Amendments to the Flatline Claim
            Were Futile .............................................................................................. 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
  677 F.3d 60 (2d Cir. 2012)....................................................................................21

*Affiliated FM Ins. Co. v. Liberty Mechanical Contractors, Inc.*,
  No. 12-CV-5160 (KPF), 2013 WL 4526246 (S.D.N.Y. Aug. 27, 2013)..................8

*Agerbrink v. Model Serv. LLC*,
  155 F. Supp. 3d 448 (S.D.N.Y. 2016)................................................................8, 17

*Block v. First Blood Assocs.*,
  988 F.2d 344 (2d Cir. 1993)................................................................................1, 7

*Bridgeport Music, Inc. v. Universal Music Grp., Inc.*,
  248 F.R.D. 408 (S.D.N.Y. 2008) .......................................................................7, 9

*Charney v. Zimbalist*,
  2014 WL 963734 (S.D.N.Y. Mar. 12, 2014) .........................................................10

*Covington v. Kid*,
  No. 94-CV-4234 (WHP), 1999 WL 9835 (S.D.N.Y. Jan. 7, 1999)........................15

*Doe v. Cnty. of Rockland*,
  No. 21-CV-6751 (KMK), 2022 WL 2533151 (S.D.N.Y. July 7, 2022) ...................7

*Dolac v. Cnty. of Erie*,
  No. 17-CV-1214 (JLS), 2020 WL 2840071 (W.D.N.Y. June 1, 2020), *aff'd*,
  No. 20-2044-CV, 2021 WL 5267722 (2d Cir. Nov. 12, 2021)...............................17

*Duncan v. Coll. of New Rochelle*,
  174 F.R.D. 48 (S.D.N.Y. 1997) ..............................................................................8

*In re Enf't of Philippine Forfeiture Judgment Against All Assets of Arelma, S.A.*,
  641 F. Supp. 3d 36 (S.D.N.Y. 2022)........................................................................9

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC.*,
  376 F. Supp. 2d 385 (S.D.N.Y. 2005), *as amended* (July 6, 2005) .......................19

*Friedl v. City of N.Y.*,
  210 F. 3d 79 (2d Cir. 2000)...............................................................................8, 14

*Grewal v. Cuneo Gilbert & LaDuca LLP*,
  No. 13-CV-6836 (RA), 2017 WL 1215752 (S.D.N.Y. Mar. 31, 2017), *aff'd*,
  803 F. App'x 457 (2d Cir. 2020) ...........................................................................12

ii

*Hutchison v. Deutsche Bank Sec. Inc.*,
  647 F.3d 479 (2d Cir. 2011)............................................................................................17

*Ideavillage Prod. Corp. v. Copper Compression Brands LLC*,
  No. 20-CV-4604 (KPF), 2021 WL 5013799 (S.D.N.Y. Oct. 27, 2021)....................................8

*Jackson v. Brandt*,
  No. 10-CV-05858, 2011 WL 7095103 (S.D.N.Y. Mar. 25, 2011) .........................................15

*Konig v. TransUnion, LLC*,
  No. 18-CV-7299 (JCM), 2020 WL 550285 (S.D.N.Y. Feb. 4, 2020) ......................................9

*Lickteig v. Cerberus Cap. Mgmt., L.P.*,
  No. 1:19-CV-5263 (GHW), 2020 WL 7629876 (S.D.N.Y. Dec. 22, 2020)...........................15

*Livingston v. Trustco Bank*,
  No. 120-CV-1030, 2021 WL 6199655 (N.D.N.Y. Apr. 23, 2021)........................................10

*Marjam Supply Co. v. Firestone Bldg. Prods. Co., LLC*,
  No. CIV.A. 11-7119 (WJM), 2014 WL 1343075 (D.N.J. Apr. 4, 2014)................................14

*Mem'l Hermann Healthcare Sys. v. State St. Bank & Tr. Co.*,
  No. 08-CV-5440 (RJH), 2010 WL 3664490 (S.D.N.Y. Sept. 17, 2010)...............................18

*Monohan v. New York City Dep't of Corr.*,
  214 F.3d 275 (2d Cir. 2000)..............................................................................................9

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000)............................................................................................19

*Pall Corp. v. Entegris, Inc.*,
  No. 05-CV-5894 (JFB) (WDW), 2007 WL 9709768 (E.D.N.Y. May 5, 2007).....................8

*Pangburn v. Culbertson*,
  200 F.3d 65 (2d Cir. 1999)..............................................................................................18

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
  681 F.3d 114 (2d Cir. 2012)............................................................................................17

*Pasternack v. Shrader*,
  863 F.3d 162 (2d Cir. 2017).......................................................................................7, 10

*Pruiss v. Bosse*,
  912 F. Supp. 104 (S.D.N.Y. 1996) ..................................................................................15

*Pyatt v. Raymond*,
  462 F. App'x 22 (2d Cir. 2012), *as amended* (Feb. 9, 2012)..............................................17

*Richardson Greenshields Sec., Inc. v. Lau*,
    825 F.2d 647 (2d Cir.1987)............................................................................8

*Set Cap. LLC v. Credit Suisse Grp. AG*,
    996 F.3d 64 (2d Cir. 2021).....................................................2, 4, 11, 18

*Soroof Trading Dev. Co. v. GeMicrogen, Inc.*,
    283 F.R.D. 142 (S.D.N.Y. 2012) ............................................................10

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)................................................................................12

*United States v. Continental Ill. Nat'l Bank & Trust Co. of Chi.*,
    889 F.2d 1248 (2d Cir.1989)....................................................................7

*Valentini v. Citigroup, Inc.*,
    No. 11-CV-1355 (JMF), 2013 WL 4407065 (S.D.N.Y. Aug. 16, 2013)................................8

*Washington v. Dewey*,
    No. 3:17-CV-1316 (VLB), 2019 WL 1921939 (D. Conn. Apr. 30, 2019) ...............................8

## I.      INTRODUCTION

On April 28, 2023, Plaintiffs moved for leave to amend their pleadings to conform to the discovery record. ECF No. 284; *see also* Proposed Third Amended Complaint, ("PTAC"), ECF No. 286-001.[1] Plaintiffs' proposed amendments fall into two categories.

