**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SET CAPITAL LLC, et al.,

                        Plaintiff,

        v.

CREDIT SUISSE GROUP AG, et al.,

                    Defendants.

1:18-cv-02268 (AT) (SN)

---

### DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE NETBURN'S OPINION & ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE PLEADINGS

CAHILL GORDON & REINDEL LLP
    Herbert S. Washer
    Tammy L. Roy
    Edward N. Moss
    Adam S. Mintz
32 Old Slip
New York, New York 10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420
hwasher@cahill.com
troy@cahill.com
emoss@cahill.com
amintz@cahill.com
*Attorneys for Credit Suisse Group AG, Credit Suisse AG, Credit Suisse International, Tidjane Thiam, and David R. Mathers*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................... ii

PRELIMINARY STATEMENT ..................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ................................... 3

STANDARD OF REVIEW ........................................................................... 6

ARGUMENT .................................................................................................. 8

I.  THIS COURT SHOULD AFFIRM MAGISTRATE JUDGE NETBURN'S
    RULING AS TO PLAINTIFFS' PROPOSED NEW THEORY OF
    LIABILITY ............................................................................................. 8

    A.  Magistrate Judge Netburn Correctly Held That Plaintiffs' New
        Lending Theory Would Require Substantial Additional Discovery ................... 9

    B.  Magistrate Judge Netburn Correctly Held That It Is Unduly
        Prejudicial to Defendants to Face a Significantly New Theory of
        Liability After Defendants Have Argued for Years That Plaintiffs'
        Original Theory Was Flawed ........................................................... 13

    C.  Magistrate Judge Netburn Correctly Denied Leave to Amend as to
        the Alleged Misstatement Concerning Credit Suisse's Lending
        Practices .................................................................................. 15

II. MAGISTRATE JUDGE NETBURN CORRECTLY HELD THAT
    PLAINTIFFS' PROPOSED FLATLINE VALUE CLAIM IS FUTILE ......................... 18

CONCLUSION ............................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  2008 WL 2795141 (S.D.N.Y. July 18, 2008) ......................................................10

*Am. Lecithin Co.* v. *Rebmann*,
  2020 WL 4260989, (S.D.N.Y. July 24, 2020) ......................................................14

*Attestor Value Master Fund* v. *Republic of Argentina*,
  940 F.3d 825 (2d Cir. 2019).................................................................................20

*Barrows* v. *Forest Lab'ys, Inc.*,
  742 F.2d 54 (2d Cir. 1984)...............................................................................14–15

*CapLOC, LLC* v. *McCord*,
  2020 WL 1030965 (S.D.N.Y. Mar. 3, 2020) .........................................................8

*Fredericks* v. *Chemipal, Ltd.*,
  2007 WL 1975441 (S.D.N.Y. July 6, 2007) ...................................................10, 15

*Kiggins* v. *Barnhart*,
  2004 WL 1124169 (S.D.N.Y. May 20, 2004) ......................................................6–7

*Kulkarni* v. *Actavis Generics*,
  2023 WL 6289963 (S.D.N.Y. Sept. 27, 2023)......................................................7n

*Lentell* v. *Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005)................................................................................20

*Livingston* v. *Trustco Bank*,
  2021 WL 6199655 (N.D.N.Y. Apr. 23, 2021) ...............................................12n–13n

*LoCurto* v. *AT&T Mobility Servs. LLC*,
  2017 WL 11826511 (S.D.N.Y. July 17, 2017) ...............................................7–8, 8

*Morency* v. *NYU Langone Med. Ctr. Hosp.*,
  2017 WL 1536057 (S.D.N.Y Apr. 17, 2017).......................................................9–10

*Perez* v. *City of New York*,
  2020 WL 1272530 (S.D.N.Y. Mar. 16, 2020) ......................................................12

*Seeman* v. *Gracie Gardens Owners Corp.*,
  794 F. Supp. 2d 476 (S.D.N.Y. 2011)...................................................................12

*Set Cap. LLC* v. *Credit Suisse Grp. AG*,
  996 F.3d 64 (2d Cir. 2021)............................................................................ *passim*

*Silverman* v. *3D Total Sols., Inc.*,
  2020 WL 1285049 (S.D.N.Y. Mar. 18, 2020) ...................................................................16–17

*Sparrow Fund Mgmt. LP* v. *MiMedx Grp.*,
  2020 WL 1330283 (S.D.N.Y. Mar. 22, 2020) .......................................................................7n

*Trombetta* v. *Novocin*,
  2021 WL 6052198 (S.D.N.Y. Dec. 21, 2021) .........................................................................7

*Wileisa Annette S.* v. *Comm'r of Soc. Sec.*,
  2023 WL 1515772 (S.D.N.Y. Feb. 3, 2023) ...........................................................................6

*Xie* v. *JPMorgan Chase Short-Term Disability Plan*,
  2018 WL 501605 (S.D.N.Y. Jan. 19, 2018) ............................................................................7

**Statutes and Other Authorities**

28 U.S.C. § 636(b)(1)(C) ..........................................................................................................6

Fed. R. Civ. P. 15 ...................................................................................................................6n

Fed. R. Civ. P. 16 ...................................................................................................................6n

Fed. R. Civ. P. 72 ....................................................................................................................6

Fed. R. Evid. 408 .........................................................................................................13, 13–14

Credit Suisse Group AG, Credit Suisse AG, Credit Suisse International, Tidjane Thiam, and David R. Mathers (collectively, the "Defendants") respectfully submit this response to Plaintiffs' Objections to Magistrate Judge Netburn's Opinion & Order Denying Plaintiffs' Motion for Leave to Amend the Pleadings ("Objections" or "Obj.") (ECF No. 337).[1]

## PRELIMINARY STATEMENT

Plaintiffs have moved for leave to amend a complaint that they have known for years is unfounded and futile.  They seek to resuscitate their complaint by proposing an amendment that advances (1) an entirely new theory as to how the market for XIV Notes was allegedly manipulated and (2) the same "Flatline Value Claim" that the Second Circuit previously rejected.  Magistrate Judge Netburn has now rebuffed Plaintiffs' Proposed Complaint, finding that the revised manipulation theory would require enormous new discovery efforts that would unfairly prejudice Defendants, and that the pleading deficiencies cited by the Second Circuit in rejecting the Flatline Value Claim have not been cured.  Defendants respectfully request that this Court affirm Magistrate Judge Netburn's Order.

