| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>SET CAPITAL LLC, et al., Individually and on Behalf of<br>All Others Similarly Situated,<br><br>                         Plaintiffs,<br><br>                         -against-<br><br>CREDIT SUISSE GROUP AG, CREDIT SUISSE AG,<br>CREDIT SUISSE INTERNATIONAL, TIDJANE<br>THIAM, DAVID R. MATHERS, JANUS HENDERSON<br>GROUP PLC, JANUS INDEX & CALCULATION<br>SERVICES LLC, and JANUS DISTRIBUTORS LLC<br>d/b/a JANUS HENDERSON DISTRIBUTORS,<br><br>                         Defendants. | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: 03/01/2024___<br><br><br>18 Civ. 2268 (AT)<br><br>**<u>ORDER</u>** |

ANALISA TORRES, District Judge:

Plaintiffs bring this securities class action lawsuit on behalf of themselves and purchasers, acquirers, sellers, and redeemers of VelocityShares Inverse VIX Short Term Exchange Traded Notes ("XIV Notes") who were damaged thereby, against Defendants Credit Suisse Group AG, Credit Suisse AG, and Credit Suisse International (collectively, "Credit Suisse"), and Credit Suisse's CEO, Tidjane Thiam, and CFO, David R. Mathers, alleging claims under §§ 9, 10(b), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), Rule 10b-5 promulgated thereunder, and §§ 11 and 15 of the Securities Act of 1933 (the "Securities Act"). Second Am. Compl. at 1, ¶¶ 23–24, 26–35, 270–93, 306–23, ECF No. 190.

By order dated March 16, 2023, the Court granted Plaintiffs' motion to certify one proposed subclass and denied certification for two other subclasses without prejudice to renewal. Order, ECF No. 260. Now before the Court are two motions: Defendants' motion for reconsideration of the certification grant, ECF No. 264; and Plaintiffs' renewed motion for certification, ECF No. 299. For the following reasons, both motions are DENIED.

## BACKGROUND[1]

On July 1, 2022, Plaintiffs moved to certify three classes:

(1) The "Misrepresentation Class": All persons and entities that purchased or acquired XIV Notes on or between January 29, 2018 and February 5, 2018 (the "Misrepresentation Class Period"), and who were damaged thereby;

(2) The "Manipulation Class": All persons and entities that sold or redeemed XIV Notes on or after February 5, 2018 (the "Manipulation Class Period") and who were damaged thereby (together with the Misrepresentation Class, the "Exchange Act Classes"); and

(3) The "Securities Act Class": All persons and entities that purchased or acquired XIV Notes pursuant to or traceable to the Offering Documents, and were damaged thereby.

*See* ECF No. 179 at 1; *see* Mot., ECF No. 178.  For all three classes, Plaintiffs also moved to appoint Set Capital LLC, Stefan Jager, Aleksandr Gamburg, and Apollo Asset Limited ("Lead Plaintiffs") as class representatives and to appoint co-lead counsel as class counsel.  *See generally* ECF No. 179.

The Court certified the Securities Act Class, but denied certification of the two Exchange Act Classes.  Concerning the Securities Act Class, the Court found that the class satisfied the requirements of Federal Rule of Civil Procedure 23, rejecting Defendants' argument that "individualized proof of tracing, and thus standing, predominates over class-wide issues."  Order at 20.  The Court acknowledged that "only those who can trace their shares to the allegedly misleading registration statement have standing in a [§] 11 claim," but concluded that tracing was a "merits issue that the court need not consider at the class certification stage."  *Id.* (quoting *Wallace v. IntraLinks*, 302 F.R.D. 310, 319 (S.D.N.Y. 2014)).  Further, the Court found that the

---

[1] The Court presumes familiarity with the facts and procedural history, which have been set forth in previous orders in this case, *see, e.g.*, Order at 2–6; *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 69–75 (2d Cir. 2021), and, therefore, only restates pertinent factual and procedural details here.  The facts in this section are taken from the second amended complaint and are accepted as true for the purpose of considering a motion to certify a class.  *See Shabazz v. Morgan Funding Corp.*, 269 F.R.D. 245, 249 (S.D.N.Y. 2010).

liability issue—involving "the class-wide issue of whether the Offering Documents contain material misstatements and omissions as alleged by Plaintiffs"—predominated over individualized tracing inquiries. *Id.* at 21 (citing *In re Smart Techs., Inc. S'holder Litig.*, 295 F.R.D. 50, 61 (S.D.N.Y. 2013)). For similar reasons, the Court concluded that tracing was not a barrier to finding ascertainability, which "does not demand that a court determine whether the proposed class is administratively feasible." *Id.* (citing *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017)). The Court thus certified the Securities Act Class and appointed co-lead counsel as class counsel.

