## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SET CAPITAL LLC, et al., Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiffs, | Case No.: 1:18-cv-02268-AT-SN |
| v. | **LEAD PLAINTIFFS' AND SUDHEERA TRIPURANENI TRUST U/A DTD 11/16/2015'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR JOINT MOTION FOR CLASS CERTIFICATION OF THE MISREPRESENTATION AND MANIPULATION CLASSES** |
| CREDIT SUISSE GROUP AG, CREDIT SUISSE AG, CREDIT SUISSE INTERNATIONAL, TIDJANE THIAM, DAVID R. MATHERS, JANUS HENDERSON GROUP PLC, JANUS INDEX & CALCULATION SERVICES LLC, and JANUS DISTRIBUTORS LLC d/b/a JANUS HENDERSON DISTRIBUTORS, | |
| Defendants. | |

# DEFINITION OF TERMS

**ETN** – Exchange Traded Note, an unsecured debt instrument traded on a major exchange that functions similarly to a promissory note. ETNs are one type of Exchange Traded Product ("ETP").

**ETP** – exchange traded product, of which ETNs are one type.

**Futures contract** – a contract representing a promise to buy or sell a particular commodity or financial instrument at a predetermined price at some future date.

**Offering Documents -** the Offering Documents are Credit Suisse's (i) January 29, 2018 pricing supplement (No. VLS ETN-1/A48) (the "January Supplement") filed with the SEC pursuant to Rule 424(b)(2) and in conjunction with (ii) Registration Statement No. 333-218604-02, (iii) prospectus supplement dated June 30, 2017, and (iv) prospectus dated June 30, 2017.

**VIX or VIX Index** – referred to as Wall Street's "fear index" or "fear gauge," the VIX or VIX Index measures market volatility by providing a value intended to reflect how much the market thinks the S&P 500 Index will fluctuate in the 30 days from the time of each tick of the VIX Index.

**VIX futures** – futures contracts that allow investors to trade and/or hedge an investment position based on their assessment of future market volatility.

**XIV** – The common name and trading ticker for VelocityShares Inverse VIX Short Term ETNs, issued by Credit Suisse, sold by Janus, and traded on the NASDAQ.

**XIVIV** – the ticker by which XIV's Intraday Indicative Value was transmitted.

I.      INTRODUCTION ................................................................................................. 1

II.     LEGAL STANDARD ......................................................................................... 1

III.    ARGUMENT ...................................................................................................... 1

        A.      Professor Mitts's declaration fully addresses the Court's concerns by
                confirming that no Misrepresentation-only class members exist. ......................... 1

                1.      Plaintiffs' clarified class definitions and Professor Mitts's
                        declarations demonstrate that "the pool of Misrepresentation-only
                        plaintiffs is '*de minimis*, if they exist at all.'" ............................................ 2

        B.      At class certification, Plaintiffs are not required to prove the exact minute
                the manipulation began. ........................................................................................... 4

                1.      Exactly when the manipulative conduct began is a loss-causation
                        question improper to decide at class certification. ...................................... 4

                2.      If the merits phase establishes that the truth was revealed at a
                        different time, the class definitions may be modified to reflect that
                        time. ............................................................................................................ 7

                3.      There is an adequate and typical Plaintiff for each of the Classes .............. 9

                4.      Defendants' argument that the Misrepresentation Class damages
                        are small is both premature and irrelevant for class certification. ............. 10

        C.      To the extent the Court still has concerns regarding interclass conflicts,
                those concerns can be addressed at the merits stage. ............................................. 11

        D.      The Court's certification of the Securities Act Class should remain
                untouched. ................................................................................................................ 13

IV.     CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant:small-caps">Cases</span>

*In re Agent Orange Prod. Liab. Litig.,*
    818 F.2d 145 (2d Cir. 1987) ...........................................................................8

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds,*
    568 U.S. 455 (2013) ......................................................................................4

*In re Barclays Bank PLC Sec. Litig.,*
    No. 09 CIV. 1989 (PAC), 2016 WL 3235290 (S.D.N.Y. June 9, 2016) ................................14

*Boucher v. Syracuse Univ.,*
    164 F.3d 113 (2d Cir. 1999) ............................................................................2

*Calvo v. City of N.Y.,*
    No. 14-CV-7246 (VEC), 2018 WL 1633565 (S.D.N.Y. Apr. 2, 2018) ...................................12

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC,*
    310 F.R.D. 69 (S.D.N.Y. 2015) ........................................................................5

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.,*
    No. 17 CIV. 01580 (LGS), 2019 WL 5287980 (S.D.N.Y. Oct. 18, 2019) ................................8

*Doe v. Karadzic,*
    192 F.R.D. 133 (S.D.N.Y. 2000) ......................................................................13

*Dura Pharmaceuticals, Inc. v. Broudo,*
    544 U.S. 336 (2005) ......................................................................................6

*Gen. Tel. Co. of Sw. v. Falcon,*
    457 U.S. 147 (1982) ......................................................................................8

