# CAHILL GORDON & REINDEL LLP
## 32 OLD SLIP
## NEW YORK, NY 10005

DANIEL AMATO
DANIEL R. ANDERSON
PETER J. ARMENIO
HELENE R. BANKS
ANIRUDH BANSAL
LANDIS C. BEST
CHRISTOPHER BEVAN
BROCKTON B. BOSSON
DONNA M. BRYAN
SARAH W. CHEN
EMEKA C. CHINWUBA
JAMES J. CLARK
CHRISTOPHER W. CLEMENT
LEWIS RINAUDO COHEN
AYANO K. CREED
SEAN M. DAVIS
STUART G. DOWNING
ADAM M. DWORKIN
ANASTASIA EFIMOVA
SAMSON A. ENZER
JAMES Z. FANG
GERALD J. FLATTMANN JR.

KIERSTEN A. FLETCHER
HELENA S. FRANCESCHI
JOAN MURTAGH FRANKEL
JONATHAN J. FRANKEL
SESI GARIMELLA
ARIEL GOLDMAN
PATRICK GORDON
JASON M. HALL
STEPHEN HARPER
CRAIG M. HOROWITZ
TIMOTHY B. HOWELL
COLLEEN TRACY JAMES
DAVID G. JANUSZEWSKI
BRIAN S. KELLEHER
ANDREW R. KELLY
RICHARD KELLY
CHÉRIE R. KISER ‡
JOEL KURTZBERG
TED B. LACEY
ANDREW E. LEE
ALIZA R. LEVINE
JOEL H. LEVITIN

TELEPHONE: (212) 701-3000
WWW.CAHILL.COM
————————
1990 K STREET, N.W.
WASHINGTON, DC 20006-1181
(202) 862-8900

221 W. 10th STREET, 3rd FLOOR
WILMINGTON, DE 19801
(302) 884-0000

CAHILL GORDON & REINDEL (UK) LLP
20 FENCHURCH STREET
LONDON EC3M 3BY
+44 (0) 20 7920 9800

WRITER'S DIRECT NUMBER

MARK LOFTUS
JOHN MacGREGOR
TRISTAN E. MANLEY
BRIAN T. MARKLEY
MEGHAN N. McDERMOTT
EDWARD N. MOSS
JOEL MOSS
NOAH B. NEWITZ
EDWARD C. O'CALLAGHAN
JULIANA OBREGON
JAVIER ORTIZ
DAVID R. OWEN
JOHN PAPACHRISTOS
LUIS R. PENALVER
SHEILA C. RAMESH
MICHAEL W. REDDY
OLEG REZZY
THOMAS ROCHER *
PETER J. ROONEY
MATTHEW E. ROSENTHAL
THORN ROSENTHAL
TAMMY L. ROY

ANDREW SCHWARTZ
DARREN SILVER
JOSIAH M. SLOTNICK
RICHARD A. STIEGLITZ JR.
GREGORY STRONG
SUSANNA M. SUH
SEAN R. TIERNEY
AMIT TREHAN
JOHN A. TRIPODORO
HERBERT S. WASHER
FRANK WEIGAND
MILES C. WILEY
PETER G. WILLIAMS
DAVID WISHENGRAD
C. ANTHONY WOLFE
ELIZABETH M. YAHL

* ADMITTED AS A SOLICITOR IN
ENGLAND AND WALES ONLY

‡ ADMITTED IN DC ONLY

(212) 701-3435

November 4, 2024

Re:  *Set Capital LLC, et al.*, v. *Credit Suisse Group AG, et al.*,
No. 18-CV-02268 (AT) (SN)

Dear Judge Torres:

We write on behalf of Defendants in response to two letters filed by Plaintiffs on October 31, 2024 purporting to update the Court on "a recent development in discovery" in the above-referenced matter ("Plaintiffs' Letter" or "Pls.' Ltr.") (ECF 353-1) and seeking to seal portions of that update (ECF 353). Plaintiffs did not confer with Defendants before filing either letter.[1]

