**COHEN MILSTEIN**

Michael Eisenkraft
**O:** 212.838.7797
**D:** 212.838.7893
meisenkraft@cohenmilstein.com

Cohen Milstein Sellers & Toll PLLC
88 Pine Street, 14th Floor
New York, NY 10005
cohenmilstein.com

January 31, 2025

**VIA ECF**

The Honorable Analisa Torres
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007-1312

      Re:    *Set Capital LLC, et al., v. Credit Suisse Group AG, et al.*, No. 18-CV-02268 (AT) (SN)

Dear Judge Torres:

      Throughout this litigation, Defendants repeatedly delayed discovery and impeded Plaintiffs' diligent prosecution of their case. Despite Defendants' efforts, Plaintiffs uncovered the specific details of how Credit Suisse manipulated XIV and ultimately caused its crash—namely, by running up the price of VIX Futures through a combination of its own trading and by filling the market with XIV short-sellers who Credit Suisse knew were incentivized to, and almost certainly would, crash XIV out of existence. As promptly as possible after Plaintiffs adduced critical evidence of Defendants' fraud—just ***nine days*** after their Rule 30(b)(6) deposition of Credit Suisse on topics relating to its lending—Plaintiffs moved for leave to amend the complaint to conform their pleadings to that evidence. In their amendment, Plaintiffs did not add any claims or evidence, nor change any defendants. Rather, Plaintiffs amended to plead and elaborate on the specific mechanisms Defendants used to manipulate the price of XIV.

      Defendants opposed Plaintiffs' motion to amend. Defendants primarily argued prejudice and delay: that permitting Plaintiffs to amend the complaint would somehow require *Defendants* to take additional discovery—notably, the very same discovery that Plaintiffs had sought and Defendants had moved to quash. Defendants claimed that amendment would accordingly be prejudicial and burdensome to Defendants because discovery had closed. The Magistrate Judge adopted Defendants' narrative, finding prejudice based on the (mis)characterization that the amended complaint's new factual allegations constituted a "significantly new theory of liability." Op. and Order at 7-8, Jan. 2, 2024, ECF No. 333 ("Opinion").

COHENMILSTEIN

The Honorable Analisa Torres
January 31, 2025
Page 2

Unknown to this Court and Plaintiffs, however, **at the exact same time that Defendants were claiming "undue prejudice" based on the close of discovery** and contended that they were not responsible for any delays in discovery,[1] **Defendants learned that a third-party vendor of theirs had caused highly relevant Credit Suisse documents to not be produced** in discovery. But Defendants did not notify the Magistrate Judge, this Court, or Plaintiffs about this possibility in February, when they first learned that they had failed to produce these relevant documents.[2] They again did not raise the issue in April, when Credit Suisse began "collecting[,] transferring[, and] de-duplicating" the documents in question. And they still did not mention it when they identified 3,593 unique documents that Defendants had failed to produce.[3] Rather, they let Plaintiffs (but not the Court) know on October 17, 2024—**at least eight months** after they were initially notified of the potential issue—that they would be making a "small" production.

In their January 17, 2025, response letter (ECF No. 365 ("Response Letter")), Defendants offer **no explanation** for their extensive delay. Defendants emphasize only that their initial failure to produce the documents was their vendor's fault (and apparently should accordingly be disregarded, discovery obligations notwithstanding). *See* Response Letter at 1 ("the underlying issue that led to the October 2024 Production was an inadvertent and technical one involving Defendants' vendor"); *id.* at 5 ("The Issue Resulting in the October 2024 Production Was Outside Defendants' Control and the Production Was Made As Soon As Practical").

Defendants' finger pointing at their vendor is sleight of hand that should not be determinative. Plaintiffs have never complained about Defendants' initial failure to identify or produce the documents, but instead accept Defendants' counsel's representations that Defendants were unaware of the unproduced documents and that the initial failure to identify or produce them was inadvertent. But it is not in dispute that Defendants deliberately waited months to notify Plaintiffs, the Magistrate Judge, and this Court about these unproduced documents, while simultaneously arguing that Plaintiffs should not be permitted to amend the complaint because discovery was closed. If Plaintiffs had timely been made aware of the possibility that new

---

[1] *See, e.g.*, Pls.' Objs. to Magistrate Judge Netburn's Op. and Order, Jan. 30, 2023, ECF No. 337 ("Objection"); Defs.' Resp. to Pls.' Objs. at 15, Feb. 29, 2024, ECF No. 338 ("Objection Response") ("[T]he delay was in no way Defendants' fault.").

