**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SET CAPITAL LLC, et al., Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>CREDIT SUISSE GROUP AG, CREDIT SUISSE AG, CREDIT SUISSE INTERNATIONAL, TIDJANE THIAM, DAVID R. MATHERS, JANUS HENDERSON GROUP PLC, JANUS INDEX & CALCULATION SERVICES LLC, and JANUS DISTRIBUTORS LLC d/b/a JANUS HENDERSON DISTRIBUTORS,<br><br>     Defendants. | Case No.: 1:18-cv-02268-AT-SN<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO CERTIFY INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)** |

**TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ................................................................................ 1

II.    ARGUMENT ....................................................................................................... 2

    A.    Plaintiffs Have Identified Controlling Questions of Law Presented in the Court's Order Denying Leave to Amend .................................................................................... 2

        1.    Whether a Court May Find Undue Prejudice Despite Defendants Being on Notice Is a Controlling Question of Law ................................................................................ 3

        2.    Whether Plaintiffs Should Be Granted Leave to Re-Allege the Flatline Claim Based on Evidence Adduced in Discovery Is a Controlling Question of Law ............................. 6

        3.    Both of the Questions of Law Presented Are Controlling .......................................... 7

    B.    The Controlling Questions of Law Present Substantial Grounds for Difference of Opinion ......................................................................................................... 8

    C.    Immediate Appeal Will Materially Advance the Termination of This Litigation ........ 10

III.   CONCLUSION .................................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.V.E.L.A., Inc. v. Est. of Monroe*,
    34 F. Supp. 3d 311 (S.D.N.Y. 2014) ..................................................................................8

*Agerbrink v. Model Serv. LLC*,
    155 F. Supp. 3d 448 (S.D.N.Y. 2016) ..............................................................................8, 9

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
    2023 WL 4249356 (S.D.N.Y. June 29, 2023) .......................................................................5

*Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*,
    760 F.2d 442 (2d Cir. 1985) ..................................................................................................5

*In re Bernard L. Madoff Inv. Sec. LLC*,
    2024 WL 418154 (S.D.N.Y. Feb. 2, 2024) .........................................................................10

*Capitol Recs., LLC v. Vimeo, LLC*,
    972 F. Supp. 2d 537 (S.D.N.Y. 2013) ..................................................................................2

*Doe v. Cnty. of Rockland*,
    2022 WL 2533151 (S.D.N.Y. July 7, 2022) .........................................................................6

*Hart v. Rick's Cabaret Int'l, Inc.*,
    73 F. Supp. 3d 382. 395 (S.D.N.Y. 2014) ...........................................................................5

*In re Facebook, Inc., IPO Sec. and Deriv. Litig.*,
    986 F. Supp. 2d 524 (S.D.N.Y. 2014) ..................................................................................5

*Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*,
    2015 WL 14017390 (S.D.N.Y. July 24, 2015) .................................................................9, 10

*LNC Invs., Inc. v. First Fid. Bank*,
    2000 WL 461612 (S.D.N.Y. Apr. 18, 2000) .......................................................................11

*Metcalf v. TransPerfect Translations Int'l, Inc.*,
    2023 WL 2674743 (S.D.N.Y. Mar. 29, 2023) ......................................................................6

*Michalek v. Amplify Sports & Ent. LLC*,
    2012 WL 2357414 (S.D.N.Y. June 20, 2012) ....................................................................4, 5

*Monahan v. N.Y.C. Dep. of Corr.*,
    214 F.3d 275 (2d Cir. 2000) ..................................................................................................8

*Pettiford v. City of Yonkers*,
    2021 WL 2556172 (S.D.N.Y. June 21, 2021) ......................................................................9

*SEC v. Coinbase, Inc.*,
    761 F. Supp. 3d 702 (S.D.N.Y. 2025)................................................................2, 8

*SEC v. Ripple Labs, Inc.*,
    697 F. Supp. 3d 126 (S.D.N.Y. 2023)....................................................................5

*Set Cap. LLC v. Credit Suisse Grp. AG*,
    996 F.3d 64 (2d Cir. 2021).....................................................................................7

*State Tchrs. Ret. Bd. v. Fluor Corp.*,
    654 F.2d 843 (2d Cir. 1981)...................................................................................4

*Telectronics Proprietary, Ltd. v. Medtronic, Inc.*,
    690 F. Supp. 170 (S.D.N.Y. 1987) .....................................................................7, 8

*Teta v. Go New York Tours, Inc.*,
    2024 WL 4850844 (S.D.N.Y. Nov. 21, 2024).......................................................10

