UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SET CAPITAL LLC, et al., Individually and
on Behalf of All Others Similarly Situated,

      Plaintiffs,

  -against-

CREDIT SUISSE GROUP AG, CREDIT SUISSE
AG, CREDIT SUISSE INTERNATIONAL,
TIDJANE THIAM, DAVID R. MATHERS,

      Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   2/27/2026

18 Civ. 2268 (AT) (SN)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiffs move pursuant to 28 U.S.C. § 1291(b) to certify for interlocutory appeal the Court's order dated May 5, 2025 ("Order"), ECF No. 374, denying Plaintiffs' leave to amend their complaint. *See* Mot., ECF No. 378; Opp., ECF No. 380; Reply, ECF No. 381. For the reasons stated below, the motion is DENIED.

**BACKGROUND[1]**

After the close of fact discovery, *see* ECF No. 269, Plaintiffs filed a motion to amend their pleadings, proposing to amend their claim that Defendants engaged in manipulative conduct and their "Flatline Value" claim that the Second Circuit had concluded was correctly dismissed earlier in the litigation. *See* ECF Nos. 283, 284, 304; *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 82–84 (2d Cir. 2021). Pursuant to an order of reference, ECF No. 11, the Honorable Sarah Netburn denied Plaintiffs leave to amend after extensive briefing and oral argument. *See* Order & Opinion ("O&O"), ECF No. 333. On May 5, 2025, this Court overruled Plaintiffs' objections to the O&O. *See* Order at 2, 17.

As to the manipulation claim, whereas Plaintiffs' initial theory of liability was based on

---

[1] The Court assumes familiarity with the underlying facts and claims and only repeats them as necessary.

Credit Suisse's own hedging activity, their proposed amendments theorized that "Defendants partook in an undisclosed *lending* scheme to intentionally plummet the XIV Note value." O&O at 3. The Court found that this constituted "a new theory of liability" never before argued in the four-year history of the case. Order at 7, 13. The Court concluded, for the reasons identified in the O&O, that such proposed amendments would unduly prejudice Defendants. *See* Order at 13–15; O&O at 6–9. Because the proposed amendments contemplated a new theory of liability, Defendants would be "entitled to"—and perhaps even compelled by good sense to—"mount a defense based on the trading behavior and intent of [] third parties." Order at 13–14. Preparing such a defense would "require reopening discovery, consume months of additional litigation, and cost hundreds of thousands of dollars." *Id.* at 14 (citing O&O at 7); *see* O&O at 7 (noting that undertaking a new defense might require "identify[ing] approximately 100 market players and obtain[ing] third-party document and deposition discovery")). The Court determined that this would be unfair because it would be "unduly prejudicial to 'require [defendants] to spend years of time and millions of dollars defending against one claim, only to face an entirely new one.'" Order at 15 (quoting O&O at 8); *see* O&O at 8 ("Although the parties dispute whether Credit Suisse could have predicted the direction the Plaintiffs were now heading, it is unreasonable to place the burden on a defendant in a securities fraud case to guess at the theory of liability.").

As to the Flatline Value claim, the Court concluded that Plaintiffs did not "address the deficiencies [in the previously dismissed claim] identified by the Second Circuit" because Plaintiffs "still fail to allege that Credit Suisse monitored the VIX Futures Index's pricing data and calculated a redundant pricing index for VIX futures contracts to verify accuracy of the Index." Order at 16; *see* O&O at 9 (requiring Plaintiffs to plead that Credit Suisse "monitored the *VIX Futures Index* for accuracy" or "created a redundant internal *VIX Futures Index*").

Plaintiffs now seek certification of two questions:

(1) "[W]hether a Court may find a proposed amendment to be unduly prejudicial, even though defendants were on notice of the basis for the amendment and the new allegations arose from the same transactions as alleged in the current operative complaint."  ("Undue Prejudice").

Mot. at 9.

(2) "[W]hether allegations that Credit Suisse checked the published IIV for XIV against an internally calculated true value for XIV, based on the same data as the published IIV, give rise to a strong inference of scienter—*i.e.*, that Defendants knew or were deliberately reckless as to whether the published IIV was inaccurate."  ("Flatline Value Claim").

*Id.* at 14.

## LEGAL STANDARD

A court should issue a certificate of appealability permitting an interlocutory appeal when it is "of the opinion that such order [(1)] involves a controlling question of law [(2)] as to which there is substantial ground for difference of opinion and [(3)] that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b). "The moving party has the burden of establishing all three elements."  *Youngers v. Virtus Inv. Partners Inc.*, 228 F. Supp. 3d 295, 298 (S.D.N.Y. 2017) (citation and quotation marks omitted). A certificate is warranted only in "exceptional circumstances sufficient to overcome the general aversion to piecemeal litigation and to justify a departure from the basic policy of postponing appellate review until after the entry of final judgment."  *Consub Del. LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 308 (S.D.N.Y. 2007) (citations and quotation marks omitted). Courts must therefore "strictly construe the requirements of [§] 1292(b)."  *Wood v. Mike Bloomberg 2020, Inc.*, No. 20 Civ. 2489, 2025 WL 1696535, at *3 (S.D.N.Y. June 17, 2025). "The decision whether to grant an interlocutory appeal lies within the district court's discretion."  *Mills v. Everest Reinsurance Co.*, 771 F. Supp. 2d 270, 273 (S.D.N.Y. 2009).

