**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SET CAPITAL LLC, et al., | 1:18-cv-02268 (AT) (SN) |
| Plaintiffs, | **ORAL ARGUMENT** |
| v. | **REQUESTED** |
| CREDIT SUISSE GROUP AG, et al., | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED**
**THIRD AMENDED CLASS ACTION COMPLAINT**

CAHILL GORDON & REINDEL LLP
Herbert S. Washer
Tammy L. Roy
Edward N. Moss
Ivan Torres
32 Old Slip
New York, New York 10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420
hwasher@cahill.com
troy@cahill.com
emoss@cahill.com
itorres@cahill.com

*Attorneys for Credit Suisse Group AG,
Credit Suisse AG, Credit Suisse
International, Tidjane Thiam, and David
R. Mathers*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT .................................................................................................................................... 2

I.      THE TAC NO LONGER CONTAINS THE CORE ALLEGATIONS ON WHICH THE SECOND CIRCUIT RELIED ................................................................................................. 2

II.     THE TAC SHOULD BE DISMISSED WITH PREJUDICE ............................................. 5

         A.      The TAC Does Not Plausibly Allege a Manipulative Act ...................................... 5

         B.      The TAC Does Not Adequately Allege Scienter ...................................................... 7

         C.      The TAC Does Not Plead an Actionable Misstatement ........................................ 8

         D.      The TAC Does Not Plead Loss Causation............................................................... 9

         E.      The TAC Does Not State a Claim for Controlling Person Liability..................... 11

CONCLUSION................................................................................................................................ 11

i

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)...................................................................................................7

*Kregler* v. *City of New York*,
    821 F. Supp. 2d 651 (S.D.N.Y. 2011), *aff'd*, 604 F. App'x 44 (2d Cir. 2015)..........................3

*Lixenberg* v. *Complex Media, Inc.*,
    808 F. Supp. 3d 625 (S.D.N.Y. 2025)...................................................................................3

*Set Cap. LLC* v. *Credit Suisse Grp. AG*,
    996 F.3d 64 (2d Cir. 2021)..................................................................................... *passim*

*Tera Grp.* v. *Citigroup, Inc.*,
    2024 WL 4501967 (2d Cir. Oct. 16, 2024)...........................................................................3

*Wilson* v. *Merrill Lynch & Co.*,
    671 F.3d 120 (2d Cir. 2011)..................................................................................................7

## PRELIMINARY STATEMENT[1]

Plaintiffs' Opposition (ECF No. 400, "Opp.") insists that the Third Amended Complaint ("TAC"), now stripped of key allegations proven false in discovery, still includes the allegations that the Second Circuit found critical in allowing this case to proceed.  It does not, and Plaintiffs do not and cannot plead plausible claims of manipulation or misrepresentation.

Plaintiffs argue that the "only change" to the TAC has been to correct their allegations as to the volume of Credit Suisse's hedging trades on February 5, 2018—from over 105,000 VIX futures (*i.e.*, roughly 25% of the VIX futures market) to mere "thousands" (*i.e.*, approximately 2%).  Plaintiffs incorrectly claim that this change is of no moment, as the Second Circuit "*expressly* disregarded" the volume of Credit Suisse's hedging.  (Opp. at 4) (emphasis in original).  Plaintiffs also suggest that the TAC's acknowledgement that Credit Suisse did not earn "hundreds of millions" of dollars, as originally alleged, is similarly irrelevant.

But, the Second Circuit's decision repeatedly referenced and relied upon these now discarded allegations.  The Second Circuit made this connection clear when it summarized Plaintiffs' original claims:

> CS allegedly "created conditions in which it knew that ***its hedging trades*** would destroy the value of XIV Notes during the next volatility spike" and "[w]hen that spike occurred days later on February 5, 2018, ***Credit Suisse executed on the alleged scheme*** *by purchasing "**more than 105,000 VIX futures contracts**,* caus[ing] the price of XIV Notes to plummet by more than 96 percent, and declar[ing] an Acceleration Event to lock in its profit [of "***hundreds of millions of dollars***"]."