*First*, Plaintiffs seek to add factual detail concerning their live claims regarding Credit Suisse's misleading and manipulative scheme to crash the XIV Notes. Specifically, Plaintiffs have added allegations demonstrating through both documentary and testimonial evidence that, in addition to its own VIX futures hedging on February 5, 2018, Credit Suisse secretly lent millions of XIV Notes to short sellers, knowing that, upon the next inevitable volatility spike, those short sellers would also seek to hedge their exposure, enabling Defendants to more easily—and with less risk to Credit Suisse—crash XIV and close out the Notes. *See, e.g.*, ¶¶ 140-54.

In the January 2, 2024, Opinion & Order ("O&O"), Magistrate Judge Netburn rejected an additional alleged misstatement on January 29, 2018, that accompanied these factual allegations, which stated that Credit Suisse "may issue [XIV] into inventory of our affiliates to make them available for lending at or about prevailing market rates or to be sold to authorized market makers, other market participants or investors." ¶¶ 280-81, 349. This statement, published in Credit Suisse's Pricing Supplement, was false and misleading because Defendants knew that Credit Suisse was lending as much as 90% of its XIV Notes to short sellers and buying back XIV Notes for the sole purpose of lending them back out; Defendants also did not disclose that Credit Suisse was lending XIV Notes at lower rates to entice borrowers. *Id.* at ¶ 281. The statement is substantially similar to a separate statement that the Second Circuit sustained in the same Pricing

---

[1] Citations to the PTAC are denoted as "¶__".

Supplement. *See Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 83 (2d Cir. 2021).[2]  The O&O wrongly held that Plaintiffs could not amend their complaint to add these supplementary allegations and the additional misstatement because doing so would purportedly require additional discovery by Defendants and was, therefore, "unduly prejudicial."

*Second*, Plaintiffs seek to supplement and revive their claim that Defendants knew, but failed to notify, investors that the published value of XIV was inaccurate on the afternoon of February 5, 2018 (the "Flatline Claim"). The Second Circuit affirmed dismissal of the Flatline Claim as originally pleaded because Plaintiffs had not pleaded sufficient facts to create the strong inference that Credit Suisse knew the value was being misrepresented. This was because Plaintiffs did not allege that Credit Suisse actually monitored the Indicative Intraday Value for the XIV Notes ("IIV") or its critical input, the VIX Futures Index, and Plaintiffs could point to no "specific reports or statements" showing Defendants could access the Index or were monitoring it on February 5, 2018. *Set Cap. LLC*, 996 F.3d at 83.

With the benefit of discovery, the PTAC resolved that deficiency. Plaintiffs now plead facts, supported by documentary and testimonial evidence, establishing that Credit Suisse used the VIX futures contracts underlying the VIX Futures Index, plus other data, to create an "internal check" of the VIX Futures Index and IIV (¶¶ 235-237), and that Credit Suisse compared this calculation throughout the day to the reported IIV (¶¶ 238-242). The PTAC includes particularized allegations that: (1) Credit Suisse chose to create, and had before February 5, 2018, a calculation

---

[2] This statement, like other alleged misstatements, was also false and misleading because it omitted that Defendants: (1) expected and modeled for an inevitable VIX spike; (2) expected and modeled that alongside that VIX spike, there would be a liquidity squeeze in the VIX futures market that would inflate the prices of VIX futures; (3) knowingly exacerbated the VIX futures liquidity squeeze by issuing and lending numerous additional XIV Notes and pumping the XIV market full of short sellers incentivized to crash XIV; (4) took steps to protect Credit Suisse from the inevitable XIV crash through its hedging and XIV Notes lending; (5) knew and modeled that the resulting liquidity squeeze would trigger an Acceleration Event; and (6) designed XIV to fail in order to profit from the resulting collapse. ¶ 281.

of XIV's indicative value that was used as an "internal check" to monitor the "real value of XIV"; (2) this calculation relied on Credit Suisse's internal calculations of the VIX Futures Index; (3) Credit Suisse's traders used this "internal check" when hedging Credit Suisse's XIV holdings; and (4) Credit Suisse's traders monitored the market throughout February 5, 2018, including XIV's IIV and the prices of XIV and VIX futures. ¶¶11, 235-242. These facts create, at a minimum, a strong inference that Credit Suisse knew on February 5, 2018, that the IIV was being misreported caused XIV Notes to trade at inflated prices. Despite this substantial evidence and the Second Circuit's direction, the O&O wrongly found that the Flatline Value claim was futile.

## II.    BACKGROUND

### A.    The Sustained, Operative Complaint and its Claims

In the operative Amended Complaint sustained by the Second Circuit, Plaintiffs allege that, aware of the impact of past volatility events on the XIV market, Defendants "soaked the XIV market in gasoline throughout the fall of 2017 and early 2018," substantially increasing demand for VIX futures contracts (including through Credit Suisse's own trading) and flooding the market with XIV Notes through the January 2018 offering. *See* Amended Consolidated Class Action Complaint, ("Am. Compl."), ECF No. 190, ¶¶ 111-125. Defendants needed "only a volatility spike to provide a spark." *Id.* Defendants modeled and planned for the volatility events that would allow Credit Suisse to crash the price of XIV Notes and close out the program while causing substantial investors losses, including through Credit Suisse's own hedging. *Id.* ¶¶ 162-168, 194-198.

The Second Circuit upheld these allegations, holding that Credit Suisse's awareness of the impact of historical volatility spikes on the XIV Notes market, coupled with its introduction of millions of XIV Notes into the market, while understanding that hedging trades would cause a VIX liquidity squeeze and collapse the XIV market, adequately alleged Defendants' fraudulent misrepresentation and manipulation under Section 10(b). *Set Cap.*, 996 F.3d at 77-78. The PTAC

adds relevant information from discovery to clarify how Defendants facilitated the collapse of the XIV Notes. Rather than drive the XIV Notes' price down and enable Defendants to close out the XIV Notes in a forced redemption *solely* by Credit Suisse's own hedging using VIX futures, Defendants *also* massively increased their lending of XIV Notes to short sellers who they knew would similarly hedge their positions upon the next inevitable volatility spike.  Defendants knew (and even modeled) that their and the short sellers' hedging would allow Credit Suisse to crash the XIV market upon the next inevitable volatility spike, to investors' severe detriment and Credit Suisse's great benefit. ¶¶ 140-154. The underlying theory sustained by the Second Circuit—that Defendants knowingly turbocharged the VIX futures market to enable Credit Suisse to pull the trigger and destroy XIV on the next volatility spike—is unchanged.