Magistrate Judge Netburn's decision regarding the new proposed manipulation claim is plainly correct.  After this Court dismissed Plaintiffs' entire complaint for failure to state a claim, the Second Circuit reinstated Plaintiffs' claims for market manipulation and certain alleged misrepresentations based on the allegation (which it was required to accept as true) that Credit Suisse intended to—and did—destroy the value of XIV Notes on February 5, 2018 through its own allegedly enormous hedging activity in the VIX futures market that day.  *Set Cap. LLC* v. *Credit*

---

[1] In this brief, (i) "Order" refers to Magistrate Judge Netburn's Opinion & Order denying Plaintiffs' Motion for Leave to Amend (ECF No. 333); (ii) "PTAC" or "Proposed Complaint" refers to Plaintiffs' proposed amended complaint, which was denied by Magistrate Judge Netburn (ECF No. 305-1); (iii) "Defendants' Opp." refers to Defendants' Opposition to Plaintiffs' Motion for Leave to Amend the Complaint (ECF No. 310); and (iv) "IIV" refers to the Intraday Indicative Value.  Unless noted, emphasis is added and internal citations and quotations are omitted.

*Suisse Grp. AG*, 996 F.3d 64, 77, 86 (2d Cir. 2021); (*see also* Order at 6–7 ("In vacating the district court's prior dismissal order, the Court of Appeals made plain that the allegations [of the operative complaint] focused on ***Credit Suisse's own hedging***.").)

But in their Proposed Complaint, Plaintiffs essentially abandon that claim and seek "to redirect the focus of the manipulation" from Credit Suisse's own allegedly enormous hedging "to the acts of third parties," including "short-sellers who borrowed XIV Notes from Credit Suisse, Credit Suisse swap-parties, investors of volatility securities generally, and other VIX-related issuers." (Order at 7.)  And although Plaintiffs insisted that they were merely trying to tweak their original theory, Magistrate Judge Netburn flatly—and correctly—rejected that characterization:

> Plaintiffs' proposed Third Amended Complaint does not merely expand the basis upon which Plaintiffs allege the Offering Documents were false and misleading or elaborate on the manner of Defendants' manipulative conduct. ***It is a new case focused on Defendants' lending practices and not their hedging***. (*Id.* at 8–9.)

Plaintiffs have taken this entirely new approach (while at the same time denying they have done so) because their original theory was predicated on allegations that are untrue.  Although they are only just now trying to remedy the problem, they have known about it for years.  In mid-2021, Defendants made a presentation to Plaintiffs, with supporting evidence, that demonstrated that Credit Suisse's own hedging activity (*i.e.*, its trading of VIX futures) was *de minimis* and thus could not have "manipulated" any market.  Yet, even after initial discovery confirmed the accuracy of Defendants' presentation, Plaintiffs did nothing.

Instead, they waited nearly another ***year-and-a-half*** to even begin taking discovery that might support an entirely new theory of liability, and ***six months more*** to file their motion for leave to amend in April 2023.  In other words, as Magistrate Judge Netburn put it, Plaintiffs sought "to recast their case five years after it was filed, two years after it was remanded from the Court of Appeals, and (at least) many months (if not years) after Defendants' document production

suggested [Plaintiffs'] operative theory may be weak." (*Id.* at 8.)   Magistrate Judge Netburn correctly rejected this belated effort, noting that "[u]ndertaking a defense in this new [proposed] case would be substantial," and it would be "unduly prejudicial to Defendants to face a significantly new theory of liability after it has argued for years—to Plaintiffs and the Court of Appeals—that the original theory was built on a house of cards." (*Id.* at 7–8.)

Magistrate Judge Netburn's Order is similarly correct with respect to the Flatline Value Claim, which was long ago dismissed by this Court (and affirmed by the Second Circuit).   On this issue, Magistrate Judge Netburn held Plaintiffs' claim was futile because Plaintiffs' proposed "new allegations do not remedy [the] deficiency" identified by the Second Circuit. (*Id.* at 9.)   Plaintiffs' Objections lodged with this Court simply rehash the same arguments Magistrate Judge Netburn considered and correctly rejected.   Plaintiffs' effort to relitigate these issues in their Objections requires the Order to be reviewed under a clear error standard. *See* Standard of Review, *infra*.

Plaintiffs do claim, however, to be bringing one "new" claim, the rejection of which they contend is subject to a less deferential (*i.e.*, *de novo*) standard of review.   Specifically, they now claim that their proposed amendment includes a "new" misrepresentation claim based on Credit Suisse's description of its lending of XIV Notes.   (Obj. at 15.)   But in an effort to convince Magistrate Judge Netburn that their proposed amendment was a mere tweak, they repeatedly represented, both in writing and at oral argument, that they were ***not*** seeking to add any new claims. Plaintiffs should not be permitted to take the opposite position now simply because they perceive doing so would give them a strategic benefit.   But regardless of whether the claim is old or new, Magistrate Judge Netburn properly rejected it, and this Court should affirm that decision.

## FACTUAL AND PROCEDURAL BACKGROUND

In its April 2021 decision, the Second Circuit affirmed the dismissal of Plaintiffs' Flatline Value Claim, but reversed the dismissal of certain misrepresentation and manipulation claims. *Set*

*Cap. LLC*, 996 F.3d 64.  In finding that Plaintiffs plausibly alleged a manipulative act, the Second

Circuit focused on the allegation that Credit Suisse destroyed XIV's value ***with its own hedging***:

> By offering 5,000,000 XIV Notes on June 30, 2017 and another 16,275,000 notes
> on January 29, 2018—millions of which were ultimately issued—Credit Suisse
> exacerbated the risk of illiquidity in the VIX futures market and created conditions
> in which it knew ***that its hedging trades would destroy the value*** of XIV Notes
> during the next volatility spike.  When that spike occurred days later on February
> 5, 2018, Credit Suisse executed on the alleged scheme.  ***It purchased more than
> 105,000 VIX futures contracts***, caused the price of XIV Notes to plummet by more
> than 96 percent, and declared an Acceleration Event to lock in its profit.  *Id.* at 77.