As for the Exchange Act Classes, the Court held that "Plaintiffs' theories of liability . . . , as a whole, are in direct conflict with each other," precluding certification. *Id.* at 24. The Court explained that under the damages methodology suggested by Plaintiffs' expert, "the total sum of out-of-pocket damages will be attributable either to the alleged artificial inflation from Defendants' misrepresentations *or* the alleged deflation from Defendants' manipulative conduct." *Id.* (emphasis added). The methodology did "not allow for double recovery." *Id.* The Court concluded that the two subclasses would be at odds: the Manipulation Class would be motivated to argue that "that there were in fact no alleged misstatements or omissions concerning the risk of Credit Suisse's trading," whereas the Misrepresentation Class would be incentivized to argue that there was no manipulation. *Id.* at 25–26. Lead Plaintiffs—who are members of both Exchange Act Classes—therefore, could not meet the typicality and adequacy requirements for both subclasses because they do not have "have the same 'incentive to prove all the elements of the cause of action' that members of only one of the classes would have." *Id.* at 26 (quoting *Houser v. Pritzker*, 28 F. Supp. 3d 222, 245 (S.D.N.Y. 2014)). Further, the Court found that "the conflict between the classes [was] fundamental." *Id.* Accordingly, the Court denied certification

"without prejudice to refiling by alternative class representatives and counsel" and did not reach the Rule 23(b)(3) requirements or Defendants' remaining arguments.

In the motions now before the Court, the parties challenge both aspects of the Order. Defendants move for reconsideration of the Securities Act Class, while Plaintiffs—now with a new lead plaintiff and new counsel for the Manipulation Class—move to certify the Exchange Act Classes. *See* Defs. Recons. Mem., ECF No. 265; Pls. Cert. Mem., ECF No. 300.

## DISCUSSION

I. Securities Act Class

A. Legal Standard

Under Local Civil Rule 6.3, the standard for a motion for reconsideration is "strict." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 509 (S.D.N.Y. 2009) (applying *Shrader* to a motion for reconsideration under Local Civil Rule 6.3). A motion for reconsideration is appropriate only where the movant shows that the Court "has overlooked controlling decisions or factual matters that were put before it on the underlying motion[,] and which, had they been considered, might have reasonably altered the result before the court." *Range Rd. Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000) (citation omitted) (cleaned up).

Under Federal Rule of Civil Procedure 54(b), moreover, the Court retains inherent authority to revisit its decisions before the entry of final judgment. *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 99 F.3d 538, 541 (2d Cir. 1996). Similar to the local rule, the moving party "ordinarily must demonstrate 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *In re Rezulin Prod. Liab. Litig.*, 224 F.R.D. 346, 350 (S.D.N.Y. 2004) (citation omitted).

B. Analysis

In their reconsideration motion, Defendants argue that the Court erred in declining to delve into traceability at the class-certification stage. Defs. Recons. Mem. at 2. This is not a new argument. *See, e.g.*, ECF No. 237 at 11–12. Here, as in their initial opposition to class certification, Defendants argue that Lead Plaintiffs are inapt representatives of the Securities Act Class because "there is no evidence in the discovery record or offered on class certification to show that [their] own XIV [N]otes can be traced to the challenged offering." *Id.* at 6.

As the Court explained in the Order, however, "tracing is a merits issue that the court need not consider at the class certification stage." *Wallace*, 302 F.R.D. at 319. Defendants again cite *Goldman Sachs Group, Inc. v. Arkansas Teacher Retirement System*, 141 S. Ct. 1951 (2021), in which the Supreme Court instructed that district courts deciding whether to certify a class must "determin[e] that Rule 23 is satisfied, even when that requires inquiry into the merits." Defs. Recons. Mem. at 3 (quoting *Goldman*, 141 S. Ct. at 1960–61). The *Goldman* court did not hold, however, that district courts must address *all* merits questions raised by the parties at the class-certification stage—only those relevant to the Rule 23 inquiry. *Goldman*, 141 S. Ct. at 1961.

Defendants argue that, in addition to the predominance requirement, the issue of traceability bears on the Rule 23 requirements of typicality and adequacy because it implicates Lead Plaintiffs' standing to bring the action on behalf of the class. The Court disagrees. The fact that Lead Plaintiffs may encounter a traceability issue down the road—a common barrier in securities class actions—does not render them atypical or inadequate class representatives. On typicality, it is true that "[p]laintiffs subject to unique defenses which threaten to become the focus of litigation should not be certified as class representatives." *Koppel v. 4987 Corp.*, 191

5

F.R.D. 360, 365 (S.D.N.Y. 2000). But even assuming that traceability is a "unique defense," that general rule is "not rigidly applied in this Circuit," and the "mere existence of individualized factual questions with respect to the class representative's claim will not bar certification." *Id.* at 365–66 (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990), *abrogated on other grounds by Microsoft Corp. v. Baker*, 582 U.S. 23, (2017)). The Court does not find that Lead Plaintiffs' potential traceability problems threaten to "preoccup[y]" them to the detriment of absent class members as the litigation proceeds. *Gary*, 903 F.3d at 180.