*In re Giant Interactive Grp., Inc. Sec. Litig.,*
    643 F. Supp. 2d 562 (S.D.N.Y. 2009) ................................................................14

*Gordon v. Hunt,*
    117 F.R.D. 58 (S.D.N.Y. 1987) ........................................................................13

*Green v. Wolf Corp.,*
    406 F.2d 291 (2d Cir. 1968) ............................................................................8

*Gruber v. Gilbertson,*
    No. 16-CV-9727 (JSR), 2023 WL 6121649 (S.D.N.Y. Sept. 19, 2023) ................................8

*Jermyn v. Best Buy Stores, L.P.,*
    276 F.R.D. 167 (S.D.N.Y. 2011) ......................................................................13

*Lapin v. Goldman Sachs & Co.*,
254 F.R.D. 168 (S.D.N.Y. 2008) ...................................................................7

*Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.*,
993 F.2d 11 (2d Cir. 1993)...........................................................................11

*Martínek v. AmTrust Fin. Servs., Inc.*,
No. 19 Civ. 8030, 2022 WL 326320 (S.D.N.Y. Feb. 3, 2022) .................5

*Mazzei v. Money Store*,
829 F.3d 260 (2d Cir. 2016).........................................................................8

*McIntire v. China MediaExpress Holdings, Inc.*,
38 F. Supp. 3d 415 (S.D.N.Y. 2014)........................................................8, 11

*McKinnon v. Dollar Thrifty Auto. Grp., Inc.*,
No. 12-CV-04457-YGR, 2016 WL 6582045 (N.D. Cal. Nov. 7, 2016)...............................12

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
328 F.R.D. 86 (S.D.N.Y. 2018) ...............................................................4, 8

*In re Monster Worldwide, Inc. Sec. Litig.*,
251 F.R.D. 132 (S.D.N.Y. 2008) .................................................................9

*In re Namenda Direct Purchaser Antitrust Litig.*,
331 F. Supp. 3d 152 (S.D.N.Y. 2018).........................................................2

*In re New Oriental Educ. & Tech. Grp. Sec. Litig.*,
293 F.R.D. 483 (S.D.N.Y. 2013) .................................................................2

*In re Oxford Health Plans, Inc.*,
191 F.R.D. 369 (S.D.N.Y. 2000) .................................................................7

*Ruzhinskaya v. Healthport Techs., LLC*,
311 F.R.D. 87 (S.D.N.Y. 2015) ............................................................11, 12

*Sanchez v. N.Y. Kimchi Catering, Corp.*,
No. 16 CIV. 7784 (LGS), 2018 WL 2383145 (S.D.N.Y. May 24, 2018) .............................12

*Set Cap. LLC v. Credit Suisse Grp. AG*,
No. 23-462 (2d Cir. Mar. 30, 2023).............................................................13

*In re Snap Inc. Sec. Litig.*,
334 F.R.D. 209 (C.D. Cal. 2019) .................................................................5

*Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*,
262 F.3d 134 (2d Cir. 2001)..........................................................................7

*In re Vale S.A. Sec. Litig.*,
  19-CV-526-RJD-SJB, 2022 WL 122593 (E.D.N.Y. Jan. 11, 2022)....................................5, 6

*Vincent v. Money Store*,
  304 F.R.D. 446 (S.D.N.Y. 2015) ...........................................................................................11

*In re WorldCom, Inc. Sec. Litig.*,
  219 F.R.D. 267 (S.D.N.Y. 2003) ............................................................................................5

## I.  INTRODUCTION

There is one question at issue here: whether, at class certification, there is a fundamental conflict between Plaintiffs' proposed Misrepresentation and Manipulation Classes that precludes class certification. As set forth in Plaintiffs' motion (ECF No. 344-346, the "Motion") and below, and in Professor Joshua Mitts's declarations, the answer to that question is definitively "no."

## II.  LEGAL STANDARD

It is hornbook law that, at the class certification stage:

> [a]ll that is required . . . is such sufficient similarity of interest that there is not affirmative antagonism between the representative and the class. ***Conflicts that are merely speculative or hypothetical will not affect the adequacy inquiry.***  A conflict must be manifest at the time of certification rather than dependent on some future event or turn in the litigation that might never occur.  For this reason, potential conflicts over the distribution of damages— which would arise only if the plaintiffs succeed in showing liability on a class-wide basis— will not bar a finding of adequacy at the class certification stage[.]

1 Newberg & Rubenstein on Class Actions § 3:58 (6th ed.) (emphasis added).  Because there are no Misrepresentation-only class members whose interests are not adequately protected absent separate representation, the Motion should be granted. ECF No. 345 ("Pl. Br.") at 15-16; ECF No. 346-6 ("Mitts Decl.") at ¶¶ 6, 8-25.