As to Plaintiffs' sealing request (ECF 353), Defendants do not oppose the public filing of Plaintiffs' Letter without redactions. As to Plaintiffs' purported discovery update, Defendants write to correct the record and to respond to Plaintiffs' baseless suggestion that Defendants' recent production of ***813 pages*** of Bloomberg chat messages — in a case in which Defendants have produced more than ***1,230,000 pages*** of documents, including more than 327,000 pages of Bloomberg chat messages — has any bearing whatsoever on Plaintiffs' pending objections to Magistrate Judge Netburn's January 2, 2024 Order denying Plaintiffs leave to amend their complaint.

---

[1] Defendants submit this response pursuant to the timing set forth in Rule IV(A)(ii) of Your Honor's Individual Practices in Civil Cases. Although Defendants' response was due today, Defendants have agreed to confer with Plaintiffs on the issues raised in Plaintiffs' Letter in response to a belated request from Plaintiffs to do so. An initial meet and confer was held today, November 4, 2024, during which Defendants agreed to collect and provide to Plaintiffs additional information related to the underlying Bloomberg data issue. Defendants are also willing to continue to confer with Plaintiffs to the extent necessary but, for the reasons set forth above, do not believe the October 17, 2024 production has any impact on any pending motion.

CAHILL GORDON & REINDEL LLP

-2-

As background, on October 17, 2024, Defendants made a limited production of Bloomberg chat messages to Plaintiffs. As Defendants explained to Plaintiffs in connection with that production, after the close of discovery, Defendants determined that an issue with Bloomberg's data systems had impacted Defendants' prior collections in this case of chat messages hosted by Bloomberg. Upon further review, Defendants identified 116 Bloomberg chat messages that were potentially responsive to Plaintiffs' document requests, and that had not been previously produced. Although the messages add ***nothing*** substantively new to the factual record in this case (as described in more detail below), Defendants produced the newly-discovered materials to Plaintiffs on October 17, 2024.

To put in context the size of Defendants' October 17, 2024 production of 116 Bloomberg chat messages, Defendants' prior productions in this case included more than 10,000 Bloomberg chat messages. Moreover, of the "813 pages of documents" that Plaintiffs now complain about (Pls.' Ltr. at 1), hundreds of those pages consist merely of metadata and standard regulatory disclaimers that automatically accompany Bloomberg chat messages. Of the actual substantive chat messages produced, most reflect daily market chatter among market participants regarding volatility products, market volatility, and the market more broadly (*i.e.*, not XIV specifically). And the handful of chats that even mention XIV are entirely consistent with, if not duplicative of, communications that have been in the discovery record in this case for years.

Nonetheless, Plaintiffs point to three chat messages that they claim "contain highly relevant communications that go directly to the allegations in Plaintiffs' proposed amended complaint" and suggest these few chat messages may "affect[] Plaintiffs' pending objection to the ruling on their motion for leave to amend their complaint." (*Id.* at 1-2). The full content of these chats (Exs. A-C attached hereto) makes clear that Plaintiffs' claims are baseless for two primary reasons.

***First***, Magistrate Judge Netburn denied Plaintiffs' motion to amend because Plaintiffs' proposed new theory, which seeks "to redirect the focus of the [alleged] manipulation to the acts of third parties," would "necessitate reopening discovery and extensive third-party discovery" and it would be "unduly prejudicial to Defendants to face a significantly new theory of liability after [Defendants have] argued for years — to Plaintiffs and the Court of Appeals — that [Plaintiffs'] original theory was built on a house of cards." (Opinion and Order, dated January 2, 2024 (ECF No. 333) at 6-8.) Even accepting Plaintiffs' assertion that some fraction of the 116 recently-produced Bloomberg chat messages "support" Plaintiffs' proposed new theory, this observation is wholly irrelevant to Magistrate Judge Netburn's rulings with respect to the delay, burden, and prejudice associated with Plaintiffs' wholesale change of theories in this case at the last hour.