[2] Notably, it appears Defendants were on notice of the Bloomberg issue even **before** February, as their letter states only that it was in February that they learned "the reported issue could have impacted . . . collections in this matter[.]" Response Letter at 5.

[3] Defendants have repeatedly declined to specify when they learned that 3,593 unproduced documents were responsive. From Defendants' most recent letter, however, this appears to have occurred in April. *See* Response Letter at 5-6.

COHENMILSTEIN

The Honorable Analisa Torres
January 31, 2025
Page 3

documents were going to be produced, with the previously missing documents eventually identified and produced, the close of fact discovery would have been extended to allow for the documents' production, thus removing a key ground upon which the Magistrate Judge based her decision.[4]

**Plaintiffs' Diligent Prosecution of this Case.** Plaintiffs requested documents evidencing Credit Suisse's lending practices as early as October 2021. Objection at 9. Defendants objected and failed to provide relevant documents until October 2022. Objection at 13. Plaintiffs attempted to schedule depositions as early as November 2022, but Defendants delayed scheduling many depositions until between January and April 2023. Objection at 10 n.11. During those depositions, Plaintiffs questioned Defendants' witnesses about Credit Suisse's lending XIV Notes to short-sellers, but Defendants' witnesses were unable to answer critical questions about Credit Suisse's XIV lending practices. This lack of clarity prompted the Magistrate Judge, on March 1, 2023, to grant Plaintiffs' application for a Rule 30(b)(6) deposition, over Defendants' objection. That deposition took place on April 19, 2023. **Just nine days later**—and before the court-ordered deadline[5]—Plaintiffs filed the motion for leave to amend.[6] *Ambac Assurance Corp. v. EMC Mortg.*

---

[4] Defendants claim that they had no obligation to raise their earlier discovery failures until they could specify the exact number of documents that would ultimately be produced. *See* Response Letter at 6 ("[I]n February 2024, Defendants knew about a limited issue reported by their vendor affecting two unique scenarios of chats and that there was a ***possibility*** that the issue impacted some portion of the ***collections*** in this case.") (emphasis in original). That is wrong. Defendants should have kept Plaintiffs, the Magistrate Judge, and the Court apprised as they learned of the discovery violation themselves. *See Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, 331 F.R.D. 568, 571 (S.D.N.Y. 2019) ("[A]ll attorneys conducting discovery owe the court a heightened duty of candor."); *Joint Stock Co. "Channel One Russia Worldwide" v. Infomir LLC*, 16 Civ. 1318, 2020 WL 1479018, at *8 (S.D.N.Y. Mar. 26, 2020) ("[E]ven if Plaintiffs' misrepresentations began as innocent errors, rather than take timely and meaningful steps to consider the alleged errors once brought to Plaintiffs' attention, Plaintiffs persistently insisted that they were in full compliance with their discovery obligations."); *see, e.g.*, *In re Filosa*, 976 F. Supp. 2d 460, 469 (S.D.N.Y. 2013) (ordering attorney suspension and rejecting argument that attorney acted in good faith when he waited for client to collect *all* documents before making a supplemental production).

[5] *See* Fourth Amended Scheduling Order, ECF No. 259 (ordering the April 21, 2023, deadline for Plaintiffs' amendment, without acknowledging Defendants' reservation of rights); Memo Endorsement, ECF No. 269 (extending date to April 28, 2023).

[6] Defendants cast the timing of Plaintiffs' filing as a "strategic decision to wait to identify their new theory of the case." Response Letter at 8. That characterization is factually wrong. As Plaintiffs have stated repeatedly, they put Defendants on notice of the forthcoming lending

COHENMILSTEIN

The Honorable Analisa Torres
January 31, 2025
Page 4

*Corp.*, No. 08-CV-9464, 2010 WL 11595698, at *6-7 (S.D.N.Y. Dec. 16, 2010) (finding good cause to amend where securities-fraud plaintiff "waited almost a year in some cases, and in no case less than six months, after it obtained the relevant discovery" to move for amendment "in light of the enormous amount of discovery . . . , the heightened pleading standard for fraud claims, the evidence secured in discovery that forms the basis for the proposed amendments, and the absence of any tactical advantage obtained as a result of the delay").