*U.S. v. McKesson Corp.*,
    2023 WL 4517877 (E.D.N.Y. July 13, 2023)..........................................................4

*Wood v. Mike Bloomberg 2020, Inc.*,
    2025 WL 1696535 (S.D.N.Y. June 17, 2025) .........................................................5

*Yu v. Hasaki Rest., Inc.*,
    874 F.3d 94, 98 (2d Cir. 2017)...............................................................................8

**STATUTES**

28 U.S.C. § 1292(b) .............................................................................1, 2, 8, 11

**OTHER AUTHORITIES**

16 Charles Alan Wright et al., *Federal Practice and Procedure* § 3930 (3d ed., Westlaw
    updated June 2025) ...............................................................................................8

Plaintiffs[1] respectfully submit this reply brief in further support of Plaintiffs' motion for certification of the Court's Order dated May 5, 2025 (the "Order," ECF No. 374) for interlocutory appeal under 28 U.S.C. § 1292(b).

## I.    INTRODUCTION

Plaintiffs seek immediate appellate review of two controlling questions of law at the core of this litigation.  Interlocutory review so that the Second Circuit may properly consider the legal issues raised in the Court's Order denying Plaintiff's proposed amendment is necessary and appropriate to conserve resources and ensure that the litigation proceeds efficiently and on a complete and accurate record. Defendants' invitation to disregard both the legal issues and practical import of those questions should be declined.

Plaintiffs' Motion seeks appellate review of pure legal issues that, contrary to Defendants' argument, will not require the appellate court to engage in a fact-intensive analysis of the record. Rather, interlocutory review will focus on the application of legal standards governing undue prejudice and futility in the context of amendments to pleadings—a question the Second Circuit regularly addresses.  Further, the questions raised present substantial grounds for difference of opinion, as evinced by the conflicting authorities the parties rely on, among other things. Prompt resolution of these questions will promote efficiency and prevent duplicative post-judgment proceedings, thus materially advancing the termination of this litigation.

Defendants contend that Plaintiffs' Motion is an improper attempt to obtain a "third judicial review" of supposedly fact-intensive questions. But sequential review is proper where, as here, a magistrate judge first considered the amendment, the district judge reviewed the magistrate judge's

---

[1] Unless otherwise indicated, defined terms retain the meanings used in Plaintiffs' Memorandum of Law in Support of Plaintiff's Motion to Certify Interlocutory Appeal (ECF No. 378) ("Motion" or "Mot.").

decision, and the Court of Appeals will for the first time itself review the district court's decisions for legal error. Indeed, the same sequential review has already happened once in this case at the motion to dismiss stage. *See* Mot. at 4 (citing ECF Nos. 124, 135, 143). Defendants also ignore Plaintiffs' good-faith basis, grounded in established precedent, for seeking interlocutory review of meritorious legal arguments that will materially advance the termination of the litigation.

First, the law is clear that Defendants do not face any undue prejudice based on the addition of factual allegations of which they were on notice for years and that arise from the same transactions alleged in the operative complaint. And second, the addition of certain proposed allegations relevant to whether the pleadings give rise to a strong inference of Defendants' scienter is not prejudicial and would not be futile, particularly where, as here, the proposed allegations are exactly the type of allegations that the Second Circuit specifically identified as sufficient to plead a strong inference of scienter.

Accordingly, Plaintiffs meet the standard for review under Section 1292(b) and respectfully request that the Court grant the Motion and certify the Order for interlocutory appeal.

## II.    ARGUMENT

### A.  Controlling Questions of Law Presented in the Court's Order Warrant Interlocutory Review.

The controlling questions of law here concern the proper legal standard to be applied when evaluating undue prejudice and futility in the context of amendments to pleadings, meaning that they are "pure question[s] of law" that the Court of Appeals could decide "quickly and cleanly without having to study the record." *SEC v. Coinbase, Inc.*, 761 F. Supp. 3d 702, 714 (S.D.N.Y. 2025) (quoting *Capitol Recs., LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013)). The controlling questions of law presented here do not require the Court of Appeals to closely examine a lengthy factual record, resolve disputed facts, or engage in credibility determinations.