On the first prong, a "question of law must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, 697 F. Supp. 3d 126, 132 (S.D.N.Y. 2023) (quoting *Youngers*, 228 F. Supp. 3d at 298). "A question of law is controlling where: '(1) reversal of the district court's opinion could result in dismissal of the action, (2) reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action, or (3) the certified issue has precedential value for a large number of cases.'" *Id.* (citation omitted).

On the second prong, "[s]ubstantial ground for a difference of opinion requires more than a claim that the court's ruling was wrong." *Mills*, 771 F. Supp. 2d at 273. "Rather, this element may be met by a showing that (1) there is conflicting authority on an issue or (2) the case is particularly difficult and of first impression within this Circuit." *Id.* at 274.

"Finally, the third prong is met where an intermediate appeal would advance the ultimate termination of litigation or if the appeal would advance the time to trial or shorten the trial." *Id*. Where it is "not clear that an interlocutory appeal would materially move the ball toward ending, rather than prolonging or complicating, [the] litigation," the Court may decline to certify a question for interlocutory appeal. *Frazier v. Morgan Stanley & Co. LLC*, No. 16 Civ. 804, 2020 WL 3791852, at *2 (S.D.N.Y. July 7, 2020).

**DISCUSSION**

I.    Undue Prejudice

The Court finds that Plaintiffs' first proposed question—"whether a Court may find a proposed amendment to be unduly prejudicial, even though defendants were on notice of the basis for the amendment and the new allegations arose from the same transactions alleged in the operative complaint," Mot. at 9—is inappropriate for certification.

First, Plaintiffs have not demonstrated that this question is one a reviewing court "could decide quickly and cleanly without having to study the record." *Consub Del.*, 476 F. Supp. 2d at 309 (citation omitted). Even if Plaintiffs' question can technically be construed as a pure question of law, it would be highly unusual for the Second Circuit to resolve the question on appeal without first determining that Defendants were, in fact, "on notice of the basis for the amendment" and that "the new allegations arose from the same transactions alleged in the operative complaint." Mot. at 9. Additionally, "[f]or certification, 'the legal question must be stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and give it general relevance to other cases in the same area of law.'" *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, No. 19 Civ. 10067, 2023 WL 4249356, at *19 (S.D.N.Y. June 29, 2023) (citation omitted). But the answer to the question Plaintiffs present turns on the facts of this case, such as when Plaintiffs were on notice of the basis for the new amendment, how they were put on notice, how much detail such notice truly encompassed, and how the new theory of liability related to the scope of that prior notice. In other words, for the Second Circuit to answer this question, it would necessarily consider who knew what, and when. That is not the type of question which rises above "the details of the evidence or facts of a particular case" and has "general relevance to other cases in the same area of law." *Altimeo*, 2023 WL 4249356, at *19.

Moreover, because deciding whether to grant leave to amend is "within the sound discretion of the district court," *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995), the Second Circuit has not prescribed rigid legal rules governing this decision and has instead recognized that a valid exercise of discretion depends on the circumstances. *See, e.g.*, *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (describing factors courts "generally consider" in determining prejudice, circumstances that are "usually not [] deemed prejudice," or

when a court should be "most hesitant to allow amendment"). Because Plaintiffs' question is ill-suited to purely legal analysis, it is not appropriate for certification.

Separately, Plaintiffs have not demonstrated that the "decision under review is in conflict with other decisions" as to the proposed legal question. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 540 (S.D.N.Y. 2014).[2] Plaintiffs argue that the Court, in conflict with other decisions, "focused solely on whether Defendants would potentially incur additional discovery costs," without considering notice. Mot. at 1. But that mischaracterizes the O&O and the Court's order. The O&O acknowledged Plaintiffs' arguments that "Credit Suisse could have predicted the direction Plaintiffs were now heading" but concluded that it would be "unreasonable to place the burden on a defendant in a securities fraud case to guess at the theory of liability." O&O at 8; *see also* Order at 11 (quoting the same language). The conclusion that Defendants would have to "guess" Plaintiffs' new theory of liability relates to notice. The Court, therefore, did not "fail[] to consider" notice. Mot. at 2.

The Court also disagrees that its order conflicts with *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 455 (S.D.N.Y. 2016), which states that "[w]hether a party had prior notice of a claim and whether the new claim arises from the same transaction as the claims in the original pleading are central to the undue prejudice analysis." *See* Mot. at 1; Reply at 9. *Agerbrink* acknowledges, as the order and the O&O did, that although a new claim might arise from the same transaction as the original claims, a party may nonetheless not be on "notice" of that claim. *See Agerbrink*, 155 F. Supp. 3d at 455. And in the very next sentence, *Agerbrink* states that such considerations are central "because prejudice occurs if the opposing party would experience undue difficulty in defending a lawsuit because of a change in tactics or theories on the part of the movant." *Id.*

---

[2] Nor do Plaintiffs argue that the question is "particularly difficult and of first impression for the Second Circuit." *Mills*, 771 F. Supp. 2d at 273.