*Set Cap. LLC* v. *Credit Suisse Grp. AG*, 996 F.3d 64, 68, 77 (2d Cir. 2021).  This Court also recognized the centrality of these allegations.  (*See* ECF No. 374 at 7 ("Critical to the Second

---

[1] Capitalized terms not defined herein have the meaning ascribed in Defendants' Moving Brief ("Moving Brief" or "Br.") (ECF No. 393).  Unless otherwise noted, emphasis is added, and internal citations and quotations are omitted.

Circuit's vacatur of the manipulation claim dismissal was the fact that the claim focuses on *Credit Suisse's hedging activity*.")); (ECF No. 333 at 6–7 (same)).

Plaintiffs effectively concede both the inaccuracy of their original complaint and the importance of the discarded allegations. As noted in their Opposition, discovery has shown that "much of the trading that ran up VIX futures pricing was done *by third parties*" (Opp. at 3), rather than Credit Suisse. And Plaintiffs essentially acknowledge the insufficiency of their new watered-down allegations with their unsuccessful attempt to amend their claims to focus on the trading of these third parties (ECF No. 304), and their procedurally-improper Declaration which inexplicably repeats these rejected claims (ECF No. 398 ("Porritt Decl.")).

Plaintiffs' TAC rests merely on Credit Suisse's limited and disclosed hedging activity, which does not and cannot state a claim for manipulation or misrepresentation. This case should now be dismissed with prejudice.

## **ARGUMENT**

### I.    THE TAC NO LONGER CONTAINS THE CORE ALLEGATIONS ON WHICH THE SECOND CIRCUIT RELIED

Plaintiffs claim that "the TAC pleads *all of the facts* relevant to the Second Circuit's reversal of this Court's earlier dismissal" of this case. (Opp. at 4). That is not true. The core allegations on which the Second Circuit relied in finding Plaintiffs' claims plausible have been definitively disproven and dropped from this case. It is no longer pled that (1) Credit Suisse triggered the collapse of XIV Notes by purchasing 105,000 VIX futures contracts on February 5, 2018 or "roughly one quarter of the entire VIX futures market"; (2) Credit Suisse earned "hundreds of millions of dollars" as a result of its purported scheme; or that (3) Credit Suisse's actual hedging activity (in the "thousands") on February 5, 2018 was what "dr[ove] up the prices of VIX futures and intentionally destroy[ed] the value of XIV." (*See* Br. at 4–6).

2

The allegations of the TAC are substantially weaker than those in the original complaint. Defendants respectfully submit that they simply do not plead a plausible claim. *See Tera Grp.* v. *Citigroup, Inc.*, 2024 WL 4501967, at *4 (2d Cir. Oct. 16, 2024) (affirming dismissal of amended complaint that "omits or substantially revises" allegations that were "once a strong factor in favor of [plaintiff's] conspiracy claim" but no longer "plausibly suggest" the coordination required to state a claim). In these circumstances, the doctrine of "law of the case" is inapplicable. *See, e.g.*, *Lixenberg* v. *Complex Media, Inc.*, 808 F. Supp. 3d 625, 640 (S.D.N.Y. 2025) ("In light of Plaintiff's new factual allegations, the law of the case doctrine is not dispositive here."); *Kregler* v. *City of New York*, 821 F. Supp. 2d 651, 658 (S.D.N.Y. 2011) (same), *aff'd*, 604 F. App'x 44 (2d Cir. 2015).

Plaintiffs attempt to distinguish the *Tera Group* decisions by arguing that "the Second Circuit did not rely on any of the allegations that have changed." (Opp. at 5 n.7). In particular, Plaintiffs argue that the Second Circuit "*expressly* disregarded" Plaintiffs' allegations regarding the magnitude of Credit Suisse's hedging activity (Opp. at 4), citing a single line in the opinion where the Second Circuit found that, "[e]ven assuming that Credit Suisse had fully hedged its position," Plaintiffs had still pled the "motive and opportunity" prong of the scienter element. *Set Cap.*, 996 F.3d at 81. Plaintiffs' singular focus on this "hypothetical" completely ignores the rest of the opinion, which makes plain that Credit Suisse's alleged enormous hedging activity on February 5, 2018 was central to the Second Circuit's plausibility analysis.[2] As Credit Suisse has long argued, the fact that Credit Suisse hedged its XIV exposure—and thus had no incentive or motivation to manipulate the price of XIV up or down—renders Plaintiffs' claims implausible. *Id.*