### B.  Plaintiffs Diligently Pursued Discovery Concerning Credit Suisse's Hedging *and* Lending Activity

From the start of discovery, Plaintiffs diligently pursued information concerning both Credit Suisse's own hedging activity and its lending of XIV Notes. Plaintiffs timely demanded documents related to both topics. *See* Requests for Production Nos. 13; 14 (October 15, 2021). Beginning on November 29, 2022, Plaintiffs questioned Defendants' witnesses about both topics during depositions. *See, e.g.*, ¶¶ 69; 82-85, 93, 100-101. Defendants' witnesses were unable to answer critical questions about Credit Suisse's XIV lending, which led the Court to grant on March 1, 2023, Plaintiffs' application for a Rule 30(b)(6) deposition, over Defendants' objection, which took place on April 19, 2023. *See* ECF No. 252. Defendants were, thus, well aware that Plaintiffs were seeking information regarding Credit Suisse's XIV lending and its implications. *See* Memorandum in Support of Motion for Leave to Amend, "Mot. to Am." ECF No. 304, at 8-9.

C.     The O&O

On January 2, 2024, Magistrate Judge Netburn issued an Opinion & Order denying Plaintiffs' motion. ECF No. 333.[3] On the substance, the O&O is limited in scope. It did not weigh any evidence cited or referenced in the PTAC or rule on what evidence should be permitted at trial, as that question was not before the Court. Indeed, the O&O did not determine whether documents and testimony cited to or referenced in the PTAC were even "evidence" because, the Court determined, evidence is limited to materials introduced at trial, which has not yet occurred here. O&O at 5 n.1. The O&O made no determination as to the merits of Plaintiffs' operative claims or what Magistrate Judge Netburn described as a "New Lending Theory," the relevance of the new lending allegations to the claims raised in the operative complaint, or the admissibility of the new lending allegations at trial. The O&O also did not find that Plaintiffs had unduly delayed their proposed amendment or acted in bad faith. O&O at 8 n.2. And, finally, the O&O did not foreclose a motion to conform the pleadings to the evidence made during or after trial.

Instead, under Rule 15(a)(2), Magistrate Judge Netburn denied the motion to add the "New Lending Theory" based solely on her assessment that amendment would be "unduly prejudicial" to Defendants because it would "unquestionably consume months of additional discovery and cost hundreds of thousands of dollars (or more)." O&O at 6-7. However, as Plaintiffs demonstrated, Defendants have been on notice of these new allegations and have had ample opportunity to defend against them; further, the discovery Defendants claim to need is in any event irrelevant. And

---

[3] Magistrate Judge Netburn applied Rule 15(a), rather than Rule 15(b), to Plaintiffs' motion, made after the close of discovery but prior to trial or even the filing of summary judgment motions, holding that motions to conform the pleadings to the evidence under Rule 15(b) are permissible only "during or subsequent to a trial[.]" O&O at 5 (quoting *E. Bay Recycling, Inc. v. Cahill*, No. 00-cv-6147 (RWS), 2007 WL 2728421 at * 4 (S.D.N.Y. 2007)).

Plaintiffs were and remain willing to allow for additional discovery to address any potential prejudice concerns. O&O at 7.[4]

Independently, and again under Rule 15(a)(2), Magistrate Judge Netburn denied Plaintiffs' motion to amend the Flatline Claim as futile because, while Plaintiffs alleged that "Credit Suisse maintained an internal [intraday indicative value] calculation and traders were comparing the published IIV with their own internal calculation[,]" Plaintiffs "still do not allege that Defendants monitored the *VIX Futures Index* for accuracy or that Defendants created a redundant internal *VIX Futures Index.*" O&O at 9 (italics in original).[5]

Magistrate Judge Netburn concluded by observing that, although the Second Circuit has not "squarely addressed the question," she believes that decisions to grant or deny a motion to amend a pleading are non-dispositive but noted that Plaintiffs may argue that the denial is dispositive and subject to a different, less deferential, standard of review under Rule 72(b).

## III. THE COURT'S DENIAL OF LEAVE TO AMEND TO ADD ALLEGATIONS CONCERNING CREDIT SUISSE'S LENDING WAS CLEARLY ERRONEOUS AND CONTRARY TO LAW

The applicable standard of review on an appeal of a ruling by a magistrate judge depends on whether the ruling is dispositive or non-dispositive. As discussed below, certain of the O&O's conclusions were dispositive and should be reviewed *de novo*. The O&O's denial of leave to amend concerning Credit Suisse's lending allegations, however, does not dispose of any claims or defendants, or limit what evidence is ultimately admitted at trial. Accordingly, regarding the lending-related allegations, "[t]he district judge to whom the case is assigned shall consider such

---

[4] Plaintiffs also explained to the Court that additional discovery would not impact the operative case schedule. *See* ECF No. 331, Oral Argument Transcript ("Oral Arg. Tr."), at 56:16-57:2.

[5] The O&O utilizes the term "VIX Futures Index" to refer to the S&P 500 VIX Short-Term Futures Index, O&O at 2. For consistency with the O&O, Plaintiffs define "VIX Futures Index" as the S&P 500 VIX Short-Term Futures Index.

objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." FED. R. CIV. P. 72(a).

A.      Finding that the New Lending-Related Allegations Would Cause Undue Prejudice Was Clearly Erroneous and Contrary to Law

"Leave to amend should be freely given when justice so requires." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (cleaned up). Defendants bear the burden of showing "substantial prejudice would result were the proposed amendment to be granted." *Doe v. Cnty. of Rockland*, No. 21-CV-6751 (KMK), 2022 WL 2533151, at *3 (S.D.N.Y. July 7, 2022). Defendants failed to meet that burden, and there is no adequate factual or legal basis for a finding of undue prejudice.

1.      Any Additional Discovery Would Be Modest and Does not Constitute Undue Prejudice

Magistrate Judge Netburn's conclusion that permitting amendment would cause undue prejudice because it would ostensibly require reopening discovery to seek additional information from relevant third parties is factually incorrect and contrary to law.