The Second Circuit also relied in part on the presumed truth of Plaintiffs' allegation "that

Credit Suisse earned between $475 and $542 million in profits when it redeemed the XIV Notes"

at prices that were substantially depressed by Credit Suisse's alleged manipulation.  *Id.* at 74.

Defendants argued that Credit Suisse did not profit on the redemption of XIV Notes because it had

entered into offsetting hedges that would result in losses to Credit Suisse that would equal any

gains from depressed redemption prices.  *See id.* at 78–80.  But the Second Circuit disagreed,

noting that it was required at this early stage to assume the truth of the allegation that Credit Suisse

"did not significantly hedge its position until February 5, 2018, ***when it purchased 105,000 VIX***

***futures contracts*** . . . ."  *Id.* at 80.  The Second Circuit also noted that the SEC's open investigation

"strengthen[ed] the inference [of scienter]."  *Id.* at 79.

As soon as discovery began, Plaintiffs learned that these lynchpin allegations were false.

In June 2021, two months after the Second Circuit's decision, Defendants produced to Plaintiffs

the documents produced to the SEC, which made these facts plain.[2]  And in July 2021, in an effort

to promote transparency, Defendants' counsel made a presentation to Plaintiffs' counsel,

---

[2] For example, Defendants produced a "XIV ETN Post Mortem" presentation, which described
"Credit Suisse['s] contribution to [the] VIX Futures spike" as "De Minimis, ***trading at most 4%
of volume*** during the squeeze."  (*See* ECF No. 312-32, Decl. Ex. J (XIV-Lit-0222422 at 0222423).)

explaining in detail—with documentary evidence—precisely why Plaintiffs' theory was incorrect.

Defense counsel explained that (i) Credit Suisse "was *fully hedged* by close of business on February 4, 2018, such that on February 5, [it] simply needed to rebalance that hedge to account for the day's market movements"; (ii) Credit Suisse "traded just *6,919* February and March VIX futures contracts between 4:00pm and 4:15pm on February 5, 2018—*nowhere close* to the 105,000 that [P]laintiffs allege"; (iii) as a result of the February 5 rebalancing, Credit Suisse incidentally recognized only *$11.2 million in P&L* on the day of the XIV price drop, an amount resulting from Credit Suisse's decision to refrain from hedging some of its position until after the close of trading, so as to ensure that Credit Suisse's hedging did not unduly impact market prices—*nowhere close* to the $475 million to $542 million that Plaintiffs allege; and (iv) in May 2021, based on this information, the SEC had "concluded its investigation" without taking any enforcement action against Credit Suisse or any individuals.[3]  Other uncontroverted evidence corroborates these facts.

Yet Plaintiffs did nothing to acknowledge the fatal flaws in the Complaint or to develop some new theory *for nearly another year-and-a-half*.  Rather, they chose to wait until the tail-end of discovery to attempt to find an entirely new—but still undisclosed—theory to somehow tie Credit Suisse to the trading activity of third parties across the VIX futures market.  Plaintiffs did not take meaningful discovery regarding the activities of these third parties until after the original (September 2022) fact discovery deadline[4]—and long after the July 2022 amendment deadline.[5] And it was not until Plaintiffs filed their motion for leave on April 28, 2023 that Defendants were

---

[3] (ECF No. 312-33 (Decl. Ex. K (July 30, 2021 Presentation) at 3).)

[4] The original deadline was September 17, 2022 (ECF No. 166).  It was extended three times, once over Defendants' objection (ECF Nos. 175, 188, 212).  The parties then agreed to a fourth extension (until February 28, 2023) to complete three discrete tasks, none of which involved third-party discovery (ECF No. 218).

[5] Plaintiffs had until 30 days after the document production deadline (*i.e.*, July 2022) to amend "except for good cause."  (ECF No. 175.)

finally informed of Plaintiffs' new theory of liability.

After full briefing and oral argument, on January 2, 2024, Magistrate Judge Netburn denied Plaintiffs' motion for leave to amend, finding that Plaintiffs' new lending theory of liability, introduced years into this case, would be unduly prejudicial and that Plaintiffs' attempt to revive the previously-dismissed Flatline Value Claim was futile.[6]  (Order at 8–10.)  On January 30, 2024, Plaintiffs filed their Objections to Magistrate Netburn's Order.  (ECF No. 337.)

## STANDARD OF REVIEW

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  In general, rulings on non-dispositive matters by a magistrate judge are subject to review for clear error (Fed. R. Civ. P. 72(a)) and rulings on dispositive matters are reviewed *de novo* (Fed. R. Civ. P. 72(b)(3)). Plaintiffs argue for different standards of review for various aspects of the Order.  (*See* Obj. at 6–7, 15–16.)  This exercise is largely academic because Plaintiffs' Objections fail under any standard. Nonetheless, as a technical matter, the Order should be reviewed for clear error for two reasons.

***First***, even dispositive motions are subject to review only for clear error where—as here— the objecting party has not raised anything new, but simply rehashes arguments considered and rejected by the magistrate judge.  *See Wileisa Annette S.* v. *Comm'r of Soc. Sec.*, 2023 WL 1515772, at *1 (S.D.N.Y. Feb. 3, 2023) (objections that "merely re-assert arguments already submitted to the Magistrate Judge" warrant review only for clear error); *Kiggins* v. *Barnhart*, 2004 WL 1124169, at *1 (S.D.N.Y. May 20, 2004) (where objections "essentially reiterate[d] the

---

[6]  For the reasons set out above, and in Defendants' Opp., Defendants continue to maintain that Plaintiffs have not met the "good cause" standard for amendment under Federal Rule of Civil Procedure 16.  Magistrate Judge Netburn held that it "would be within [the Court's] discretion to apply the good cause standard of Rule 16(b)(4)" but found that because Plaintiffs' motion failed "under the more lenient standard of Rule 15(a), Plaintiffs necessarily do not meet the heightened good cause standard or Rule 16."  (Order at 5–6.)