On adequacy, moreover, courts generally deny certification on inadequacy grounds "only [] in the most extreme instances"—such as where class representatives have a fundamental conflict of interest, "display an alarming unfamiliarity with the suit," an "unwillingness to learn," or "are so lacking in credibility that they are likely to harm their case." *Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*, 338 F.R.D. 205, 212 (S.D.N.Y. 2021) (citations omitted). Defendants do not challenge Lead Plaintiffs' adequacy on any of these grounds; instead, they reiterate their typicality arguments.

Because Defendants do not identify controlling decisions the Court has overlooked or other clear error in the Order, the Court finds that Defendants have not adequately supported their request for reconsideration under Local Rule 6.3 and Federal Rule of Civil Procedure 54(b). Accordingly, their motion is DENIED.

II.   Exchange Act Classes

    A.  Legal Standard

To certify a class under Rule 23(b)(3), a court must determine that the proposed class meets the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), as well as the predominance and superiority requirements of Rule 23(b)(3).  *See Waggoner v. Barclays PLC*, 875 F.3d 79, 93 (2d Cir. 2017).  Plaintiffs must meet each of the Rule 23(a) and 23(b)(3) requirements by a preponderance of the evidence.  *See Clark v. City of New York*, No. 18 Civ. 2334, 2021 WL 603046, at *2 (S.D.N.Y. Feb. 16, 2021) (citing *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008)).  The members of the proposed class must also be ascertainable "by reference to objective criteria." *Katz v. Prof'l Billing Collections, LLC*, No. 20 Civ. 3043, 2021 WL 2418387, at *2 (S.D.N.Y. June 14, 2021) (quoting *Stinson v. City of New York*, 282 F.R.D. 360, 367 (S.D.N.Y. 2012)).

    1.  Numerosity

A proposed class is sufficiently numerous if "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  In securities actions involving nationally listed public companies, numerosity is satisfied by showing that a large number of shares were outstanding and traded during the time period.  *See In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007).

    2.  Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The commonality requirement is satisfied where a class-wide proceeding is capable of "generat[ing] common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis omitted).

3. Typicality

The typicality requirement "is satisfied when the lead plaintiffs' claims arise from the same series of events and find support in the same legal theories as the claims of all of the remaining class members." *Houser*, 28 F. Supp. at 245; *see also* Fed. R. Civ. P. 23(a)(3) (requiring that "the claims or defenses of the representative parties are typical of the claims or defenses of the class"). The lead plaintiffs' claims need not be "identical" to the class members' claims, but the lead plaintiffs must "have the 'incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions.'" *Houser*, 28 F. Supp. 3d at 245 (quoting *In re NASDAQ Market-Makers Antitr. Litig.*, 169 F.R.D. 493, 510 (S.D.N.Y. 1996)); *see also Caridad v. Metro-N. Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999), *called into question on other grounds by In re IPO*, 471 F.3d 24 (2d Cir. 2006) ("[Typicality] requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff[s'] claim as to that of other members of the proposed class." (citation omitted) (cleaned up)).

4. Adequacy

"Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir.2006). "In order to defeat a motion for certification, any conflicts between the class representative and members of the putative class must be 'fundamental.'" *Ligon v. City of New York*, 288 F.R.D. 72, 80 (S.D.N.Y. 2013) (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)).

5. Predominance

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance requirement "ensures that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007) (alterations omitted) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)). Plaintiffs meet this requirement "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

6. Superiority

Rule 23(b)(3) also requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts analyze: (1) "the interest of the class members in maintaining separate actions"; (2) "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the difficulties likely to be encountered in the management of a class action." *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 230 (2d Cir. 2006) (quoting Fed. R. Civ. P. 23(b)(3)).

7. Ascertainability

To certify a class, a court must also determine that the members of the proposed class are ascertainable. *Katz*, 2021 WL 2418387, at *2. A class is ascertainable where it can "be defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d at 264.

B. Analysis

Plaintiffs renew their request to certify the Exchange Act Classes, arguing that the fundamental conflict the Court identified in the Order has been resolved by the identification of a separate class representative (the Sudheera Tripuraneni Trust U/A DTD 11/16/2015 (the "Trust")) and separate counsel (Slarskey LLC) for the Manipulation Class. They contend that "the addition of the Trust and Slarskey as separate and independent representatives and counsel of the Manipulation Class obviates the Court's stated concerns regarding adequacy and typicality." Pls. Cert. Mem. at 10.