## III.  ARGUMENT

### A.  <u>Professor Mitts's declaration fully addresses the Court's concerns by confirming that no Misrepresentation-only class members exist.</u>

In its March 1, 2024, order (ECF No. 339, "Order II"), the Court ruled that Plaintiffs may "proceed with the same class representatives"—that is, Lead Plaintiffs on behalf of the Securities Act Class and the Misrepresentation Class, and the Trust on behalf of the Manipulation Class— provided that Plaintiffs "provide evidence to support their statement that the pool of misrepresentation-only plaintiffs is '*de minimis*, if they exist at all[,]'" thereby ensuring the class representatives' adequacy and typicality.  Order II at 12-13.  The Motion does exactly that.  In

support, Plaintiffs submitted the Declaration of Professor Joshua Mitts, Ph.D., regarding the composition of the Misrepresentation and Manipulation Classes. And, as Professor Mitts explains, "there are no members of the Misrepresentation Class who are not also members of the Manipulation Class." Mitts Decl. at ¶ 6; *see also id*. at ¶¶ 8-25; Eisenkraft Decl. Ex. A ("Mitts Rebuttal") at ¶ 44.

1. <u>Plaintiffs' clarified class definitions and Professor Mitts's declarations demonstrate that "the pool of Misrepresentation-only plaintiffs is '*de minimis*, if they exist at all.'"</u>

Professor Mitts's opinions and analysis, along with Plaintiffs' clarified class definitions, address the Court's stated typicality and adequacy concerns by a preponderance of the evidence— all that is necessary at the class certification stage. As a threshold matter, Professor Mitts is eminently qualified and his proffered methodology is sound, as this Court has already found. ECF No. 260 ("Order I") at 7-9. Defendants do not attack Professor Mitts's qualifications, move to exclude his testimony under *Daubert*, or provide any other basis to disregard his opinions. Defendants also do not, because they cannot, challenge Plaintiffs' right to clarify the class definitions in this renewed motion.[1]

Because the Misrepresentation Class does not include investors who acquired XIV Notes after Defendants' manipulation concluded but before the truth about Defendants'

---

[1] Lead plaintiffs have "the authority … to define the class[.]" *In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 293 F.R.D. 483, 488 (S.D.N.Y. 2013). *See also, e.g., In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 211 (S.D.N.Y. 2018) (approving expanded class definition set forth in class certification motion). And, of course, if factual determinations at later stages of the case establish that the class definitions should be modified, "consistent with the certifying court's broad discretion over class definition and obligation to reassess class rulings as the case develops," the Court may at that point revisit the class definition question. *Id.* at 212 (citing *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999)).

misrepresentations was revealed[2] (consistent with Plaintiffs' allegations, as is appropriate at this stage of litigation)—and absent any actual basis to conclude that Defendants' misrepresentations were revealed before Defendants' manipulative acts—Professor Mitts explains that **all** Misrepresentation Class members are **also** Manipulation Class members.  Pl. Br. at 15-16; Mitts Decl. at ¶¶ 6, 11-14, 22-23, 25.

Defendants' lengthy string cite to cases where the Second Circuit called for an "independent advocate" (ECF No. 348 ("Def. Br.") at 6 n.3) is senseless and inapt where, as here, it is impossible to appoint a Misrepresentation-only advocate because ***there is no class member who has Misrepresentation-only claims***.  Defendants' narrative that Plaintiffs have somehow "declined" to put forth a class representative is similarly a *non sequitur*, *see, e.g.*, *id.* at 7, because the Court cannot appoint someone who ***does not exist***. Relatedly, Defendants' discussion of caselaw validating a "*de minimis*" assessment of interclass conflict, *id.* at 7 n.4, is inapposite where, as here, no Misrepresentation-only class members exist.

For an investor who bought or sold XIV during the relevant period, there are thus only two conceivable possibilities: they are a member of only the Manipulation Class, or they are a member of both the Manipulation Class *and* the Misrepresentation Class. ***Either way***, the Court need not worry that their interests are adequately represented: if they are a member of only the Manipulation Class, they are represented by a Manipulation-only plaintiff and Manipulation-only counsel, who are concerned only with ensuring a substantial recovery for manipulation-related damages. Critically, however, and as explained in Professor Mitts's rebuttal declaration, they are indifferent

---

[2] Plaintiffs amended the Misrepresentation Class definition to clarify that it includes investors who acquired XIV Notes between January 29, 2018, and 4:15 PM on February 5, 2018, and the Manipulation Class definition to clarify that it includes investors who sold or redeemed their XIV Notes after 4:15 p.m. on February 5.

as to when in time the truth of Defendants' misrepresentations is determined to have been revealed to the market, as it does not impact their manipulation damages. Mitts Rebuttal at ¶ 41. If they are a member of both the Misrepresentation and Manipulation Classes, their damages from Defendants' manipulation is similarly unimpacted by when the truth was revealed. And, while the timing of when the truth was revealed does impact their damages stemming from Defendants' misrepresentations, that time has no bearing or impact on either their manipulation damages or the Manipulation-only class members' damages. As such, there is no conflict or antagonism between the classes. *See* Mitts Rebuttal at ¶¶ 34-41.