***Second***, none of the recently-produced chat messages add anything new to the factual record in this case and Plaintiffs grossly misrepresent them in their letter. For example, Plaintiffs cite a chat that they claim "demonstrate[s]" what Credit Suisse personnel allegedly knew "on the ***afternoon*** of February 5, 2018" and that allegedly "support[s]" that "Credit Suisse personnel were actively monitoring the price of XIV during the flatline event." (Pls.' Ltr. at 1-2). The actual chat,

CAHILL GORDON & REINDEL LLP

-3-

attached as Ex. A hereto,[2] involves messages sent by an external market participant to a Credit Suisse employee beginning *at 7:36 PM EDT*[3] — more than three hours after the close of trading on February 5, 2018 — that "XIV is crazy," and after sending a copy of the XIV Prospectus, adds "Doing [sic] to 0." The chat says nothing about what anyone knew, let alone what Credit Suisse knew, "on the *afternoon* of February 5, 2018." Similarly, since "the flatline event" ended at "5:09:04 p.m. [EDT]" (*see, e.g.*, Operative Complaint ¶ 177), the chat also says nothing about what Credit Suisse personnel were doing "during the flatline event."

Plaintiffs also quote a chat from 2017 that references a well-known risk of the XIV product, and one that is irrelevant to Plaintiffs' claims. Specifically, the chat (Ex. B) references the fact that "XIV has [an] embedded knock out" — a publicly-disclosed feature of the product by which investors would lose the entirety of their investments if the indicative value of XIV ever reached zero.[4] Of course, it is not alleged (nor could it be alleged) that XIV ever actually went to zero or, in other words, "knocked out." Thus, a chat that references this feature cannot credibly be said to be relevant to any aspect of this case, let alone Plaintiffs' pending objections.

Finally, Plaintiffs quote a chat (Ex. C) that includes a comment that the "[p]roblem with XIV seems like if vols return to historical levels u get craemed [sic]." The view that XIV would drop in price if volatility was to increase to prior levels is also not new. This feature of the product, and Credit Suisse's alleged awareness of the extent and likelihood of volatility returning to historical levels, is one of the bases for the Operative Complaint (not the Proposed Amended Complaint) and has been the subject of discovery for years. *See, e.g.*, Operative Complaint ¶ 64 (alleging that Credit Suisse had knowledge "that, the next time VIX's volatility spiked, as it did every few years, XIV's viability would be threatened").

In sum, Plaintiffs do not — and cannot — explain how the limited number of Bloomberg chats produced on October 17, 2024 add anything substantively new to the factual record in this case or how they could have any relevance to, let alone impact on, Plaintiffs' pending objections. Plaintiffs' Letter is a transparent attempt to use a technical production issue, for which Bloomberg (not Credit Suisse) is responsible, to revive a hopelessly doomed motion to amend that was properly denied by Magistrate Judge Netburn. Any attempt by Plaintiffs to use the additional production to manufacture a dispute should be rejected.

---

[2] Defendants are not seeking to file the attached exhibits under seal. However, Defendants have redacted the name of an external market participant who is not affiliated with any of the parties in this case and the identity of which is irrelevant to Plaintiffs' Letter and this response.

[3] The timestamps on the chat are listed in Coordinated Universal Time (UTC), *i.e.,* four hours ahead of Eastern Daylight Time (EDT).

[4] *See* Ex. D (Pricing Supplement, dated Jan. 29, 2018 (the "January Supplement" or "PS")) at PS-17 ("**If the Intraday Indicative Value is zero at any time or the Closing Indicative Value is zero, you will lose all of your investment.**") (emphasis in original).

CAHILL GORDON & REINDEL LLP

-4-

Respectfully submitted,

/s/ Herbert S. Washer

Herbert S. Washer

The Honorable Analisa Torres
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, N.Y. 10007-1312

Attachments

VIA ECF

cc:     All Counsel ECF