**The Magistrate Judge's Opinion.** The Magistrate Judge's Opinion turned largely on a finding that allowing Plaintiffs' amendment would disrupt and prolong discovery. As discussed previously, that finding was legally erroneous; absent bad faith, delay alone does not amount to undue prejudice that justifies denial of leave to amend.[7] *See* Objection at 7 (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). That is true **even where amendments introduce new defendants or claims** (which Plaintiffs do not do here). *See id.* (citing *United States v. Continental Ill. Nat'l Bank & Trust Co. of Chi.*, 889 F.2d 1248, 1255 (2d Cir. 1989)). We now know, however, that in addition to this legal issue, the Opinion was based on an incomplete factual record. The Magistrate Judge believed that discovery was complete when she issued her Opinion. It was not, however, because Defendants had yet to produce these relevant and important Bloomberg messaging communications. *See* Letter from Michael Eisenkraft to Judge Torres, Dec. 20, 2024, ECF No. 360 at 5-8 (explaining the significance of the withheld documents).[8]

---

allegations throughout discovery. *See* Mem. in Support of Mot. to Amend, ECF No. 304 at 6-12 (Plaintiffs inquired about Credit Suisse's lending in October 2021, asked lending-related questions in depositions between November 2022 and April 2023, and issued third party subpoenas on lending in January 2023). Defendants' apparent suggestion that Plaintiffs amended the complaint in the midst of ongoing depositions probing the forthcoming lending allegations is also obviously impractical.

[7] The Opinion did not find that Plaintiffs had unduly delayed or acted in bad faith in proposing their amendments. *See* Opinion at 8 n.2.

[8] Defendants argue that "Plaintiffs Do Not Explain How the Handful of Bloomberg Chats They Identify Would Result in a Different Outcome on Their Motion to Amend." *See* Response Letter at 6-8. This is perplexing. Notifying the Court that Defendants anticipated making *additional post-discovery productions* would have been material to the Magistrate Judge—who denied amendment largely based on her understanding that discovery had closed. This is especially true because the missing documents concern the discovery Plaintiffs took regarding the lending allegations. *See* Response Letter at 6 ("Plaintiffs openly acknowledge that . . . the issues these documents allegedly relate to . . . are issues Plaintiffs have thoroughly explored throughout discovery in this case.").

COHENMILSTEIN

The Honorable Analisa Torres
January 31, 2025
Page 5

To the extent the Magistrate Judge's ruling was based on Plaintiffs' decision not to rely on Defendants' very early, self-serving representations about Credit Suisse's hedging practices, that too was clear error and should not preclude amendment. Objection at 12-13.[9] The Magistrate Judge provided no legal support for the position that Plaintiffs' independent investigation of Defendants' claims constitutes unfairness to Defendants.[10] And rightfully so: whatever Defendants may have said before discovery, they did not disclose what Plaintiffs now allege: that Credit Suisse knowingly lent 90% of its XIV Notes to short sellers, while fully aware of and modeling for the inevitable fact that those short-sellers would hedge their exposure during the next volatility spike, thereby crashing XIV out of existence. Objection at 12-13. *Sjunde AP-Fonden v. Gen. Elec. Co.*, 341 F.R.D. 542, 551 (S.D.N.Y. 2022) (granting motion for leave to amend a sixth time because "Plaintiffs could not have successfully filed their proposed amendment before receiving the documents they received during fact discovery").

\*    \*    \*    \*    \*

Defendants mistakenly characterize Plaintiffs' briefing on this issue as a request for sanctions. *See* Response Letter at 9-10 ("It appears Plaintiffs may be seeking the requested relief as some form of discovery sanction under Rule 37."). It is not. Plaintiffs explain only that the existence of these responsive, unproduced documents which were, until now, concealed from Plaintiffs, the Magistrate Judge, and this Court, undermines the factual foundation of the Magistrate Judge's understanding that discovery had closed and reopening discovery would unduly prejudice Defendants. Plaintiffs' amendment should be permitted for the additional reason that, as Plaintiffs and the Court now know, discovery was not even complete when Plaintiffs moved to amend their complaint.

Respectfully submitted,

*/s/ Michael Eisenkraft*
Michael Eisenkraft

*Counsel for Lead Plaintiffs*

cc: All Counsel of Record (via ECF)

---

[9] Defendants propound this error in their Response Letter. *See* Response Letter at 2 (criticizing Plaintiffs for assessing the veracity of Defendants' assertions through discovery).

[10] The statement the Magistrate Judge relied upon was a bald and incomplete statement made during settlement negotiations, prior to fact discovery, and should not have been considered under a Rule 15 analysis. Objection at 12. The Magistrate Judge did not acknowledge this in the Opinion.