2

Defendants principally argue that Plaintiffs "merely disagree with the outcome" of this Court's and Magistrate Judge Netburn's earlier decisions. ECF No. 380 ("Opp.") at 3. Defendants are wrong.  Plaintiffs seek appellate review of pure legal issues that, if resolved now, will promote efficiency and avoid the risk of lengthy duplicative proceedings. Immediate review of these controlling questions of law would impose only a minimal burden on Defendants and would materially advance the ultimate termination of this litigation.  Good-faith disagreement with the district court's decisions is inherent in every application for interlocutory review; it is a necessary precursor rather than a bar to relief.

As discussed in Plaintiffs' opening brief, the Motion should be granted so that the Court of Appeals may consider the controlling questions of (1) whether an amendment is unduly prejudicial where Defendants had been on notice of the basis for the amendment, and (2) whether amendment should be permitted to conform pleadings with evidence adduced in discovery.  *See* Mot. at 8-14.

### 1. Whether a Court May Find Undue Prejudice Despite Defendants Being on Notice Is a Controlling Question of Law

Defendants argue that the question of undue prejudice "requires a close review of the factual and procedural record." Opp. at 4. This is incorrect. Indeed, the factual and procedural records are not even in real dispute. It is a purely legal question whether a proposed amendment is unduly prejudicial where (1) Defendants were on notice of the basis for the amendment, (2) the new allegations arose from the same transactions as alleged in the current operative complaint, (3) the motion to amend was made shortly after the close of fact discovery and consistent with the Court-ordered case management plan, and (4) long before trial was even scheduled. The application of the legal standard for assessing prejudice under Rule 15 to these undisputed facts requires no detailed review and is eminently suitable for appellate review.

First, there can be no reasonable question that Defendants were on notice of the importance

3

of Defendants' own lending of XIV notes to third parties (*i.e.*, facts that were at all times in Defendants' own possession and knowledge) at least as early as October 2021, when Plaintiffs issued relevant document requests on this topic.  Further, as noted in Magistrate Judge Netburn's Order, in July 2021—prior to the start of discovery—Defendants "made a presentation to Plaintiffs' counsel" in which they claimed that "Credit Suisse was fully hedged by the close of business on February 4, 2018" and did not engage in heavy trading of VIX futures itself. ECF No. 333 at 8. In other words, by July 2021 at the latest, Defendants were not only on notice but had already investigated the market activity on the afternoon of February 4, 2018, that was the subject of Plaintiffs' manipulation claim, and were well aware of how Credit Suisse manipulated the market for XIV through its lending of XIV to short sellers. Throughout discovery, Plaintiffs were focused on Defendants' lending practices, seeking both document and testimonial discovery on the issue—which Defendants stonewalled. Any prejudice from Plaintiffs' proposed amendment was of Defendants' own making, and in no way undue.

Second, Plaintiffs moved to amend the complaint on April 28, 2023, less than two weeks after the close of fact discovery and consistent with the Court-ordered case management plan. Indeed, Plaintiffs could not possibly have moved earlier, as the relevant testimony that made clear that Defendants were manipulating the market through their third-party lending partners and which forms the basis of Plaintiffs' amended allegations was not obtained from Defendants until just days before the motion to amend was filed.

Finally, Plaintiffs' motion was made long before any motions for summary judgment were even scheduled to be filed and a trial date was set.  Indeed, class certification was not even completed when Plaintiffs filed their motion to amend.  Mot. at 10-11. *See, e.g.*, *U.S. v. McKesson Corp.*, 2023 WL 4517877, at *7 (E.D.N.Y. July 13, 2023); *State Tchrs. Ret. Bd. v. Fluor Corp.*,

4

654 F.2d 843, 856 (2d Cir. 1981).

Certification is appropriate under these circumstances. Indeed, certification is appropriate and common where, as here, discovery is completed but no motions for summary judgment have been filed. Mot. at 12-13. *See, e.g.*, *Michalek v. Amplify Sports & Ent. LLC*, 2012 WL 2357414, at *5 (S.D.N.Y. June 20, 2012); *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985).

Defendants' cited cases are inapt and distinguishable. In *Facebook*, the court held that certification was not appropriate because the question whether defendants violated the securities laws required analysis of "events leading up to the IPO" and was a "fact-specific inquiry." *In re Facebook, Inc., IPO Sec. and Deriv. Litig.*, 986 F. Supp. 2d 524, 537 (S.D.N.Y. 2014). Those circumstances do not apply here, where the controlling questions of law presented concern the proper legal standard to be applied. *See also Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 2023 WL 4249356, at *18-19 (S.D.N.Y. June 29, 2023) (involving analysis of highly fact-intensive allegations relating to plaintiff's failure to allege loss causation); *SEC v. Ripple Labs, Inc.*, 697 F. Supp. 3d 126, 132 (S.D.N.Y. 2023) (involving no pure question of law where the court analyzed "an extensive, heavily disputed factual record and detailed expert reports," including a Rule 56.1 statement which contained "over 1,600 purported facts . . . and cite[d] over 900 exhibits").