(citation and quotation marks omitted).  The O&O and the Court's order focused on whether the Defendants would face "undue difficulty in defending the lawsuit because of a change in . . . theories on the part of the movant."  *Id.*  The O&O concluded that Plaintiffs' amendments would present a "new case" and that "[u]ndertaking a defense in this new case would be substantial"— potentially requiring Defendants to, five years after the case was filed, "identify approximately 100 market players and obtain third-party document and deposition discovery relating to their market positions, incentives, trading and hedging strategies, knowledge about a potential liquidity crunch, and trading and hedging activities on February 5, 2018."  O&O at 7; *see* Order at 14 (quoting the same).  Consistent with *Agerbrink*, the Court considered Defendants' difficulty in defending the lawsuit because of a new legal theory.  Therefore, Plaintiffs have not demonstrated a legal conflict between *Agerbrink* and the Court's order.

Because "interlocutory appeals are strongly disfavored in federal practice," § 1292(b)'s requirements must be "strictly construed."  *In re Facebook, Inc.*, 986 F. Supp. 2d at 530.  Absent "conflicting authority on an issue," Plaintiffs have not demonstrated "[s]ubstantial ground for a difference of opinion."  *Mills*, 771 F. Supp. 2d at 273–74.  Indeed, the remaining cases Plaintiffs cite have not decided, let alone diverged on, Plaintiffs' proposed question of law.  Rather, the cases have considered motions to amend and found, based on the facts before them, that there was no undue prejudice.  *See* Mot. at 9–10.  Cases do not conflict merely because district courts, in their discretion, made different undue prejudice determinations on different records.[3]  *See also Mills*, 771 F. Supp. 2d at 273 (requiring "more than a claim that the court's ruling was wrong").

---

[3] Moreover, by Plaintiffs' own admission, these cases were presented in "extensive briefing before the Court and the Magistrate Judge on this issue."  Mot. at 3.  Interlocutory appeals are not intended to allow a moving party to reargue issues that the Court has already addressed and rejected.  *In re Facebook, Inc.*, 986 F. Supp. 2d at 530–31.

Because Plaintiffs have not demonstrated that "all three of the substantive criteria [of § 1292(b)] are met," *In re Facebook, Inc.*, 986 F. Supp. 2d at 529, the Court denies Plaintiffs' first certification request.

## II.    Flatline Value Claim

The Court also concludes that Plaintiffs' second proposed question—which seeks review of the Court's determination that Plaintiffs' amended Flatline Value claim fails to state a claim—is also inappropriate for certification. *See* Mot. at 16. Although Plaintiffs insist that their proposed amendments "are precisely the type of allegations that the Second Circuit wrote were needed to adequately plead a strong inference of scienter," Mot. at 16, the Court concluded otherwise, holding that Plaintiffs "still fail to allege that Credit Suisse monitored the VIX Futures Index's pricing data and calculated a redundant pricing index for VIX futures contracts to verify the accuracy of the Index." Order at 16. Plaintiffs' challenge to the Court's decision "does not present a pure question of law" but "instead an application of law to the unique set of facts pled." *Altimeo Asset Mgmt.*, 2023 WL 4249356, at *18. "[C]hallenges that relate to the sufficiency of Plaintiffs' pleadings . . . are not generally the appropriate subjects of interlocutory review." *In re Facebook*, 986 F. Supp. 2d at 530 (internal quotation marks omitted); *see Strougo v. Scudder*, No. 96 Civ. 2136, 1997 WL 473566, at *7 (S.D.N.Y. Aug. 18, 1997) ("As a general matter, rulings on the sufficiency of pleadings are not appropriate for interlocutory review."). Such challenges are particularly ill-suited for interlocutory review because "reversal on interlocutory appeal at most could lead only to a remand for repleading, with possibilities of further interlocutory appeals thereafter." *In re Facebook*, 986 F. Supp. 2d at 530 (cleaned up); *see Gottesman v. General Motors Corp.*, 268 F.2d 194, 196 (2d Cir. 1959).

Moreover, Plaintiffs fail to demonstrate that "there is conflicting authority on an issue" or

that the "case is particularly difficult and of first impression within this Circuit." *Mills*, 771 F.

Supp. 2d at 274. Plaintiffs must do more than make a "claim that the court's ruling was wrong,"

*id.* at 273, or argue, as they do here, that there is a "strong possibility for a difference of opinion,"

Mot. at 19; *see also Ripple Labs*, 697 F. Supp. 3d at 135 (requiring more than "[m]ere conjecture

that courts would disagree on the issue"). Thus, the Court also denies this request for certification

because Plaintiffs have failed to demonstrate a conflict between existing law and the Court's order.

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' motion for certification of

interlocutory appeal. The Clerk of Court is respectfully directed to terminate the motion at ECF

No. 378.

SO ORDERED.

Dated: February 27, 2026
New York, New York

_____
ANALISA TORRES
United States District Judge

9