---

[2] As demonstrated in Section II.B, Plaintiffs ignore that their "motive and opportunity" allegations are also weakened through Plaintiffs' admission that any incidental "profits" were not in the "hundreds of millions of dollars" but rather the mere "millions."

at 80.  This Court agreed.  (ECF Nos. 124, 135).  The Second Circuit reversed that decision because it felt constrained to accept Plaintiffs' allegations that Credit Suisse "did not significantly hedge its position until February 5, 2018, when it purchased 105,000 VIX futures contracts and caused the value of the XIV Notes to collapse."  *Set Cap.*, 996 F.3d at 80–81.  With the allegation of Credit Suisse's purportedly market-moving hedging activity now stripped from the TAC, Plaintiffs' claims are fundamentally different, and implausible.

Against these substantial changes to the TAC, Plaintiffs argue that "two key facts" remain unchanged: (1) that three prior volatility spikes demonstrated the impact of hedging trades on VIX futures; and (2) that Defendants issued millions of XIV Notes in the leadup to February 2018. (Opp. at 7–8).  But neither of these publicly-disclosed "facts," even if credited, render Plaintiffs' claims plausible.  As to the first, this Court has already held that "previous spikes in volatility and their effect on the VIX Futures Index were public information readily available to investors." (ECF No. 135 at 10).  As to the second, there is nothing manipulative about an entity publicly issuing notes—and Plaintiffs do not even attempt to argue otherwise.  Publicly-disclosed information cannot be the basis of a manipulation or misrepresentation claim.  (*See* Br. at 10 (collecting cases)). These two purportedly "unchanged" facts only reinforce what is now missing from the TAC:  any plausible allegation that Credit Suisse "executed" on some undisclosed and manipulative scheme to drive down the price of XIV Notes.  *Cf. Set Cap.*, 996 F.3d at 77 ("When [a volatility spike] occurred . . . on February 5, 2018, Credit Suisse executed on the alleged scheme" by "purchas[ing] more than 105,000 VIX futures contracts, caus[ing] the price of XIV Notes to plummet by more than 96 percent[.]").

Finally, Plaintiffs' Opposition and supporting Declaration continue to improperly inject new allegations regarding  the trading activity of third parties and to link that trading to Credit

Suisse. (*See, e.g.*, Opp. at 4; Porritt Decl.). Plaintiffs' motion to amend to add such claims was denied by Magistrate Judge Netburn (ECF No. 333); that denial was affirmed by Judge Torres (ECF No. 374); and Plaintiffs' further attempt to appeal that decision was rejected (ECF No. 382). Plaintiffs' continued campaign to add in these repeatedly rejected allegations is not only procedurally improper, but serves as an implicit acknowledgement that the allegations of the TAC—the only claims now before this Court—are inadequate on their face.

## II.    THE TAC SHOULD BE DISMISSED WITH PREJUDICE

As demonstrated in the Moving Brief, stripped of its fundamental allegations, the TAC does not plausibly allege any cause of action. Plaintiffs' Opposition does nothing to change the analysis, and their claims should be dismissed.

### A.    The TAC Does Not Plausibly Allege a Manipulative Act

The Second Circuit found that the original complaint had plausibly alleged a manipulative act based on allegations that Credit Suisse (1) knew with "virtual certainty," based on three prior volatility spikes, the "impact of *[its] hedging trades*" (*Set Cap.*, 996 F.3d at 77); (2) offered millions of XIV Notes in June 2017 and January 2018, "exacerbate[d] the risk of illiquidity in the VIX futures market and create[d] conditions in which it knew that *its hedging trades* would destroy the value of XIV Notes" (*id.*); and (3) on February 5, 2018, "execut[ed] on the alleged scheme [and] *purchased more than 105,000 VIX futures contracts*, caus[ing] the price of XIV Notes to plummet by more than 96 percent, and declared an Acceleration Event to lock in its profit" (*id.*).