Mere inconvenience or delay is not a sufficient basis to deny leave to amend. *See Block v. First Blood Assocs.*, 988 F.2d 344 (2d Cir. 1993) ("[m]ere delay[,] absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend."). This is true even if additional discovery would be required, even where fact discovery is complete, and even where (unlike here) the proposed amendment *adds new defendants or claims*. *See United States v. Continental Ill. Nat'l Bank & Trust Co. of Chi.*, 889 F.2d 1248, 1255 (2d Cir.1989) ("[T]he adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend"); *Bridgeport Music, Inc. v. Universal Music Grp., Inc.*, 248 F.R.D. 408, 414 (S.D.N.Y. 2008) ("Even assuming that additional discovery would impose costs on . . . defendants, '[a]llegations that an amendment will require the expenditure of some additional time, effort, or money do not constitute undue prejudice.'"); *Friedl v. City of N.Y.*, 210 F. 3d 79

(2d Cir. 2000) (permitting amendment after discovery); *Washington v. Dewey*, No. 3:17-CV-1316 (VLB), 2019 WL 1921939 (D. Conn. Apr. 30, 2019) (same); *Pall Corp. v. Entegris, Inc.*, No. 05-CV-5894 (JFB) (WDW), 2007 WL 9709768 (E.D.N.Y. May 5, 2007) (amendment permitted near end of fact discovery).[6] The lack of undue prejudice here is bolstered because any additional discovery would be limited, Plaintiffs consent to any additional necessary discovery, and the additional discovery would not affect the case schedule. *See Duncan v. Coll. of New Rochelle*, 174 F.R.D. 48, 50 (S.D.N.Y. 1997) (no prejudice where discovery extension would not "in any way affect[] the scheduled trial date").[7]

As discussed above, the proposed amendments discussed in this Section leave the operative claims unchanged. But even if the Court were to conclude otherwise, Defendants' burden to show undue prejudice would still be heightened because the proposed amendments are unquestionably closely related to the operative claims.[8] *See Bridgeport Music*, 248 F.R.D. at 415 ("[F]ederal courts have consistently granted motions to amend where, as here, 'it appears that new facts and

---

[6] Courts in this District regularly also allow amendment, even where (unlike here) plaintiffs had known for some time the facts underlying their amendments. *See, e.g.*, *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir.1987) (collecting cases where leave to amend granted after delays from two to five years); *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 453 (S.D.N.Y. 2016) (granting motion to amend to add claim and defendant, even though plaintiff knew of relevant facts more than ten months prior); *Valentini v. Citigroup, Inc.*, No. 11-CV-1355 (JMF), 2013 WL 4407065, at *7 (S.D.N.Y. Aug. 16, 2013) (finding 18 months' delay "insufficient ground to warrant denial of [ ] motion to amend"); *Affiliated FM Ins. Co. v. Liberty Mechanical Contractors, Inc.*, No. 12-CV-5160 (KPF), 2013 WL 4526246, at *5 (S.D.N.Y. Aug. 27, 2013) (allowing amendment after nine months despite movant's knowledge of relevant information at time of initial pleading because party "need not prove that they uncovered new facts or law"); *Ideavillage Prod. Corp. v. Copper Compression Brands LLC*, No. 20-CV-4604 (KPF), 2021 WL 5013799, at *3 (S.D.N.Y. Oct. 27, 2021) (granting leave to add new claim even though plaintiffs could have "investigate[d] the veracity of Defendants' marketing statements sooner"). Here, as in *Ideavillage*, Plaintiffs diligently investigated their claims and, from the earliest date possible, began informing Defendants and the Court of their intention to amend their pleadings. *See infra* at 13-14.

[7] *See* Oral Arg. Tr. at 56:7-9 (agreeing to additional discovery); 56:16-22 (because class certification is still pending and Defendants have already filed a Rule 23(f) Petition, "we have time" even in the current schedule for additional discovery).

[8] Notably, Magistrate Judge Netburn recognized as much, as she permitted the Rule 30(b)(6) deposition of Credit Suisse that expressly covered lending-related topics, over Defendants' objections. *See* ECF No. 252.

allegations were developed during discovery, are closely related to the original claim, and are foreshadowed in earlier pleadings.'"); *In re Enf't of Philippine Forfeiture Judgment Against All Assets of Arelma, S.A.*, 641 F. Supp. 3d 36, 43 (S.D.N.Y. 2022) ("Courts in this Circuit hesitate to find undue prejudice . . . where amendments 'do not raise factual claims unrelated to the events in [the] original [pleading].'"); *Konig v. TransUnion, LLC*, No. 18-CV-7299 (JCM), 2020 WL 550285, at *4 (S.D.N.Y. Feb. 4, 2020) (granting leave to amend where additional discovery was required but new claims arose from the same "transaction" as claims included in the original complaint). Furthermore, the additional allegations did not unfairly surprise Defendants, as they have been on notice that Plaintiffs were probing the question of Credit Suisse's lending practices for many months. *See* Mot. to Am. at 6-12 (Plaintiffs inquired about Credit Suisse's lending in October 2021, asked lending-related questions in depositions between November 2022 and April 2023, and issued third party subpoenas on lending in January 2023). Accordingly, amendment is not prejudicial, much less unduly prejudicial. *See, e.g.*, *Monohan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (amendment not prejudicial where defendants "had knowledge of the facts giving rise to the [amendment]."); *Konig*, 2020 WL 550285, at *4 (same).

Further, any inconvenience would be minimal. Any additional discovery should be narrowly tailored to only the new allegations at issue in the PTAC: namely, Credit Suisse's *own* knowledge and intent, not (as Defendants claim) the identities or intent of the bank's counterparties.[9] Discovery to unmask each third-party borrower is unnecessary and overly burdensome because such discovery is not relevant to the claims **against Credit Suisse**; what

---

[9] *See* Oral Arg. Tr. at 56:3-15; *see also Charney v. Zimbalist*, 2014 WL 963734, at *2 (S.D.N.Y. Mar. 12, 2014) (granting motion to amend at summary judgment stage and finding no prejudice where amendment merely added context to prior complaint's allegations).

matters is what **_Defendants_** believed would happen in the market.[10] Contrary to Defendants'
retelling, evidence relating to these issues was timely sought as early as Plaintiffs' first document
demands, and Plaintiffs developed evidence relating to these allegations in depositions of
Defendants' witnesses.[11] Furthermore, the discovery Defendants claim to need at this late hour is
the very same discovery Plaintiffs sought and Defendants fought to prevent. _See infra_ at 14
(moving to quash third party subpoenas and opposing motion to compel unmasking of CBOE
traders). Regardless, Plaintiffs do not object to conducting additional relevant discovery which, as
discussed above, does not constitute undue prejudice.[12]

Magistrate Judge Netburn also failed to consider the burden and efficiency concerns that
_denial_ of Plaintiffs' motion implies. These allegations may still be litigated on the merits at
summary judgment or trial, meaning that this bridge will need to be crossed a second, if not third,
time. _See Livingston v. Trustco Bank_, No. 120-CV-1030 (GTS/DJS), 2021 WL 6199655 (N.D.N.Y.
Apr. 23, 2021) (granting amendment and noting that "even if leave to amend is denied now, the
Court will ultimately need to decide the merits of the underlying claims" at summary judgment).