arguments in his earlier submissions," a district court "reviews the entire Report and Recommendation for clear error").[7] Here, Plaintiffs' Objections largely repeat the same arguments that they raised in their briefs before Magistrate Judge Netburn.[8]

*Second*, a clear error review is also appropriate because the Order is not dispositive. "[T]he weight of authority within this Circuit classifies a motion to amend a pleading as non-dispositive." *Trombetta* v. *Novocin*, 2021 WL 6052198, at *6 (S.D.N.Y. Dec. 21, 2021), *reconsideration denied*, 2022 WL 280986 (Jan. 31, 2022); (*see also* Order at 10) (collecting cases). This Court should follow that precedent, which—contrary to Plaintiffs' argument (Obj. at 15)—still holds even where the rejected amendment includes a new proposed claim. *See Xie* v. *JPMorgan Chase Short-Term Disability Plan*, 2018 WL 501605, at *1 (S.D.N.Y. Jan. 19, 2018) ("[C]ourts in this district appear to have consistently applied the clearly erroneous standard to evaluate the denial of leave to amend by a magistrate judge, ***regardless of whether the denial foreclosed potential claims***."); *LoCurto* v. *AT&T Mobility Servs. LLC*, 2017 WL 11826511, at *2 (S.D.N.Y. July 17, 2017) (Torres, J.)

---

[7] This rule remains applicable even where a magistrate judge denies leave to amend on futility grounds. *See, e.g.*, *Kulkarni* v. *Actavis Generics*, 2023 WL 6289963, at *2 (S.D.N.Y. Sept. 27, 2023) (district court reviewed recommendation to deny motion for leave to amend on futility grounds for clear error where plaintiff's "only objection reiterates an argument made before and addressed by [the magistrate judge] in her well-reasoned Report"); *Sparrow Fund Mgmt. LP* v. *MiMedx Grp.*, 2020 WL 1330283, at *4 (S.D.N.Y. Mar. 22, 2020) (district court reviewed magistrate judge's ruling "only for clear error" where objections to futility determination simply "rehash[ed] . . . the same arguments set forth in [its opposition brief]").

[8] (*Compare* Obj. at 1, 8–9 (arguing the proposed amendments "leave the operative claims unchanged" and merely "seek to add factual detail") *with* ECF No. 304 (Mem. of Law in Support of Lead Pls.' Mot. to Amend the Compl. to Conform to the Evidence ("Pl. Br.")) at 13–14 (arguing that the "[a]mendment only serves to expand the basis upon which Plaintiffs allege Defendants' filings were false and misleading [and] the manner in which Defendants engaged in their manipulative conduct"); *compare* Obj. at 18–20 (arguing that "the PTAC alleges, based on facts adduced in discovery . . . Credit Suisse indeed calculated and monitored the VIX Futures Index") *with* Pl. Br. at 14 (arguing "[t]he amended allegations . . . provide . . . documents and sworn testimony proving . . . that Credit Suisse did devote resources to calculating and utilizing a redundant pricing index for VIX futures contracts").)

("[T]he weight of opinion in this District appears to favor treating as nondispositive a magistrate judge's decision that denies a plaintiff's request to amend the complaint to add new claims.").

For both of these reasons, a "clearly erroneous standard" is applicable here.  A magistrate judge's order is "clearly erroneous only when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *LoCurto*, 2017 WL 11856511, at *2 (affirming magistrate decision denying leave to amend).  "This standard of review is highly deferential; magistrate judges are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused."  *CapLOC, LLC* v. *McCord*, 2020 WL 1030965, at *2 (S.D.N.Y. Mar. 3, 2020) (Torres, J.).

## ARGUMENT

### I.   THIS COURT SHOULD AFFIRM MAGISTRATE JUDGE NETBURN'S RULING AS TO PLAINTIFFS' PROPOSED NEW THEORY OF LIABILITY

Magistrate Judge Netburn denied Plaintiffs' motion for leave to add a new theory of liability for manipulation, finding it unduly prejudicial for two reasons.[9]  Both reasons are well-supported by the record and applicable caselaw.  They should be affirmed.

First, Magistrate Judge Netburn correctly found that Defendants had met their burden of establishing that the proposed amendment would "necessitate reopening discovery and extensive third-party discovery" that "would unquestionably consume months of additional discovery and cost hundreds of thousands of dollars (or more)."  (Order at 6–7.)  *See* Section I.A.  Second, she correctly found that allowing Plaintiffs to recast their theory of liability for manipulation—years

---

[9] In denying Plaintiffs' motion to amend on prejudice grounds, Magistrate Judge Netburn did not reach Defendants' argument that Plaintiffs' new theory of liability also should be denied as futile. Accordingly, no court to date has ruled on the plausibility or, as Defendants submit, the implausibility of Plaintiffs' new theory.  If this Court overturns Magistrate Judge Netburn's Order, and permits Plaintiffs to amend the complaint to now assert this new theory of liability, Defendants intend to exercise their right to move to dismiss the new complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

after Plaintiffs were on notice of the defects in their original theory—would be unduly prejudicial. *See* Section I.B. This Court should affirm Magistrate Judge Netburn's ruling on both grounds.

### A. Magistrate Judge Netburn Correctly Held That Plaintiffs' New Lending Theory Would Require Substantial Additional Discovery

Magistrate Judge Netburn correctly held that permitting Plaintiffs to assert an entirely new theory of liability at this late stage of the litigation would unfairly prejudice Defendants. Plaintiffs baldly claim that "there is no adequate factual or legal basis for a finding of undue prejudice." (Obj. at 7.) But they can only make this argument by repeatedly (and misleadingly) minimizing the amendments they seek to make, arguing that they "leave the operative claims unchanged" (*id.* at 8) and merely "seek to add factual detail" concerning their existing claims (*id.* at 1). Magistrate Judge Netburn correctly rejected this argument: "Plaintiffs' proposed Third Amended Complaint does not merely expand the basis upon which Plaintiffs allege the Offering Documents were false and misleading or elaborate on the manner of Defendants' manipulative conduct. ***It is a new case focused on Defendants' lending practices and not their hedging***." (Order at 8–9; *see also id.* at 6–8.) And this Court should do the same.