"Where a fundamental conflict exists that goes to the very heart of the litigation, it can be cured by dividing the class into homogeneous subclasses with separate representation to eliminate conflicting interests of counsel." *Charron v. Wiener*, 731 F.3d 241, 250 (2d Cir. 2013) (citations and quotation marks omitted). "Such subclassing may provide a key 'structural assurance of fair and adequate representation for the diverse groups and individuals affected.'" *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 627 (1997)).

The Second Circuit's decision in *In re Literary Works in Elec. Databases Copyright Litigation*, 654 F.3d 242 (2d Cir. 2011), illustrates the dilemma here. In that case, the Circuit rejected a single-class settlement that divided claims into three categories, with the class representatives holding combinations of all three categories of claims. 654 F.3d at 251–54.

Because the third category of claims was the weakest, received the least generous damages, and bore the risk of oversubscription to the class, the Circuit held that the interests of class members with only claims in the third category "were antagonistic to the others on a matter of critical importance—how the money would be distributed," thereby "requir[ing] separate representation." *In re Payment Card Interchange Fee & Merch. Disc. Antitr. Litig.*, 827 F.3d 223, 232–33 (2d Cir. 2016) (discussing *Literary Works*, 654 F.3d at 254). The Circuit explained that "[c]lass representatives with claims in all three categories naturally would want to maximize their overall recovery regardless of allotment across categories, whereas class members with claims only in the third category would want to maximize the compensation for that category in particular." *Id.* at 233 (discussing *Literary Works*, 654 F.3d at 252). Because "there could be no assurance that anyone 'advanced the strongest arguments in favor' of the disfavored claims," the settlement "proved that 'only the creation of subclasses, and the advocacy of an attorney representing each subclass, [could] ensure that the interests of that particular subgroup [were] in fact adequately represented." *Id.* at 233 (quoting *Literary Works*, 654 F.3d at 252–53) (cleaned up).

The Trust—Plaintiffs' proposed Manipulation Class representatives—purchased XIV Notes on November 13, 2017, before Defendants allegedly inflated the market by making the misrepresentations challenged by the Misrepresentation Class. See ECF No. 301-1. And, the Trust sold its entire position in XIV Notes on February 6, 2018, after the alleged market manipulation. *Id.* As a result, the Trust is only a member of the Manipulation Class, and is positioned to represent the interests of that class.

Lead Plaintiffs, however, are "members of both" the Manipulation Class and Misrepresentation Class. Pls. Cert. Reply at 2, ECF No. 321. "[H]ow their compensation is

allotted among their claims is irrelevant; what matters is the bottom line." *Literary Works*, 654 F.3d at 251. In other words, even if Lead Plaintiffs do not formally represent the Manipulation Class, they are functionally indifferent to whether damages are allocated to Defendants' alleged inflationary misrepresentations or deflationary manipulations.

This conflict makes Lead Plaintiffs inadequate advocates for one group of claimants: those holding only misrepresentation claims. This group is, theoretically, "interested exclusively in maximizing the compensation for that one category of claim." *Id.* at 252. "Whereas [Lead Plaintiffs] could choose to sacrifice their [misrepresentation] claims in exchange for more favorable compensation on their [manipulation] claims, no such option is available" to the misrepresentation-only plaintiffs. *Id.* "[B]ecause the price of XIV Notes cannot be simultaneously inflated and deflated," moreover, damages allocation between the Exchange Act Classes is a zero-sum game. Order at 10.

The Court recognizes that the number of misrepresentation-only plaintiffs may be few, and that many—if not most—of the plaintiffs will fall into both Exchange Act Classes. But in examining adequacy, the Court must "ask independently whether the interests of *all* class members [are] adequately represented." *Literary Works*, 654 F.3d at 254 (emphasis added). Without a lead plaintiff to represent and advocate for the misrepresentation-only claimants, the Court cannot find that this standard is met. *See id.* at 257 (advising that each "subclass representative . . . represent plaintiffs' interests with respect to only that category of claim").

Accordingly, Plaintiffs' renewed motion for class certification is DENIED without prejudice to refiling with alternative class representation by **April 30, 2024**.[2] Alternatively, if Plaintiffs elect to proceed with the same class representatives, Plaintiffs shall provide evidence to

---

[2] The Court finds that refiling would not necessarily be futile and, therefore, rejects Defendants' request to deny the motion with prejudice.

12

support their statement that the pool of misrepresentation-only plaintiffs is "*de minimis*, if they exist at all." Pls. Cert. Reply at 3 n.2.

## CONCLUSION

For the foregoing reasons, the parties' motions are DENIED. The Clerk of Court is directed to terminate the motions at ECF Nos. 264 and 299.

SO ORDERED.

Dated: March 1, 2024
　　　　New York, New York

_____
ANALISA TORRES
United States District Judge