      B.    <u>At class certification, Plaintiffs are not required to prove the exact minute the manipulation began.</u>

            1.    <u>Exactly when the manipulative conduct began is a loss-causation question improper to decide at class certification.</u>

"[L]oss causation . . . [is a] common question[] that need not be adjudicated before a class is certified.'" *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 474-75 (2013). *See also* ECF No. 179 at 15, 25; ECF No. 220 at 2; *see also* ECF No. 321 at 15 (truth-on-the-market defense does not pose a barrier to class certification). The factual question on which Defendants stake their opposition—when precisely the full truth of Defendants' misrepresentations was revealed through Defendants' manipulative conduct—is a loss causation question which this Court has already held is inappropriate for resolution at class certification. Order I at 24 (factors impacting whether "XIV Notes were more or less inflated at different time periods, is a question for the damages stage of litigation, not class certification"); *see also id.* at 12-13.

For the same reason, Courts also routinely hold that the question of when exactly a class period should begin or end is inappropriate for resolution at the class certification stage. *See, e.g.*, *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 328 F.R.D. 86, 100 (S.D.N.Y. 2018) (premature to decide the issue of when the class period should end because the question of which disclosures

"cured any prior misstatement" was "better suited for summary judgment or trial"); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 307 (S.D.N.Y. 2003) ("[A] class period should not be cut off if questions of fact remain as to whether the disclosures completely cured the market."); *In re Snap Inc. Sec. Litig.*, 334 F.R.D. 209, 225 (C.D. Cal. 2019) ("any inquiry as to precisely when the truth was fully disclosed to the market is best reserved for resolution on the merits").

As Professor Mitts notes in his rebuttal declaration, the exact time when the truth regarding Defendants' misstatements and omissions was revealed necessarily requires a loss causation analysis which applies the Court-approved event study methodology set forth in his initial report and approved by the Court in Order I.  *See* Mitts Rebuttal §§ II(C)-(D).   As such, even if there were merit to Defendants' objection to the choice of 4:15 PM as the point of delineation, which there is not, it should be disregarded as an inappropriate attack on loss causation which cannot be launched at this stage.

a.   *This Court already accepted Professor Mitts's proposed methodology for determining the exact time when the manipulation began.*

As this Court has already ruled, at the class certification stage, a proposed damages methodology "need not 'address each misrepresentation at issue and tie it to the corresponding corrective disclosures.'" Order I at 12 (citing *In re Vale S.A. Sec. Litig.*, 19-CV-526-RJD-SJB, 2022 WL 122593, at *19 (E.D.N.Y. Jan. 11, 2022)). A proposed methodology need not "identify potential confounding factors and provide an explanation for addressing them . . . before discovery has even revealed what those confounding factors may be." *Id.* (citing *Martínek v. AmTrust Fin. Servs., Inc.*, No. 19 Civ. 8030, 2022 WL 326320, at *19 (S.D.N.Y. Feb. 3, 2022)). And while "[a]t a later point in this litigation, Defendants may challenge Mitts' construction of his event study, … [such] arguments [would] 'go to the weight, not the sufficiency of the evidence.'" *Id.* (citing *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 90 (S.D.N.Y. 2015)).

The Court has similarly already held, over Defendants' objections, that the event-study methodology that Professor Mitts proposed for the merits phase of the litigation is not only "capable of disaggregating confounding information disclosed in the numerous purported corrective disclosures," but "is the generally accepted method for measuring damages in a securities fraud class action[.]" *Id.* (quoting *In re Vale*, 2022 WL 122593 at *18). At this stage, however, "[Professor] Mitts is not required to anticipate [any confounding] factors in his proposed methodology" or "identify a specific quantitative model before all the relevant facts are before him." *Id.* at 13.

      (1)      Unlike Professor Mitts, Professor Hendershott did not actually offer or conduct any independent analysis.

Professor Hendershott's declaration (ECF No. 349-1 ("Hendershott Declaration")) did not apply any event study methodology—approved by this Court or otherwise—to support his erroneous and unscientific assertion that the truth of the allegedly manipulative acts may not have occurred instantaneously. Neither Defendants nor Dr. Hendershott performed an event study at all, let alone one that examined the degree to which the decline in the price of XIV Notes from 4 PM to 4:15 PM, which they speculate ***could*** be attributed to the truth of Defendants' misrepresentations' coming to light (*see, e.g.*, Def. Br. at 11-12), were actually the product of "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price[.]" ECF 180-1 (first Mitts class cert. report) at ¶ 86 (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005)). Thus, neither Defendants nor Professor Hendershott "attempt[ed] to disentangle the price impact of allegedly manipulative transactions, if any, from those other factors, as [Professor Mitts's] methodology would." Mitts Rebuttal at ¶ 21.