Defendants' other cited cases are similarly inapposite. In *Wood v. Mike Bloomberg 2020, Inc.*, the party seeking interlocutory review framed its supposed question of law as just a "reiteration . . . of the factual assertion that the Court held is materially disputed" and even "relied extensively on the factual record" in its motion for interlocutory appeal. 2025 WL 1696535, at *3 (S.D.N.Y. June 17, 2025). Here, this Motion does not turn on disputed facts but rather the application of the legal standards for amendment and undue prejudice. Likewise, in *Hart v. Rick's*

5

*Cabaret Int'l, Inc.*, the issue of whether the court properly applied a legal standard was a "fact-bound application" concerning "how a reasonable customer would have understood the performance fees that he paid to a dancer by means of cash or Dance Dollars." 73 F. Supp. 3d 382. 395 (S.D.N.Y. 2014). Again, here, such factual disputes will be litigated at summary judgment and at trial. The question here is the content of the pleadings to be considered and litigated at those later stages.

**2. Whether Plaintiffs Should Be Granted Leave to Re-Allege the Flatline Claim Based on Evidence Adduced in Discovery Is a Controlling Question of Law.**

The Court's Order and Plaintiffs' Motion raise a second controlling question of law: whether allegations that Credit Suisse checked the published IIV for XIV against an internally calculated true value for XIV, based on the same data as the published IIV, give rise to a strong inference of scienter. Contrary to Defendants' arguments, the question presented here is not a fact-bound dispute. Rather, Plaintiffs raise the legal question of whether the Court applied the correct legal standard for futility (including, here, concerning the core element of scienter). The sufficiency of allegations to plead scienter is a frequently occurring legal issue—regularly raised at the motion to dismiss stage in securities class actions—and the question presented is whether the proposed amendment "is clearly frivolous or legally insufficient." In other words, the question is whether the Court's analysis aligns with the governing legal principles—not whether the evidence (which has already been adduced in discovery) will ultimately establish liability. *Metcalf v. TransPerfect Translations Int'l, Inc.*, 2023 WL 2674743, at *4 (S.D.N.Y. Mar. 29, 2023); *see also Doe v. Cnty. of Rockland*, 2022 WL 2533151, at *5 (S.D.N.Y. July 7, 2022) ("When amendments raise colorable claims, especially where they are based upon disputed facts, they should be allowed, and a comprehensive legal analysis deferred to subsequent motions to dismiss or for summary judgment."). Here, the legal question is particularly precise because the Second

6

Circuit itself specifically held that Plaintiffs would have successfully pled the Flatline Claim had they pointed to "'specific reports or statements' showing that [Credit Suisse] could access this data [to calculate NAV]" or had "devoted resources to calculating a redundant pricing index for VIX futures contracts." *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 83-84 (2d Cir. 2021).  The proposed amended complaint ("PTAC") included these exact missing facts, alleging: that Credit Suisse created "an independent internal calculation for the intraday and closing indicative values for six VIX ETNs, including XIV[]," PTAC ¶ 235; Credit Suisse understood that its "live ticking," internally calculated values represented the "real value of XIV," PTAC ¶ 237; that those values were used by Credit Suisse as an "internal check" for "Credit Suisse's risk systems and traders," and were "accessible to all relevant Credit Suisse traders." PTAC ¶¶ 237-238; that Credit Suisse and its traders were actively comparing the published IIV to their internal calculations, including on February 5, 2018, PTAC ¶¶ 239-240; and that Credit Suisse's VIX traders watched the spike in VIX futures on February 5, 2018, and "constantly monitor[ed] the price of VIX futures and XIV" while rebalancing Credit Suisse's hedges for XIV during the Flatline Period, PTAC ¶¶ 240-42.

Whether or not the allegations in the proposed amended complaint satisfied the standard set out by the Second Circuit is, at best, a question of law.

### 3.  Both of the Questions of Law Presented Are Controlling

Defendants argue that neither of the questions presented are "controlling" because any litigant could argue that reversal of a motion to amend would significantly affect the conduct of a case. Opp. at 6. Again, this argument fails.  Defendants fail to meaningfully address Plaintiffs' core practical argument that reversal of the Order would significantly affect the conduct of the action—and thus the questions of law are controlling—because a successful appeal post-judgment would likely require the entire case to be retried, with substantial additional motion practice and expert discovery.