Any fair reading of the opinion makes it obvious that Credit Suisse's alleged plan to execute on the "scheme" through its own enormous hedging was central to the Second Circuit's analysis. Indeed, Plaintiffs must have known that "execution" was critical because, after discovery proved their allegations false, they tried to substitute in a new method of "execution"—lending by Credit Suisse to supposedly encourage others to tank the price of XIV Notes. The Court, however,

5

did not permit amendment, and Plaintiffs were forced to strike their false allegations about Credit Suisse's own hedging. But rather than acknowledge that their TAC abandons the critical "execution" allegations and, thus, does not state a claim, Plaintiffs distort the Second Circuit's opinion to argue that Credit Suisse's alleged enormous hedging was somehow unimportant or "expressly disregarded" by the Second Circuit. Plaintiffs principally do so in two ways.

*First*, Plaintiffs argue that the appellate decision "did not state or rely on the specific volume of Credit Suisse's own hedging . . . but rather that Credit Suisse executed its hedging trades on February 5 for a manipulative purpose." (Opp. at 13). In Plaintiffs' view, ***any*** amount of hedging by Credit Suisse would be enough to allege a manipulative act, even though the Second Circuit expressly found that Credit Suisse allegedly executed on the supposed scheme by purchasing "more than 105,000 VIX futures contracts." *Set Cap.*, 996 F.3d at 77; *see also id.* at 73 (relying on Plaintiffs' allegation that Credit Suisse's purchased "roughly one-fourth of the entire VIX futures market," driving up "trading to more than 167 times the usual volume").

*Second*, Plaintiffs argue that "the Second Circuit held that Plaintiffs adequately alleged market manipulation based on allegations, among others, that Defendants knowingly or recklessly 'exacerbate[d] the risk of illiquidity in the VIX futures market and create[d] conditions' that led the XIV Notes program to collapse." (Opp. at 13). But Plaintiffs' selective quotation omits key words: the Second Circuit actually said that Defendants "exacerbated the risk of illiquidity in the VIX futures market and created conditions ***in which it knew that its hedging trades would destroy the value of XIV Notes***." *Set Cap.*, 996 F.3d at 77. Plaintiffs cannot wish away the portions of the Second Circuit's decision that eradicate the premise of their opposition.

Plaintiffs' position also defies the fundamental logic of the appellate decision. The Second Circuit found that Defendants acted with "virtual certainty that their own hedging activity would

6

trigger a liquidity squeeze[.]" *Id*. at 76. But Plaintiffs must now concede the truth—that the volume of Credit Suisse's hedging on February 5, 2018 was nowhere near what they had falsely alleged and that "much of the trading that ran up VIX futures pricing was done by third parties[.]" (Opp. at 3). Defendants could not possibly have acted with "virtual certainty" about what unidentified third parties might—or might not—do.

Plaintiffs' efforts to distinguish Defendants' cases fails. Plaintiffs attempt to differentiate *ATSI* and *Wilson* by insisting that the TAC still alleges that "critical" risks were concealed from investors and that Credit Suisse's hedging activity was non-routine. (Opp. at 11, 14-15 (citing *Wilson* v. *Merrill Lynch & Co.*, 671 F.3d 120, 132–34 (2d Cir. 2011) and *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 100 (2d Cir. 2007)). But Plaintiffs cannot state a claim for misrepresentation (discussed below), and they no longer allege anything other than routine and disclosed hedging activity by Credit Suisse.

### B.    The TAC Does Not Adequately Allege Scienter

Plaintiffs again mischaracterize the Second Circuit's holding regarding scienter.

*First*, Plaintiffs misleadingly contend that "[a]ll of the key facts on which the Second Circuit found conscious misbehavior or recklessness adequately pled remain in this case." (Opp. at 15). But in reality, the Second Circuit relied on two sets of factual allegations that it deemed "central," **both** of which rest on the now-dropped allegation of Credit Suisse's own enormous hedging. *See Set Cap.*, 996 F.3d at 78 (relying "first" on the allegation that "Defendants knew that, on days when market volatility increased, ***Credit Suisse's hedging trades*** would cause a spike in the price for VIX futures contracts and an equally significant drop in the price for XIV Notes"), 79 (relying "second" on allegations that would permit a "reasonable inference that Credit Suisse increased the volume of XIV Notes for a manipulative purpose—specifically, to ensure that ***Credit***

***Suisse's hedging trades*** would destroy the value of XIV Notes . . . so that Credit Suisse could profit by declaring an Acceleration Event").