      2.    <u>The Court's Ruling on the Scope of Additional Discovery is Based on an</u>
              <u>Erroneous Understanding of the Lending-Related Allegations and the</u>
              <u>Governing Legal Standard</u>

In denying the motion to amend, the O&O states that Plaintiffs "seek to allege that [the

---

[10] The record is rife with proof that Credit Suisse knew and planned that its XIV lending would crash XIV out of existence on the next volatility spike. _See, e.g._, ¶¶ 7, 141, 148, 149, 150, 151.

[11] Key witnesses include Melih Arslan (deposed January 19, 2023; _see_ ¶¶ 69, 84, 89, 101, 141-42, 144, 146, 239) and Leonardo Mayer (deposed February 2, 2023; _see_ ¶¶ 84, 143, 148, 153-54). Plaintiffs notified Defendants of their intent to depose these witnesses by November 3, 2022, but the earliest dates Defendants offered were in January 2023.

[12] _See, e.g._, _Pasternack_, 863 F.3d at 174 ("denial of leave to amend, based solely on delay and litigation expense, [is] abuse of discretion"); _S.S. Silberblatt_, 608 F.2d at 42 ("[E]ven . . . several months to analyze all the discovery material . . . is insufficient prejudice to deny leave to amend, particularly when trial has not yet commenced"); _Soroof Trading Dev. Co. v. GeMicrogen, Inc._, 283 F.R.D. 142, 153 (S.D.N.Y. 2012) (no undue prejudice even where amendment required expenditure of time, effort, or money).

manipulation scheme and manipulative act] [were] intentionally implemented by Credit Suisse, knowing *to a certainty* how the third-party borrowers would act." *See* O&O at 7 (emphasis added). This mischaracterization was clear error, and the Court's denial of leave to amend was contrary to law to the extent that it relied on said mischaracterization. Scienter is adequately pled by "(1) alleg[ing] facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness, or (2) alleg[ing] facts to show that defendants had both motive and opportunity to commit fraud." *Set Cap.,* 996 F.3d at 77–78 (citing *Rombach v. Chang*, 355 F.3d 164, 176 (2d Cir. 2004)). There is no requirement to plead, nor even prove at trial, a party's "certainty."

The Second Circuit held that in the operative complaint, Plaintiffs allege "a strong inference of scienter." *Id*. at 21. The Second Circuit based this conclusion on the operative complaint's "circumstantial evidence of conscious misbehavior or recklessness that, when viewed holistically and together with the allegations of motive and opportunity, supports a strong inference of scienter." *Id.* Consistent with this holding, the PTAC alleges that, in ***addition*** to trading VIX futures on February 5, Credit Suisse "soaked the XIV market in gasoline" by lending XIV Notes to short sellers, encouraging borrowing, requiring that swap counterparties hedge with VIX futures, and issuing millions of Notes in January 2018. ¶¶ 146, 152, 207.

The evidence underlying the PTAC's allegations concerning Defendants' understanding of the XIV Notes market demonstrates, consistent with the Second Circuit's review of the operative complaint, that Defendants knew the effect of prior volatility spikes on XIV, expected similar future spikes, modeled for such spikes and were aware that the next spike would cause XIV to crash. These scienter allegations are "cogent and at least as compelling as any opposing inference of non-fraudulent intent." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007).

3.    The Court's Conclusion that Plaintiffs Should Have Credited Defendants' Assertions Regarding Defendants' Manipulative Misconduct was Clearly Erroneous and Contrary to Law

Magistrate Judge Netburn appeared to offer an additional basis for finding undue prejudice: because Plaintiffs did not credit Defendants' earlier self-serving representations about Credit Suisse's hedging. *See* O&O at 7-8 ("it is unduly prejudicial to Defendants to face a significantly new theory of liability after it has argued for years—to Plaintiffs and the Court of Appeals—that the original theory was built on a house of cards"). Magistrate Judge Netburn did not cite a single case for her position that, even setting aside additional discovery, granting Plaintiffs' motion is somehow unfair to Defendants. This basis for denial—which penalizes Plaintiffs for independently investigating Defendants' claims—is also clear error.

First, among Magistrate Judge Netburn's reasons for finding the amendments "unfair" was the fact that "Defendants made a presentation to Plaintiffs' counsel, supported with documentary evidence, explaining why Plaintiffs' theory was incorrect." O&O at 8. But that self-serving presentation[13] was made during settlement negotiations and prior to fact discovery and should not have been considered by the Court in a Rule 15 analysis. *See* FED. R. EVID. 408; *Grewal v. Cuneo Gilbert & LaDuca LLP*, No. 13-CV-6836 (RA), 2017 WL 1215752, at *16 (S.D.N.Y. Mar. 31, 2017), *aff'd*, 803 F. App'x 457 (2d Cir. 2020) (refusing to consider references to settlement offers and negotiations).[14] And, regardless, nothing in that presentation disclosed the reality: that Defendants were knowingly lending 90% of their XIV Notes to short sellers, knowing and

---

[13] The presentation to which Defendants and Magistrate Judge Netburn refer was a self-serving slideshow—*not* documentary evidence or sworn statements by fact witnesses—made contemporaneously by Defendants' and their Counsel to defend themselves in this litigation.

[14] Plaintiffs alerted the Court to the impropriety of reliance on this presentation in their briefing. Reply Memorandum in Support of Motion for Leave to Amend, ECF No. 315, at 13 n.11. The Court did not address Plaintiffs' argument in its opinion.

modeling for the fact that those short sellers would necessarily hedge their exposure upon the next volatility spike and crash XIV out of existence.

Second, and more broadly, denying leave to amend on the basis that Plaintiffs should have relied on Defendants' claims was erroneous and contrary to law. Plaintiffs are, of course, under no obligation to credit Defendants' self-serving assertions regarding Credit Suisse's hedging activity and were entitled to test those claims through discovery. Indeed, the new lending-related allegations contained in the PTAC add facts and details concerning Defendants' fraudulent scheme, which would not have been discovered if Defendants' self-serving assertions were accepted blindly. The Court erred in penalizing Plaintiffs for not crediting Defendants' self-serving statements, which should not foreclose amendment.