Plaintiffs' new theory is that Defendants somehow knew and intended that numerous unnamed third parties would trade enormous numbers of VIX futures contracts on February 5, 2018 so that XIV would collapse. As Magistrate Judge Netburn correctly found, "[u]ndertaking a defense in this new [proposed] case would be substantial," and "would unquestionably consume months of additional discovery and cost hundreds of thousands of dollars (or more)." (*Id.* at 7.) And her ruling was sound, because courts routinely deny motions to amend where—as here—the proposed amendment would require substantial additional discovery. *See, e.g.*, *Morency* v. *NYU Langone Med. Ctr. Hosp.*, 2017 WL 1536057, at *4 (S.D.N.Y Apr. 17, 2017) (denying motion to amend where amendment "require[d] reopening discovery into an entirely new theory of

liability"), *aff'd sub nom. Morency* v. *NYU Hosps. Ctr.*, 728 F. App'x 75 (2d Cir. 2018); *Fredericks* v. *Chemipal, Ltd.*, 2007 WL 1975441, at *2 (S.D.N.Y. July 6, 2007) (denying leave to amend in light of "[s]ignificant additional discovery"); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 2008 WL 2795141, at *3 (S.D.N.Y. July 18, 2008) (denying leave to amend where it would impose "new discovery burdens in [the] litigation" regarding "an entirely new theory of relief").

In their Objections, Plaintiffs label any additional discovery a "mere inconvenience" and argue that any discovery could be "minimal" and "narrowly tailored" to focus on "Credit Suisse's own knowledge and intent." (Obj. at 7, 9–10.) Not so. Plaintiffs' new theory of liability would ultimately require evidence of the trading behavior and intent of numerous third-party actors. For example, it would be necessary to show that these third parties intended to and did, in fact, trade significant quantities of VIX futures contracts which, in turn, caused prices in the VIX futures market to be manipulated. It is unreasonable for Plaintiffs to suggest that discovery concerning the actual conduct and intent of these actors is irrelevant or unnecessary. Additional discovery would require, at least, the identification of the approximately 100 relevant market participants that Plaintiffs now maintain caused the collapse; third-party document subpoenas on these market participants, seeking documents relating to their positions, incentives, trading/hedging strategies, knowledge about a potential liquidity crunch, and trading/hedging activities on February 5, 2018; and the depositions of numerous third parties on these same topics. (*See* Defendants' Opp. at 10–11.)[10] Magistrate Judge Netburn—who has overseen discovery in this case for two years—

---

[10] Plaintiffs also attempt to minimize this additional discovery by arguing that Plaintiffs consent to it and that it would not affect the case schedule since no trial date has been set. (Obj. at 8.) But the discovery that Defendants need is not from Plaintiffs. Plaintiffs' consent does not make securing voluminous discovery from numerous third parties any less burdensome. Moreover, the "months of additional discovery" that would be required (Order at 7) obviously would affect the case schedule as it impacts this Court's ability to set any firm date for summary judgment or trial, prolonging this case even further.

correctly dismissed Plaintiffs' self-serving argument that this discovery is "unnecessary," recognizing that "Defendants would surely be entitled to mount a defense beyond" the limited defense—and limited discovery—that Plaintiffs suggest should be sufficient.  (Order at 7, 9.)

Plaintiffs also argue that Magistrate Judge Netburn erred by supposedly misconstruing Plaintiffs' proposed amendments and "the governing legal standard."  (Obj. at 10–11.)  But Magistrate Judge Netburn did not—as Plaintiffs maintain—hold that Plaintiffs were required to plead that Credit Suisse knew "***to a certainty*** how the third-party borrowers would act" in order to state a claim.  (*Id.*)  In that one sentence on which Plaintiffs focus, Magistrate Judge Netburn was merely summarizing—accurately—the new theory that Plaintiffs themselves seek to assert.  (*See, e.g.*, PTAC ¶ 7 (alleging that Credit Suisse purportedly "knew" and "actively incentivized" certain third parties to act in a way that would drive up the price of VIX futures, draw down the price of XIV Notes, and allow Credit Suisse to declare an acceleration event); ¶ 160 (alleging that Credit Suisse intentionally "pack[ed] the market full of short-sellers it knew would collapse the [XIV] Note" and allow Credit Suisse to announce an acceleration event).)  She simply did not hold that scienter requires Plaintiffs "to plead" or "prove at trial, a party's certainty."  (Obj. at 11.)  Indeed, Magistrate Judge Netburn never reached the issue of the legal sufficiency of Plaintiffs' proposed amendment and decided this aspect of Plaintiffs' motion solely on prejudice grounds.

Plaintiffs also seek to point the finger at Defendants for the delay, arguing that Defendants were supposedly "on notice that Plaintiffs were probing the question of Credit Suisse's lending practices for many months" and therefore should have already pursued the discovery they would need to defend the claims Plaintiffs only recently sought to assert.  (*Id.* at 9.)  But Defendants cannot be expected to divine Plaintiffs' new theory of liability by virtue of document requests or questions posed at depositions.  As Magistrate Judge Netburn explained in correctly rejecting

Plaintiffs' argument on this point, particularly in light of the heightened pleading requirements applicable to fraud claims, "it is unreasonable to place the burden on a defendant in a securities fraud case to guess at the theory of liability." (Order at 8.)  Plaintiffs did not articulate their new theory of liability until their motion for leave to amend was filed in April 2023—well after the close of discovery.  It would be unfairly prejudicial to now foreclose Defendants from pursuing the discovery they need to defend against that new theory.