Similarly, neither Defendants nor Professor Hendershott offer any evidence that Misrepresentation-only class members exist, only bald speculation about what some future analyses may show or what facts the Court or a jury may later find. *See, e.g.*, Def. Br. at 10 ("***it is possible*** that there are members of the Misrepresentation Class who are not also members of the Manipulation Class") (citing Hendershott Declaration) (emphasis added))). Defendants' disagreement over the merits of Plaintiffs' underlying claims and what can or cannot be proven at the merits phase regarding loss causation is an entirely separate question from whether any such Misrepresentation-only class members exist and, therefore, whether the Classes as defined should be certified. As such, Defendants' supposition that "the market was on notice of the purported 'truth' on which Plaintiffs base their misrepresentation claims before 4:15 pm" and conjecture about made up "misrepresentation only" class members, must be rejected. Def. Br. at 3.[3] *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 186 (S.D.N.Y. 2008) ("a 'battle of the experts' is not appropriate at the class certification stage, as the relevant question is only whether Plaintiff's expert's methodology will apply to the entire class.").

>    2.    <u>If the merits phase establishes that the truth was revealed at a different time, the class definitions may be modified to reflect that time.</u>

This Court retains its power "to alter or modify the class, create subclasses, and decertify the class whenever warranted." *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001). *See, e.g.*, *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 378 (S.D.N.Y.

---

[3] Defendants conflate two different concepts in attempting to paint the present motion as somehow inconsistent with Lead Plaintiffs' prior filing. *See* Def. Br. at 9, n.7. In that prior filing, Lead Plaintiffs were noting that the price of XIV was first inflated and then deflated *relative to its true value*. That statement is completely different—and not at all inconsistent—with the point Plaintiffs and Professor Mitts note here, which is that Defendants' deflationary behavior, *i.e.*, the manipulative trading, could have begun before the inflationary behavior had come to a full stop (*i.e.*, the full truth of Defendants' misrepresentations was revealed).

2000) (noting that "the proof at trial" could "limit the period during which damages can be recovered"). The Court's retention of such power is a factor that ***supports class certification*** in the first instance. *See McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 423 (S.D.N.Y. 2014) ("[I]f there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require.") (quoting *Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir. 1968)).[4]

Accordingly, Defendants' objection to 4:15 PM as the delineating moment for class certification is premature at this time because the exact time is subject to a merits-only loss causation analysis and determination by a factfinder. *See, e.g.*, *Gruber v. Gilbertson*, No. 16-CV-9727 (JSR), 2023 WL 6121649, at *4 (S.D.N.Y. Sept. 19, 2023) (modifying class definition after summary judgment); *see also In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, No. 17 CIV. 01580 (LGS), 2019 WL 5287980, at *40 (S.D.N.Y. Oct. 18, 2019) ("Where … there is an issue of fact as to whether a particular disclosure cured the market or a disagreement as to the precise day on which the truth was known, . . . [class definition] is appropriately left to trial or a motion for summary judgment."); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 176 (2d Cir. 1987) ("The court may reconsider [its decision to certify a class] by decertifying, modifying the definition of the class, or creating subclasses in the light of future developments in the case."). As the Court explained in *Menaldi*, it is "the job of the Court and the factfinder to draw [the class definition] lines, and the Court will be on guard if a conflict crops up. But the need to draw lines does not

---

[4] Defendants admit as much, stating that "[o]rders granting or denying class certification are 'inherently tentative.'" Def. Br. at 4 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)); *id.* at 5 ("the district court has the affirmative duty of monitoring its class decisions in light of the evidentiary development of the case") (quoting *Mazzei v. Money Store*, 829 F.3d 260, 266 (2d Cir. 2016)).

create a fundamental conflict. If it did, few securities class actions could be certified, if any." 328 F.R.D. at 93.

Further, Defendants' claim that "[t]he possibility of Misrepresentation-only Plaintiffs is more than merely theoretical" (Def. Br. at 11) is senseless and baseless, as Defendants' own words recognize: "[A] substantial number of XIV Notes were traded in the . . . window during which Plaintiffs allege the purportedly manipulative acts occurred." *Id.* Such trades fall cleanly within Plaintiffs' theory of liability: if the manipulative acts are shown to have occurred earlier in time, *the traders Defendants identify would be in* <u>*both*</u> *Exchange Act classes.* At bottom, Defendants' discussion of *where* to draw the line between the Classes—in addition to being inapposite at the class certification stage—does *nothing* to advance an argument that there is a conflict between the classes.

### 3.   There is an adequate and typical Plaintiff for each of the Classes.

As even Defendants concede, each of the proposed classes has an adequate and typical proposed class representative.  Defendants make much of the fact that, under the current class definitions, two Lead Plaintiffs would not be considered members of the Misrepresentation Class. Def. Br. at 14. This is not relevant to the central question of *whether any interclass conflict prevents certification*, and thus would not prevent class certification for any other reason.[5]

At this stage, all that is required is that each class have at least one class representative that is a member of that class. *See, e.g.*, *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 135 (S.D.N.Y. 2008) (certifying class where one proposed class representative was adequately familiar with the litigation, even where another was not). Thus, even assuming Defendants were correct

---

[5] Defendants do not suggest otherwise. *See* Def. Br. 14 (noting only that those two Lead Plaintiffs could not be class representatives "*if this Court were to certify a Misrepresentation Class*") (emphasis added).

regarding these two Lead Plaintiffs,[6] the presence of two other putative class representatives—who Defendants concede are adequate and typical members of the Misrepresentation Class, as presently defined—satisfies all that is required under Rule 23(b)(3).