Far from a "conclusory" assertion, Plaintiffs' argument is grounded in well-established precedent. *See* Mot. at 16 (citing *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 690 F. Supp. 170, 172 (S.D.N.Y. 1987) ("[t]here is no doubt that a question is 'controlling' if its incorrect disposition would require reversal of a final judgment for further proceedings") (quoting 16 Charles Alan Wright et al., *Federal Practice and Procedure* § 3930 (3d ed., Westlaw updated June 2025))). Here, the "conduct of the action" that will be significantly affected, absent interlocutory review, includes expert reports, discovery, pretrial motions practice, and trial.

### B. The Controlling Questions of Law Here Present Substantial Grounds for Difference of Opinion

Under Section 1292(b), there is substantial ground for difference of opinion regarding a controlling question of law when "[i] there is conflicting authority on the issue, or [ii] the issue is particularly difficult and of first impression for the Second Circuit." *Coinbase*, 761 F. Supp. 3d at 716. "In determining whether there is conflicting authority on an issue, the question is, rather simply, whether there are 'differing rulings [by district court judges] within this Circuit' on the issue." *Id.* at 717 (quoting *Yu v. Hasaki Rest., Inc.*, 874 F.3d 94, 98 (2d Cir. 2017)).

Such conflicting authority exists here. As to the first question of controlling law—whether an amendment adding allegations concerning Defendants' lending practices would be unduly prejudicial—the Court's Order conflicts with numerous courts' decisions in this Circuit that found no undue prejudice and allowed amendment where Defendants were on notice of both Plaintiff's intention to seek leave to amend and the factual and legal bases for the proposed amendments. *See* Mot. § III.A.I. Defendants incorrectly assert that Plaintiffs have not "demonstrated that there is conflicting authority on these standards" (Opp. at 9), but Defendants ignore entirely the authority cited by Plaintiffs. *See* Mot. at 9 (citing *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 455-56 (S.D.N.Y. 2016); *A.V.E.L.A., Inc. v. Est. of Monroe*, 34 F. Supp. 3d 311, 317 (S.D.N.Y. 2014);

8

*Monahan v. N.Y.C. Dep. of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000)). These authorities confirm that "[w]hether a party had prior notice of a claim and whether the new claim arises from the same transaction as the claims in the original pleading are ***central to the undue prejudice analysis***." *Agerbrink*, 155 F. Supp. 3d at 455–56 (emphasis added). This goes to the core of the first controlling question of law raised in the Order and Plaintiffs' Motion.

As to the second question of controlling law—whether adding allegations supporting scienter for the Flatline Claim would be futile—the application of the scienter standard at the pleading stage is a heavily litigated issue, as illustrated by the Second Circuit's lengthy analysis discussing numerous cases when it considered the operative complaint's scienter allegations. *See* Mot. at 18-19 (citing ECF No. 143 at 20-32).

Moreover, Defendants' attempts to distinguish other authorities cited by Plaintiffs fall flat. For example, regarding *Pettiford v. City of Yonkers*, 2021 WL 2556172, at *4 (S.D.N.Y. June 21, 2021), Defendants point to the court's brief findings—that that the motion to amend was filed a month after the relevant deposition and that the "Defendants have been aware of the facts underlying" the proposed claim for "several years"—and assert that this means the issue of undue prejudice is too "fact-specific" to allow for interlocutory review. Opp. at 9 n.5. To the contrary, describing the procedural history of a case does not require fact-intensive analysis and is a common matter understood by courts; here, there is no dispute that Defendants were on notice of (and Plaintiffs sought discovery concerning) the issue of Defendants' third-party XIV lending long before submitting their proposed amendment.

Defendants again characterize Plaintiffs' Motion as "mere disagreement with a court's ruling." Opp. at 8. But the cases they rely on for this proposition do not apply, including because there—unlike here—the parties seeking amendment did not identify any conflicting authority to

establish substantial grounds for a difference of opinion. *See Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, 2015 WL 14017390, at \*2 (S.D.N.Y. July 24, 2015) (declining to certify where the question presented "would require the Second Circuit to review the factual allegations in detail" and the plaintiff did not apparently offer conflicting authority); *In re Bernard L. Madoff Inv. Sec. LLC*, 2024 WL 418154, at \*4 (S.D.N.Y. Feb. 2, 2024) (declining to certify where no conflicting authority was presented); *Teta v. Go New York Tours, Inc.*, 2024 WL 4850844, at \*4 (S.D.N.Y. Nov. 21, 2024) (declining to certify where the court's order "does not conflict with other decisions in this District").