*Second*, Plaintiffs argue—again misleadingly—that "the key facts on which the Second Circuit found motive and opportunity pled remain as well." (Opp. at 15). While Plaintiffs correctly note that the Second Circuit found the "structure of the XIV Notes," made it possible for Credit Suisse to "profit at investors' expense," *Set Cap.*, 996 F.3d at 81, Plaintiffs conveniently omit that the Second Circuit also found the amount of the alleged profit to be critical to the analysis. Indeed, in the very first substantive sentence of the entire opinion, the Second Circuit framed the case as follows: "Set Capital principally alleges that . . . [Defendants] executed a complex fraud to collapse the market for . . . XIV Notes, ***earning hundreds of millions of dollars in profit at their investors' expense***." *Id.* at 68–69.

This allegation is now gone, replaced with the allegation that Credit Suisse earned an incidental profit of mere "millions." (Opp. at 3). Plaintiffs have no answer for Defendants' argument that it is simply implausible that one of the largest banks in the world would have committed a fraud to destroy its own product line (and the fees it generated) in order to earn a few million dollars. (*See* Br. at 2). Nor do Plaintiffs even try to rebut Defendants' cases (*see id.* at 15–16) demonstrating that the (relatively small) alleged profit is fatal to Plaintiffs' scienter allegations.

### C. The TAC Does Not Plead an Actionable Misstatement

The Second Circuit found two potentially actionable misstatements or omissions "[b]ecause the Offering Documents misrepresented Credit Suisse's knowledge ***and its intent to engage in manipulative acts***." *Set Cap.* 996 F.3d at 86. Now that Plaintiffs fail to adequately allege either a manipulative act or scienter, they also fail to adequately allege a misrepresentation.

Nevertheless, Plaintiffs argue that they have adequately alleged a misrepresentation because, according to them, "the matter of ***who*** was doing the trading was immaterial to [the

8

Second Circuit's] analysis." (Opp. at 9 (emphasis in original)). But the Second Circuit's discussion of each alleged misrepresentation demonstrates that Plaintiffs' narrative is, once again, false. First, the Second Circuit found that the disclosure that Defendants "have no reason to believe that [their] . . . hedging activities will have a material impact on the level of the [VIX Futures] Index" was misleading because "Defendants knew with virtual certainty that, upon the next volatility spike, *their hedging activity* would significantly depress the value of XIV Notes." *Set Cap.* 996 F.3d at 85. Second, the Second Circuit found the disclosure that Credit Suisse's hedging trades "may present a conflict of interest" omitted the material facts that Credit Suisse had structured the XIV Notes "to ensure that the next volatility spike would allow it to profit at its own investors' expense." *Id.* at 86. In both instances, the allegedly planned manipulative act—*i.e.*, that Credit Suisse would engage in hedging activity that was virtually certain to tank XIV—was central to the analysis. But as discussed above, Plaintiffs no longer allege that theory of manipulation.

Plaintiffs next argue that the magnitude of Credit Suisse's alleged hedging was "inconsequential" because the 105,000 number "is not described as an outcome-determinative fact." (Opp. at 10). As discussed above, however, the Second Circuit relied on the allegation that Credit Suisse knew with "virtual certainty" that its own hedging activity would destroy the value of XIV Notes. But because the hedging activity was actually far less than Plaintiffs originally alleged, the activity did not (as Plaintiffs concede) destroy XIV's value. Any reasonable reading of the Second Circuit's decision makes plain that the allegedly enormous volume of hedging *was* critical to the analysis, and without that volume the claim falls away.

## D.    The TAC Does Not Plead Loss Causation

Plaintiffs misrepresent the Second Circuit's opinion once again in their loss causation section. Plaintiffs argue that they have adequately pleaded loss causation, based on a materialization-of-risk theory, by alleging that Defendants purposely flooded the market with XIV

9

Notes "***knowing that the volume of resulting hedging obligations*** would, during the next volatility spike, create, and exacerbate a liquidity squeeze . . . that would destroy XIV's value[.]" (Opp. at 20). This again suggests falsely that the Second Circuit's opinion was focused on the hedging obligations of ***anyone in the market*** when, in reality, the Second Circuit was focused on ***Credit Suisse's own hedging obligations***—*i.e.*, the only obligations Defendants could have known with "virtual certainty" would be executed upon.