Third, discovery confirmed that **Credit Suisse did engage in its own hedging activity on February 5, 2018** and **made money on that hedging**. The new lending-related allegations merely flesh out additional information of *how* Credit Suisse executed its sophisticated scheme to defraud investors; but both Defendants' manipulative misconduct and Credit Suisse's own hedging are live issues in this case.

4. <u>The O&O was Clearly Erroneous and Contrary to Law Because Any Gaps in the Discovery Record were of Defendants' Own Making</u>

Finally, where *Defendants* caused the very delay of which they now complain, they cannot establish prejudice as a matter of law. Plaintiffs diligently requested documents evidencing Credit Suisse's lending practices as early as October 2021. *See* Requests for Production 13; 14. Defendants objected and failed to provide relevant documents until October 2022. Relatedly, when Plaintiffs sought to unmask the CBOE counterparties to investigate Credit Suisse's relationship with the other parties transacting in VIX futures on February 5, 2018, and when Plaintiffs sought

a Rule 30(b)(6) deposition regarding Credit Suisse's lending,[15] rather than seek information from those same third parties, Defendants moved to quash. Thus, here especially, Defendants should not benefit from successfully delaying discovery into their lending practices. *Friedl*, 210 F.3d at 88 (noting there was no showing of undue prejudice "given that the amendment was proposed only after discovery revealed additional relevant facts[.]").

Moreover, Plaintiffs' motion was timely under the Court's own scheduling order, which additionally supports finding good cause and allowing amendment. *See, e.g.*, *Marjam Supply Co. v. Firestone Bldg. Prods. Co., LLC*, No. CIV.A. 11-7119 (WJM), 2014 WL 1343075, at *3 (D.N.J. Apr. 4, 2014) (allowing amendment where plaintiff "sought leave to amend its pleading by the date and in compliance with the directives contained in the Court's [scheduling] Order," and plaintiff "only learned of the facts which would support its claims" in discovery). The Court erred to the extent that it considered Plaintiffs' motion to amend as untimely because, even though Plaintiffs sought to amend before the Court-ordered deadline, Defendants reserved their rights to raise a timeliness objection when the stipulated order was submitted.[16] *See* Fourth Amended Scheduling Order, ECF No. 259 (ordering the April 21, 2023, deadline for Plaintiffs' amendment, without acknowledging Defendants' reservation of rights); ECF No. 269 (extending date to April 28, 2023). Defendants' reservation of rights did not render the operative scheduling order void.

---

[15] Plaintiffs moved to amend just ***nine days*** after the Rule 30(b)(6) deposition—a deposition which is cited in the PTAC, ¶ 147.

[16] While the Court did not expressly find Plaintiffs' motion untimely, it suggested as much. *See also* O&O, ECF No. 333 at 4 ("[Plaintiffs'] response does not gel with the three prior scheduling orders, which all set the date to file a motion to amend at 30 days after the substantial completion of document discovery.").

B.   Magistrate Judge Netburn's Denial of Leave to Add an Alleged Misstatement Regarding Lending Was a Dispositive, Erroneous Decision

1.   Exclusion of the Alleged Misstatement is a Dispositive Decision

While, as explained above, Magistrate Judge Netburn's ruling on most of the lending-related allegations is non-dispositive because those allegations merely build on operative claims, Plaintiffs' new alleged misstatement regarding Credit Suisse's XIV lending, which constitutes a new claim under both the Exchange Act and the Securities Act, is different. *See Lickteig v. Cerberus Cap. Mgmt., L.P.*, No. 1:19-CV-5263 (GHW), 2020 WL 7629876, at *4 (S.D.N.Y. Dec. 22, 2020) (distinguishing amendments that "plead[] additional factual allegations on which Plaintiff bases his claim for securities fraud" from "new claims"); *Pruiss v. Bosse*, 912 F. Supp. 104, 105 (S.D.N.Y. 1996) (characterizing new defamatory statements as new claims in defamation matter). Because the denial of leave to add the new misstatement "removes a claim or defense from the action, the matter becomes dispositive with respect to the claim or defense removed[.]" *Jackson v. Brandt*, No. 10-CV-05858 (PACKNF), 2011 WL 7095103, at *2 (S.D.N.Y. Mar. 25, 2011). *See also Covington v. Kid*, No. 94-CV-4234 (WHP), 1999 WL 9835, at *2 (S.D.N.Y. Jan. 7, 1999) (Rule 15(a) motion dispositive where denial foreclosed potential claims).[17]

---

[17] The authorities in Magistrate Judge Netburn's O&O do not require a different result and agree with Magistrate Judge Netburn that the Second Circuit has not held that orders denying motions to add new claims are non-dispositive. *See* O&O at 10. Specifically, the cited *Trombetta* quote comes directly from *Patrick v. Local 51, American Postal Workers Union, AFL-CIO*, which was reviewing a *grant* of leave to amend. No. 19-CV-10715 (NSR), 2021 WL 5106638, at *13 (S.D.N.Y. Nov. 3, 2021). The original quote in *Trombetta* and *Patrick* came from *Rivers v. New York City Housing Authority*, decided after *Fielding*, which stated only that "[s]everal district courts have opined that 'the weight of authority' within this Circuit classifies [*sic*] a motion to amend a pleading as non-dispositive[.]" No. 11-CV-5065 (KAM) (MDG), 2014 WL 12829494, at *3 (E.D.N.Y. Nov. 17, 2014). The *Rivers* court also noted that "'[s]ome courts have concluded that a motion to amend should be considered dispositive 'where the magistrate judge's denial of the motion foreclosed potential claims,' and subject to *de novo* review." *Id. Rivers* further noted that some "district courts in this circuit have suggested a bifurcated treatment of motions to amend: a magistrate judge's denial of a motion to amend a complaint should be treated as dispositive, while a grant of the same motion should be treated as non-dispositive." *Id.* (citing *Baez v. Majuri*, No. 10-CV-3038 (BMC) (VVP), 2011 WL 5118442, at *2 (E.D.N.Y. Oct. 27, 2011) ("District courts in this circuit have suggested that a magistrate judge's denial of a motion to amend a complaint should be treated as dispositive[.]")).