Finally, Plaintiffs argue that Magistrate Judge Netburn erred by failing "to consider the burden and efficiency concerns that *denial* of Plaintiffs' motion implies." (Obj. at 10 (emphasis in original).)  In short, Plaintiffs argue that notwithstanding any decision by Magistrate Judge Netburn or this Court on Plaintiffs' motion for leave to amend, Plaintiffs will continue to press these new claims at summary judgment and trial such "that this bridge [of delay and prejudice] will need to be crossed a second, if not third, time." (*Id.* at 10.)  Plaintiffs' argument is based on the false assumption that "the facts Plaintiffs seek to allege now will necessarily be evidence at a trial" or at summary judgment "absent pre-trial amendment." (Order at 5.)  They will not.  If this Court affirms Magistrate Judge Netburn's Order, Plaintiffs' rejected claims will ***not*** be a subject at summary judgment or at any trial.  *See Seeman* v. *Gracie Gardens Owners Corp.*, 794 F. Supp. 2d 476, 482 (S.D.N.Y. 2011) ("An opposition to a summary judgment motion is not the place for a plaintiff to raise new claims."); *Perez* v. *City of New York*, 2020 WL 1272530, at *1 n.1, 13 n.8 (S.D.N.Y. Mar. 16, 2020) (holding that plaintiff could not raise claims at summary judgment that were not included in complaint).  Moreover, Plaintiffs' apparent plan to circumvent an order of this Court and to continue to attempt to introduce their lending theory of liability at later phases of this case is simply not grounds to give them the relief they now seek.[11]

---

[11] The sole case Plaintiffs rely on does not support Plaintiffs' argument.  The court in *Livingston*

**B.**     **Magistrate Judge Netburn Correctly Held That It Is Unduly Prejudicial to Defendants to Face a Significantly New Theory of Liability After Defendants Have Argued for Years That Plaintiffs' Original Theory Was Flawed**

In addition to the undue prejudice that Defendants would face by virtue of many months of additional expensive discovery, Magistrate Judge Netburn found that "it is unduly prejudicial to Defendants to face a significantly new theory of liability after [Credit Suisse] has argued for years—to Plaintiffs and the Court of Appeals—that the original theory was built on a house of cards." (Order at 7–8.)  Plaintiffs' recycled arguments on this point all lack merit.

First, Plaintiffs argue that, pursuant to Federal Rule of Evidence 408, Magistrate Judge Netburn should not have considered the July 2021 presentation made by Defendants to Plaintiffs identifying the factual flaws in Plaintiffs' operative theory.  (Obj. at 12–13.)  Plaintiffs misconstrue Rule 408, which only precludes the use of settlement-related materials as evidence "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid. 408(a).  Defendants did not offer the July 2021 presentation for such purposes, but rather to demonstrate prejudice and Plaintiffs' undue delay.  And Magistrate Judge Netburn considered the presentation for these same proper purposes.  *See* Fed. R. Evid.

---

v. *Trustco Bank*, 2021 WL 6199655, 120-cv-1030 (N.D.N.Y. Apr. 23, 2021) did not hold, as Plaintiffs seem to suggest (Obj. at 10), that a plaintiff is free to pursue a claim even if the court denies leave to amend to add it.  Rather, the court in *Livingston* held that it would not determine futility on a motion for leave to amend at an "early stage of the litigation," finding that it was a "far better conservation of judicial and party resources to permit the amendment, declare the [] Amended Complaint as the operative complaint, and then let any order on a motion to dismiss determine the facial validity of the [] claim[s]."  *Id.* at *2.  This is what then happened.  Plaintiffs in *Livingston* filed their amended complaint (Am. Compl., *Livingston* v. *Trustco Bank*, 120-cv-1030 (N.D.N.Y. Apr. 26, 2021), ECF No. 42); defendant filed a motion to dismiss (Def.'s Mot. to Dismiss, *Livingston* v. *Trustco Bank*, 120-cv-1030 (N.D.N.Y. June 16, 2021), ECF No. 46); and the court ultimately dismissed four of the five claims on the motion to dismiss (Decision and Order, *Livingston* v. *Trustco Bank*, 120-cv-1030 (N.D.N.Y. Mar. 16, 2022), ECF No. 66).   As the court in *Livingston* recognized, the "procedural posture" of that case—which was still at the pleading stage—was "significant" in granting the motion to amend.  *Livingston*, 2021 WL 6199655, at *2. Its reasoning has no application here.

408(b) (settlement-related materials may be admitted for purposes other than proving liability, "such as proving a witness's bias or prejudice, negating a contention of undue delay, or providing an effort to obstruct a criminal investigation or prosecution"); *Am. Lecithin Co.* v. *Rebmann*, 2020 WL 4260989, at \*11 n.25 (S.D.N.Y. July 24, 2020) (A trial court has "broad discretion" to "admit evidence of settlement . . . offered for another purpose" not prohibited under FRE 408).

Plaintiffs next argue that Magistrate Judge Netburn's ruling unfairly "penaliz[es]" Plaintiffs for not immediately crediting Defendants' presentation in July 2021. (Obj. at 13.) This again misstates Defendants' argument and Magistrate Judge Netburn's holding. Defendants have never argued, nor did Magistrate Judge Netburn hold, that Plaintiffs were required to accept Defendants' representations on their face and conduct no discovery of their own.[12] Of course, Plaintiffs were entitled to test Defendants' representations through discovery. But after discovery proved false the key factual allegations on which Plaintiffs (and the Second Circuit) had relied, Plaintiffs were not entitled to sit idly by considering their options for many months while Defendants incurred substantial expense in continuing to defend themselves against allegations Plaintiffs knew to be false.

As Magistrate Judge Netburn correctly found, it is unduly prejudicial to allow Plaintiffs to "recast their case five years after it was filed, two years after it was remanded from the Court of Appeals, and (at least) months (if not years) after Defendants' document production suggested the operative theory may be weak." (Order at 8.) Numerous authorities in this Circuit support that conclusion. *See Barrows* v. *Forest Lab'ys, Inc.*, 742 F.2d 54, 58 (2d Cir. 1984) ("The district court

---

[12] To be clear, Defendants did not just make representations about Credit Suisse's hedging activity, but also pointed Plaintiffs to ***evidence*** corroborating Defendants' representations. (*See* ECF No. 312–33 (July 2021 Presentation) (citing CS_XIV_222422; CS_XIV_000694; and CS_XIV_000111, which were produced on June 30, 2021).)

acted well within its discretion in concluding that appellants' new claims would unfairly prejudice appellees by substantially altering the complaint's theories of relief."); *Fredericks*, 2007 WL 1975441, at *2 (denying leave to amend as prejudicial where "[p]laintiff's new theory of the case would essentially require starting from scratch" and "[s]ignificant additional discovery would be inevitable").