      4.      <u>Defendants' argument that the Misrepresentation Class damages are small is both premature and irrelevant for class certification.</u>

Defendants claim that "[t]he logical conclusion from Plaintiffs' choice of 4:15pm is that the Misrepresentation Class is entitled to no (or an extremely limited) recovery" because "(1) the 'truth' was fully revealed by 4:15 pm, implying that the alleged price inflation had fully dissipated; and (2) yet any plaintiff who sold before 4:15 pm was undamaged by either the alleged misrepresentation or the alleged manipulation." Def. Br. at 12. This flawed argument carries no water.

First, Defendants suggest that Plaintiffs' class definitions are somehow improperly calculated. *See, e.g.*, Def. Br. at 12-13 (Plaintiffs' class definitions are "strategic" and "tactical"). As set forth above, however, the point in time when Defendants' manipulative conduct began will be based on evidence, argued by the parties' experts, and ultimately decided by the factfinder. *See also* ECF No. 321 at 5-6 ("[A]ny purported conflict about the measure of damages would not be resolved via argument between Class Representatives, but by the facts and data[.]").

Second, Defendants claim that the Misrepresentation Class Period is too narrow but, in other parts of their opposition, Defendants argue that the Misrepresentation Class Period is ***too large***, laying bare the speciousness of their argument. *See* Def. Br. at 11-12 (discussing the possibility that Defendants' manipulative trades precede 4:15 PM and suggesting the delineation

---

[6] As explained throughout this brief, the class definitions are subject to change based on merits expert discovery and, as such, it is perfectly plausible that Apollo and Set Capital would once again resume membership in the Misrepresentation Class at a later date. Regardless, they both remain members and representatives of the Securities Act Class.

should be earlier in the day).[7] The only relevance of the size of the Misrepresentation Class is whether it is large enough to satisfy Rule 23(a)'s numerosity requirement—which it indisputably does.

Third, as Professor Mitts explains in his rebuttal declaration, Defendants wrongly suggest that Plaintiffs' current Misrepresentation Class definition necessitates a small recovery for the misrepresentation claims.[8] As Professor Mitts explains, "if a loss causation analysis finds that the truth concerning the alleged misrepresentations in the January 29 Pricing Supplement was not fully revealed by 4:15pm, damages for the Misrepresentation Class would extend to the removal of that additional inflation in the price of XIV Notes after 4:15pm." Mitts Rebuttal at ¶ 28. It is thus premature to make any determination regarding the size of the misrepresentation damages: "these damages could include the dissipation of inflation before and after 4:15pm, encompassing a large fraction of the decline in the price of XIV Notes[.]" *Id.* at ¶ 28. Indeed, "damages for the Misrepresentation Class could easily exceed those of the Manipulation Class." *Id.* at ¶ 29.

C.    To the extent the Court still has concerns regarding interclass conflicts, those concerns can be addressed at the merits stage.

The Second Circuit is clear that courts should err on the side of certifying securities fraud class actions. *See, e.g.*, *McIntire*, 38 F. Supp. 3d at 423. As set forth above, there is no interclass conflict that precludes class certification here. However, to the extent the Court remains concerned,

---

[7] As Professor Mitts makes clear, drawing the line between the Classes earlier in the day would only shrink the Misrepresentation Class Period if those manipulative trades were deemed to be when the full truth of Defendants' misrepresentations was revealed. *See* Mitts Rebuttal at ¶ 28.

[8] This is the same loss-causation inquiry discussed above that need not and should not be answered now. *See* Mitts Rebuttal at ¶ 30.

the appropriate remedy is for the Court to fashion a class (or classes) that address its concern.[9] For example, both sides readily concede that there are XIV investors who are members of *both* Exchange Act Classes, as presently defined. Accordingly, at a minimum, the Court should certify a Manipulation-only Class and a "Manipulation *and* Misrepresentation" Class, which would consist only of XIV purchasers and sellers who would be members of both classes, as presently defined. Certifying those classes avoids any concerns about precluding the litigation rights of the supposed Misrepresentation-only class members that Defendants insist, without supporting evidence or analysis and despite all evidence to the contrary, exist.