## C. Immediate Appeal Will Materially Advance the Termination of This Litigation

An interlocutory appeal will materially advance the termination of this litigation by enabling the parties and the Court to avoid costly, inefficient, expensive, and lengthy post-judgment litigation. Mot. at 18-19. Interlocutory review will avoid the risk of a post-judgment reversal requiring duplicative litigation, additional costly expert reports, and ultimately retrial. The potential for dismissal of claims on summary judgment also presents a concrete risk of delay, as resolution of an appeal from a summary judgment grant will delay trial.

Defendants characterize the requested interlocutory review as a "third judicial review" of Plaintiffs' motion to amend, but this interlocutory appeal would be the first time this issue is raised to the Second Circuit, as is generally the case under Section 1292(b). Especially where the Second Circuit has already once vacated this Court's dismissal on the pleadings, there is a compelling basis to afford the Court of Appeals an opportunity to review the legal issues raised by the Court's denial of leave to amend now, rather than after a judgment and ensuing expensive, duplicative re-litigation of the case.

Defendants' assertion that certification will delay the case ignores the efficiencies to be gained from resolving these controlling questions of law now through interlocutory review.

10

Indeed, the parties' recent joint letter regarding the case schedule acknowledges the need for efficient resolution of this and other issues. *See* ECF Nos. 376 (jointly requesting a stay of expert discovery pending resolution of this Motion and Defendants' subsequent motion for dismissal, to "avoid potentially unnecessary effort and expense"); 377 (so-ordered version). This consideration is especially relevant in complex commercial litigation like this case, where avoiding duplicative post-judgment litigation would save enormous amounts of time and money and materially advance the termination of litigation. *See, e.g.*, *LNC Invs., Inc. v. First Fid. Bank*, 2000 WL 461612, at *4 (S.D.N.Y. Apr. 18, 2000) (certifying interlocutory appeal given the need for an additional trial if the Second Circuit, post-judgment, reverses the court's order).

## III.    CONCLUSION

For the foregoing reasons, and as discussed in Plaintiffs' opening Motion, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and certify the Order for interlocutory appeal.

Dated: July 16, 2025                                            Respectfully submitted,

/s/ Michael B. Eisenkraft
Michael B. Eisenkraft
Laura H. Posner
**COHEN MILSTEIN SELLERS
  & TOLL PLLC**
88 Pine Street
14th Floor
New York, NY 10005
Tel.: (212) 838-7797
Fax: (212) 838-7745
meisenkraft@cohenmilstein.com
lposner@cohenmilstein.com

Steven J. Toll (*pro hac vice*)
Brendan Schneiderman (*pro hac vice*)
1100 New York Ave. N.W., Eighth Floor
Washington, D.C. 20005
Tel.: (202) 408-3640

11

Fax: (202) 408-4699
stoll@cohenmilstein.com
bschneiderman@cohenmilstein.com

Carol V. Gilden
200 S. Wacker Drive, Suite 2375
Chicago, IL 60606
Tel. (312) 357-0370
Fax: (312) 357-0369
cgilden@cohenmilstein.com

**LEVI & KORSINSKY, LLP**
Eduard Korsinsky
Nicholas I. Porritt
Adam M. Apton
33 Whitehall Street, 27th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
ek@zlk.com
nporritt@zlk.com
aapton@zlk.com

**LEVI & KORSINSKY, LLP**
Alexander A. Krot III (*pro hac vice*)
1101 Vermont Avenue, NW
Suite 800
Washington, D.C. 20005
Tel: (202) 524-4290
Fax: (212) 363-7171
akrot@zlk.com

*Counsel for Lead Plaintiffs and Co-Lead
Class Counsel for the Securities Act Class*

**BRONSTEIN, GEWIRTZ &
GROSSMAN,
LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Tel. (212) 697-6484
peretz@bgandg.com

*Additional Counsel for Apollo Asset Limited*

12

and-

*/s/ Adam Hollander*
**SLARSKEY LLC**
Adam Hollander
767 Third Avenue, 14th Floor
New York, NY 10017
Tel: (212) 658-0661
ahollander@slarskey.com

*Counsel for the Sudheera Tripuraneni Trust*
*U/A DTD 11/16/2015 and Class Counsel for*
*the Manipulation Class*

13