Plaintiffs' strategy is transparent. They are trying to gloss over the fact that the materialized risk they previously alleged (*i.e.*, that Credit Suisse's ***own hedging*** would tank the market) no longer exists. So Plaintiffs wanted to argue that a ***different*** risk materialized—that third parties tanked the market—but their motion to amend was denied. As a result, they have no viable materialization-of-risk allegations and, thus, cannot adequately plead loss causation.

In their Moving Brief, Defendants explained that Plaintiffs have repeatedly conceded that their alleged losses were caused by the acts of third parties, rather than the Defendants. (Br. at 20). Plaintiffs' principal response is to argue that the Court should not consider allegations in their since-rejected proposed amended complaint—where they alleged that third parties conducted the trading that destroyed XIV's value—because it was never operative. (Opp. at 21). Plaintiffs advance this argument even though Plaintiffs themselves (i) included these allegations in a judicial filing subject to Rule 11; and (ii) have submitted a Declaration that seeks to inject into this Motion the very same theory about third party conduct. That Declaration concedes that "[d]iscovery showed that ***Defendants did not drive the XIV Notes' price down, foment a liquidity squeeze in the VIX futures market, and enable Credit Suisse to close out the XIV Notes in a forced redemption through only Credit Suisse's own hedging activity***." (Porritt Decl. ¶ 7). And Plaintiffs' Opposition says virtually the same thing—"much of the trading that ran up VIX futures

10

pricing was done by third parties." (Opp. at 3). Thus, it does not matter whether the Court holds Plaintiffs to the representations in their since-rejected proposed complaint. They say the same thing in opposing this Motion.

Plaintiffs also argue that loss causation ultimately is a fact issue that precludes dismissal. Not so. Plaintiffs do not plausibly allege that Credit Suisse's own hedging was the proximate cause and in fact, as discussed above, they concede the opposite. This pleading failure requires dismissal. *See* Br. at 22.

### E.    The TAC Does Not State a Claim for Controlling Person Liability

Plaintiffs' control person claims also fail. (Br. at 23). Plaintiffs' footnote in opposition does not change this analysis. Moreover, the "law of the case" doctrine on which Plaintiffs rely to argue that they have pled their control person claims with the "requisite particularity" (Opp. at 27 n.28) again fails to grapple with the fundamental changes, and substantially weaker allegations, of the TAC. *See* Section I, *supra*.

**CONCLUSION**

The Court should dismiss the TAC with prejudice.


Dated: May 29, 2026                    Respectfully submitted,

                                       */s/ Herber S. Washer*
                                       **CAHILL GORDON & REINDEL LLP**
                                       Herbert S. Washer
                                       Tammy L. Roy
                                       Edward N. Moss
                                       Ivan Torres
                                       32 Old Slip
                                       New York, New York 10005
                                       Telephone: (212) 701-3000
                                       Facsimile: (212) 269-5420
                                       hwasher@cahill.com
                                       troy@cahill.com
                                       emoss@cahill.com
                                       itorres@cahill.com

11

*Attorneys for Credit Suisse Group
AG, Credit Suisse AG, Credit Suisse
International, Tidjane Thiam, and
David R. Mathers*

## **WORD COUNT CERTIFICATION**

I, Herbert S. Washer, certify that the foregoing memorandum of law complies with the word-count limitations set forth in Local Civil Rule 7.1(c).  According to the word count of the word-processing program used to prepare the memorandum, and exclusive of the portions of it that are excluded by the rule, there are 3,493 words in the document.

_/s/ Herbert S. Washer_
Herbert S. Washer
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, New York 10005
hwasher@cahill.com
Telephone: (212) 701-3000

_Attorney for Credit Suisse Group
AG, Credit Suisse AG, Credit Suisse
International, Tidjane Thiam, and
David R. Mathers_

13