15

2.      <u>Magistrate Judge Netburn Erred in Excluding the Alleged Misstatement</u>

Under the *de novo* standard of review, Plaintiffs should be granted leave to amend and add the alleged lending misstatement. First, as discussed above, the lending-related allegations (which amply support the falsity of the new misstatement) should be allowed.

Second, the alleged misstatement implicates ***no*** additional discovery. Whether Defendants misled investors by omitting that they were lending up to 90 percent of their XIV inventory to short sellers does not require any information—and certainly no information beyond what has already been produced in discovery—from third parties. Even Magistrate Judge Netburn's characterization of the scope of additional discovery is not at issue for the alleged misstatement. *See* O&O at 7 ("identify[ing] approximately 100 market players and obtain[ing] third-party document and deposition discovery relating to their market positions, incentives, trading and hedging strategies, knowledge about a potential liquidity crunch, and trading and hedging activities on February 5, 2018"). This fact alone renders the O&O's exclusion of the statement erroneous.

Third, although a new claim, the excluded statement is closely related to the operative claims. It arises from the same Pricing Supplement as the operative alleged misstatements, and is alleged to be false and misleading for the same reasons, plus an additional basis that it misleadingly omitted information about Credit Suisse's lending. The statement is substantially similar to the hedging-related statements that the Second Circuit upheld. *Compare* ¶ 280 ("[W]e may issue these ETNs into inventory of our affiliates to make them available for lending at or about prevailing market rates or to be sold to authorized market makers, other market participants or investors.") *with* ¶ 268 ("We, our affiliates, or third parties with whom we transact, may also enter into, adjust

Ultimately, the *Rivers* court **assumed a de novo standard of review** to assess the denial of plaintiffs' motion to supplement their pleadings.

and unwind hedging transactions relating to other securities whose returns are linked to the applicable underlying Index."). It was also misleading for the same reason: Credit Suisse had "reason to believe" that hedging by both it and these borrowers would "impact prices of XIV Notes." *Set. Cap.*, 996 F.3d at 86. Given that amendment is proper even when new claims do not relate to earlier allegations, leave should certainly be granted to add the new statement here. *See Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016) (even "additional, expanded discovery *on a claim unrelated to the claims in the First Amended Complaint*" "does not rise to a level that justifies denying leave to amend.") (emphasis added).

## IV.    MAGISTRATE JUDGE NETBURN'S DENIAL OF LEAVE TO ADD THE FLATLINE CLAIM SHOULD BE REVERSED

Denials of leave to amend based on matters of law are reviewed *de novo*. *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). Because Magistrate Judge Netburn denied leave to amend to add the Flatline Claim on futility grounds, which is a legal question, that portion of the O&O is reviewed *de novo*.[18] *See id.*; *Dolac v. Cnty. of Erie,* No. 17-CV-1214 (JLS), 2020 WL 2840071, at *1 n.2 (W.D.N.Y. June 1, 2020), *aff'd*, No. 20-2044-CV, 2021 WL 5267722 (2d Cir. Nov. 12, 2021) (reviewing magistrate judge's futility determination *de novo*); *Pyatt v. Raymond*, 462 F. App'x 22, 24 (2d Cir. 2012), *as amended* (Feb. 9, 2012) ("We review *de novo* denials of motions to amend based on a determination that amendment would be futile"); *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 490 (2d Cir. 2011) (same).

---

[18] This standard applies even if the O&O is regarded as non-dispositive, as even non-dispositive motions are reviewed *de novo* where denial is based on "an interpretation of law" such as denying the motion on the basis of futility. *Panther Partners*, 681 F.3d at 119 (reviewing *de novo* denial for leave to amend complaint). However, even if the O&O were reviewed under an abuse-of-discretion standard, for the reasons that follow, Plaintiffs' objection should still be sustained because the O&O fails to properly consider Plaintiffs' well-pleaded allegations regarding Credit Suisse's scienter.

A.    Deciding a Motion to Amend on Futility Grounds Invokes the Same Standard as a
Motion to Dismiss, and Plaintiffs' Allegations Must Be Taken as True

"Where a party opposes leave to amend on 'futility' grounds, the appropriate legal standard is whether the proposed [amendment] fails to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Mem'l Hermann Healthcare Sys. v. State St. Bank & Tr. Co.*, No. 08-CV-5440 (RJH) , 2010 WL 3664490, at *1 (S.D.N.Y. Sept. 17, 2010) (quoting *Ratcliffe v. Pradera Realty Co.*, No. 05-CV-10272 (JFK), 2007 WL 3084977, at *4 (S.D.N.Y. Oct.19, 2007)). While "futility" is a valid reason for denying a motion to amend, "this is true only where it is 'beyond doubt that the plaintiff can prove no set of facts in support' of his amended claims.'" *Pangburn v. Culbertson*, 200 F.3d 65, 70–71 (2d Cir. 1999) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). Because Plaintiffs' allegations are sufficient to survive a motion to dismiss, granting leave to amend is not futile.

B.    It Was an Error of Law to Hold that the Amendments to the Flatline Claim Were
Futile

When the Second Circuit affirmed dismissal of the original Flatline Claim, it held that Plaintiffs had not adequately alleged scienter for that claim because there was no allegation that Credit Suisse "monitor[ed] the VIX Futures Index and compare[d] it to the values of its underlying inputs," which Credit Suisse "was under no obligation" to do. *Set Cap.*, 996 F.3d at 83. Although the PTAC pleads precisely those facts, Magistrate Judge Netburn concluded that amending to add back the Flatline Claim is futile. That decision was erroneous.

Magistrate Judge Netburn concluded that the Flatline Claim does not adequately allege scienter because "Plaintiffs still do not allege that Defendants monitored the VIX Futures Index for accuracy *or* that Defendants created a redundant internal VIX Futures Index." O&O at 9 (emphasis added). But the PTAC alleges, based on facts adduced in discovery, that regardless of any obligation, Credit Suisse indeed calculated and monitored the VIX Futures Index. ¶¶ 235-242.

Paul Somma, Credit Suisse's Head of Exchange Traded Notes, emailed the individuals at "Credit Suisse responsible *for calculating certain indices*"—including the traders hedging exposure to XIV—to create "an *independent internal calculation* for the intraday and closing indicative values for six VIX ETNs, including XIV[]" Notes. ¶ 235 (emphasis added). Credit Suisse understood that its "live ticking," internally calculated values, which were "continuously and independently calculate[d], in real time," represented the "*real value of XIV*." ¶ 237 (emphasis added). Those values were used by Credit Suisse as an "*internal check*" for "Credit Suisse's *risk systems and traders*," and were "accessible to all relevant Credit Suisse traders." ¶¶ 237-238.