Finally, Plaintiffs argue that "where *Defendants* caused the very delay of which they now complain, they cannot establish prejudice as a matter of law." (Obj. at 13 (emphasis in original).) Plaintiffs cite no authority in support of this proposition and Defendants are aware of none. In any event, the delay was in no way Defendants' fault. Plaintiffs' principal argument is that Defendants had the temerity to object to discovery requests that, on their face, were unrelated to Plaintiffs' theory of liability, as articulated in the operative complaint. (*See id.* at 13–14.) But Defendants were well within their rights to object, and their objections do not change the fact that Plaintiffs waited too long to pursue their new theory (and never sought to compel the production of the objected-to materials).[13]

In sum, Plaintiffs' extremely tardy motion to assert a new theory of liability was properly denied as unduly prejudicial to Defendants. Magistrate Judge Netburn's Order should stand.

### C.   Magistrate Judge Netburn Correctly Denied Leave to Amend as to the Alleged Misstatement Concerning Credit Suisse's Lending Practices

Plaintiffs now argue for the first time that their proposed amendments include a "new claim" under both the Exchange Act and the Securities Act based on a new alleged misstatement

---

[13] Plaintiffs also argue (again) that their motion for leave to amend was timely because the Court's Fourth Amended Scheduling Order included the parties' agreed-upon briefing schedule for the motion to amend—with Defendants reserving all rights to object to the motion on the grounds of untimeliness. (Obj. at 14.) Magistrate Judge Netburn correctly ruled that Plaintiffs' argument "does not gel with the three prior scheduling orders, which all set the date to file a motion to amend at 30 days after the substantial completion of document discovery," *i.e.*, July 2022. (Order at 4.)

regarding Credit Suisse's lending of XIV Notes.   (Obj. at 15.)   Plaintiffs further argue that Magistrate Judge Netburn's denial of this "new claim" was dispositive and thus subject to review (again) under a *de novo* standard.  (*Id.* at 16.)

But as set out above, the entire Order is subject to a clear error review because the Objections are a mere rehash.  And Plaintiffs' effort to avoid this stringent review standard by suddenly recasting some of the proposed amended allegations as a "new claim" is unavailing.

In order to convince Magistrate Judge Netburn that an amendment should be allowed, Plaintiffs insisted repeatedly that their amendments were modest, and involved **no** new claims. (*See, e.g.*,  Pl. Br. at 1 ("***Plaintiffs now move to amend—not to add any new*** defendants, ***claims*** or SEC filings alleged to be false and misleading—but simply to elaborate on and substantiate with evidence Plaintiffs' sustained claims . . . ."); *id.* at 3 ("The Third Amended Complaint **does not add any claims**, defendants or false and misleading documents."); *id.* at 12–13 ("Finally, while the amended allegations are important, **the Amended Complaint does not allege any new causes of action** . . . ."); ECF No. 331 (Tr. of Oral Arg.) at 11:18–21 ("[W]e are purely amending to conform the pleadings to the evidence . . . *We don't add a claim*.").)[14]

When that argument failed, Plaintiffs attempted to pivot in their Objections, arguing for the first time that their Proposed Complaint actually did contain a "new claim," and that this Court should apply a *de novo* review standard to the Order with respect to this new claim.  But Plaintiffs' last minute change of heart cannot be credited.  *See, e.g.*, *Silverman* v. *3D Total Sols., Inc.*, 2020 WL 1285049, at *2 (S.D.N.Y. Mar. 18, 2020) (Torres, J) ("[N]ew arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and

---

[14] Magistrate Judge Netburn expressly acknowledged this in her Order:  "Plaintiffs emphasize that **they are not adding claims** . . . Instead, they seek to add a new theory of liability regarding the manner in which Defendants engaged in manipulative conduct."  (Order at 2.)

indeed may not be deemed objections at all.").

In any event, Plaintiffs' purportedly new misstatement claim arising out of Credit Suisse's lending practices is not substantively different from Plaintiffs' new theory of manipulation arising out of Credit Suisse's lending practices. Both rest on the premise that Credit Suisse knew or had reason to believe that third-party "borrowers would impact prices of XIV Notes" through their hedging or other conduct. (Obj. at 17.) Thus, however Plaintiffs attempt to frame it, Plaintiffs' recasting of this case to focus on Credit Suisse's lending of XIV Notes, and the trading activities of those who borrowed from Credit Suisse, would be a substantial and fundamental change to the matters currently at issue and require substantial additional discovery.

Plaintiffs again self-servingly argue that their lending theory—when framed as a new alleged misstatement—"implicates *no* additional discovery." (*Id.* at 16 (emphasis in original).) But again it is not for Plaintiffs to decide what discovery Defendants would need to defend themselves. Magistrate Judge Netburn correctly rejected that argument. (Order at 7.) Moreover, the discovery that Magistrate Judge Netburn found would be relevant and necessary on Plaintiffs' new theory of liability is no less relevant and necessary when the new theory of liability is tied to a misstatement claim, rather than a manipulation claim.

Finally, it is apparent that Plaintiffs' argument on this point is merely an attempt to find a way to introduce *some* evidence of "lending" into this case at summary judgment or trial with the hope that the rest of Plaintiffs' lending theory of liability can follow.[15] Indeed, Plaintiffs have been quite upfront that they will continue to pursue their lending theory of liability notwithstanding the denial of their motion for leave to amend. (*See, e.g.*, Obj. at 10 ("These allegations [concerning

---

[15] Though it is beyond the scope of the pending motion, it is folly for Plaintiffs to suggest that Credit Suisse's lending of XIV Notes could somehow support a misrepresentation claim. Credit Suisse would move to dismiss were Plaintiffs permitted to assert this "new" claim.

lending] may still be litigated on the merits at summary judgment or trial, meaning that this bridge will need to be crossed a second, if not third, time.").)  This Court should not permit Plaintiffs' attempt to end-run the Federal Rules.  Plaintiffs' proposed new claims were properly denied and any evidence relating to those claims should be excluded at all future phases of this case.