Alternatively, the Court could also address any concerns by clarifying what specific, additional evidence it would like Plaintiffs to provide to demonstrate that no such Misrepresentation-only class members exist. *See, e.g.*, *Ruzhinskaya*, 311 F.R.D. at 110 (denying motion for class certification but "stand[ing] ready to certify a [modified] class").[10]

---

[9] "The Court has authority *sua sponte* to modify a proposed class definition." *Ruzhinskaya v. Healthport Techs., LLC*, 311 F.R.D. 87, 108 (S.D.N.Y. 2015); *see also Vincent v. Money Store*, 304 F.R.D. 446, 453 (S.D.N.Y. 2015) ("[A] district court may carve out a narrower class from an overbroad class proposed in the Complaint") (citing *Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.*, 993 F.2d 11, 14 (2d Cir. 1993)).

[10] Defendants' cases do not warrant a different outcome. Even by Defendants' own characterizations, none of the cited cases stands for the proposition that there is some maximum number of times a court can grant leave to move for class certification. Further, in each of Defendants' cases, the court determined that no certifiable class was possible. *See, e.g.*, *Calvo v. City of N.Y.*, No. 14-CV-7246 (VEC), 2018 WL 1633565, at *9 (S.D.N.Y. Apr. 2, 2018) (based on predominance concerns, "the Court believes there is no definable class that would satisfy Rule 23(b)(3)"); *Sanchez v. N.Y. Kimchi Catering, Corp.*, No. 16 CIV. 7784 (LGS), 2018 WL 2383145, at *3 (S.D.N.Y. May 24, 2018) (certification denied on numerosity grounds as plaintiff acknowledged that putative class consisted of *at most* sixteen employees); *McKinnon v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-CV-04457-YGR, 2016 WL 6582045, at *10 (N.D. Cal. Nov. 7, 2016) (plaintiffs' counsel tried twice and failed to find plaintiff who had relied on defendant's misrepresentations). Here, on the other hand, Plaintiffs have offered alternative class definitions, and the Court itself has proposed another approach (as Defendants concede), each of which would be certifiable even if the Court does not accept Plaintiffs' current proposal.

D.    The Court's certification of the Securities Act Class should remain untouched.

The Court rejected Defendants' arguments and certified a Securities Act Class on March 16, 2023. *See* Order I.  On March 30, 2023, Defendants moved for reconsideration. *See* ECF No. 264. On March 1, 2024, the Court rejected Defendants' motion for reconsideration—affirming its certification of the Securities Act Class. *See* Order II. Now, without leave of court, Defendants make an improper third attempt to defeat the Securities Act Class in their opposition brief to an entirely different certification motion—despite there being no new relevant law or facts.  Like their first two attempts to oppose the certification of the Securities Act Class, Defendants' third attempt lacks all merit and should fail.

Specifically, Defendants' improper "motion" to decertify the Securities Act Class is based on an argument that the Securities Act Class has a conflict with the proposed Manipulation Class. Defendants never raised this argument in their opposition to Plaintiffs' original motion for class certification despite arguing that the Misrepresentation and Manipulation Classes were in conflict. *See* ECF No. 199. Moreover, Defendants did not raise this argument in their motion for reconsideration of the Court's order certifying the Securities Act Class. *See* ECF No. 265. There is good reason for that: it lacks merit.  Only now, after the Court has twice rejected Defendants' opposition to certifying the Securities Act Class, do Defendants raise this argument.

Defendants should not get a third bite at the apple.[11] Defendants' arguments could have been brought before and no "significant intervening event" supports a revisiting of the order

---

[11] Defendants are actually taking four bites at the apple: Defendants opposed Plaintiffs' initial motion to certify the Securities Act Class (ECF No. 201), moved for reconsideration of the order certifying that class (ECF No. 264), now attempt once again to have the Court reconsider its decision certifying that class, and already have a Rule 23(f) petition pending with the Second Circuit, albeit again on different grounds (*Set Cap. LLC v. Credit Suisse Grp. AG*, No. 23-462 (2d Cir. Mar. 30, 2023)).

certifying the Securities Act Class. *See*, *e.g.*, *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 169 (S.D.N.Y. 2011) ("the Court may not disturb its prior [certification] findings absent 'some significant intervening event,' or 'a showing of compelling reasons to reexamine the question.'") (quoting *Doe v. Karadzic*, 192 F.R.D. 133, 136-137 (S.D.N.Y. 2000)).

Even if it were timely raised, Defendants' argument lacks merit, and falls far short of the level of proof necessary for decertification. *See Gordon v. Hunt*, 117 F.R.D. 58, 61 (S.D.N.Y. 1987) (noting "defendants bear a heavy burden to prove the necessity of either the drastic step of decertification or the less draconian but still serious step of limiting the scope of the class"). Defendants assert in a conclusory manner that a conflict exists because Plaintiffs are "functionally indifferent to whether damages are allocated to Defendants' alleged ***inflationary*** misrepresentations or ***deflationary*** manipulations." Def. Br. at 16 (emphasis added). Defendants, however, conveniently disregard that Section 11 damages are ***statutory***. *See* 15 U.S.C. § 77k(e) (setting forth the formula for the calculation of damages); *see also In re Barclays Bank PLC Sec. Litig.*, No. 09 CIV. 1989 (PAC), 2016 WL 3235290, at *5 (S.D.N.Y. June 9, 2016). Given that damages are statutory for Section 11 claims and Plaintiffs need not prove that the misrepresentations inflated the price of XIV Notes, nor prove loss causation, Defendants' argument logically fails. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 643 F. Supp. 2d 562, 571 (S.D.N.Y. 2009) (collecting cases showing loss causation is not an element of a Section 11 claim).