Further, discovery confirmed, and the PTAC pleads, that Credit Suisse and its traders were actively comparing the published IIV to their internal calculations, including on February 5, 2018. ¶¶ 239-240.[19] Credit Suisse's VIX traders watched the spike in VIX futures on February 5, 2018, and "constantly monitor[ed] the price of VIX futures and XIV" (¶ 240) while rebalancing Credit Suisse's hedges for XIV during the Flatline Period (¶¶ 241-42). These specific and particularized allegations show "Credit Suisse knew that the XIV [IIV] being distributed to investors was false," ¶ 11, and satisfy both applicable pleading standards and the Second Circuit's guidance. Accordingly, the proposed amendment is not futile. *See, e.g., Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC.*, 376 F. Supp. 2d 385, 404 (S.D.N.Y. 2005), *as amended* (July 6, 2005) (scienter adequately alleged because "[i]t is reasonable to infer that [defendant] . . . had access to . . . independent prices, which would have revealed the misleading nature of the internal valuations"); *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000) (scienter satisfied by alleging defendants "knew facts or had access to information suggesting that their public statements were not accurate").

---

[19] *See* ECF No. 241-5 (Aurmont Dep. Tr.) at 14:25-17:3 (discussing that Aurmont had access to "unofficial" and "real-time data" from "internal models" for "NAV . . . which is the true value of XIV"); ¶¶ 240-41 (discussing NAV is synonymous with the IIV).

19

Magistrate Judge Netburn concluded that Credit Suisse's monitoring and internal calculations did not support an inference of scienter because, in her words, "the IIV uses the VIX Futures Index as an input," and Credit Suisse is not alleged to have known that the VIX Futures Index was inaccurate. O&O at 9-10. But the PTAC does not allege that Credit Suisse used the VIX Futures Index values as an input; rather, documentary evidence shows Credit Suisse independently calculated the VIX Futures Index based on *the underlying prices of VIX futures contracts*. ECF No. 312-39 at 3 (Somma email that includes the "2 S&P VIX Futures indices that underlie[d] [the] ETNs," which explained how the indices were calculated, to assist with independently calculating those indices); *see also* ECF No. 315 at 9 n.42 (email including the "2 S&P VIX Futures indices that underlie[d] [the] ETNs," which explained how the indices were calculated, to assist with independently calculating those indices). The key input into the calculation of the XIV IIV that was variable in real time was the VIX Futures Index value itself. *See* ECF No. 238-1 at PS-39.

The evidence also shows that Credit Suisse's own internal calculations were "used as an internal check" against the IIV, making clear that it was calculated independently of the Index. For the internal calculation to serve as an "internal check," it would necessarily require independent calculation of that key variable that was changing throughout the day. Magistrate Judge Netburn's erroneous conclusion arises from an unsupported, implausible inference that Credit Suisse spent substantial resources just to recalculate the same number that "calculation agent" Janus Index & Calculation Services LLC already calculated and published to the market.

As the O&O disregarded well-pleaded facts and controlling law, its findings as to the Flatline Value claim are erroneous and contrary to law. If the Court finds otherwise, Plaintiffs should be provided an opportunity to correct any deficiencies. *See Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 71 (2d Cir. 2012) (granting leave following futility ruling).

Dated: New York, NY
        January 30, 2024

                            Respectfully submitted,

                            By: */s/ Michael B. Eisenkraft*
                            Michael B. Eisenkraft
                            Laura H. Posner
                            **COHEN MILSTEIN SELLERS**
                            **& TOLL PLLC**
                            88 Pine Street
                            14th Floor
                            New York, NY 10005
                            Tel.: (212) 838-7497
                            Fax: (212) 838-7745
                            meisenkraft@cohenmilstein.com
                            lposner@cohenmilstein.com

                            Steven J. Toll (pro hac vice)
                            Brendan Schneiderman (pro hac vice)
                            1100 New York Ave. N.W., Fifth Floor
                            Washington, D.C. 20005
                            Tel.: (202) 408-3640
                            Fax: (202) 408-4699
                            stoll@cohenmilstein.com
                            bschneiderman@cohenmilstein.com

                            Carol V. Gilden
                            190 South LaSalle Street, Suite 1705
                            Chicago, IL 60603
                            Tel. (312) 357-0370
                            Fax: (312) 357-0369
                            cgilden@cohenmilstein.com

                            **LEVI & KORSINSKY, LLP**
                            Eduard Korsinsky
                            Nicholas I. Porritt
                            Adam M. Apton
                            33 Whitehall Street, 17th Floor

                            New York, NY 10004
                            Tel: (212) 363-7500
                            Fax: (212) 363-7171
                            ek@zlk.com
                            nporritt@zlk.com

aapton@zlk.com

**LEVI & KORSINSKY, LLP**
Alexander A. Krot III (pro hac vice)
1101 Vermont Ave, NW
Suite 700
Washington, DC 20005
Tel: (202) 524-4290
Fax: (212) 363-7171
akrot@zlk.com

*Counsel for Lead Plaintiffs and Co-Lead*
*Counsel for the Classes*

**SLARSKEY LLC**
Adam Hollander
Kimberly Grinberg
767 Third Avenue, 14th Floor
New York, NY 10017
Tel.: (212) 658-0661

*Counsel for the Sudheera Tripuraneni Trust*
*U/A DTD 11/16/2015 and Proposed Class*
*Counsel for the Manipulation Class*

**BRONSTEIN, GEWIRTZ &**
**GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Tel. (212) 697-6484
peretz@bgandg.com

*Additional Counsel for Apollo Asset Limited*

## CERTIFICATE OF SERVICE

I, Michael B. Eisenkraft, hereby certify that on January 30, 2024, I electronically filed Plaintiffs' Objections to the Order and Decision, ("the Objections"), with the Clerk of Court and served the Objections on all counsel of record via CM/ECF.


Dated: New York, NY
      January 30, 2024

Respectfully submitted,


By: /s/ Michael B. Eisenkraft
Michael B. Eisenkraft
**COHEN MILSTEIN SELLERS
& TOLL PLLC**
88 Pine Street
14th Floor
New York, NY 10005
Tel.: (212) 838-7497
Fax: (212) 838-7745
meisenkraft@cohenmilstein.com