## II.   MAGISTRATE JUDGE NETBURN CORRECTLY HELD THAT PLAINTIFFS' PROPOSED FLATLINE VALUE CLAIM IS FUTILE

The IIV of XIV was a figure designed to approximate the value of an XIV Note at a given time.  It was calculated by former defendant Janus Index & Calculation Services LLC, not Credit Suisse, and published to the market every 15 seconds on each business day.  The IIV was calculated "based on the inverse of price changes observed on the VIX Futures Index."  *Set Cap. LLC*, 996 F.3d at 70.  Because the IIV used the VIX Futures Index as an input, when the VIX Futures Index flatlined on February 5, 2018, the IIV also "flatlined."  *Id.* at 73 n.22.  Plaintiffs' Flatline Value Claim asserts that Credit Suisse knew that the IIV was inaccurate during the Flatline Period but did nothing to correct it.  (PTAC ¶ 11.)

Both this Court and the Second Circuit rejected Plaintiffs' original Flatline Value Claim because Plaintiffs failed to adequately allege scienter.  (Order at 9–10); *Set Cap. LLC*, 996 F.3d at 82–84.  To state a claim that Credit Suisse knowingly or recklessly failed to correct the IIV, Plaintiffs were required to plead that Credit Suisse was aware or recklessly disregarded that ***the VIX Futures Index itself*** (again, an input to the IIV) was incorrect.  As the Second Circuit explained:  "[i]n order to identify computing errors in the VIX Futures Index," the Defendant "would have been required to monitor the VIX Futures Index" for accuracy by "compar[ing] it to the values of its underlying inputs—i.e., the real-time prices for VIX futures contracts."  *Id.* at 83; (*see also* Order at 9–10.)  Finding that Plaintiffs failed to plead that Credit Suisse had monitored the VIX Futures Index for accuracy or had compared it to real-time prices for VIX futures

contracts, the Second Circuit affirmed the dismissal of Plaintiffs' first attempt to plead its Flatline Value Claim.  *Set Cap. LLC*, 996 F.3d at 83.

Repeating the arguments made to Magistrate Judge Netburn, Plaintiffs claim that the PTAC contains "exactly" the "missing information" the Second Circuit identified.[16]  (Order at 9.)  As Magistrate Judge Netburn correctly held, however, Plaintiffs' allegation that "Credit Suisse maintained an internal IIV calculation and that traders were comparing the published IIV with their own internal calculation[,]" "does not fill the void."  (*Id.*)  "Plaintiffs still do not allege that Defendants monitored the ***VIX Futures Index*** for accuracy or that Defendants created a redundant internal ***VIX Futures Index***."  (*Id.* (emphasis in original).)  Internally calculating the IIV is not the same, and is insufficient to state a claim.  (*Id.* at 9–10); *see also Set Cap. LLC*, 996 F.3d at 83.

Plaintiffs claim that Magistrate Judge Netburn erred because she failed to accept Plaintiffs' unsupported and implausible allegation that, in calculating the IIV, Credit Suisse must have also been re-calculating the VIX Futures Index.  (Obj. at 20.)  Yet, none of the documents or testimony cited in the PTAC support such a claim; indeed, none make any mention whatsoever of a supposed recalculation or duplication of the VIX Futures Index.[17]  (*See id.* at 18–20.)  Plaintiffs' argument is based solely on their leap of logic that "[f]or the internal calculation [of the IIV] to serve as an internal check, it would necessarily require independent calculation" of the "key variable" of the

---

[16] As Magistrate Judge Netburn recognized, Plaintiffs do not address any of the other aspects of the Second Circuit's decision, including that the Offering Documents specifically warned investors about the possibility of potential delays in the calculation of the VIX Futures Index that would lead to potential inaccuracies in the IIV or that Plaintiffs failed to allege scienter through "motive or opportunity" allegations.  (Order at 9 n.3.)

[17] The main factual support for Plaintiffs' claim is an email from a Credit Suisse employee that references ***only*** a potential internal calculation of the ***IIV*** for certain notes, including XIV.  (Obj. at 20) (citing ECF No. 312-39).)  The referenced document simply says nothing about Credit Suisse recalculating or duplicating the ***VIX Futures Index*** itself or that Credit Suisse was assessing the accuracy of the VIX Futures Index by comparing it to real-time prices for VIX futures contracts.

VIX Futures Index.  (*Id.* at 20.)  This is exactly the kind of unwarranted, conclusory allegation that cannot meet a notice pleading standard, let alone the heightened pleading standards applicable here, and Magistrate Judge Netburn properly rejected it.  *Lentell* v. *Merrill Lynch & Co.*, 396 F.3d 161, 174–75 (2d Cir. 2005) (holding that on a motion to dismiss, "conclusions of law or unwarranted deductions of fact are not admitted").  Indeed, as the Second Circuit found, it would be "unreasonable to infer" that, notwithstanding that it was the third-party index provider's responsibility to calculate the VIX Futures Index, another entity would "nonetheless devote[] resources to calculat[e] a redundant pricing index for VIX futures contracts."  *Set Cap. LLC*, 996 F.3d at 84.  Plaintiffs' proposed new allegations do not overcome this conclusion.

In short, the factual allegations Plaintiffs seek to add in support of their Flatline Value Claim support only an inference that Credit Suisse maintained an internal IIV calculation.  Even accepting these allegations as true, Plaintiffs have not alleged "that Defendants knowingly or recklessly failed to correct the Flatline Value."  (Order at 10.)  Accordingly, Plaintiffs' attempt to revive their Flatline Value Claim is futile and was properly denied.  *See Attestor Value Master Fund* v. *Republic of Argentina*, 940 F.3d 825, 833 (2d Cir. 2019) ("[D]enial of leave to amend is proper if amendment would be futile.").

## **CONCLUSION**

For the foregoing reasons, the Court should reject Plaintiffs' Objections to the Order.

Dated: February 29, 2024
      New York, New York

**CAHILL GORDON & REINDEL LLP**

By: /s/ Herbert S. Washer

    Herbert S. Washer
    Tammy L. Roy
    Edward N. Moss
    Adam S. Mintz
32 Old Slip
New York, New York 10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420
hwasher@cahill.com
troy@cahill.com
emoss@cahill.com
amintz@cahill.com
*Attorneys for Credit Suisse Group AG, Credit Suisse AG, Credit Suisse International, Tidjane Thiam, and David R. Mathers*