Defendants further contend that a conflict exists because the Manipulation Class will seek to show that no misrepresentations occurred and that any losses were the result of only Defendants' manipulative conduct. Def. Br. at 15. But, as Professor Mitts opines, and this Court has recognized, manipulation damages are "directly measurable" based on the trading data and, therefore, such

damages will be determined by such data irrespective of the amount—or absence—of artificial inflation attributable to the misrepresentations. Rather, Defendants' manipulation's "price impact would have occurred even if Credit Suisse had not made a misstatement." Mitts Rebuttal at ¶ 32.[12]

Finally, Defendants mischaracterize Plaintiffs' positions in a last-ditch attempt to argue that the definition of the proposed Misrepresentation Class renders Lead Plaintiffs inadequate to represent the Securities Act Class. As detailed above, the exact moment in time when the revelation of the truth occurred is to be determined at the merits stage.[13] Moreover, Defendants argue that the use of 4:15 PM in the class definitions provides them with a "conclusive negative causation defense," but omit that such a defense would require Defendants to prove that the XIV Note price decline was caused by Defendants' own manipulative actions. Of course, Defendants will not pursue that strategy. But, even if they did, there would still be no conflict between the Securities Act Class and the Manipulation Class. Mitts Rebuttal at ¶¶ 42-43. As Defendants point out, two of the Class Representatives for the Securities Class—Apollo and Set Capital—are not part of the Misrepresentation Class as currently defined and therefore are "conflict free," even if there were a conflict between the Misrepresentation and Securities Act classes, which there is not.

As such, the Securities Act Class should remain certified.

## IV. CONCLUSION

Accordingly, the Lead Plaintiffs' and the Trust's Motion should be granted.

Dated: June 4, 2024                                      Respectfully submitted,

---

[12] *See also* ECF No. 222-1 at ¶ 45 ("the price impact of the alleged manipulation is directly measurable. It's measurable at the high frequency. That price impact would have occurred even if Credit Suisse had not made a misstatement. So that directly measurable price deflation is compensatory, in my view, for the [Alleged Manipulation] class, even in a world where there is zero price impact to the misstatement."); *see id.* at ¶¶ 46-47 (applying hypothetically the directly calculated manipulation damages with the inflation damages).

[13] *See* Mitts Rebuttal at ¶¶ 25-26 (merits evidence will impact revelation of fraud).

/s/ Michael B. Eisenkraft

Michael B. Eisenkraft
Laura H. Posner
**COHEN MILSTEIN SELLERS
 & TOLL PLLC**
88 Pine Street
14th Floor
New York, NY 10005
Tel.: (212) 838-7797
Fax: (212) 838-7745
meisenkraft@cohenmilstein.com
lposner@cohenmilstein.com

Steven J. Toll (*pro hac vice*)
Brendan Schneiderman (*pro hac vice*)
1100 New York Ave. N.W., Fifth Floor
Washington, D.C. 20005
Tel.: (202) 408-3640
Fax: (202) 408-4699
stoll@cohenmilstein.com
bschneiderman@cohenmilstein.com

Carol V. Gilden
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Tel. (312) 357-0370
Fax: (312) 357-0369
cgilden@cohenmilstein.com

**LEVI & KORSINSKY, LLP**
Eduard Korsinsky
Nicholas I. Porritt
Adam M. Apton
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
ek@zlk.com
nporritt@zlk.com
aapton@zlk.com

**LEVI & KORSINSKY, LLP**
Alexander A. Krot III (*pro hac vice*)
1101 Vermont Ave, NW
Suite 700

Washington, DC 20005
Tel: (202) 524-4290
Fax: (212) 363-7171
akrot@zlk.com

*Counsel for Lead Plaintiffs, Class Counsel
for the Securities Act Class, and Proposed
Class Counsel for the Misrepresentation
Class*

**BRONSTEIN, GEWIRTZ &
GROSSMAN,
LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Tel. (212) 697-6484
peretz@bgandg.com
*Additional Counsel for Lead Plaintiff Apollo
Asset Limited*

-and-

*/s/ Adam Hollander*
**SLARSKEY LLC**
Adam D. Hollander
Kimberly Grinberg
767 Third Avenue, 14th Floor
New York, NY 10017
Tel: (212) 658-0661
ahollander@slarskey.com
kgrinberg@slarskey.com

*Counsel for the Sudheera Tripuraneni Trust
U/A DTD 11/16/2015 and Proposed Class
Counsel for the Manipulation Class*